**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------- X

MARISSA KUBICKI, individually, and on
behalf of all others similarly situated

      Plaintiff,

-v-

THE LEGAL AID SOCIETY, CONNIE PARK,
in her individual capacity, LAURA WALSH, in
her individual capacity, REBEKAH
ALMANZAR, in her individual capacity,
JACKIE QUIGLEY, in her individual capacity,
and YONZEL BURT, in her individual capacity

      Defendants.

-------------------------------------------------- X

26-CV-3882

**MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANTS'
MOTION TO DISMISS COMPLAINT -
ORAL ARGUMENT REQUESTED**


## TABLE OF CONTENTS

                                                  **Page**

PRELIMINARY STATEMENT .................................................................................................1

BACKGROUND ......................................................................................................................2

    I.     Plaintiff's Employment with LAS. .........................................................................2

    II.    Plaintiff's Duties as a PRDU FSW and the Need for Court Presence. .....................2

    III.   LAS Worked Diligently and Continuously with Plaintiff Through the
          Accommodation Process and Ultimately Granted All Plaintiff's Requested
          Accommodations. ..................................................................................................3

        A.    November 8, 2024: LAS Grants Plaintiff's Hybrid Work
               Accommodation. ........................................................................................3

        B.    Early 2025: LAS Provides Additional Workplace
               Accommodations. ......................................................................................3

-i-

C.     July 14, 2025: Plaintiff Provides Medical Documentation Supporting Her Accommodations Already in Place. ...................4

D.     August 2025: LAS Reiterates Court-Coverage Expectations for PRDU FSWs. ...................4

E.     Late November–December 2025: LAS Engages in Interactive Process with Plaintiff. ...................4

F.     January 2026: Continued Work Expectations and Engagement. ...................5

G.     February 2, 2026: Plaintiff Takes FMLA Leave and, To Date, Remains Employed by LAS. ...................6

H.     March 6, 2026: LAS Grants Plaintiff's Requested Accommodation. ...................6

STANDARD OF REVIEW ...................7

LEGAL ARGUMENT ...................8

I.     Plaintiff's "Prolix" Complaint Violates Rule 8's "Short and Plain" Statement Requirement. ...................8

II.     The Court Should Dismiss the Complaint Because Plaintiff Lacks Standing and Asserts Only Moot Claims. ...................9

III.     Plaintiff Fails to State Claims Upon Which Relief Can Be Granted for Failure to Accommodate and Engage in the Interactive Process (Counts I, VI, and VIII). ...................11

A.     LAS Engaged in an Extensive Interactive Process and Granted Accommodations that Satisfied All of Plaintiff's Limitations. ...................11

B.     Plaintiff Cannot Transform LAS's Evaluation of Her Request into a Viable Accommodation or Cooperative-Dialogue Claim. ...................14

IV.     Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted for Retaliation (Counts II and VII). ...................15

A.     Plaintiff Does Not Plausibly Allege Any Adverse Action ...................16

B.     Plaintiff Does Not Plausibly Allege Causation. ...................19

V.     Plaintiff Fails to State a Claim Based on Allegedly Unlawful Medical Inquiries or Policies (Counts IV and V). ...................20

A.     LAS Made Lawful and Reasonable Inquiries that Were Necessary for Its Complete Evaluation of Plaintiff's Accommodation Requests. ..................................................................................20

B.     LAS Used Lawful and Legitimate Criteria to Evaluate Plaintiff's Position and Requested Accommodations. ..............................................22

VI.    Plaintiff Fails to State a Claim for Interference, Coercion, or Intimidation (Counts III and IX) ..................................................................................23

A.     The Rehabilitation Act Does Not Provide an Independent Cause of Action for Interference, Coercion, or Intimidation. ...................................23

B.     The Court Should Decline to Exercise Supplemental Jurisdiction over Plaintiff's Remaining NYCHRL Claims. ...........................................24

C.     Plaintiff Cannot Establish Interference, Coercion, or Intimidation under the NYCHRL. ..................................................................................24

VII.   Plaintiff Fails to State a Claim Based on Aiding and Abetting (Count X). ............26

CONCLUSION..............................................................................................................................28

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Abadi v. N.Y. Univ. Langone Health*,
705 F. Supp. 3d 172 (S.D.N.Y. 2023)........................................................................28

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................................7, 8

*Baker v. Bridge Inc.*,
805 F. Supp. 3d 521 (S.D.N.Y. 2025)........................................................................13

*Belanger v. N.Y. Univ.*,
No. 21 Civ. 01644 (LAP), 2025 WL 963308 (S.D.N.Y. Mar. 31, 2025) ................................17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................8

*Berger v. N.Y.C. Police Dep't*,
304 F.Supp.3d 360 (S.D.N.Y. 2018)...........................................................................20

*Bibbs v. Motiva Enters. LLC*,
757 F. Supp. 3d 726 (E.D. Tex. 2024)........................................................................21

*Bilyeu v. Ut-Battelle*,
No. 3:21-CV-352, 2024 WL 1905045 (E.D. Tenn. Mar. 22, 2024), *aff'd in
part, vacated and rev'd in part on other grounds*, 154 F.4th 396 (6th Cir. 2025)....................10

*Brightman v. Prison Health Serv., Inc.*,
970 N.Y.S.3d 789 (2d App. Div. 2013) .......................................................................16

*Brown v. N.Y.C. Dep't of Educ.*
20-CV-2424 (VEC), 2022 WL 4364600 (S.D.N.Y. Sep. 21, 2022).......................................14

*Browne v. City Univ. of N.Y.*,
419 F. Supp. 2d 315 (E.D.N.Y. 2005), *aff'd*, 202 F. App'x 523 (2d Cir. 2006)........................18

*Cadet v. All. Nursing Staffing of N.Y., Inc.*,
632 F. Supp. 3d 202 (S.D.N.Y. 2022)........................................................................26

*Campbell v. Lamar Inst. of Tech.*,
No. 1:14-cv-399, 2015 WL 12942498 (E.D. Tex. Aug. 13, 2015), *aff'd*, 842
F.3d 375 (5th Cir. 2016) .............................................................................10, 11, 15

*Cangro v. N.Y.C. Dept. of Fin.*,
No. 23-CV-10097 (LAP), 2024 WL 3833971 (S.D.N.Y. Aug. 14, 2024), *aff'd in part, vacated and rev'd in part, on other grounds*, 2026 WL 2130187 (2d Cir. July 24, 2026) .........................................................................................16

*Castro v. Local 1199, Nat'l Health & Hum. Servs. Emps. Union*,
964 F. Supp. 719 (S.D.N.Y. 1997) .......................................................................18

*Charles v. City of N.Y.*,
No. 25-CV-6219 (BMC), 2026 WL 698634 (E.D.N.Y. Mar. 12, 2026) ...............19

*Doe v. Bloomberg, L.P.*,
109 N.Y.S.3d 254 (App. Div. 2019)......................................................................28

*Dortz v. City of New York*,
904 F. Supp. 127 (S.D.N.Y. 1995), *report and recommendation adopted*, 904 F. Supp. 127 (S.D.N.Y. 1995)................................................................................16

*Erasmus v. Deutsche Bank Ams. Holding Corp.*,
No. 15 Civ. 1398 (PAE), 2015 WL 7736554 (S.D.N.Y. Nov. 30, 2015) .........25, 27

*Ferrara v. Metro. Transp. Auth.*,
No. 24-CV-9161 (JPO), 2026 WL 351084 (S.D.N.Y. Feb. 9, 2026) ...................23

*Fiore v. N. Shore Radiation Therapy*,
No. 24-CV-3164 (MKB), 2026 WL 1649451 (E.D.N.Y. May 26, 2026) ..............17

*Flynn v. McCabe & Mack LLP*,
No. 15-CV-5776 (CS), 2018 WL 764631 (S.D.N.Y. Feb. 8, 2018) ......................23

*Fried v. LVI Servs.*,
No. 10-cv-9308 (JSR), 2011 WL 2119748, at *7 (S.D.N.Y. May 23, 2011) ........28

*Frilando v. N.Y.C. Transit. Auth.*,
463 F. Supp. 3d 501 (S.D.N.Y. 2020)....................................................................22

*Frilando v. N.Y.C. Transit Auth.*,
513 F. Supp. 3d 356 (S.D.N.Y. 2021), *aff'd*, No. 21-169-cv, 2022 WL 3569551 (2d Cir. Aug. 19, 2022).........................................................................12

*Gaughan v. Rubenstein*,
261 F. Supp. 3d 390 (S.D.N.Y. 2017).....................................................................12

*Gentile v. Potter*,
509 F. Supp. 2d 221 (E.D.N.Y. 2007) ....................................................................20

*Hesse v. Godiva Chocolatier, Inc.*,
463 F. Supp. 3d 453 (S.D.N.Y. 2020)......................................................................2

*Ingram v. Nassau Health Care Corp.*,
No. 17-CV-05556 (JMA) (SIL), 2019 WL 1332857 (E.D.N.Y. Mar. 25, 2019) ....................19

