DORSEY
DORSEY + WHITNEY LLP

**BRIANA AL TAQATQA**
**Partner**
**(612) 492-6617**
**altaqatqa.briana@dorsey.com**

September 10, 2026

**VIA ECF**

The Honorable Ona T. Wang
United States Magistrate Judge
United States District Court, Southern District of New York
500 Pearl St., Courtroom 20D
New York, NY 10007

Re: *Kubicki v. The Legal Aid Society, et al.*, Case No. 1:26-cv-03882-VSB-OTW
Joint Status Letter

Dear Judge Wang:

Pursuant to the Court's instructions at the August 11, 2026 initial case management conference and its September 2, 2026 Order, ECF. No. 46, Defendants The Legal Aid Society ("LAS"), Connie Park, Laura Walsh, Rebekah Almanzar, Jackie Quigley, and Yonzel Burt (collectively the "LAS Defendants"), and Plaintiff Marissa Kubicki ("Plaintiff"), submit this joint status letter.

**Current Status and the Parties' Agreed Briefing Schedule**

On August 31, 2026, Plaintiff filed an Amended Complaint amending her allegations and claims against the LAS Defendants, and asserting claims against a new defendant, Matrix Absence Management, Inc. ("Matrix"). ECF No. 41. Matrix was served with the Amended Complaint on September 8, 2026. ECF No. 47. Counsel for Matrix has not appeared and Matrix is not required to respond to the Amended Complaint until September 29, 2026.

The LAS Defendants intend to file a motion to dismiss in response to the Amended Complaint. They also intend to file a motion to stay discovery pending the Court's ruling on their forthcoming motion to dismiss. Plaintiff intends to file a motion for summary judgment, as to liability only, on her New York City Human Rights Law ("NYCHRL") failure-to-accommodate claim against LAS only, on or about November 2, 2026.

On September 8, 2026, counsel for Plaintiff and the LAS Defendants met and conferred regarding a proposed briefing schedule and discovery. Counsel for the LAS Defendants stated their intention to seek a stay of all discovery while their forthcoming motion to dismiss is pending. Counsel for Plaintiff stated his intention to oppose a stay and to file an early motion for summary judgment.

The Plaintiff and the LAS Defendants have agreed to the following briefing schedule for the LAS Defendants' motion to dismiss:

- Deadline for the LAS Defendants to file opening briefs: October 14, 2026
- Deadline for Plaintiff to file opposition briefs: November 11, 2026
- Deadline for the LAS Defendants to file reply briefs: November 25, 2026

Defendant LAS intends to file a motion to stay discovery pending the Court's resolution of its forthcoming motion to dismiss Plaintiff's Amended Complaint and respectfully proposes the same briefing schedule identified above for the motion to dismiss apply to its motion to stay discovery with an initial filing deadline of October 14, 2026.

**LAS Defendants' Position**

On the evening of September 8, Plaintiff served her First Requests for Production to LAS. On September 9, LAS stated its objections to service of Plaintiff's discovery requests given the procedural posture of the case, the LAS Defendants' stated intention to seek a stay of discovery, and the Court's September 10 deadline for the parties to submit a joint status letter regarding informal discovery. The LAS Defendants proposed a mutual exchange of Rule 26(a)(1)(A) Initial Disclosures and a mutual exchange of limited document productions. The LAS Defendants propose that the parties exchange Rule 26(a)(1)(A) Initial Disclosures on October 5, 2026 and exchange limited document productions on October 19, 2026. Plaintiff rejected that proposal.

Plaintiff intends to file an early motion for summary judgment. The LAS Defendants' position is that the forthcoming motion to dismiss and motion to stay discovery preclude Plaintiff's filing an early summary judgment motion.

Finally, Plaintiff's position below exceeds the scope of the Court's instructions regarding this joint status letter by making substantive arguments regarding the LAS Defendants' forthcoming motion to dismiss and motion to stay (which have not yet been filed), Plaintiff's forthcoming early motion for summary judgment (before the pleadings have closed and without any discovery), and the case schedule (despite the Court electing not to enter a schedule at the August 11 conference). The parties were asked to update the Court regarding a proposed briefing schedule on the LAS Defendants' motion to dismiss and whether the parties have agreed to informal discovery. Plaintiff's substantive arguments below go far beyond what was requested. If the Court elects to entertain Plaintiff's arguments below regarding a stay of discovery, the filing of an early summary judgment motion, and/or the case schedule, the LAS Defendants respectfully request the opportunity to be heard.