*Keles v. Yearwood*,
254 F. Supp. 3d 466 (E.D.N.Y. 2017) .................................................................................25

*Kelly v. N.Y. State Office of Mental Health*,
200 F. Supp. 3d 378 (E.D.N.Y. 2016) .................................................................................16

*Kumaran v. Nat'l Futures Ass'n*,
No. 1:20-cv-03668-GHW, 2024 WL 34448107 (S.D.N.Y. July 9, 2024)..............................8

*Le v. Triza Elec. Corp.*,
No. 19-CV-5134 (AAR) (PK), 2020 WL 1274977 (E.D.N.Y. Mar. 16, 2020)......................25

*Lee v. Saul*,
No. 19 Civ. 6553 (PGG) (SN), 2020 WL 5836513 (S.D.N.Y. Sep. 30, 2020).......................11

*Logan v. Matveevskii*,
57 F. Supp. 3d 234 (S.D.N.Y. 2014)....................................................................................15

*Logan v. Matveevskii*,
175 F. Supp. 3d 209 (S.D.N.Y. 2016).........................................................................15, 20, 24

*Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*,
263 F.3d 208 (2d Cir. 2001)...............................................................................................12

*McHenry v. Fox News Network, LLC*,
510 F. Supp. 3d 51 (S.D.N.Y. 2020)..............................................................................27, 28

*Miloscia v. B.R. Guest Holdings LLC*,
928 N.Y.S.2d 905 (Sup. Ct. 2011).......................................................................................27

*Missick v. City of N.Y.*,
707 F. Supp. 2d. 336 (E.D.N.Y. 2010) .................................................................................24

*N.Y. Coastal P'ship, Inc. v. U.S. Dep't of Interior*,
341 F.3d 112 (2d Cir. 2003)..................................................................................................9

*Noll v. IBM*,
787 F.3d 89 (2d Cir. 2015)...................................................................................................13

*Osby v. City of N.Y.*,
748 F. App'x 375 (2d Cir. 2018) ..........................................................................................18

*Pani v. Empire Blue Cross Blue Shield*,
152 F.3d 67 (2d Cir. 1998).....................................................................................................21

*Perez v. N.Y. Presbyterian/Weill Cornell Med. Ctr.*,
 No. 23-CV-6152 (CS), 2024 WL 1514216 (S.D.N.Y. Apr. 8, 2024) ...................................... 17

*Peten v. Stericycle, Inc.*,
 No. 15-CV-872 (JFB) (ARL), 2017 WL 8813133 (E.D.N.Y. Dec. 21, 2017),
 *report and recommendation adopted*, 2018 WL 679886 (E.D.N.Y. Feb. 1,
 2018) ......................................................................................................................... 15

*Peterson v. N.Y.C. Dept. of Educ.*,
 No. 18-CV-1515 (ILG), 2020 WL 2559835 (E.D.N.Y. May 20, 2020) .................................. 17

*Puranik v. Child.'s Place Servs. Co., LLC*,
 No. 24-CV-4441 (AT) (VF), 2025 WL 2522442 (S.D.N.Y. Aug. 1, 2025)
 *report and recommendation adopted*, 2025 WL 2521122 (S.D.N.Y. Sep. 2,
 2025) ................................................................................................................... 12, 14

*Richardson v. Powell*,
 No. 14-1673 (RMC), 2019 WL 1298021 (D.D.C. Mar. 21, 2019) *aff'd*, 798 F.
 App'x 662 (D.C. Cir. 2020) ........................................................................................ 10

*Riddle v. Citigroup*,
 640 F. App'x 77 (2d Cir. 2016) .................................................................................. 19

*Robles v. Medisys Health Network, Inc.*,
 No. 19-CV-6651 (ARR) (RML), 2020 WL 3403191 (E.D.N.Y. June 19, 2020) .................... 26

*Rubin v. N.Y.C. Bd. of Educ.*,
 No. 20 Civ. 10208 (LGS), 2023 WL 2344731 (S.D.N.Y. Mar. 3, 2023) ................................. 8

*Russell v. N.Y. Univ.*,
 42 N.Y.3d 377 (2024) ................................................................................................ 27

*Shannon v. N.Y.C. Transit Auth.*,
 332 F.3d 95 (2d Cir. 2003) ........................................................................................ 22

*Sharikov v. Philips Med. Sys. MR, Inc.*,
 659 F. Supp. 3d 264 (N.D.N.Y. 2023), *aff'd* 103 F.4th 159 (2d Cir. 2024) ...................... 21, 22

*Simmons v. Abruzzo*,
 49 F.3d 83 (2d Cir. 1995) ............................................................................................ 8

*Slater v. N.Y. Univ. Langone Health Sys.*,
 No. 24-CV-03711 (OEM) (SIL), 2025 WL 2208292 (E.D.N.Y. Aug. 4, 2025) .............. 13, 26

*Sosa v. N.Y.C. Dep't of Educ.*,
 819 F. App'x 30 (2d Cir. 2020) .................................................................................. 18

*Sosa v. N.Y. Dep't of Educ.*,
368 F. Supp. 3d 489 ...................................................................................................19

*Sussle v. Sirina Protection Systems Corp.*,
269 F. Supp. 2d 285 (S.D.N.Y. 2003)........................................................................24

*Tsekhanskaya v. City of N.Y.*,
No. 18-CV-7273 (KAM)(LB), 2020 WL 5802329 (E.D.N.Y. Sep. 29, 2020)...........8

*Tulino v. City of N.Y.*,
813 F. App'x 725 (2d Cir. 2020) ................................................................................26

*Vora v. N.Y.C. Dep't of Educ.*,
No. 22 Civ. 10891 (PGG) (SDA), 2024 WL 116312 (S.D.N.Y. Mar. 14, 2024) ......17

*Washburn v. Kingsborough Cmty. Coll.*,
No. 20-cv-00395 (DLI)(RLM), 2022 WL 843733 (E.D.N.Y. Mar. 22, 2022)............9

*Zaki v. OTG Mgmt. LLC*,
No. 23-CV-8189 (PK), 2025 WL 4783125 (E.D.N.Y. Nov. 20, 2025)......................28

**Statutes**

28 U.S.C. § 1367(c)(3)...................................................................................................24

42 U.S.C. § 12112(d)(4)(A) ...........................................................................................21

42 U.S.C. § 12112(d)(4)(B) ...........................................................................................21

N.Y.C. Admin Code § 8-107(28)(a) ...............................................................................13

N.Y.C. Admin. Code § 8-602 .........................................................................................25

N.Y.C. Admin. Code § 8-603 .........................................................................................25

Rehabilitation Act § 504 .................................................................................................20

**Other Authorities**

Fed. R. Civ. P. 8..........................................................................................................8, 9

Fed. R. Civ. P. 8(a)(2).......................................................................................................8

Fed. R. Civ. P. 8(d)(1).......................................................................................................8

Fed. R. Civ. P. 12(b)(1).................................................................................................1, 9

Fed. R. Civ. P. 12(b)(6)...........................................................................................*passim*

LEGAL AID SOCIETY, ANNUAL REPORT 2024 10-11 (Jan. 28, 2024),
https://legalaidnyc.org/annual-report-2024/.................................................................2

Defendants the Legal Aid Society (the "LAS"), Connie Park, Laura Walsh, Rebekah Almanzar, Jackie Quigley, and Yonzel Burt submit this memorandum of law in support of their motion to dismiss the Complaint ("Complaint" or "Compl.") of Plaintiff Marissa Kubicki ("Plaintiff") pursuant to Rules 8, 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This case presents no live controversy. By her own account, Plaintiff worked successfully under multiple accommodations—including a hybrid schedule and workplace modifications—and, after requesting a further modification, received accommodations that sufficiently address her limitations and allow her to perform her job. Plaintiff alleges LAS evaluated her requests through communications with her, her union, and her provider. She further alleges that, on March 6, 2026, LAS approved an accommodation designed to address her asserted limitations by permitting her to work from the office during court-coverage days and limiting in-court appearances to situations which required her presence. These allegations foreclose as a matter of law Plaintiff's attempts to reframe this process as failure-to-accommodate, retaliation, and related claims.

Plaintiff does not plausibly allege a denial of accommodation and suffered no materially adverse action to support retaliation. LAS's inquiries were job-related and part of a lawful evaluation process, and identifying in-court coverage as an essential function is not an unlawful screening device. Having already received the relief she sought, Plaintiff lacks standing by asserting only moot claims. The Court should dismiss the Complaint in its entirety and with prejudice.

## BACKGROUND

**I.**      **Plaintiff's Employment with LAS.**

LAS is the largest social justice firm in New York City. LAS's mission includes providing criminal defense to low-income New Yorkers, advocating for civil rights and legal reform, and fighting for equity. *See* LEGAL AID SOCIETY, ANNUAL REPORT 2024 10–11 (Jan. 28, 2024), https://legalaidnyc.org/annual-report-2024/.[1] Since 2019, LAS employed Plaintiff as a forensic social worker ("FSW"). Compl., ¶¶ 32, 106. On March 1, 2023, LAS transferred Plaintiff into the Parole Revocation Defense Unit ("PRDU"). *Id*. In that role, LAS requires Plaintiff to provide social work support to indigent clients and to assist LAS attorneys in connection with active court proceedings, including by providing in-court coverage. *Id.* ¶¶ 107, 207.