**Plaintiff's Position**

Plaintiff's first requests for production to (only) LAS served on September 8, 2026, (attached hereto as **Exhibit A**) focus on the core documents relevant to Plaintiff's anticipated motion for summary judgment as to liability on her NYCHRL accommodations claims. They were served in the regular course under Fed. R. Civ. P. 26(d)(1), which permits discovery once the parties have conferred as required by Rule 26(f). The parties held their Rule 26(f) conference on June 19, 2026, *see* Rule 26(f) Report, ECF No. 33, and discovery has therefore been open in this action since that date, even though no case management schedule has yet been entered.

DORSEY
DORSEY + WHITNEY LLP



Plaintiff's position is that the LAS Defendants' insistence on staying all discovery throughout the pendency of their second motion to dismiss—a period Plaintiff estimates could last six to twelve months—has prevented the parties from reaching an agreement on a voluntary limited production.

Plaintiff's further position is that discovery should proceed, in the regular course, unless and until the LAS Defendants show "good cause" for a stay, including by making a "strong showing" that their not-yet-filed second motion to dismiss will substantially succeed. *See* ECF No. 36 ("[Defendants] have not made the "strong showing" that their not-yet-filed motion will dismiss all claims, and . . . at a minimum, Plaintiff's core accommodation denial claims are highly likely to survive; thus, a stay would merely postpone, rather than eliminate, substantially overlapping discovery.") The LAS Defendants' second request for a stay of <u>all</u> discovery, based on the asserted strength of their not-yet-filed second motion to dismiss is premature for the same reasons their first request was premature. *See* ECF No. 36 at 1. In addition, there is a particularly weak case for finding "good cause" to stay class discovery where the LAS Defendants' first motion to dismiss did not even directly challenge the sufficiency of the class allegations (beyond simply claiming that Plaintiff has absolutely no plausible individual claims at all) which have become even more detailed in the Amended Complaint. ECF No. 41 ¶ 10.

In addition, the LAS Defendants have requested a total of <u>six weeks</u> to file their <u>second</u> motion to dismiss in response to the Amended Complaint filed August 31, 2026, ECF No. 41, after already having initially <u>briefed their first motion.</u> Given the LAS Defendants' request for substantial additional time to challenge the Amended Complaint, it is highly unlikely that Plaintiff's detailed Amended Complaint is so deficient that the LAS Defendants can obtain dismissal of <u>all</u> of Plaintiff's claims, let alone <u>all</u> of her core failure to accommodate claims, as legally implausible. Yet that is the very showing the LAS Defendants would need to make to establish "good cause" for a stay of all discovery. *See* ECF No. 36.

While Plaintiff recognizes that the LAS Defendants do not want Plaintiff to move for partial summary judgment, just as Plaintiff does not want the LAS Defendants to move to dismiss, the Federal Rules of Civil Procedure permit both motions. A motion for summary judgment may be filed at any time, Fed. R. Civ. P. 56(b), and the remedy for a purportedly premature motion is an opposition under Fed. R. Civ. P. 56(d) showing a particular need for additional discovery. Plaintiff's position is that: (1) there are no material contested facts that the LAS Defendants can rely on to avoid limited summary judgment as to liability on Plaintiff's NYCHRL failure to accommodate claim; and (2) that the LAS Defendants either already have in their possession, custody, or control, or will receive, all of the documents prior to the motion being filed, that might otherwise support an opposition based on Fed. R. Civ. P. 56(d). Although no pre-motion conference is required prior to filing a motion for summary judgment, *see* Judge Broderick's Individual Rules & Practices in Civil Cases § 4A, to the extent the Court wishes to hold a conference on this issue Plaintiff will submit a pre-motion conference letter setting forth the basis for the forthcoming motion.