Plaintiff alleges that she consistently performed her duties successfully and received positive performance evaluations throughout her tenure. Compl. ¶¶ 208–11. LAS retained Plaintiff in her role, provided ongoing supervision, and supported her continued employment through multiple workplace adjustments and accommodations when requested. *Id.* ¶¶ 33–37. Plaintiff remained (and, to date, remains) employed while requesting these disability-related accommodations and workplace modifications, each of which LAS granted. *Id.* ¶¶ 33, 50–51, 97, 354–55.

**II.**      **Plaintiff's Duties as a PRDU FSW and the Need for Court Presence.**

PRDU forensic social workers play an integral role in supporting attorneys and clients in active court proceedings. Their responsibilities include client assessments, crisis intervention, attorney consultation, and real-time support during hearings and court appearances. Compl. ¶¶

---

[1] For purposes of a Rule 12(b)(6) motion to dismiss, a court may take judicial notice of information on a party's website or another publicly available website. *See Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 463 (S.D.N.Y. 2020).

107, 207, 215, 219. Plaintiff acknowledges that court-coverage responsibilities require social workers to be physically present and available to respond to attorneys and clients. *Id.* ¶¶ 107–08. Plaintiff further recognizes that court proceedings are dynamic environments requiring immediate crisis intervention and in-person and real-time consultations with and responsiveness to clients, attorneys, and court personnel. *Id.* ¶¶ 214–15.

LAS maintained expectations—both prior to and throughout Plaintiff's employment—that social workers remain available for in-person support during designated court-coverage shifts so that they could provide timely assistance for hearings, client interactions, and emergent issues. *Id.* ¶¶ 212, 214–15. Plaintiff alleges that she remained willing to attend court when needed for client-specific or attorney-specific purposes. *Id.* ¶¶ 3, 78–80.

### III. LAS Worked Diligently and Continuously with Plaintiff Through the Accommodation Process and Ultimately Granted All Plaintiff's Requested Accommodations.

#### A. November 8, 2024: LAS Grants Plaintiff's Hybrid Work Accommodation.

Plaintiff returned from short-term disability leave on or about November 8, 2024. Compl. ¶ 33. At that time, LAS granted Plaintiff an accommodation permitting her to work remotely three days per week and in-person two days per week, which were Plaintiff's court coverage days. *Id.* LAS made this accommodation permanent in or about May 2025. *Id.* Plaintiff alleges that she successfully performed the essential functions of her position with this accommodation in place. *Id.* ¶ 34.

#### B. Early 2025: LAS Provides Additional Workplace Accommodations.

In early 2025, LAS provided Plaintiff with additional workplace accommodations, including a screen protector and an ergonomic chair with lumbar support. Compl. ¶ 36. These accommodations were based on medical documentation concerning Plaintiff's ankylosing spondylitis and related limitations. *Id.* Plaintiff concedes that LAS processed these

accommodations through its accommodation procedures and that the accommodations allowed her to continue performing her job duties. *Id.* ¶¶ 36–37.

**C.     July 14, 2025: Plaintiff Provides Medical Documentation Supporting Her Accommodations Already in Place.**

On July 14, 2025, Plaintiff's medical provider documented that Plaintiff had an autoimmune condition (ankylosing spondylitis) and should work from home three days per week and in person two days per week. Compl. ¶ 39. Plaintiff's existing accommodation satisfied this recommendation. *Id.* ¶¶ 33–34, 39–40.

**D.     August 2025: LAS Reiterates Court-Coverage Expectations for PRDU FSWs.**

LAS expects PRDU FSWs to provide court-coverage support, including court attendance to be available for attorneys and clients. Compl. ¶ 108. In or about August 2025, supervisors reminded Plaintiff and another PRDU social worker that this expectation included court-coverage days on which they did not have a scheduled client or a specific identified need. *Id.* ¶ 43. LAS did not issue a written policy requiring continuous courthouse presence at that time, but management maintained that social workers were expected to be in court during coverage shifts, rather than working from the office and traveling to court only when called. *Id.* ¶ 48. Plaintiff concedes that this expectation related to court-coverage duties and collaboration with attorneys. *Id.* ¶¶ 43, 46.

**E.     Late November–December 2025: LAS Engages in Interactive Process with Plaintiff.**

On or about November 24, 2025, Plaintiff submitted updated medical documentation and asked to amend her existing accommodation. Compl. ¶ 50. Plaintiff requested that, during court-coverage shifts, she be permitted to work from the LAS office located across the street from the courthouse and attend court only when called, instead of remaining physically present in the courthouse. *Id.* ¶ 51. At that time, Plaintiff already had a permanent accommodation permitting three remote workdays and two in-person, court-coverage workdays per week. *Id.* ¶ 33. Plaintiff

alleges that she remained willing to attend court for client meetings, hearings, attorney requests, or emergencies. *Id.* ¶¶ 3, 231.

LAS evaluated Plaintiff's request through its Human Resources personnel and its third-party administrator, Matrix. Compl. ¶¶ 52, 64, 124–25. During this process, LAS requested additional medical information from Plaintiff's provider regarding her limitations and the requested modification. *Id.* ¶¶ 64, 285. In December 2025 and during the pendency of her request, Plaintiff continued working under her existing accommodations, including attending court for client-related matters when required or requested. *Id*. ¶¶ 33–34, 244. Plaintiff alleges that she did not refuse court appearances and remained available for client support, hearings, and emergencies. *Id.* ¶¶ 78–80. Between December 15 and 30, 2025, LAS and Plaintiff exchanged communications regarding the accommodation request and court-coverage expectations. *Id.* ¶¶ 269–70, 281. On December 19, 2025, Plaintiff's union filed a grievance challenging LAS's handling of the accommodation request and the scope of court-coverage expectations. *Id.* ¶ 68. LAS once more reiterated that it expected social workers to be present in court during coverage days and continued the accommodation review process. *Id.* ¶¶ 272.

**F.      January 2026: Continued Work Expectations and Engagement.**

On January 2, 2026, Matrix contacted Plaintiff requesting additional medical information in connection with her accommodation request. Compl. ¶ 285. Matrix stated that LAS required the information to evaluate the request and set a response deadline, as part of the ongoing accommodation process. *Id.*

Plaintiff alleges that on January 20, 2026, LAS rejected Plaintiff's request for an interim accommodation, reiterating that in-person court coverage is an essential function of the PRDU FSW role. Compl. ¶ 82. Plaintiff alleges that LAS issued this determination after evaluating her request and medical documentation. *Id.* ¶¶ 82, 292–93. LAS explained again that it expected social

workers to be present in court for extended periods during coverage days depending on client needs and court activity, which it could not predict in advance and required real-time, time-sensitive responses. *Id.* ¶¶ 215, 294. As such, LAS instructed Plaintiff to report to the office and then to court at specific times during scheduled coverage days, by meeting with any in-court attorneys and remaining in consultation with supervisors regarding case coverage. *Id.* ¶¶ 321–25. However, Plaintiff retained her previously granted accommodations, including her hybrid schedule and workplace equipment. *Id.* ¶¶ 33, 36.

After January 20, 2026, LAS continued to communicate expectations regarding court-coverage duties, including Plaintiff's court attendance during scheduled court-coverage days. Compl. ¶¶ 321–25. Plaintiff further alleges that communications between LAS and union representatives continued after the January 20th communication. *Id.* ¶¶ 299–304.

### G. February 2, 2026: Plaintiff Takes FMLA Leave and, To Date, Remains Employed by LAS.

On or about February 2, 2026, Plaintiff began FMLA leave. Compl. ¶ 336. Plaintiff alleges that she took leave due to her medical condition and the work requirements described in the Complaint. *Id.* ¶¶ 336–37. Plaintiff remains employed by LAS while on leave and states that she seeks to return to work if medically able. *Id.* ¶ 97.

### H. March 6, 2026: LAS Grants Plaintiff's Requested Accommodation.

In early March 2026, LAS emailed the PRDU unit regarding court-coverage practices, including implementation of a court-presence protocol and a pairing model between social workers and attorneys. Compl. ¶¶ 224, 341, 343. LAS reiterated that it expected FSWs in the PRDU to be physically present in the courthouses during their assigned court-coverage days. *Id.* ¶¶ 224–25, 341, 343, 354–55. These communications reflected that LAS was formalizing its PRDU court-coverage practices on a broader basis. *Id.* ¶¶ 346–47. Nevertheless, on March 6, 2026, Ms.