Plaintiff proposes that the case proceed on the case management schedule Plaintiff proposed in the parties' Rule 26(f) report, ECF No. 33, adjusted to account for the time that has elapsed since the August 11, 2026 initial case management conference. *See* ECF No. 46. Accordingly, Plaintiff proposes the following revised case management deadlines: (1) service of initial disclosures, interrogatories, and request for production by September 24, 2026; (2) meet

DORSEY
DORSEY + WHITNEY LLP



and confer regarding electronic protocol September 24, 2026; (3) submit proposed electronic discovery order October 8, 2026; (4) responses to initial requests for production October 24, 2026; (5) production of initial anonymized accommodation request information October 31, 2026; (6) amendment of the complaint or joinder of additional parties March 13, 2027; (7) requests for admission April 14, 2027; (8) plaintiff's expert disclosures May 9, 2027; (9) Defendant's expert disclosures June 13, 2027; (9) completion of fact discovery July 10, 2026; (10) rebuttal expert disclosures July 11, 2026; (10) motion for class certification and completion of expert discovery August 28, 2026; (11) opposition to class certification October 23, 2027; and (12) reply in support of class certification November 20, 2027.

Respectfully,

DORSEY & WHITNEY LLP

Briana Al Taqatqa
Partner

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARISSA KUBICKI, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE LEGAL AID SOCIETY, MATRIX ABSENCE MANAGEMENT, INC., CONNIE PARK, in her individual capacity, LAURA WALSH, in her individual capacity, REBEKAH ALMANZAR, in her individual capacity, JACKIE QUIGLEY, in her individual capacity, and YONZEL BURT, in her individual capacity,<br><br>Defendants. | Case No. 1:26-cv-03882-VSB |

**PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION TO DEFENDANT THE LEGAL AID SOCIETY**

**PLEASE TAKE NOTICE** that pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiff Marissa Kubicki hereby makes the following requests for production ("Requests"). Pursuant to Federal Rule of Civil Procedure 34, these responses are to be produced by October 13, 2026, at The Dugger Law Firm, PLLC, Gotham Center, 28-07 Jackson Ave., 5th Fl, Long Island City, NY 11101 or via email to cd@theduggerlawfirm.com.

**DEFINITIONS**

1. "LAS" means Defendant The Legal Aid Society. References to "LAS" are governed by S.D.N.Y. Local Civil Rule 26.3(c)(5). Specific employees, decisionmakers, custodians, departments, shared mailboxes, systems, and repositories are identified separately in these Requests.

2. "Plaintiff" means Marissa Kubicki.

3. "PRDU" means the Parole Revocation Defense Unit.

4. "Proposal" means Plaintiff's November 24, 2025 disability accommodation request to work from the LAS Bronx office during her onsite court-coverage workdays while remaining available to enter or return to court whenever called for an identified client, attorney, hearing, assessment, emergency, advocacy, or other court-related need.

5. "Court Need" means an identified client meeting, attorney request, hearing, assessment, emergency, court advocacy task, or other identified work task requiring the assigned PRDU Forensic Social Worker's, including Plaintiff's, physical presence in the courthouse.

6. "January 20 Email" means Connie Park's January 20, 2026 email with the subject line "Follow up to meeting re: MK accommodation."

7. "January 29 Email" means Laura Walsh's January 29, 2026 email with the subject line "Update from Employee Relations: Accommodations."

8. "March 2 Email" means Lorraine McEvilley's March 2, 2026 email to the PRDU distribution list with the subject line "Supervisory Whereabouts Monday, March 2, 2026."

9. "March 6 Email" means Laura Walsh's March 6, 2026 email to Marissa Kubicki with the subject line "Re: Update from Employee Relations: Accommodations."

10. "Additional Medical Clarification" means the information requested from Plaintiff's healthcare provider in the January 2, 2026 Matrix letter concerning alternative accommodations, precautions, and the extent of courthouse interaction.

11. "Communication Tools" means LAS email, Microsoft Teams, telephone, and text messaging available to communicate work assignments and requests.

12. "Document" has the meaning prescribed by S.D.N.Y. Local Civil Rule 26.3(c)(2) and Federal Rule of Civil Procedure 34(a)(1)(A). The term includes electronically stored information. Each draft or non-identical copy constitutes a separate Document.