Walsh emailed Plaintiff and offered an accommodation that addressed Plaintiff's stated need to reduce unnecessary courthouse exposure during court-coverage days while remaining available to respond to client and attorney needs as they arose:

> On or about December 9, 2025, Plaintiff requested a reasonable accommodation to work from Defendant Legal Aid Society's office during onsite court coverage shifts and only attend court when called or needed for in-court presence for a specific matter, rather than maintaining physical presence in court for up to seven hours per day. ***
> Defendant Walsh proposed that, instead of going to court at approximately 10:00 a.m. to contact intake attorneys in person, Plaintiff could send Teams messages to the intake attorneys, prioritize any needs identified by those attorneys, remain available during the court-coverage day, and enter court only when needed to meet client needs.
> Defendants' March 6, 2026 proposal substantially mirrored the accommodation Plaintiff, and her union had requested for months: that Plaintiff remain available and responsive for court-coverage needs while avoiding unnecessary courthouse exposure when no attorney or client actually required her physical presence in court.

*Id.* ¶¶ 440, 354–55.

***

In sum, Plaintiff alleged and thus concedes that LAS granted multiple accommodations. *Id*. ¶¶ 33–34, 36. Plaintiff further concedes that LAS engaged in communications, meetings, and requests for medical information regarding her accommodation requests. *Id.* ¶¶ 52, 285, 311. And Plaintiff admits that LAS processed and ultimately granted her requested modification through its normal accommodation procedures. *Id.* ¶¶ 354–55. For these reasons, her claims fail and her Complaint must be dismissed.

<u>**STANDARD OF REVIEW**</u>

To survive a Rule 12(b)(6) motion to dismiss, Plaintiff's Complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "A pleading that offers 'labels

-7-

and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

<u>**LEGAL ARGUMENT**</u>

I. **Plaintiff's "Prolix" Complaint Violates Rule 8's "Short and Plain" Statement Requirement.**

As a preliminary matter, Plaintiff's Complaint should be dismissed because it violates Rule 8's requirement that a pleading contain "a short and plain statement" of the claims and that "each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). Plaintiff filed an unwieldy 139-page, 630-plus-paragraph Complaint replete with redundant allegations, immaterial detail, and narrative that obscures her claims. Courts routinely hold that such "prolix" pleadings impose on both the court and the defendant an "unjustified burden" to sift through a "mass of verbiage" to discern the relevant allegations. *See, e.g., Kumaran v. Nat'l Futures Ass'n*, No. 1:20-cv-03668-GHW, 2024 WL 34448107, at *2 (S.D.N.Y. July 9, 2024) (*quoting Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)).

The Complaint's sheer volume and disorganization frustrate the core purpose of Rule 8 by hindering LAS's ability to identify which factual allegations correspond to which legal claims. This defect is not merely stylistic but substantive: Plaintiff's excessively lengthy, repetitive, and sprawling, class-wide policy narratives prevent LAS from meaningfully responding and obscure whether Plaintiff has plausibly alleged any claim for relief. Courts in this Circuit have dismissed similarly overlong and redundant complaints—many far shorter than this one—on these grounds alone. *See, e.g., Rubin v. N.Y.C. Bd. of Educ.*, No. 20 Civ. 10208 (LGS), 2023 WL 2344731, at *3 (S.D.N.Y. Mar. 3, 2023) (dismissing 168-page complaint); *Tsekhanskaya v. City of N.Y.*, No. 18-CV-7273 (KAM)(LB), 2020 WL 5802329, at *6 (E.D.N.Y. Sep. 29, 2020) (dismissing 60-page complaint); *Washburn v. Kingsborough Cmty. Coll.*, No. 20-cv-00395 (DLI)(RLM), 2022 WL

843733, at *3 (E.D.N.Y. Mar. 22, 2022) (dismissing 62-page, 504-paragraph amended complaint, noting that an attorney's prolixity was "even more disturbing and unacceptable" than *pro se* cases). Because Plaintiff's pleading fails to provide the "short and plain" statement required by Rule 8 and instead substitutes unnecessary verbosity for clarity, the Court should dismiss the Complaint in its entirety.

**II.     The Court Should Dismiss the Complaint Because Plaintiff Lacks Standing and Asserts Only Moot Claims.**

The Court should dismiss Plaintiff's Complaint under Rule 12(b)(1) for the additional reason that she lacks Article III standing and, in any event, asserts only moot claims. To establish standing, Plaintiff must allege concrete, particularized, and actual or imminent injury in fact, that is fairly traceable to the challenged action, and that the relief sought redresses the alleged injury. *N.Y. Coastal P'ship, Inc. v. U.S. Dep't of Interior*, 341 F.3d 112, 116 (2d Cir. 2003). Here, Plaintiff fails to plausibly allege a continuing injury. Rather, Plaintiff alleges that LAS continues to employ her with accommodations allowing her to perform her job, including a hybrid schedule and workplace modifications. Compl. ¶¶ 33–34, 36, 97. These allegations undermine Plaintiff's claim of a present, cognizable injury sufficient to establish standing.

Even were Plaintiff somehow to plead facts establishing a past injury, Plaintiff's own allegations moot her claims because she affirmatively alleges that she ultimately received accommodation remedying the very job-related concerns underlying her request: to avoid unnecessary physical court presence while remaining available to meet client and court-coverage needs. Compl. ¶¶ 354–55. Where a plaintiff has already received the relief sought, there is no longer a live case or controversy, and courts routinely dismiss such claims as moot. This includes cases involving failure to accommodate claims. For example, in *Campbell v. Lamar Inst. of Tech.*, the plaintiff sought compensatory damages and injunctive relief from his educational institution

based on an alleged failure-to-accommodate claim. No. 1:14-cv-399, 2015 WL 12942498, at \*2–4, 6 (E.D. Tex. Aug. 13, 2015), *aff'd*, 842 F.3d 375 (5th Cir. 2016). Specifically, after the school initially granted testing, lecture, and note-taking accommodations, plaintiff requested deferred testing dates as an additional accommodation. *Id.* at \*2. After initially denying this request as unreasonable, a few weeks later, the school informed plaintiff that it would honor his request for a deferred testing schedule and even offered to waive his tuition for the upcoming semester. *Id.* at \*2–3. The court dismissed plaintiff's failure-to-accommodate claim, explaining that because the school granted his requested accommodation, any injury based on a failure to accommodate was moot and therefore plaintiff lacked standing. *Id.* at \*4, 6.

Similarly, in *Bilyeu v. Ut-Battelle*, the court dismissed the plaintiff's failure to accommodate claim as moot and lack of standing. No. 3:21-CV-352, 2024 WL 1905045, at \*5 (E.D. Tenn. Mar. 22, 2024), *aff'd in part*, *vacated and rev'd in part on other grounds*, 154 F.4th 396 (6th Cir. 2025). In *Bilyeu*, plaintiffs alleged that their employer failed to accommodate their religious beliefs after implementing a covid vaccination mandate. *Id.* at \*1. The employer offered religious accommodations to employees in the form of unpaid leave, which the plaintiffs alleged was inadequate. *Id.* One of the plaintiffs, however, received a medical accommodation in the form of weekly testing and an extension of time to receive the vaccine. *Id.* at \*5. Accordingly, the court dismissed her failure to accommodate claim as moot, explaining the plaintiff's "standing ceased to exist once she was granted a medical accommodation." *Id.*; *see also Richardson v. Powell*, No. 14-1673 (RMC), 2019 WL 1298021, at \*10 (D.D.C. Mar. 21, 2019) *aff'd*, 798 F. App'x 662 (D.C. Cir. 2020) (granting summary judgment because the plaintiff "received the accommodation that he requested: time off for instances of asthma-related disability).

Plaintiff's allegations do not establish any exception to the mootness doctrine. Plaintiff does not allege, for example, that the challenged conduct is capable of repetition yet evading review, particularly where Plaintiff alleges that LAS formalized its court-coverage practices and implemented accommodations that satisfied her requests and limitations. Compl. ¶¶ 346, 354–55. Plaintiff similarly does not allege facts indicating that LAS is likely to rescind the accommodation or reimpose the challenged conditions in a manner that would give rise to a future injury.

Plaintiff's claims for injunctive and declaratory relief fail independently for lack of standing because she cannot plausibly allege a real and immediate threat of future harm. Plaintiff alleges that she is currently on leave and hopes to return to work if medically able with accommodations. Compl. ¶ 97. But Plaintiff also alleges that LAS has already provided an accommodation that satisfactorily allows her to perform her job. *Id.* ¶¶ 354–55. Absent any plausible allegation of a continuing or imminent violation, Plaintiff cannot establish the forward-looking injury required for equitable relief. *Campbell*, 2015 WL 12942498, at *6. Because Plaintiff lacks standing and her claims are moot, the Court should dismiss the Complaint.

III. **Plaintiff Fails to State Claims Upon Which Relief Can Be Granted for Failure to Accommodate and Engage in the Interactive Process (Counts I, VI, and VIII).**

A. **LAS Engaged in an Extensive Interactive Process and Granted Accommodations that Satisfied All of Plaintiff's Limitations.**

Plaintiff's failure-to-accommodate claims fail because she does not plausibly allege denial of reasonable accommodation. To state a failure-to-accommodate claim, Plaintiff must sufficiently allege that she has a disability, that Defendants were put on notice of her disability, that she could perform the essential functions of her job with reasonable accommodation, and that Defendants refused to accommodate her. *See Lee v. Saul*, No. 19 Civ. 6553 (PGG) (SN), 2020 WL 5836513, at *4–5 (S.D.N.Y. Sep. 30, 2020) (granting Rule 12(b)(6) dismissal of failure-to-accommodate claim under Rehabilitation Act); *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 395 (S.D.N.Y.