13. "Decision File" means the complete nonprivileged materials created, received, reviewed, considered, relied upon, approved, or transmitted in connection with a decision, direction,

proposal, or arrangement, including drafts, redlines, notes, calendars, meeting materials, approvals, attachments, audit history, and available metadata.

14. "Responsive Communication" means at least email, Teams messages or meeting chats, text messages, direct messages, calendar entries, meeting invitations, notes of oral communications, and attachments.

15. Pursuant to S.D.N.Y. Local Civil Rule 26.3(a), the definitions and rules of construction set forth in Local Civil Rule 26.3(c) and (d) are incorporated by reference into these Requests. The litigation-specific definitions stated above supplement those uniform definitions only to identify the persons, events, documents, communications, and time periods at issue. They do not broaden any term defined by Local Civil Rule 26.3 or expand the scope of discovery permitted by Federal Rule of Civil Procedure 26(b)(1). To the extent of any conflict, Local Civil Rule 26.3 controls. Consistent with Local Civil Rule 26.4(b), each Request must be read reasonably and not hypertechnically. If LAS contends that a term or Request is ambiguous or overbroad, LAS must identify the disputed language, state the reasonable construction used in responding, and produce all responsive materials under that construction.

## INSTRUCTIONS

1. Unless a request states otherwise, the relevant period is August 1, 2025 through March 6, 2026, including documents created, sent, received, modified, possessed, and/or maintained during the period (or otherwise stated period).

2. Produce electronically stored information in native or reasonably usable form. Preserve attachments, family relationships, complete message threads, available metadata, formulas, hidden fields, version history, and original file names.

3. Produce email and messaging data with the sender, recipients, date, time, subject, attachments, and thread context intact. Produce spreadsheets and database exports in native form with field definitions sufficient to interpret them.

4. For LAS client-related records, LAS may redact client names, identifying details, and privileged legal advice, provided the production preserves the date, task type, request source, response time, work location, and outcome needed to evaluate operations.

5. Produce a privilege log at the time of production that satisfies Federal Rule of Civil Procedure 26(b)(5)(A) and SDNY Local Rule 26.2. Identify nonresponsive family members and redactions by reason.

6. For each request, state whether production is complete. If no responsive document exists after a reasonable search, state that in writing. If production is incomplete, identify the remaining source, estimated volume, reason, and date certain for completion.

7. If LAS contends a Matrix record is outside its possession, custody, or control, identify the record, the contractual and practical basis for the contention, LAS's access rights, and every step taken to obtain the record.

8. These requests do not seek attorney work product created by litigation counsel after the reasonable anticipation of this litigation. They do seek ordinary-course Human Resources, Employee Relations, supervisory, operational, grievance, and accommodation materials, including facts communicated to counsel or later collected by counsel if the underlying facts and documents are otherwise discoverable.

9. Notwithstanding any contrary language in these Requests, these Requests do not seek production of documents from purely personal accounts or purely personally owned devices. Responsive Documents available from LAS-controlled systems or accounts, LAS-owned or LAS-issued devices, or Matrix sources within LAS's possession, custody, or control remain requested.

Identify the custodians and principal sources searched. Responses shall identify the custodians and principal sources searched.

## REQUESTS FOR PRODUCTION

1. Produce all Documents and Responsive Communications concerning any instruction, directive, policy, practice, expectation, assignment, or requirement imposed, communicated, enforced, threatened, represented as applicable, or treated as being in effect at any time from March 1, 2023 to the present that required, expected, or directed Plaintiff or any other PRDU Forensic Social Worker to remain physically present in a courtroom or courthouse for as many as seven hours, for an entire or substantially entire workday, continuously throughout court sessions, or for the full duration of a designated court-coverage day. This Request applies regardless of whether the requirement was described as “up to seven hours,” “all day,” “full-day coverage,” “continuous coverage,” remaining until court concluded, or by substantially similar language, and regardless of whether a client-specific, attorney-specific, hearing-specific, assessment-specific, or emergency need for the Forensic Social Worker’s physical presence had been identified. For each such requirement, produce documents sufficient to identify when it was created, approved, first communicated, implemented, modified, suspended, or discontinued, each person who created, approved, communicated, or enforced it, each employee, office, borough, and courthouse to which it applied or was represented as applying, each exception or different arrangement, each instance of enforcement or threatened enforcement, and each stated operational, client-service, staffing, supervisory, or other basis.