2017) (granting motion to dismiss failure-to-accommodate claim under the New York City Human Rights Law ("NYCHRL")).

Here, Plaintiff alleges the opposite—namely, that LAS provided her with a hybrid schedule, additional workplace modifications, and ultimately her requested accommodations to address each purported limitation expressed by Plaintiff, and that she successfully performed her job with those granted accommodations. Compl. ¶¶ 33–34, 36, 354–55. Specifically, Plaintiff alleges that on March 6, 2026, LAS approved her request to work from the LAS office during court-coverage days and attend court only when needed. *Id.* ¶¶ 354–55. At most, then, Plaintiff alleges disagreement over timing or interim measures, which fails to state a viable claim under either the Rehabilitation Act or NYCHRL—particularly where, as here, LAS maintained existing accommodations while actively evaluating the request. *See, e.g., Frilando v. N.Y.C. Transit Auth.*, 513 F. Supp. 3d 356, 365 (S.D.N.Y. 2021), *aff'd*, No. 21-169-cv, 2022 WL 3569551, *6 (2d Cir. Aug. 19, 2022) (explaining that an adequate interactive process can involve "meeting with the employee who requests an accommodation, requesting information about the condition and what limitations the employee has, asking the employee what he or she specifically wants, showing some sign of having considered the employee's request, and offering and discussing available alternatives when the request is too burdensome") (quoting *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 218–19 (2d Cir. 2001)). Because Plaintiff ultimately received accommodations that addressed her requests, her failure-to-accommodate claims cannot stand. *See e.g., Puranik v. Child.'s Place Servs. Co., LLC*, No. 24-CV-4441 (AT) (VF), 2025 WL 2522442, at *8 (S.D.N.Y. Aug. 1, 2025) (Figueredo, M.J.) *report and recommendation adopted*, 2025 WL 2521122 (S.D.N.Y. Sep. 2, 2025) ("Plaintiff has thus alleged that Defendant provided the very accommodation she requested. This is fatal to Plaintiff's claim."); *Slater v. N.Y. Univ. Langone*

*Health Sys.*, No. 24-CV-03711 (OEM) (SIL), 2025 WL 2208292, at *24–25 (E.D.N.Y. Aug. 4, 2025) (granting motion to dismiss on failure-to-accommodate and adverse employment action theories for discrimination claim, where plaintiff alleged that requested accommodation was provided and failed to show some harm).

Nor can Plaintiff state a claim based on an alleged failure to engage in the interactive process or cooperative dialogue. Under the NYCHRL, an employer may not lawfully refuse or otherwise fail to engage in a cooperative dialogue within a reasonable time upon an employee's request for accommodation. N.Y.C. Admin Code § 8-107(28)(a); *Baker v. Bridge Inc.*, 805 F. Supp. 3d 521, 549 (S.D.N.Y. 2025). To state such a claim, the employee must allege that she requested an accommodation and that the employer refused or failed to engage in timely, good-faith dialogue. *Id.* at 549–50.

Plaintiff's own allegations foreclose such a claim. Plaintiff alleges that LAS engaged in a detailed, multi-party process involving supervisors, Human Resources personnel, and Matrix. Compl. ¶¶ 52, 64, 124–25. This process included HR and Matrix communications, meetings, requests for medical clarification, and weeks of evaluation. *Id*. ¶¶ 52, 64, 67, 269–72, 285, 311. Plaintiff alleges that these efforts continued throughout December 2025 and into January 2026, including involvement by her union and ongoing discussions concerning both the accommodation request and the scope of her duties. *Id.* ¶¶ 269–72, 299–304.

These allegations thus establish LAS's continuous engagement, not refusal to engage. Indeed, they describe precisely the type of iterative, back-and-forth process contemplated by the law, the primary purpose of which is to find a means by which the employee's disability can be accommodated. *Noll v. IBM*, 787 F.3d 89, 98 (2d Cir. 2015). Here, Plaintiff remained able to work under her existing accommodation while LAS evaluated her request. Compl. ¶¶ 33, 244. And LAS

ultimately provided the relief sought, namely limiting her physical court attendance. *Id.* ¶¶ 354–55.

Plaintiff concedes that LAS provided additional accommodations in response to Plaintiff's medical condition, including ergonomic equipment and workplace modifications. Compl. ¶ 36. Plaintiff acknowledges that LAS implemented these measures through its accommodation procedures and enabled her to continue performing her duties. *Id.* ¶¶ 36–37. These allegations confirm that LAS did not refuse to accommodate Plaintiff but instead provided multiple individualized accommodations tailored to her needs. A plaintiff cannot state a claim by alleging dissatisfaction with accommodations that were concededly effective. *Puranik*, 2025 WL 2522442, at *8. A claim for failure to accommodate does not lie where, as here, the employer provides multiple accommodations that allow the employee to perform her role. *Id.*

## B. Plaintiff Cannot Transform LAS's Evaluation of Her Request into a Viable Accommodation or Cooperative-Dialogue Claim.

Plaintiff improperly attempts to convert alleged delay in the accommodation process into standalone failure-to-accommodate or failure-to-engage-in-the-interactive-process claims. Courts have rejected such claims where the alleged delay reflects an employer's effort to assess the request and is unaccompanied by discriminatory animus. For example, in *Brown v. N.Y.C. Dep't of Educ.*, the court upheld the dismissal of a failure-to-accommodate claim under the Rehabilitation Act, on the grounds that the plaintiff failed to make any factual allegations "that would permit the Court to infer that the delay in providing her requested accommodation was motivated by animus," notwithstanding the nine-month delay in plaintiff's receipt of her requested accommodation. No. 20-CV-2424 (VEC), 2022 WL 4364600, at *4 (S.D.N.Y. Sep. 21, 2022); *see also Logan v. Matveevskii*, 57 F. Supp. 3d 234, 258–59 (S.D.N.Y. 2014) (collecting cases explaining that "mere negligence" in promptly providing accommodation does not qualify as failure to accommodate,

absent "evidence that the delay was motivated by the employer's discriminatory intent"), *subsequent action dismissed*, 175 F. Supp. 3d 209 (S.D.N.Y. 2016); *Campbell*, 2015 WL 12942498, at *4 ("The court is aware of no Fifth Circuit case holding an educational institution liable because a requested accommodation was not instantly granted. If that were the law, there would be no need for a grievance process or for any review of requests by higher level administrators of the institution").

Finally, Plaintiff's allegations suggest that she resisted aspects of the process, including providing additional medical documentation, which further undermines her claims. Courts have held that an employee's failure to cooperate in the interactive process defeats liability. *See Peten v. Stericycle, Inc.*, No. 15-CV-872 (JFB) (ARL), 2017 WL 8813133, at *9 (E.D.N.Y. Dec. 21, 2017) (Lindsay, M.J.), *report and recommendation adopted*, 2018 WL 679886 (E.D.N.Y. Feb. 1, 2018).

Because Plaintiff alleges ongoing communications evincing LAS's repeated efforts to evaluate Plaintiff's request, LAS's continued provision of existing and additional accommodations during that evaluation, and ultimate provision of the multiple additional accommodation relief Plaintiff sought—limiting her physical court presence—Plaintiff fails to state a claim for either failure to accommodate or failure to engage in the interactive process. Counts I, VI, and VIII should be dismissed with prejudice.

## IV. Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted for Retaliation (Counts II and VII).

Plaintiff's retaliation claims fail because she does not plausibly allege a materially adverse action. To state such a claim under the Rehabilitation Act, Plaintiff must demonstrate that (1) she engaged in protected activity, (2) LAS was aware of her protected activity, (3) that LAS took a materially adverse employment action against Plaintiff, and (4) a causal connection exists between

the protected activity and adverse action. *Kelly v. N.Y. State Office of Mental Health*, 200 F. Supp. 3d 378, 403 (E.D.N.Y. 2016). Plaintiff must establish substantially the same elements with respect to her NYCHRL retaliation claim, except that instead of needing to allege an adverse action under the NYCHRL, Plaintiff need only show that Defendants engaged in conduct that was reasonably likely to deter a person from engaging in that protected activity. *See Brightman v. Prison Health Serv., Inc.*, 970 N.Y.S.3d 789, 791 (2d App. Div. 2013). Plaintiff's Complaint fails under both standards.

### A. Plaintiff Does Not Plausibly Allege Any Adverse Action.

As an initial matter, Plaintiff does not allege any adverse employment action. Plaintiff alleges no termination, discipline, or materially negative employment change. *See, e.g., Dortz v. City of New York*, 904 F. Supp. 127, 156 (S.D.N.Y. 1995) (Katz, M.J.), *report and recommendation adopted*, 904 F. Supp. 127, 135 (S.D.N.Y. 1995) (finding that in order to constitute adverse employment action sufficient to support retaliation claim, conduct must have "affected the terms, privileges, duration, or conditions of [Plaintiff's] employment"). To the contrary, Plaintiff remained employed throughout the relevant period and continues to be employed. Compl. ¶ 97.