2. Produce Plaintiff’s complete nonprivileged LAS accommodation and court-coverage Decision File concerning the Proposal and Plaintiff’s related accommodation requests from November 24, 2025 through March 6, 2026, including Human Resources, Employee Relations, PRDU, supervisory, grievance, accommodation, and related files. The production shall include all nonprivileged materials created, received, reviewed, considered, relied upon, approved, rejected, or

transmitted during LAS's evaluation of the Proposal and any cooperative dialogue concerning it, including documents identifying the information LAS believed was missing, the significance LAS attributed to that information, the essential functions or job duties LAS considered, the alternatives and interim measures considered, the difficulties LAS believed any proposed accommodation might create, the reasons for each decision, and documents memorializing any written or unwritten final determination.

3. Produce the complete Matrix file and/or record within LAS's possession, custody, or control concerning Plaintiff's accommodation and leave events from November 1, 2024 through March 6, 2026, including the complete Matrix Decision File for the January 2, 2026 request for Additional Medical Clarification. The production shall include intake records, internal notes, audit and activity history, structured fields, status changes, attachments, uploads, downloads, communications, decisions, reason codes, deadlines, approvals, denials, closure and reopening history, available metadata, instructions or information supplied by LAS, drafts and versions of provider questions, documents considered, and communications between LAS and Matrix.

4. Produce the complete LAS Decision File for the January 2, 2026 request for Additional Medical Clarification, including all instructions or information supplied to Matrix, drafts and versions of the questions directed to Plaintiff's healthcare provider, documents considered, approvals, notes, and Responsive Communications. The production shall also include documents identifying each fact or item of information LAS believed was missing from the medical information already provided, why LAS believed that information was material to evaluating the Proposal, who made that determination, when the determination was made, and whether LAS considered the existing medical information sufficient to evaluate or temporarily implement the Proposal or another interim measure while awaiting a response.

5. Produce the complete Decision File for the January 20 Email, the denial of the Proposal, the direction that Plaintiff report in person to court on January 21, 2026, and all related instructions

governing Plaintiff's work from January 20 through January 29, 2026. The production shall include all drafts, redlines, notes, meeting materials, approvals, documents considered, Responsive Communications, and documents sufficient to show when drafting or operational design began, each person who participated, each task assigned, each approval date, and the factual and operational basis for the decision. It shall also include all documents concerning the instructions, requirements, duties, and procedures described in the January 20 Email, including the asserted essential courthouse-presence requirement, the denial of office-based availability as an interim accommodation, the requirement that Plaintiff report to court by approximately 10:00 a.m., contact designated attorneys, assess available social-work needs, consult with supervisors before leaving court, and follow further supervisory direction for the remainder of the coverage day.

6. Produce the complete Decision File for the January 29 Email and all related instructions governing Plaintiff's work from January 29 through March 6, 2026. The production shall include all drafts, redlines, notes, meeting materials, approvals, documents considered, implementation planning, Responsive Communications, and documents sufficient to show when drafting or operational design began, each person who participated, each task assigned, each approval date, and the factual and operational basis for the arrangement. It shall also include all documents concerning the instructions, requirements, duties, and procedures described in the January 29 Email, including supervisory screening of Violation of Release Reports and intake matters, identification and prioritization of assessments, contact with assigned attorneys, any attorney-authorization requirement, post-assessment reporting, courthouse or office-based waiting locations, return-to-court procedures, end-of-day reporting, the proposed six-month term, and any planned review of the arrangement.

7. Produce all Documents identifying, describing, supporting, contradicting, or evaluating any fact LAS contends made the arrangements described in the January 29 Email or March 6 Email feasible when the Proposal allegedly was not feasible on November 24, 2025 or January 20, 2026, or that otherwise made either later arrangement materially different from the Proposal. This Request

includes any asserted medical, job-duty, geographic, staffing, technology, safety, confidentiality, cost, client-service, supervisory, referral, communication, or operational change. For each asserted change, produce documents sufficient to identify when the fact arose, who first identified it, when each relevant decisionmaker learned of it, how it allegedly affected feasibility, and why the same condition, procedure, or safeguard was not available or could not have been used earlier.