The actions Plaintiff identifies as retaliatory do not constitute materially adverse actions as a matter of law. Plaintiff challenges LAS's handling and evaluation of her accommodation request, requests for additional medical documentation, and LAS's position that Plaintiff was required to attend court during coverage assignments. Compl. ¶¶ 468, 492, 566. Indeed, Plaintiff's retaliation theory improperly attempts to bootstrap her accommodation claim into a retaliation claim. But courts consistently hold that a failure to accommodate—or the evaluation of an accommodation request—does not constitute a material adverse action sufficient to support a retaliation claim. *See, e.g., Cangro v. N.Y.C. Dept. of Fin.*, No. 23-CV-10097 (LAP), 2024 WL 3833971, at *3 (S.D.N.Y.

Aug. 14, 2024), *aff'd in part*, *vacated and rev'd in part, on other grounds*, 2026 WL 2130187 (2d Cir. July 24, 2026) ("Failing to accommodate an employee is, by itself, not sufficient for establishing an adverse employment action"); *Vora v. N.Y.C. Dep't of Educ.*, No. 22 Civ. 10891 (PGG) (SDA), 2024 WL 116312, at *12 (S.D.N.Y. Mar. 14, 2024) (collecting cases, explaining a "denial of a request for an accommodation cannot [itself] constitute an adverse employment action such as that required to form the basis of a retaliation claim"); *Perez v. N.Y. Presbyterian/Weill Cornell Med. Ctr.*, No. 23-CV-6152 (CS), 2024 WL 1514216, at *9 (S.D.N.Y. Apr. 8, 2024) (explaining that "an employer's mere failure to make an accommodation subsequent to an employee's request simply gives rise to a failure to accommodate claim and cannot be bootstrapped into a viable disability retaliation claim") (collecting cases); *Fiore v. N. Shore Radiation Therapy*, No. 24-CV-3164 (MKB), 2026 WL 1649451, at *13 (E.D.N.Y. May 26, 2026) (holding that an alleged denial of a reasonable accommodation supports a failure to accommodate claim and does not give rise to a retaliation claim). Plaintiff cannot reasonably suggest that conduct culminating in the granting of the requested accommodation would deter a reasonable employee from seeking future accommodation.

Nor does Plaintiff plausibly allege an adverse action based on LAS's requests for additional medical information. Employers may lawfully seek documentation necessary to evaluate accommodation requests without constituting retaliation. *See Belanger v. N.Y. Univ.*, No. 21 Civ. 01644 (LAP), 2025 WL 963308, at *18 (S.D.N.Y. Mar. 31, 2025) ("Employers are allowed to ask employees to provide appropriate medical documentation to warrant accommodations.") (collecting cases); *Peterson v. N.Y.C. Dept. of Educ.*, No. 18-CV-1515 (ILG), 2020 WL 2559835, at *6 (E.D.N.Y. May 20, 2020) (a "mere request" for medical documentation "could not plausibly amount to retaliation"); *see also Sosa v. N.Y.C. Dep't of Educ.*, 819 F. App'x 30, 34 (2d Cir. 2020)

(request for additional medical documentation and lateral transfer not adverse employment actions); *Osby v. City of N.Y.*, 748 F. App'x 375, 378 (2d Cir. 2018) (holding that monitoring, documentation requirements, and workload changes insufficient to support a retaliation claim); *Browne v. City Univ. of N.Y.*, 419 F. Supp. 2d 315, 335 (E.D.N.Y. 2005), *aff'd*, 202 F. App'x 523 (2d Cir. 2006) (requiring additional medical documentation or psychiatric evaluation is not an adverse employment action).

Likewise, Plaintiff's allegations that LAS required her to attend court during coverage assignments or to comply with asserted job responsibilities do not transform ordinary workplace expectations into retaliatory conduct. Plaintiff acknowledges that her role includes court coverage and that she remained willing to attend court when needed. Compl. ¶¶ 107–08, 294. Enforcement of job responsibilities—even responsibilities the employee disputes—does not constitute a materially adverse action. For example, in *Castro v. Local 1199, Nat'l Health & Hum. Servs. Emps. Union*, the plaintiff brought a retaliation claim alleging she sustained adverse employment actions when she was required to walk two-and-a-half miles in the heat to lead an employee demonstration. 964 F. Supp. 719, 729 (S.D.N.Y. 1997). The court dismissed the plaintiff's retaliation claim in part on the grounds that she had not shown any adverse employment action and explained that plaintiff's role required her to lead demonstrations in all types of weather. *Id.* Thus, it could not "be said that requiring plaintiff to perform this duty affected the terms, privileges, duration or conditions of her employment." *Id.* Because Plaintiff has identified no actionable adverse employment action—and she cannot—her retaliation claims fail as a matter of law. Counts II and VII should be dismissed for this reason alone.

**B. Plaintiff Does Not Plausibly Allege Causation.**

Even if Plaintiff had alleged an adverse action, Plaintiff's retaliation claims fail because she does not plausibly allege that any challenged conduct occurred because of her protected status or activity. *Ingram v. Nassau Health Care Corp.*, No. 17-CV-05556 (JMA) (SIL), 2019 WL 1332857, at *5 (E.D.N.Y. Mar. 25, 2019) (granting dismissal of disability discrimination claim where the plaintiff failed to "allege facts which plausibly suggest that he suffered an adverse employment action because of his disability"); *Charles v. City of N.Y.*, No. 25-CV-6219 (BMC), 2026 WL 698634, at *4 (E.D.N.Y. Mar. 12, 2026) ("In the absence of any allegations of retaliatory animus or disparate treatment, plaintiff's retaliation claim thus fails for lack of causation").

Instead, Plaintiff alleges an extended interactive process involving communications among LAS, Plaintiff, her medical provider, Matrix, and her union. Compl. ¶¶ 52, 285, 311. Those allegations describe a legitimate, non-retaliatory accommodation review process, not retaliatory animus. *See Sosa v. N.Y. Dep't of Educ.*, 368 F. Supp. 3d 489, 518–19 (dismissing retaliation claim because plaintiff failed to allege specific facts showing retaliatory animus was basis of adverse action); *Riddle v. Citigroup*, 640 F. App'x 77, 79 (2d Cir. 2016) (upholding dismissal of the plaintiff's retaliation claim because the plaintiff "alleged no facts to support a causal connection" between any protected activity and an adverse employment action other than temporal proximity). Indeed, Plaintiff's allegations demonstrate that LAS continued to review the request, sought additional information, communicated with relevant stakeholders, and ultimately granted the accommodation Plaintiff sought. Compl. ¶¶ 354–55.

In short, Plaintiff's own allegations do not support any causal nexus between her protected activity and the conduct she challenges. As such, the Court should dismiss her retaliation claims (Counts II and VII).

V.    **Plaintiff Fails to State a Claim Based on Allegedly Unlawful Medical Inquiries or Policies (Counts IV and V).[2]**

A. **LAS Made Lawful and Reasonable Inquiries that Were Necessary for Its Complete Evaluation of Plaintiff's Accommodation Requests.**

Plaintiff asserts claims based on LAS's requests for additional medical information and its alleged accommodation policies, but these claims fail because Plaintiff's allegations show that the inquiries were job-related and consistent with business necessity. *See Berger v. N.Y.C. Police Dep't*, 304 F.Supp.3d 360, 372-373(S.D.N.Y. 2018) (finding that the defendant's request for a disability-related medical examination was job related and consistent with business needs because it sought to determine the extent and types of accommodations necessary for plaintiff).[3] The Rehabilitation Act permits employers to request medical information necessary to evaluate an employee's ability to perform essential job functions and to assess potential accommodations— and that is exactly what Plaintiff alleges LAS did.

Plaintiff purports to assert a claim under Section 504 of the Rehabilitation Act for a "medical inquiry violation" (Count IV) because she was asked to provide additional medical documentation to support her requested accommodations. *See* Compl. ¶¶ 4, 179, 182, 236, 377, 505–20. However, the Rehabilitation Act expressly states that medical inquiries are permissible

---

[2] To the extent Plaintiff asserts separate Rehabilitation Act claims for interference (Count III), medical inquiries (Count IV), and screening (Count V), those claims fail because the Act does not recognize them as independent causes of action. *See Logan v. Matveevskii*, 175 F. Supp. 3d 209, 225 (S.D.N.Y. 2016) (collecting cases explaining that a Rehabilitation Act plaintiff "may proceed under any or all of three theories: disparate treatment, disparate impact, and failure to make reasonable accommodation"). Plaintiff's interference, coercion, medical-inquiry, and improper screening criteria theories therefore collapse into her accommodation and retaliation claims, which fail for the reasons set forth above. *See* **Section VI.A**, *infra*. The Court should dismiss these claims as duplicative and not legally cognizable under the Rehabilitation Act.