8. Produce all versions from March 1, 2020 through March 6, 2026 of PRDU Forensic Social Worker job descriptions, postings, essential-function analyses, performance standards, onboarding materials, training materials, memorialized directives, and written explanations of court-coverage duties, including version history and available metadata.

9. Produce all PRDU weekly court-coverage guidance, referral procedures, pairing protocols, virtual-coverage instructions, schedules, and policies concerning courthouse offices and nearby LAS offices from August 1, 2025 through the present, including prior and revised versions and available metadata.

10. Produce documents sufficient to show the historical and actual practice from March 1, 2020 to the present regarding where PRDU Forensic Social Workers waited between Court Needs in the Bronx, Manhattan, Brooklyn, and any other New York City borough in which PRDU coverage occurred, including use of LAS offices, courthouse offices, remote or virtual coverage, and as-needed travel to court. The production shall include documents reflecting formal or informal practices, borough-specific differences, exceptions, deviations, instructions, and changes over time.

11. For each of Plaintiff's assigned court-coverage workdays from November 24, 2025 through January 29, 2026, produce the schedule, Violation of Release Report, intake materials, referral lists, attorney requests, client-meeting records, hearing records, emergency requests, assignments, timestamps, relevant Teams messages, email, call records, and any other documents showing where Plaintiff worked, when a Court Need arose, how and when Plaintiff was notified, when Plaintiff was asked to enter or return to court, and the outcome. LAS may redact client-identifying information or

replace client names with neutral identifiers, provided the production preserves the date, task type, request source, response time, work location, and outcome needed to evaluate operations.

12. For each PRDU Forensic Social Worker assigned to court coverage in the Bronx, Manhattan, Brooklyn, or other borough, from August 1, 2025 through March 6, 2026, produce schedules and records sufficient to show the assigned employee, assigned office or courthouse, where the employee waited between Court Needs, each Court Need identified during the coverage period, the method and time of notice, whether and when the employee entered or returned to court, and any missed or delayed task. The production shall include Violation of Release Reports, intake or referral lists, attorney requests, client-meeting and hearing records, relevant Teams messages, email, and call records to the extent necessary to show those facts. LAS may redact client-identifying information or replace client names with neutral identifiers, provided the production preserves the date, task type, request source, response time, work location, and outcome needed to evaluate operations. Existing nonprivileged schedules, coverage logs, referral records, and communications sufficient to show the requested facts may be produced instead of the underlying client files.

13. Produce all documents showing any Court Need, client service, hearing, attorney request, assessment, emergency, or other task that LAS contends Plaintiff missed or delayed because she worked or proposed to work from the Bronx LAS office while remaining available to enter court when called, at any time from January 1, 2025 to the present.

14. Produce documents sufficient to show each response-time standard, service-level expectation, maximum permissible delay, or other timing requirement for a PRDU Forensic Social Worker to enter or return to the Bronx, Manhattan, Brooklyn, or other borough courthouse after receiving notice of a Court Need from January 1, 2025 to the present. The production shall include each analysis, measurement, map, observation, or record concerning travel time between the Bronx LAS office and the courthouse, each communication method available to contact Plaintiff, any claimed

limitation affecting the ability to contact her while she worked from the Bronx LAS office, and each instance in which contact with Plaintiff or her entry into or return to court was delayed or unsuccessful.

15. Produce all documents concerning cell service, internet access, confidentiality, workspace, access to files or equipment, or other case-work limitations inside the Bronx courthouse that affected PRDU Forensic Social Workers from November 1, 2025 through March 6, 2026.

16. Produce all portions of Plaintiff's personnel, Human Resources, evaluation, supervisory, counseling, disciplinary, commendation, and complaint files from January 1, 2023 through February 2, 2026 concerning her performance, timeliness, responsiveness, attorney collaboration, court coverage, missed assignments, availability, ability to perform PRDU duties, or compliance with court-coverage instructions.