[3] Although *Berger* evaluated a claim arising under the ADA, the Second Circuit has held that the Rehabilitation Act and the ADA impose identical requirements and thus that litigants may rely on case law interchangeably. *Gentile v. Potter*, 509 F. Supp. 2d 221, 231 n.5 (E.D.N.Y. 2007).

when they are "job-related and consistent with business necessity" and that "[a] covered entity may make inquiries into the ability of an employee to perform job-related functions." 42 U.S.C. § 12112(d)(4)(A), (B). The Rehabilitation Act contemplates requiring medical documentation to verify accommodation requests. *See Sharikov v. Philips Med. Sys. MR, Inc.*, 659 F. Supp. 3d 264, 288-291 (N.D.N.Y. 2023), *aff'd* 103 F.4th 159 (2d Cir. 2024) (dismissing ADA medical inquiry violation claim because the inquiries were apparent from the face of the complaint to be job-related and consistent with business necessity); *Bibbs v. Motiva Enters. LLC*, 757 F. Supp. 3d 726, 741 (E.D. Tex. 2024) (granting summary judgment to dismiss plaintiff's claim for improper medical examination under the Rehabilitation Act because the examination was job-related and consistent with a business necessity). While the question of whether a medical inquiry or examination is consistent with business necessity "is an affirmative defense as to which the employer has the burden of proof," an "affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint," as it does here. *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998).

Here, Plaintiff alleges that LAS, through its administrator Matrix, requested additional information from Plaintiff's medical provider to better understand her limitations and evaluate her request. Compl. ¶ 285. She further alleges that Matrix communicated with Plaintiff's provider regarding job functions and accommodation requirements. *Id.* ¶¶ 179–80, 185–86. These allegations demonstrate that the inquiries were directly tied to Plaintiff's request and the requirements of her role. *Id.* ¶¶ 180–83, 285. Additionally, Plaintiff alleges that LAS maintained accommodation procedures involving Human Resources and a third-party administrator. *Id.* ¶¶ 124–25. Structured procedures and documentation requests do not create liability; they support

consistent, informed decision-making. Finally, the context of the requests confirms their legitimacy: LAS was actively evaluating Plaintiff's proposed modification against how she performed court-coverage duties, a core component of her role. *Id.* ¶¶ 107–08, 293. In that context, seeking clarification from a medical provider is a reasonable and lawful step.

Because Plaintiff's allegations demonstrate that all inquiries were job-related and consistent with business needs and the normal accommodation process, the Court should dismiss this claim (Count IV). *See Sharikov*, 659 F. Supp. 3d at 290–91.

### B. LAS Used Lawful and Legitimate Criteria to Evaluate Plaintiff's Position and Requested Accommodations.

Plaintiff's claim for unlawful qualification standards and screening under the Rehabilitation Act (Count V) fails because Plaintiff does not plausibly allege that LAS applied a qualification standard, employment test, or selection criterion that screened out individuals with disabilities *because of* their disabilities. *Frilando v. N.Y.C. Transit. Auth.*, 463 F. Supp. 3d 501, 517–18 (S.D.N.Y. 2020) (granting summary judgment on all plaintiff's claims other than an alleged failure to accommodate). Rather, Plaintiff alleges that LAS determined that in-person court coverage was an essential function of the PRDU FSW role and required Plaintiff to perform that function. Compl. ¶¶ 82, 107–08, 214–15, 293–94.

The Rehabilitation Act does not prohibit employers from identifying and enforcing the essential functions of a position. On the contrary, because employers rightfully establish job requirements necessary to perform the work at issue, courts reject screening-out claims that merely challenge an employer's determination regarding essential job duties. *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003) (noting that courts must defer to an employer's judgment as to what functions are essential, and elimination of an essential function is never a reasonable accommodation); *see Flynn v. McCabe & Mack LLP*, No. 15-CV-5776 (CS), 2018 WL 764631,

at \*8 (S.D.N.Y. Feb. 8, 2018). Plaintiff's allegations do not describe a prohibited qualification standard; they describe a dispute regarding the scope of an existing job responsibility.

Nor does Plaintiff plausibly allege that the challenged requirement screened out disabled employees from employment opportunities at LAS. Plaintiff remained employed throughout the events alleged in the Complaint and continues to be employed by LAS today. Compl. ¶ 97. Plaintiff does not allege that LAS terminated her employment, demoted her, denied her any promotion, excluded her from PRDU, or otherwise removed her from any position because of an alleged disability. Instead, she alleges that LAS continued employing her and ultimately approved an accommodation that enabled Plaintiff to perform her role while reducing court presence. *Id.* ¶¶ 33, 36, 52, 285, 311, 354–55. These allegations fundamentally undermine any claim that LAS employed qualification standards designed to screen disabled employees out of employment.

Because Plaintiff does not allege any application of an unlawful qualification standard or screening criterion, the Court should dismiss Count V.

## VI. Plaintiff Fails to State a Claim for Interference, Coercion, or Intimidation (Counts III and IX).

### A. The Rehabilitation Act Does Not Provide an Independent Cause of Action for Interference, Coercion, or Intimidation.

Plaintiff asserts interference, coercion, and intimidation in violation of the Rehabilitation Act (Count III). However, such claims cannot be pursued under the Rehabilitation Act. *See, e.g., Logan*, 175 F. Supp 3d at 225; *Ferrara v. Metro. Transp. Auth.*, No. 24-CV-9161 (JPO), 2026 WL 351084, at \*5, n.4 (S.D.N.Y. Feb. 9, 2026) (limiting plaintiff's interference claim to ADA because "it is unclear as a legal matter whether the Rehabilitation Act can in fact give rise to an interference claim"). Because no cause of action for this claim exists under the Rehabilitation Act, the Court should dismiss Count III.

**B. The Court Should Decline to Exercise Supplemental Jurisdiction over Plaintiff's Remaining NYCHRL Claims.**

Because Plaintiff's Rehabilitation Act claims must be dismissed, Plaintiff's remaining NYCHRL claims should too. Under 28 U.S.C. § 1367(c)(3), a court may decline to exercise supplemental jurisdiction once it "has dismissed all claims over which it has original jurisdiction." Where federal claims are dismissed at the pleading stage, the balance of judicial economy, convenience, fairness, and comity generally favors declining supplemental jurisdiction over remaining state- or local-law claims. *See, e.g., Missick v. City of N.Y.*, 707 F. Supp. 2d. 336, 354 (E.D.N.Y. 2010) (collecting cases explaining that "in the absence of any remaining federal claims," "the state-law claims should be dismissed so that the state court cans, if so called upon, decide for themselves whatever questions of state law this case may present").

Here, Plaintiff's federal claims arise under the Rehabilitation Act. For the reasons discussed above, each of those claims should be dismissed. Once the Court dismisses Plaintiff's Rehabilitation Act claims, no federal cause of action remains. At this early stage of the litigation, principles of comity strongly favor allowing New York courts to address any remaining questions concerning the scope and application of the NYCHRL. Accordingly, if the Court dismisses Plaintiff's Rehabilitation Act claims, it should decline to exercise supplemental jurisdiction over Counts VI through X and dismiss those claims without prejudice. *See, e.g., Sussle v. Sirina Protection Systems Corp.*, 269 F. Supp. 2d 285, 317 (S.D.N.Y. 2003) (dismissing the plaintiff's NYCHRL claims because the federal ADA claims were dismissed).

**C. Plaintiff Cannot Establish Interference, Coercion, or Intimidation under the NYCHRL.**

Plaintiff's NYCHRL interference, coercion, and intimidation claim (Count IX) also fails because Plaintiff does not plausibly allege conduct that would deter a reasonable employee from

exercising protected rights. To state this claim, Plaintiff must allege that a person, by force or threat of force, knowingly injured, intimidated, interfered with, oppressed, or threatened—or attempted to interfere by threats, intimidation, or coercion with—any other person in the free exercise or enjoyment of any right or privilege secured by the constitution or laws of the United States, the constitution or laws of the State of New York, or local law of the City of New York. *See* N.Y.C. ADMIN CODE § 8-602, N.Y.C. ADMIN. CODE § 8-603; *Erasmus v. Deutsche Bank Ams. Holding Corp.*, No. 15 Civ. 1398 (PAE), 2015 WL 7736554, at *8 (S.D.N.Y. Nov. 30, 2015) (dismissing interference claim because plaintiff failed to plead and did not show any facts indicating that she was threatened, which is a required element to bring an interference claim). Additionally, Plaintiff must allege facts establishing that the interference, injury, intimidation, oppression, threat, or attempt was motivated, in whole or in part, by her protected characteristics. *Id.* at *9. When a complaint contains no factual allegations of threats or coercive conduct, courts dismiss NYCHRL claims for interference, coercion, and threats. *See Keles v. Yearwood*, 254 F. Supp. 3d 466, 476 (E.D.N.Y. 2017).