17. Produce all contemporaneous documents concerning whether the Proposal, the arrangement described in the January 29 Email, or the arrangement described in the March 6 Email caused or would have caused an undue hardship, significant difficulty or expense, operational infeasibility, or adverse effect on PRDU, any LAS facility, or LAS as a whole. The production shall include the complete nonprivileged record of each individualized assessment performed from November 24, 2025 through March 6, 2026 and all documents concerning cost, net cost, staffing, supervision, screening, prioritization, client service, safety, confidentiality, technology, communications, implementation feasibility, and the effect on other employees. It shall also include documents concerning any claimed missed or delayed client meeting, attorney request, hearing, assessment, referral, emergency, advocacy task, or other Court Need, any delay in Plaintiff's entry into or return to court, any coverage gap, additional workload, overtime, reassignment, schedule change, staffing change, or supervisory obligation, any reduction in client service, attorney support, early client engagement, interdisciplinary collaboration, referral volume, case outcome, productivity, or service quality, any problem involving communication, internet or cellular service, confidentiality, safety, security, workspace, records, or equipment, and any complaint, incident, missed-referral report,

delayed-service report, performance concern, disciplinary concern, client concern, attorney concern, court concern, or supervisory concern attributed to office-based availability or to the absence of continuous courthouse presence when no Court Need existed.

18. Produce all documents concerning each alternative or interim measure LAS considered, evaluated, proposed, accepted, rejected, modified, deferred, or declined to implement for Plaintiff from November 24, 2025 through March 6, 2026. This Request includes the Proposal, PPE, breaks, office-based availability, courthouse-office availability, supervisory screening, check-ins, reporting, electronic identification of Court Needs, return-by-message procedures, temporary or trial arrangements, and any other modified accommodation. For each alternative or interim measure, produce documents sufficient to identify when and by whom it was proposed, the information considered, the anticipated benefits and difficulties, the decisionmaker, the decision, and the reason it was accepted, rejected, modified, deferred, or not implemented.

19. Produce all nonprivileged Responsive Communications and all electronic or hardcopy notes concerning Plaintiff's Proposal, medical support, asserted essential courthouse-presence requirement, Additional Medical Clarification, interim protection, grievance activity, alternatives considered, the January 20 Email and related instructions, the direction that Plaintiff report in person to court on January 21, 2026, the January 29 Email and related instructions, the March 2 Email, the March 6 Email and related instructions, and any claimed hardship. The production shall include complete email threads, Teams messages and meeting chats, text messages, direct messages, calendar entries, meeting invitations, notes of oral communications, attachments, and communications sent or received through LAS systems, work-issued devices.

20. Produce documents sufficient to identify each person who supplied, drafted, reviewed, approved, authorized, communicated, implemented, or enforced the asserted essential-function description, the January 2 request for Additional Medical Clarification, the January 20 Email and denial of the Proposal, the direction that Plaintiff report in person to court on January 21, 2026, the January

29 Email and arrangement, the March 2 Email, the March 6 Email and arrangement, and the later PRDU protocol. Produce documents showing each person's title, authority, role, reporting relationship, and responsibility, including applicable organization charts, job descriptions, delegations of authority, approval rules, accommodation workflows, and decisionmaking procedures.

21. Produce the complete Decision Files and all documents concerning the conception, development, evaluation, drafting, review, approval, timing, dissemination, implementation, modification, or anticipated evaluation of the PRDU court-coverage procedures described in the January 29 Email, March 2 Email, and March 6 Email. The production shall include all drafts, redlines, comments, attachments, referenced materials, memoranda, meeting materials, notes, analyses, data, reports, complaints, incident records, referral records, staffing information, performance information, and communications considered or relied upon. It shall include the unit-wide intake-coordination and Forensic Social Worker and intake-attorney pairing process, intake-coordination emails to social-work supervision, supervisory identification of intake attorneys, screening and prioritization of potential social-work needs, alerts to the covering social-work team, electronic identification through Teams of actual attorney or client needs before courthouse entry, required supervisor participation in or monitoring of communications, office-based availability until an identified Court Need arose, need-based courthouse entry, and post-coverage reporting. It shall also include documents comparing versions with the proposal described in the Proposal, January 29 Email, March 2 Email, and/or March 6 Email, identifying the reasons for each material addition or change, identifying when each version or component was proposed and approved, explaining the operational or client-service concern each component was intended to address, identifying alternatives considered, and stating the expected benefits, burdens, risks, or costs.