Here, Plaintiff relies on the same underlying conduct supporting her other claims—communications during the accommodation process, requests for medical information, and enforcement of job expectations. Compl. ¶¶ 54–56, 285, 321–25. These lawful workplace processes cannot plausibly constitute intentional coercive conduct. *See Le v. Triza Elec. Corp.*, No. 19-CV-5134 (AAR) (PK), 2020 WL 1274977, at *2 (E.D.N.Y. Mar. 16, 2020) (dismissing NYCHRL claim where admittedly "reprehensible," "harassing statements" were not "intended to coerce, threaten, or intimidate"); *see also Tulino v. City of N.Y.*, 813 F. App'x 725, 726-727 (2d Cir. 2020) (affirming judgment as a matter of law on constructive discharge claim and noting that

dissatisfaction with work assignments or reduction in work responsibilities within an employee's job title is insufficient to compel a reasonable person to resign).

Plaintiff alleges that LAS maintained expectations regarding court coverage and required her to perform duties associated with her role. Compl. ¶¶ 321–324. As Plaintiff acknowledges, court coverage is part of her job, which involves court attendance when needed. *Id.* ¶¶ 107–08. Requiring an employee to perform job duties does not constitute coercion or interference. *Tulino*, 813 F. App'x at 726–27. Plaintiff also alleges that LAS requested additional medical documentation and engaged in repeated communications. Compl. ¶¶ 182–83, 285, 311. These actions are part of the accommodation process and do not plausibly constitute intimidation or coercion. *See Cadet v. All. Nursing Staffing of N.Y., Inc.*, 632 F. Supp. 3d 202, 237 (S.D.N.Y. 2022) (explaining that plaintiff must allege "some affirmative threat beyond the adverse action itself," to avoid bringing "duplicative" NYCHRL claims under separate provisions); *Robles v. Medisys Health Network, Inc.,* No. 19-CV-6651 (ARR) (RML), 2020 WL 3403191, at *13 (E.D.N.Y. June 19, 2020) ("failure to engage in the interactive process simply constitutes the basis for a failure to accommodate claim, and not for an interference, coercion, or intimidation claim").

Finally, Plaintiff's successful pursuit of her accommodation request negates any inference of interference. Compl. ¶¶ 354–55. An employee who obtains the requested accommodation cannot plausibly claim that the employer interfered with her exercise of protected rights. *See Slater*, 2025 WL 2208292, at *24–25. Accordingly, Counts III and IX must be dismissed.

## VII.     Plaintiff Fails to State a Claim Based on Aiding and Abetting (Count X).

Plaintiff's aiding-and-abetting claim against the individual Defendants (Count X) derives entirely from her underlying NYCHRL claims and, therefore, fails for the same reasons discussed above. Under the NYCHRL, liability for aiding and abetting requires a viable underlying violation.

*Erasmus,* 2015 WL 7736554, at \*8. Specifically, to establish that the individual Defendants aided and abetted LAS, Plaintiff must establish that LAS violated the NYCHRL and that the individual Defendants "actually participated" in the conduct giving rise to discrimination. *Miloscia v. B.R. Guest Holdings LLC*, 928 N.Y.S.2d 905, 917 (Sup. Ct. 2011). If the Court dismisses the claims underlying the aiding and abetting allegations, it must likewise dismiss the claim for aiding and abetting. *Russell v. N.Y. Univ.*, 42 N.Y.3d 377, 383 (2024).

As discussed above, Plaintiff has not plausibly alleged any primary violation of the NYCHRL or the Rehabilitation Act, including failure to accommodate, retaliation, or failure to engage in a cooperative dialogue. Because those claims fail, the aiding-and-abetting claim necessarily fails as well. *See Russell*, 42 N.Y.3d at 388.

Further, Plaintiff fails to allege facts establishing that any individual Defendant engaged in conduct separate and distinct from the employer's actions. Plaintiff's allegations instead describe the individuals as acting within their roles as supervisors or Human Resources personnel during the accommodation process. Compl. ¶¶ 130–34, 137–42, 150–51, 158, 161, 168. Such allegations do not state a claim for aiding and abetting, which requires personal participation in discriminatory conduct beyond the performance of routine job responsibilities. *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020) (collecting cases explaining "aiding and abetting 'liability requires that the aider and abettor share the intent or purpose of the principal actor' and to plead that the aider and abettor "actually participate[d] in such unlawful conduct by the employer"). Plaintiff's conclusory assertions that individuals "participated" or "ratified" conduct do not meet this standard. *See, e.g., id.* at 76–77 (explaining that the plaintiff's mere allegations that an individual "failed to take any appropriate action" could not plausibly state a claim on motion to dismiss, where the plaintiff did not plead the individual had a duty to take affirmative

remedial measures); *Zaki v. OTG Mgmt. LLC*, No. 23-CV-8189 (PK), 2025 WL 4783125, at *3 (E.D.N.Y. Nov. 20, 2025) ("[T]o find that a defendant actually participated in the discriminatory conduct requires a showing of direct, purposeful participation") (alteration in original) (quoting *Fried v. LVI Servs.,* No. 10-cv-9308 (JSR), 2011 WL 2119748, at *7 (S.D.N.Y. May 23, 2011)).

Finally, Plaintiff's allegations establish that the individual Defendants were involved in communicating, evaluating, and implementing accommodations—activities that, as alleged, culminated in the provision of Plaintiff's requested accommodation. Compl. ¶¶ 52, 311, 354–55. Where, as here, the allegations reflect nothing more than participation in ordinary employment decisions attributed to the employer, the claim must be dismissed. *See, e.g., Abadi v. N.Y. Univ. Langone Health*, 705 F. Supp. 3d 172, 185–86 (S.D.N.Y. 2023) (explaining plaintiff's allegations that managers' "mere implementation" of existing policy to deny plaintiff's accommodation request were not sufficient for aiding-and-abetting disability discrimination claim); *Doe v. Bloomberg, L.P.*, 109 N.Y.S.3d 254, 256 (App. Div. 2019) (dismissing claim against individual defendant because the plaintiff failed to show the individual "encouraged, condoned, or approved the specific discriminatory conduct allegedly committed"). Because the allegations show nothing more than conduct undertaken in the course of employment on behalf of LAS, and because no independent basis for personal liability is plausibly pled, Defendants Park, Walsh, Almanzar, Quigley, and Burt should be dismissed from this action in their entirety.

## CONCLUSION

Plaintiff fails to state any claim. Plaintiff alleges that LAS employed (and continues to employ) her for years, granted her multiple accommodations, engaged in extensive communications regarding her requests, and provided accommodations that addressed the job

limitations underlying her requests. Compl. ¶¶ 33, 36, 52, 311, 354–55. These allegations defeat each of her ten causes of action as a matter of law.

Because Plaintiff does not plead facts that plausibly establish any violation, the Court should dismiss the Complaint in its entirety. At a minimum, if the Court dismisses with prejudice Plaintiff's Rehabilitation Act claims, it should decline to exercise supplemental jurisdiction over Plaintiff's NYCHRL claims and dismiss Counts VI through X without prejudice.

Dated: New York, New York  
August 10, 2026

**DORSEY & WHITNEY LLP**

By  */s/Nicholas J. Pappas*  
NICHOLAS J. PAPPAS  
pappas.nicholas@dorsey.com  
BRIANA AL TAQATQA (pro hac vice)  
altaqatqa.briana@dorsey.com  
GRACE F. JACOBSON (pro hac vice)  
jacobson.grace@dorsey.com  
KRISTA BOLLES  
bolles.krista@dorsey.com  
1301 Avenue of the Americas, Floor 13  
New York, NY 10019  
(212) 415-9200  

Attorneys for Defendants THE LEGAL AID SOCIETY, CONNIE PARK, LAURA WALSH, REBEKAH ALMANZAR, JACKIE QUIGLEY, and YONZEL BURT

**CERTIFICATE OF COMPLIANCE**
**WITH TYPEFACE AND WORD-COUNT LIMITATIONS**

I, Nicholas J. Pappas, counsel for Defendant The Legal Aid Society, certify, pursuant to Local Civil Rule 7.1(b)-(c), that the foregoing motion is double-spaced, has one-inch margins, has a typeface of 12 points or more, and contains 8,545 words.

Dated: New York, New York
August 10, 2026

*/s/ Nicholas J. Pappas*
NICHOLAS J. PAPPAS

**CERTIFICATE REGARDING THE USE OF GENERATIVE ARTIFICIAL**
**INTELLIGENCE**

I, Nicholas J. Pappas, counsel for Defendant The Legal Aid Society, hereby certify that I have read the Individual Rules & Practices in Civil Cases for Judge Broderick, United States District Judge for the Southern District of New York.

I, or someone under my supervision, used an artificial intelligence ("AI") tool in drafting the filing submitted in the above-captioned case on August 10, 2026 and tiled Memorandum of Law in Support of Defendants' Motion to Dismiss at Doc. 38 (the "Memorandum"). We did not use any AI tools to identify any legal authority. I further certify that:

- I personally reviewed the filing for accuracy; and

- Someone under my supervision personally reviewed the filing for accuracy.

Having reviewed the filing for accuracy, we took the following steps to verify that each legal assertion and/or citation to the law or the record has been independently verified as accurate:

-30-

The AI tool was used only to suggest edits for writing clarity and not to identify legal authority, make factual assertions, or draft the original or final draft of the Memorandum.

Dated: New York, New York
August 10, 2026

/s/ Nicholas J. Pappas
NICHOLAS J. PAPPAS