22. Produce the communication by which the protocols described in the March 2 Email, and March 6 Email were shared with the PRDU team including the version Laura Walsh stated in her March 6, 2026 email had been "shared with the rest of the team last week," together with documents sufficient

to identify the date and method of dissemination, the sender, all direct and indirect recipients, the distribution list used, and the employees included within "the rest of the team." Produce all documents concerning whether Plaintiff's accommodation request, medical restrictions, grievance, objections to courthouse presence, or related communications affected the protocol's creation, content, timing, approval, or dissemination.

23. Produce documents sufficient to show LAS's contractual and practical access to Matrix records concerning employee accommodations and leave, including each operative agreement, statement of work, amendment, data-access provision, record-retention provision, portal-access right, audit right, ownership or control provision, and procedure through which LAS may obtain employee accommodation files. This Request is limited to agreements and provisions in effect at any time from March 1, 2023 through the present that bear on LAS's possession, custody, control, access, retrieval, retention, or use of Matrix records.

24. Produce all documents supporting or contradicting any contention that continuous physical presence inside a courtroom or courthouse while no Court Need existed was an essential function of Plaintiff's PRDU Forensic Social Worker position at any time from March 1, 2023 to the present. This Request includes documents concerning the employer's judgment, written job descriptions, actual practice, the amount of time spent performing the asserted function, the consequences of not requiring continuous presence, the experience of past and current PRDU Forensic Social Workers, and any contention that the arrangements described in the January 29 Email or March 6 Email removed, altered, or excused an essential function. Produce documents identifying the particular task, service, or outcome that LAS contends could not be performed while Plaintiff remained available from the Bronx LAS office and entered court when a Court Need arose.

25. Produce all documents supporting or contradicting any contention that Plaintiff could not perform an identified essential task of her PRDU Forensic Social Worker position under the Proposal, including any such contention asserted in connection with the January 20 denial, the January

29 arrangement, or the March 6 arrangement. For each task LAS contends Plaintiff could not perform, produce documents sufficient to identify the task, when and where it had to be performed, why the Proposal allegedly prevented or impaired performance, each person with knowledge, each actual or anticipated missed or delayed Court Need, and all facts and documents supporting or contradicting the contention.

26. To the extent LAS contends that the Proposal imposed or would have imposed a financial or resource-based hardship on LAS or any LAS facility, produce documents sufficient to show the overall financial resources of LAS and the relevant facility, the number of persons employed by LAS and the facility, the relevant staffing and operating budgets, the nature and amount of any anticipated cost, any available offset or outside funding, and the effect of the Proposal upon LAS's or the facility's expenses and resources.

27. Produce all portions of personnel, Human Resources, evaluation, supervisory, counseling, disciplinary, and commendation files, for the period January 1, 2023, through the present, for Connie Park, Laura Walsh, Rebekah Almanzar, Jackie Quigley, and Yonzel Burt.

28. Produce all agreements between LAS and Matrix concerning or relating to accommodation and/or leave requests by LAS employee for the period January 1, 2023 through the present.

29. Produce all electronic communications exchanged between or among the named Defendants from November 24, 2025, through March 6, 2026 concerning Plaintiff's accommodation requests, disabilities, position, job duties, asserted essential functions, or the actual or potential impact of the Proposal on LAS or its operations. Include email, text messages, Microsoft Teams messages, and messages through WhatsApp, Signal, or similar applications.

30. For the period May 1, 2026, through June 30, 2026, produce Plaintiff's complete nonprivileged LAS Decision File and Matrix source records within LAS's possession, custody, or

control concerning her medical leave-extension request, including Accommodation Event A-2026-281283.

Dated: Long Island City, New York
September 8, 2026

**THE DUGGER LAW FIRM, PLLC**

Cyrus Dugger Digitally signed by Cyrus Dugger
Date: 2026.09.09 01:26:38 +03'00'

**By: /s/ Cyrus E. Dugger**

**Cyrus E. Dugger**
**Gotham Center**
**28-07 Jackson Avenue, 5th Floor**
**Long Island City, New York 11101**
**Tel: (646) 560-3208**

***Counsel for Plaintiff Marissa Kubicki and the putative classes***