**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ X

MARISSA KUBICKI, individually, and on behalf of all others similarly situated

Plaintiff,

-v-

THE LEGAL AID SOCIETY, MATRIX ABSENCE MANAGEMENT, INC., CONNIE PARK, in her individual capacity, LAURA WALSH, in her individual capacity, REBEKAH ALMANZAR, in her individual capacity, JACKIE QUIGLEY, in her individual capacity, and YONZEL BURT, in her individual capacity,

Defendants.

------------------------------------------------------------ X

1:26-CV-3882-VSB

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT THE LEGAL AID SOCIETY'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT - ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....1

BACKGROUND ....3

I. Plaintiff's Employment with LAS. ....3

II. Plaintiff's Duties as a PRDU FSW and the Need for Court Presence. ....4

III. LAS Has Worked Diligently and Continuously with Plaintiff Through the Accommodation Process and Ultimately Granted All Plaintiff's Requested Accommodations. ....5

A. November 8, 2024: LAS Grants Plaintiff's Hybrid Work Accommodation. ....5

B. Early 2025: LAS Provides Additional Workplace Accommodations. ....5

C. August 2025: LAS Reiterates Court-Coverage Expectations for PRDU FSWs. ....5

D. Late November–December 2025: LAS Engages in Interactive Process with Plaintiff. ....6

E. January 2026: Continued Work Expectations and Engagement. ....6

F. February 2, 2026: Plaintiff Takes FMLA Leave and, To Date, Remains Employed by LAS. ....7

G. January 29 and March 6, 2026: LAS Proposes and Ultimately Approves an Accommodation Addressing Plaintiff's Requested Limitations. ....7

STANDARD OF REVIEW ....8

LEGAL ARGUMENT ....8

I. Plaintiff's "Prolix" FAC Continues to Violate Rule 8 Despite Having Been Given Notice and an Opportunity to Cure. ....8

II. Plaintiff Fails to State a Claim Under the Rehabilitation Act. ....10

A. Counts III, IV, and V Fail to State Independent Rehabilitation Act Claims. ....10

B. The Court Should Dismiss Count I Because Plaintiff Does Not Plead Facts Establishing that LAS Failed to Accommodate Her Disability. ....12

1. Plaintiff's Allegations Establish that LAS Engaged in an Extensive Interactive Process. .... 12

2. Plaintiff Alleges that LAS Provided Multiple Accommodations and Ultimately Proposed the Core Modification She Requested. .... 13

3. The Rehabilitation Act Did Not Require LAS to Immediately Grant Plaintiff's Preferred Interim Accommodation While Her Request Was Under Evaluation. .... 14

4. Plaintiff's Allegations Concerning Delay Do Not State a Failure to Accommodate Claim. .... 18

C. Plaintiff's Attempt to Recast LAS's Evaluation of Her Accommodation Request as Retaliation Fails and Count II Must Be Dismissed. ....19

D. Plaintiff Does Not Plead a Materially Adverse Action. ....19

E. Plaintiff Does Not Plead Facts Supporting Causation. ....22

II. The Court Should Dismiss Plaintiff's NYCHRL Claims. ....23

A. The Court Should Decline to Exercise Supplemental Jurisdiction Over Counts VI Through XI. ....23

B. Plaintiff's NYCHRL Claims Also Independently Fail Under Rule 12(b)(6). ....25

1. Plaintiff's Failure to Accommodate and Cooperative Dialogue Claims Fail Under the Facts She Pleads. .... 25

2. Plaintiff Does Not Plead Facts Supporting Disability Discrimination or Retaliation. .... 27

3. Plaintiff's Interference Claim Merely Relabels the Same Accommodation-Process Conduct. .... 29

4. The Aiding-and-Abetting Claim Fails Because Plaintiff Pleads No NYCHRL Violation. .... 29

CONCLUSION ....30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................8

*Baker v. Bridge Inc.*,
805 F. Supp. 3d 521 (S.D.N.Y. 2025)....................26

*Belanger v. New York Univ.*,
No. 21 Civ. 01644 (LAP), 2025 WL 963308 (S.D.N.Y. Mar. 31, 2025)....................28

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................8

*Berger v. N.Y.C. Police Dep't*,
304 F. Supp. 3d 360 (S.D.N.Y. 2018)....................11

*Brightman v. Prison Health Serv., Inc.*,
970 N.Y.S.3d 789 (2d App. Div. 2013)....................28

*Brown v. N.Y.C. Dep't of Educ.*,
No. 20-CV-2424 (VEC), 2022 WL 4364600 (S.D.N.Y. Sep. 21, 2022)....................17, 18, 19

*Cadet v. All. Nursing Staffing of N.Y., Inc.*,
632 F. Supp. 3d 202 (S.D.N.Y. 2022)....................29

*Campbell v. Lamar Institute of Technology*,
No. 1:14-cv-399, 2015 WL 12942498 (E.D. Tex. Aug. 13, 2015), *aff'd*, 842 F.3d 375 (5th Cir. 2016)....................18

*Cangro v. N.Y.C. Dep't of Fin.*,
No. 23-CV-10097 (LAP), 2024 WL 3833971 (S.D.N.Y. Aug. 14, 2024), *aff'd in part, vacated and rev'd in part, on other grounds,* 2026 WL 2130187 (2d Cir. July 24, 2026)....................20

*Castro v. Local 1199, National Health & Human Services Emps. Union*,
964 F. Supp. 719 (S.D.N.Y. 1997)....................21

*Charles v. City of New York*,
No. 25-CV-6219 (BMC), 2026 WL 698634 (E.D.N.Y. Mar. 12, 2026)....................22

*DiFolco v. MSNBC Cable L.L.C.*,
622 F.3d 104 (2d Cir. 2010)....................7

*Dortz v. City of New York*,
904 F. Supp. 127 (S.D.N.Y. 1995) ....................19

*Erasmus v. Deutsche Bank Ams. Holding Corp.*,
No. 15 Civ. 1398 (PAE), 2015 WL 7736554 (S.D.N.Y. Nov. 30, 2015)....................29, 30

*Ferrara v. Metropolitan Transportation Authority*,
No. 24-CV-9161 (JPO), 2026 WL 351084 (S.D.N.Y. Feb. 9, 2026) ....................10, 11

*Frilando v. N.Y.C. Transit Auth.*,
513 F. Supp. 3d 356 (S.D.N.Y. 2021), *aff'd*, No. 21-169-CV, 2022 WL 3569551 (2d Cir. Aug. 19, 2022)....................13

*Fulton v. Goord*,
591 F.3d 37 (2d Cir. 2009)....................10

*Gaughan v. Rubenstein*,
261 F. Supp. 3d 390 (S.D.N.Y. 2017)....................26

*Gonzalez v. City of New York*,
377 F. Supp. 3d 273 (S.D.N.Y. 2019)....................27

*Gorokhovsky v. N.Y.C. Hous. Auth.*,
552 F. App'x 100 (2d Cir. 2014) ....................24

*Hesse v. Godiva Chocolatier, Inc.*,
463 F. Supp. 3d 453 (S.D.N.Y. 2020)....................3

*Kelly v. N.Y. State Off. of Mental Health*,
200 F. Supp. 3d 378 (E.D.N.Y. 2016) ....................19

*Kolari v. New York-Presbyterian Hosp.*,
455 F.3d 118 (2d Cir. 2006)....................24

*Kumaran v. Nat'l Futures Ass'n*,
No. 1:20-cv-03668-GHW, 2024 WL 34448107 (S.D.N.Y. July 9, 2024)....................9

*Lee v. Saul*,
No. 19 Civ. 6553 (PGG) (SN), 2020 WL 5836513 (S.D.N.Y. Sep. 30, 2020)....................12

*Logan v. Matveevskii*,
175 F. Supp. 3d 209 (S.D.N.Y. 2016)....................10, 12

*Logan v. Matveevskii*,
57 F. Supp. 3d 234 (S.D.N.Y. 2014)....................17, 19

*Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*,
263 F.3d 208 (2d Cir. 2001)....................13

*Lucenti v. Potter*,
432 F. Supp. 2d 347 (S.D.N.Y. 2006)....................17

*McBride v. BIC Consumer Prods. Mfg. Co.*,
583 F.3d 92 (2d Cir. 2009)....................13

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
715 F.3d 102 (2d Cir. 2013)....................27

*Miloscia v. B.R. Guest Holdings LLC*,
928 N.Y.S.2d 905 (Sup. Ct. 2011)....................26

*Missick v. City of New York*,
707 F. Supp. 2d 336 (E.D.N.Y. 2010)....................24, 28

*Noll v. IBM*,
787 F.3d 89 (2d Cir. 2015)....................13, 14, 16, 17

*Perez v. N.Y. Presbyterian/Weill Cornell Med. Ctr.*,
No. 23-CV-6152 (CS), 2024 WL 1514216 (S.D.N.Y. Apr. 8, 2024)....................20

*Peten v. Stericycle, Inc.*,
No. 15-CV-872 (JFB) (ARL), 2017 WL 8813133 (E.D.N.Y. Dec. 21, 2017),
*R. & R. adopted*, 2018 WL 679886 (E.D.N.Y. Feb. 1, 2018)....................15

*Peterson v. N.Y.C. Dep't of Educ.*,
No. 18-CV-1515 (ILG), 2020 WL 2559385 (E.D.N.Y. May 20, 2020)....................21

*Puranik v. Child.'s Place Servs. Co., LLC*,
No. 24-CV-4441 (AT) (VF), 2025 WL 2522442 (S.D.N.Y. Aug. 1, 2025), *R. & R. adopted*, 2025 WL 2521122 (S.D.N.Y. Sep. 2, 2025)....................14, 26

*Raj & Raj Realty Ltd. v. Difficile Realty Corp. (In re Sun Property Consultants, Inc.)*,
629 B.R. 682 (Bankr. E.D.N.Y. 2021)....................7

*Riddle v. Citigroup*,
640 F. App'x 77 (2d Cir. 2016)....................23

*Robles v. Medisys Health Network, Inc.*,
No. 19-CV-6651, 2020 WL 3403191 (E.D.N.Y. June 19, 2020)....................20, 29

*Rubin v. N.Y.C. Bd. of Educ.*,
No. 20 Civ. 10208 (LGS), 2023 WL 2344731 (S.D.N.Y. Mar. 3, 2023)....................9

*Russell v. New York Univ.*,
42 N.Y.3d 377 (2024)....................30

*Sharikov v. Philips Med. Sys. MR, Inc.*,
659 F. Supp. 3d 264 (N.D.N.Y. 2023), *aff'd*, 103 F.4th 159 (2d Cir. 2024) ....................11

*Simmons v. Abruzzo*,
49 F.3d 83 (2d Cir. 1995)....................9

*Slater v. N.Y.U. Langone Health Sys.*,
No. 24-CV-3711 (OEM) (SIL), 2025 WL 2208292 (E.D.N.Y. Aug. 4, 2025) ....................14, 26

*Sletten v. LiquidHub, Inc.*,
No. 13 Civ. 1146(NRB), 2014 WL 3388866 (S.D.N.Y. July 11, 2014)....................27

*Sosa v. N.Y.C. Dep't of Educ.*,
819 F. App'x 30 (2d Cir. 2020) ....................21

*Sosa v. N.Y. Dep't of Educ.*,
368 F. Supp. 3d 489 (E.D.N.Y. 2019) ....................23

*Sussle v. Sirina Prot. Sys. Corp.*,
269 F. Supp. 2d 285 (S.D.N.Y. 2003)....................24

*Trobia v. Henderson*,
315 F. Supp. 2d 322 (W.D.N.Y. 2004) ....................17

*Tsombanidis v. West Haven Fire Dep't*,
352 F.3d 565 (2d Cir. 2003)....................10

*Vora v. N.Y.C. Dep't of Educ.*,
No. 22 Civ. 10891 (PGG) (SDA), 2024 WL 116312 (S.D.N.Y. Mar. 14, 2024) ....................20

*Washburn v. Kingsborough Cmty. Coll.*,
No. 20-cv-00395 (DLI) (RLM), 2022 WL 843733 (E.D.N.Y. Mar. 22, 2022)....................9

*Wenc v. New London Bd. of Educ.*,
702 F. App'x 27 (2d Cir. 2017) ....................14, 16

**Statutes**

28 U.S.C. § 1367(c)(3)....................3, 23, 30

29 U.S.C. § 794(d) ....................15

42 U.S.C. § 12112(b)(5)(A) ....................15

**Other Authorities**

29 C.F.R. § 1630.2(o)(3)....................16

Fed. R. Civ. P. 8 ....................1, 30

Fed. R. Civ. P. 8 ....................................................................................................1, 3, 8, 9

Fed. R. Civ. P. 8(a)(2) ....................................................................................................8

Fed. R. Civ. P. 8(d)(1) ....................................................................................................8

Fed. R. Civ. P. 12(b)(6) .................................................................................................. *passim*

LEGAL AID SOCIETY, ANNUAL REPORT 2024 10–11 (Jan. 28, 2024),
https://legalaidnyc.org/annual-report-2024/ ......................................................................3

N.Y.C. Admin Code § 8-107(28)(a) ..................................................................................26

Rule 23 ....................................................................................................9, 25

Defendant the Legal Aid Society (the "LAS") submits this memorandum of law in support of its motion to dismiss Plaintiff Marissa Kubicki's ("Plaintiff") Amended Complaint ("FAC") (ECF Doc. 41) pursuant to Rules 8, 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure.

**PRELIMINARY STATEMENT**

The Court should dismiss Plaintiff's FAC. After Defendants LAS, Connie Park, Laura Walsh, Rebekah Almanzar, Jackie Quigley, and Yonzel Burt (the "Original Defendants") challenged Plaintiff's original Complaint as improperly prolix and legally deficient (*see* ECF Doc. 39), Plaintiff filed another sprawling pleading spanning 119 pages and 438 paragraphs. Rather than curing the defects identified in the original motion to dismiss, Plaintiff doubled down. The FAC remains laden with repetitive factual allegations, legal argument, class-certification theories, purported examples involving nonparties, and extensive commentary concerning matters that have little bearing on the viability of Plaintiff's claims. It therefore continues to violate Rule 8's requirement that a complaint contain a short and plain statement of the claims and should be dismissed on that basis alone.

The FAC's extraordinary length does not conceal its substantive deficiencies. The core of this motion addresses Counts I through V, the only federal claims in the FAC, each of which Plaintiff asserts solely against LAS under the Rehabilitation Act. Three of those claims, for interference (Count III), medical inquiries (Count IV), and qualification standards (Count V), are not cognizable as independent causes of action under the Rehabilitation Act as a matter of law and must therefore be dismissed.

Plaintiff's failure to accommodate claim (Count I) fails under the facts she pleads. Plaintiff acknowledges that LAS granted her a hybrid-work arrangement and multiple workplace modifications before the events at issue. She further alleges that LAS engaged in an interactive accommodation process over several months. Most significantly, LAS ultimately proposed an

accommodation allowing Plaintiff to remain available from the LAS office and report to court when attorney or client needs required her presence. Plaintiff repeatedly describes that proposal as "substantially similar" to the accommodation she requested. That admission is dispositive because the Rehabilitation Act required LAS to provide a reasonable and effective accommodation, not the precise accommodation Plaintiff preferred. LAS did so.

Plaintiff's new emphasis on LAS's alleged failure to implement her preferred "interim" accommodation does not save Count I. The same rule applies to Plaintiff's proposed interim arrangement: the Rehabilitation Act requires a reasonable and effective accommodation, not immediate implementation of Plaintiff's preferred accommodation while LAS evaluated her request. Plaintiff cannot convert the period during which LAS evaluated her request into a "completed" statutory violation merely because LAS did not immediately adopt her preferred arrangement. Nor can she state a claim based solely on her disagreement with the pace or outcome of an accommodation process that ultimately produced an arrangement addressing her identified limitation.

Plaintiff's retaliation claim (Count II) fares no better. Plaintiff alleges no termination, demotion, suspension, or other material change in the terms or conditions of her employment. To the contrary, she remains employed by LAS and alleges that she intends to return to work when medically able. The conduct she characterizes as retaliatory consists principally of LAS's evaluation of her accommodation request, requests for supporting medical information, continued enforcement of disputed court-coverage expectations, and alleged denial of her preferred interim accommodation. Those allegations may reflect Plaintiff's disagreement with LAS's handling of the accommodation process, but they do not plead facts supporting either an adverse action or retaliatory causation.

Accordingly, the Court should dismiss the FAC under Rule 8 and, independently, dismiss all five Rehabilitation Act claims asserted against LAS under Rule 12(b)(6). Once Counts I through V are dismissed, no federal claim will remain. The Court should then decline to exercise supplemental jurisdiction over Plaintiff's remaining New York City Human Rights Law ("NYCHRL") claims and dismiss Counts VI through XI without prejudice pursuant to 28 U.S.C. § 1367(c)(3).[1] However, if the Court exercises supplemental jurisdiction over Plaintiff's NYCHRL claims, the Court should dismiss those Counts (VI through XI) for failure to state claim under Rule 12(b)(6) for the reasons set forth below.

## BACKGROUND

### I. Plaintiff's Employment with LAS.

LAS is the largest social justice firm in New York City. LAS's mission includes providing criminal defense to low-income New Yorkers, advocating for civil rights and legal reform, and fighting for equity. *See* LEGAL AID SOCIETY, ANNUAL REPORT 2024 10–11 (Jan. 28, 2024), https://legalaidnyc.org/annual-report-2024/.[2] Since 2019, LAS employed Plaintiff as a forensic social worker ("FSW"). FAC, ¶ 36. On March 1, 2023, LAS transferred Plaintiff into the Parole Revocation Defense Unit ("PRDU"). *Id.* ¶¶ 36, 101. In her role as a FSW in the PRDU, LAS requires Plaintiff to provide social work support to indigent clients and to assist LAS attorneys in connection with active court proceedings, including by providing in-court coverage. *Id.* ¶¶ 37, 102–104.

[1] Plaintiff asserts Counts I through V, the only federal claims in the FAC, solely against LAS, and this motion focuses primarily on these federal claims. Matrix and the Individual Defendants join this motion and separately and contemporaneously move to dismiss the claims asserted against them for additional reasons.

[2] For purposes of a Rule 12(b)(6) motion to dismiss, a court may take judicial notice of information on a party's website or another publicly available website. *See Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 463 (S.D.N.Y. 2020).

Plaintiff alleges that she consistently performed her duties successfully and has received positive performance evaluations throughout her tenure. FAC, ¶¶ 38, 42, 46, 105. LAS retained Plaintiff in her role, provided ongoing supervision, and supported her continued employment through multiple workplace adjustments and accommodations when requested. *Id.* ¶¶ 42, 46, 127. Plaintiff remains employed by LAS. *Id.* ¶¶ 30, 295.

## II. Plaintiff's Duties as a PRDU FSW and the Need for Court Presence.

PRDU FSWs play an integral role in supporting attorneys and clients in active court proceedings. Their responsibilities include client assessments, crisis intervention, attorney consultation, and real-time support during hearings and court appearances. FAC, ¶¶ 37, 102–104. Plaintiff acknowledges that court-related work is a component of the PRDU FSW position and that PRDU social workers attend court proceedings, meet with clients, assist attorneys, conduct assessments, and respond to other court-related needs. *Id.* ¶¶ 17, 37, 44, 102–104. Plaintiff also recognizes that court proceedings are dynamic environments requiring immediate crisis intervention and in-person and real-time consultations with and responsiveness to clients, attorneys, and court personnel. *Id.* ¶¶ 37, 102–104. Plaintiff further alleges that, beginning in August 2025, LAS communicated expectations regarding courthouse presence during designated court-coverage shifts. *Id.* ¶¶ 16, 110–113.

Although Plaintiff disputes LAS's characterization of those expectations and contends that continuous courthouse presence was not an essential function of her position, Plaintiff does not dispute that PRDU FSWs provide court-related support and attend court when client, attorney, hearing, assessment, or emergency needs require their presence. FAC, ¶¶ 17–18, 37, 42, 44, 226, 228. Plaintiff alleges that she remained willing to attend court when needed for client-specific or attorney-specific purposes. *Id.* ¶¶ 44, 140, 226, 228.

## III. LAS Has Worked Diligently and Continuously with Plaintiff Through the Accommodation Process and Ultimately Granted All Plaintiff's Requested Accommodations.

### A. November 8, 2024: LAS Grants Plaintiff's Hybrid Work Accommodation.

Plaintiff returned from short-term disability leave on or about November 8, 2024. FAC, ¶¶ 127, 149. At that time, LAS granted Plaintiff an accommodation permitting her to work remotely three days per week and in-person two days per week, which were Plaintiff's court coverage days. *Id.* LAS made this accommodation permanent in or about May 2025. *Id.* Plaintiff alleges that she successfully performed the essential functions of her position with this accommodation in place. *Id.* ¶¶ 42, 46, 258, 344.

### B. Early 2025: LAS Provides Additional Workplace Accommodations.

In early 2025, LAS provided Plaintiff with additional workplace accommodations, including screen protectors, an air purifier, and an ergonomic chair with lumbar support. FAC, ¶ 127.

### C. August 2025: LAS Reiterates Court-Coverage Expectations for PRDU FSWs.

Beginning in August 2025, LAS management communicated expectations regarding courthouse presence during designated court-coverage shifts. FAC, ¶¶ 16, 110–113. Plaintiff alleges that supervisors informed her and another PRDU social worker that they were expected to spend approximately one hour in court during designated coverage shifts, even when no specific client need was identified. *Id.* Plaintiff and union representatives disputed those expectations and questioned whether they were consistent with prior practices. *Id.* ¶¶ 114–120. LAS nevertheless maintained expectations concerning courthouse coverage and attorney availability during designated coverage periods. *Id.* ¶¶ 113, 116, 156.

**D. Late November–December 2025: LAS Engages in Interactive Process with Plaintiff.**

On November 24, 2025, Plaintiff submitted updated medical documentation and sought a modification to her existing accommodation. FAC, ¶¶ 17, 130. Specifically, Plaintiff requested permission to work from LAS's office during court-coverage shifts and attend court only when needed for a client, attorney, hearing, assessment, emergency, or other identified court-related matter. *Id.* ¶¶ 17, 130, 134. LAS evaluated Plaintiff's request through Human Resources personnel and Matrix. *Id.* ¶¶ 51–53, 140, 147–149, 181. During the ensuing accommodation process, LAS communicated with Plaintiff, Plaintiff's union representatives, and Plaintiff's medical providers concerning Plaintiff's limitations, court-coverage obligations, and proposed accommodations. *Id.* ¶¶ 140, 147–149, 158–165, 170, 175, 181–185, 200.

While LAS evaluated the request, Plaintiff continued working under her preexisting accommodations, including her hybrid work arrangement and workplace modifications. FAC, ¶¶ 127, 157, 165. Plaintiff alleges she became ill in December 2025 while the accommodation request remained under review. *Id.* ¶¶ 19, 167.

**E. January 2026: Continued Work Expectations and Engagement.**

On January 2, 2026, Defendant Matrix Absence Management, Inc. ("Matrix") advised Plaintiff that additional information from her medical provider was required to evaluate her request. FAC, ¶¶ 181–186. Plaintiff alleges that LAS denied her requested interim accommodation on January 20, 2026, reiterated its position that in-person court coverage was an essential function of the PRDU FSW role, and encouraged Plaintiff to continue with the interactive process. *Id.* ¶¶

193–196; *See* Declaration of Grace Jacobson, **Exhibit A.**[3] Plaintiff further alleges that LAS instructed her to continue complying with court-coverage expectations while the interactive accommodation process continued. *Id.* ¶¶ 195–196, 201, 204.

Plaintiff, LAS, and union representatives continued communicating regarding Plaintiff's accommodation request throughout January 2026. FAC, ¶¶ 185–190.

### F. February 2, 2026: Plaintiff Takes FMLA Leave and, To Date, Remains Employed by LAS.

Plaintiff began provider-directed leave effective February 2, 2026. FAC, ¶¶ 215, 221. Plaintiff remains employed by LAS and alleges that she presently intends to return to work when medically able. *Id.* ¶¶ 30, 295.

### G. January 29 and March 6, 2026: LAS Proposes and Ultimately Approves an Accommodation Addressing Plaintiff's Requested Limitations.

On January 29, 2026, LAS proposed an accommodation that would permit Plaintiff to remain available from either the courthouse office or LAS's nearby office while responding to attorney and client needs during court-coverage shifts and return to the courthouse when contacted through text, Teams, or email. FAC, ¶ 216. Plaintiff contends that the January 29 proposal differed from the accommodation she requested because it required her initially to report to the courthouse before determining whether an actual court-related need existed. *Id.* ¶¶ 217, 229–230.

On March 6, 2026, while Plaintiff remained on leave, LAS communicated an updated court-coverage protocol permitting Plaintiff to communicate with intake attorneys electronically, remain available from the LAS office, and report to court when attorney or client needs required her presence. FAC, ¶¶ 218, 224–225, 232. Plaintiff alleges that the March 6 proposal was

[3] Plaintiff explicitly quotes, and thus incorporates by reference, this email in her FAC (*see, e.g.,* ¶¶ 193–196), and the Court may consider it in its 12(b)(6) analysis. *See e.g., DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010); *see also, Raj & Raj Realty Ltd. v. Difficile Realty Corp. (In re Sun Property Consultants, Inc.)*, 629 B.R. 682, 702 (Bankr. E.D.N.Y. 2021).

substantially similar to the accommodation she requested in November 2025 and included "Teams outreach, continued availability, prioritization of identified needs, and entry into court when needed." *Id.* ¶¶ 25, 43, 224–236.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, Plaintiff's FAC "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## LEGAL ARGUMENT

### I. Plaintiff's "Prolix" FAC Continues to Violate Rule 8 Despite Having Been Given Notice and an Opportunity to Cure.

The Court should dismiss the FAC under Rule 8, which requires "a short and plain statement" of the claims and allegations that are "simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). The amended pleading is even more prolix than the original.

Plaintiff's original Complaint spanned 139 pages and more than 600 paragraphs. In response, the Original Defendants moved to dismiss on Rule 8 grounds, arguing that the pleading was excessively lengthy, repetitive, and burdened by unnecessary factual detail and argument (*see* ECF Doc. 39, pp. 8–9). Plaintiff thus had notice of the deficiency and an opportunity to cure it. Instead, she filed another sprawling pleading totaling 119 pages and 438 paragraphs. The FAC continues to include lengthy narrative discussions, extensive class-certification allegations, numerous pages of alleged anecdotes involving non-parties, argumentative commentary, legal conclusions, and detailed factual allegations that far exceed what is necessary to provide notice of Plaintiff's claims.

Courts routinely hold that such "prolix" pleadings impose on both the court and defendants an "unjustified burden" to sift through a "mass of verbiage" to identify the claims being asserted and the factual allegations supporting them. *See Kumaran v. Nat'l Futures Ass'n*, No. 1:20-cv-03668-GHW, 2024 WL 34448107, at *2 (S.D.N.Y. July 9, 2024) (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)). The problem is particularly acute here because the FAC repeatedly intermixes factual allegations, legal argument, Rule 23 certification theories, alleged experiences of other employees, commentary regarding Defendants' motives, and extended discussions of purported policies and practices. FAC, ¶¶ 10, 31, 198–203, 299, 318–339.

Moreover, Plaintiff's failure to cure the defect after receiving notice through Defendants' original motion further supports dismissal. Unlike a plaintiff who files an overly lengthy complaint in the first instance, Plaintiff amended after Defendants specifically identified the pleading's failure to provide a short and plain statement of the claims. Yet the FAC remains nearly 120 pages long and continues to rely on largely the same pleading approach. Courts have found such circumstances especially troubling because the plaintiff has already been afforded an opportunity to cure the defect and nevertheless elects to proceed through prolix and unnecessarily burdensome pleading. *See, e.g., Washburn v. Kingsborough Cmty. Coll.*, No. 20-cv-00395 (DLI) (RLM), 2022 WL 843733, at *3 (E.D.N.Y. Mar. 22, 2022) (dismissing 62-page, 504-paragraph amended complaint and noting that prolixity in an amended pleading is particularly problematic where the plaintiff had already been given notice of the deficiency); *see also Rubin v. N.Y.C. Bd. of Educ.*, No. 20 Civ. 10208 (LGS), 2023 WL 2344731, at *3 (S.D.N.Y. Mar. 3, 2023) (dismissing 168-page complaint).

Because Plaintiff's FAC again fails to provide the "short and plain statement" required by Rule 8, the Court should dismiss the FAC in its entirety and with prejudice.

## II. Plaintiff Fails to State a Claim Under the Rehabilitation Act.

Plaintiff's Rehabilitation Act claims fail at the threshold. Three of the five Rehabilitation Act causes of action asserted in the FAC (Counts III, IV, and V) do not constitute independent claims under the Rehabilitation Act at all. The remaining claims for retaliation (Count II) and failure to accommodate (Count I) fail because Plaintiff's own allegations establish that LAS engaged in an extensive accommodation process, provided multiple accommodations throughout Plaintiff's employment, and ultimately proposed an accommodation that Plaintiff alleges was substantially similar to the one she requested and accommodated her identified limitations. Accordingly, the Court should dismiss Counts I through V of the FAC in their entirety and with prejudice.

### A. Counts III, IV, and V Fail to State Independent Rehabilitation Act Claims.

Counts III, IV, and V do not identify independent forms of liability under the Rehabilitation Act. Count III alleges interference, coercion, intimidation, and threats; Count IV challenges LAS's requests for medical information; and Count V challenges LAS's court-coverage and courthouse-presence requirements. FAC, ¶¶ 361–378. But Rehabilitation Act claims proceed under recognized disability-discrimination theories, including disparate treatment, disparate impact, and failure to provide a reasonable accommodation. *Logan v. Matveevskii*, 175 F. Supp. 3d 209, 225 (S.D.N.Y. 2016); *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (quoting *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003)). Counts III, IV, and V do not allege independent Rehabilitation Act violations separate from Plaintiff's accommodation and retaliation theories. Instead, they merely repackage the same underlying conduct under different labels.

Count III independently fails because courts have rejected standalone claims for interference, coercion, intimidation, or threats under the Rehabilitation Act. In *Ferrara v. Metropolitan Transportation Authority*, the court observed that "it is unclear as a legal matter

whether the Rehabilitation Act can in fact give rise to an interference claim" and therefore did not allow plaintiff to pursue such a claim under the Rehabilitation Act. No. 24-CV-9161 (JPO), 2026 WL 351084, at *5 n.4 (S.D.N.Y. Feb. 9, 2026). Plaintiff similarly cannot circumvent the established framework governing Rehabilitation Act claims by recharacterizing her accommodation and retaliation allegations as a separate claim for interference.

The same is true of Counts IV and V. Count IV challenges LAS's requests for additional medical documentation during the accommodation process and characterizes those requests as unlawful "medical inquir[ies]." FAC, ¶¶ 365–369. Count V challenges LAS's position that courthouse attendance and court coverage formed part of Plaintiff's job and characterizes the resulting court-presence requirement as an unlawful qualification standard. *Id.* ¶¶ 370–378. Neither Count states a viable claim under the facts Plaintiff alleges.

Count IV independently fails because Plaintiff's allegations establish that LAS requested additional information to evaluate the limitations underlying her accommodation request and identify an appropriate workplace modification. Such inquiries are job-related and consistent with business necessity. *Sharikov v. Philips Med. Sys. MR, Inc.*, 659 F. Supp. 3d 264, 288–91 (N.D.N.Y. 2023), *aff'd*, 103 F.4th 159 (2d Cir. 2024) (dismissing a medical-inquiry claim where the challenged inquiries were job-related and consistent with business necessity); *Berger v. N.Y.C. Police Dep't*, 304 F. Supp. 3d 360, 372–73 (S.D.N.Y. 2018) (medical examination was job-related and consistent with business necessity where it sought to determine the extent and type of accommodations needed). Count V likewise fails because Plaintiff does not plead facts indicating that LAS employed a qualification standard that screened out individuals with disabilities; they allege only a dispute over whether courthouse coverage was an essential function of Plaintiff's position. More fundamentally, Plaintiff cannot avoid dismissal merely by relabeling aspects of the

accommodation process as standalone "medical inquir[ies]" or "qualification standards" claims. Courts in this District recognize disparate treatment, disparate impact, and failure-to-accommodate as the principal theories of disability discrimination under the Rehabilitation Act. *See Logan*, 175 F. Supp. 3d at 225. Counts IV and V identify no actionable discrimination apart from the accommodation process challenged elsewhere in the FAC.

Counts III, IV, and V therefore fail as a matter of law. The remaining failure-to-accommodate and retaliation claims independently fail for the reasons below.

### B. The Court Should Dismiss Count I Because Plaintiff Does Not Plead Facts Establishing that LAS Failed to Accommodate Her Disability.

To state a failure to accommodate claim under the Rehabilitation Act, Plaintiff must plead that: (1) she is disabled within the meaning of the statute; (2) LAS had notice of her disability; (3) she could perform the essential functions of her position with a reasonable accommodation; and (4) LAS refused to make such an accommodation. *Lee v. Saul*, No. 19 Civ. 6553 (PGG) (SN), 2020 WL 5836513, at *4–5 (S.D.N.Y. Sep. 30, 2020). Even accepting Plaintiff's allegations as true, she does not plead that LAS declined to extend her a reasonable accommodation. Instead, Plaintiff alleges the opposite: that LAS engaged in an extensive accommodation process, had already provided her multiple accommodations, and ultimately proposed an accommodation that Plaintiff herself characterizes as "substantially similar" to the accommodation she requested. FAC, ¶¶ 43, 127, 149, 224–236. As such, Count I fails and should be dismissed.

#### 1. Plaintiff's Allegations Establish that LAS Engaged in an Extensive Interactive Process.

Plaintiff describes months of communications among Plaintiff, Human Resources personnel, supervisors, union representatives, Plaintiff's healthcare providers, and LAS's accommodation administrator concerning Plaintiff's request. FAC, ¶¶ 140, 147–150, 158–165, 170, 175, 181–200. Plaintiff thus alleges precisely the type of iterative process contemplated by

the Rehabilitation Act. *See Frilando v. N.Y.C. Transit Auth.*, 513 F. Supp. 3d 356, 365 (S.D.N.Y. 2021), *aff'd*, No. 21-169-CV, 2022 WL 3569551 (2d Cir. Aug. 19, 2022) (interactive process may include meeting with employee, requesting medical information, discussing limitations, and evaluating alternatives) (quoting *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 218–19 (2d Cir. 2001)).

In addition, a failure to engage in the interactive process does not itself create liability where the employer provided a reasonable accommodation. As the Second Circuit has explained, "failure to engage in an interactive process does not form the basis of an ADA claim in the absence of evidence that accommodation was possible" because the disability statutes impose liability for a discriminatory refusal to provide a feasible accommodation, not for alleged imperfections in the process itself. *Noll v. IBM*, 787 F.3d 89, 97–98 (2d Cir. 2015) (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 100–01 (2d Cir. 2009)). Thus, even if Plaintiff believed LAS's process was unnecessarily lengthy or requested more information than was needed, those allegations would not establish a separate Rehabilitation Act violation where LAS ultimately proposed accommodations addressing the limitation Plaintiff identified.

Indeed, Plaintiff's own theory is not that LAS ignored her request. Rather, Plaintiff alleges that LAS considered the request improperly, took too long, requested too much information, and did not immediately agree with Plaintiff's preferred accommodation. FAC, ¶¶ 198–203, 291–292, 348. Those allegations do not plausibly establish a refusal to engage in the accommodation process.

### 2. Plaintiff Alleges that LAS Provided Multiple Accommodations and Ultimately Proposed the Core Modification She Requested.

Before the events at issue, LAS granted Plaintiff a hybrid-work accommodation, later made it permanent, and provided ergonomic equipment and an air purifier. FAC, ¶¶ 127, 149.

More importantly, Plaintiff alleges that on March 6, 2026, LAS proposed an arrangement allowing her to remain available from the LAS office, communicate electronically with attorneys, and report to court when attorney or client needs required her presence. *Id.* ¶¶ 224–236. Plaintiff repeatedly alleges that the March 6 proposal was "substantially similar" to the accommodation she requested on November 24, 2025. *Id.* ¶¶ 25, 43, 46, 224.

Taken as true, these allegations are fatal to Plaintiff's failure-to-accommodate claim. The Rehabilitation Act does not require LAS to provide Plaintiff's preferred accommodation, nor does it require LAS to adopt the precise accommodation Plaintiff proposed. Rather, LAS was required only to provide an accommodation that was reasonable and effective. *See Noll*, 787 F.3d at 95 (employer need not provide "the very accommodation most strongly preferred by the employee" so long as the accommodation is effective); *Wenc v. New London Bd. of Educ.*, 702 F. App'x 27, 31 (2d Cir. 2017) (employer may choose among reasonable accommodations and need not adopt the employee's preferred proposal); *Puranik v. Child.'s Place Servs. Co., LLC*, No. 24-CV-4441 (AT) (VF), 2025 WL 2522442, at *8 (S.D.N.Y. Aug. 1, 2025), *R. & R. adopted*, 2025 WL 2521122 (S.D.N.Y. Sep. 2, 2025) ("Plaintiff has thus alleged that Defendant provided the very accommodation she requested. This is fatal to Plaintiff's claim."); *Slater v. N.Y.U. Langone Health Sys.*, No. 24-CV-3711 (OEM) (SIL), 2025 WL 2208292, at *8–9 (E.D.N.Y. Aug. 4, 2025). Plaintiff repeatedly alleges that LAS ultimately proposed accommodations that were "substantially similar" to the arrangement she requested and addressed the same limitation she identified. FAC, ¶¶ 25, 43, 224–236. Those allegations, taken as true, do not plausibly establish that LAS refused to provide a reasonable accommodation.

**3. The Rehabilitation Act Did Not Require LAS to Immediately Grant Plaintiff's Preferred Interim Accommodation While Her Request Was Under Evaluation.**

The central premise of Plaintiff's amended failure-to-accommodate claim is that LAS violated the Rehabilitation Act by failing to provide her preferred "interim" accommodation while her November 2025 request remained under review. In other words, Plaintiff attempts to reframe the case around an alleged "completed" accommodation violation occurring between November 24, 2025, and January 20, 2026. FAC, ¶¶ 197, 288, 348. According to Plaintiff, the January 20 denial, the absence of interim relief, and the subsequent January 29 and March 6 proposals allegedly cannot cure the harm she claims already occurred. *Id.* ¶¶ 227–236, 288, 348. Plaintiff attempts to characterize the January 20 determination as a final refusal to accommodate. But Plaintiff herself alleges that communications continued after January 20, that LAS proposed an accommodation on January 29, and that LAS further modified that proposal on March 6. *Id.* ¶¶ 216–236.[4] Those allegations do not plausibly reflect a refusal to accommodate. They instead describe an accommodation process culminating in a proposal that Plaintiff alleges was substantially similar to the arrangement she originally sought.

Plaintiff's theory finds no support in the governing statutory or regulatory text. In employment-discrimination cases under the Rehabilitation Act, Section 504 expressly incorporates the standards applied under Title I of the ADA. 29 U.S.C. § 794(d). Title I, in turn, prohibits an employer's failure to make "reasonable accommodations" to the known limitations of a qualified employee, absent undue hardship. 42 U.S.C. § 12112(b)(5)(A). Neither provision requires immediate implementation of the accommodation requested by the employee or creates a separate right to a temporary accommodation while the request is being evaluated. Instead, the regulations

---

[4] Plaintiff's allegations also demonstrate that Plaintiff resisted aspects of the process, including providing additional medical documentation, which further undermines her claims. Courts have held that an employee's failure to cooperate in the interactive process defeats liability. *See Peten v. Stericycle, Inc.*, No. 15-CV-872 (JFB) (ARL), 2017 WL 8813133, at *9 (E.D.N.Y. Dec. 21, 2017), *R. & R. adopted*, 2018 WL 679886 (E.D.N.Y. Feb. 1, 2018).

recognize that, "[t]o determine the appropriate reasonable accommodation," it "may be necessary" for the employer to initiate "an informal, interactive process" to identify the employee's limitations and potential accommodations. 29 C.F.R. § 1630.2(o)(3). That framework necessarily contemplates an opportunity to obtain information, assess the request, and identify an appropriate accommodation; it does not require an employer to adopt the employee's preferred arrangement before that process can occur. *See Noll*, 787 F.3d at 95.

Plaintiff's contrary rule would collapse the distinction between requesting an accommodation and refusing to provide one. Every employee could unilaterally impose an immediate temporary workplace arrangement merely by requesting it, before the employer could determine whether the proposal was reasonable, effective, supported by the employee's limitations, or consistent with the position's essential functions. That result cannot be reconciled with the employer's recognized discretion to choose among effective accommodations or with the individualized assessment contemplated by the statute and regulations. *See Noll*, 787 F.3d at 95; *Wenc*, 702 F. App'x at 31. The Rehabilitation Act requires a reasonable and effective accommodation, not immediate acquiescence to the employee's proposal before the employer completes that assessment.

Plaintiff's allegations establish that, during the period she characterizes as "unprotected," LAS was actively evaluating her request. Plaintiff alleges that LAS continued evaluating her request with her, her representatives, and her provider. FAC, ¶¶ 140–200. Those allegations describe an ongoing accommodation review process, not a refusal to engage in one.

Plaintiff cannot properly allege that the Rehabilitation Act required LAS to adopt her proposed interim arrangement immediately upon request. To the contrary, Plaintiff acknowledges that the parties were actively disputing courthouse-coverage expectations, the scope of her

requested accommodation, and what restrictions her medical documentation supported. FAC, ¶¶ 154–156, 175–189, 198–203. The Rehabilitation Act does not require an employer to resolve those disputes by automatically accepting the employee's preferred accommodation before completing the very evaluation process contemplated by the statute. *See, e.g., Noll*, 787 F.3d at 95; *Trobia v. Henderson*, 315 F. Supp. 2d 322, 333 (W.D.N.Y. 2004) (noting that the Rehabilitation Act "does not require the employer to provide every accommodation the disabled employee may request, so long as the accommodation provided is reasonable" and "'that [the employer] could have provided a different set of reasonable accommodations or more accommodations does not establish that the accommodations provided were unreasonable or that … additional accommodations were necessary'"); *Lucenti v. Potter*, 432 F. Supp. 2d 347, 365 (S.D.N.Y. 2006) (the Rehabilitation Act "does not require an employer either to make 'fundamental' or 'substantial' modifications in order to eliminate the disadvantages of a disability or to provide every accommodation the disabled employee may request") (internal quotations omitted).

Indeed, Plaintiff's theory would effectively transform every accommodation review period into a potential statutory violation whenever an employee believes a requested accommodation should have been implemented sooner. The law is otherwise. Courts have repeatedly rejected attempts to convert delay in the accommodation process into a failure-to-accommodate claim absent allegations that the delay reflected discriminatory animus, bad faith, obstructionism, or a refusal to continue evaluating the request. *See Brown v. N.Y.C. Dep't of Educ.*, No. 20-CV-2424 (VEC), 2022 WL 4364600, at *4 (S.D.N.Y. Sep. 21, 2022); *Logan v. Matveevskii*, 57 F. Supp. 3d 234, 258–59 (S.D.N.Y. 2014). In *Brown*, the court recognized that even a delay of nine to ten months did not state a Rehabilitation Act accommodation claim absent factual allegations supporting an inference that the delay resulted from discriminatory animus. 2022 WL 4364600, at

*3–4. And in *Campbell v. Lamar Institute of Technology*, the court rejected the proposition that an institution incurs liability merely because an accommodation request was not granted immediately, explaining that otherwise "there would be no need for a grievance process or for any review of requests by higher level administrators." No. 1:14-cv-399, 2015 WL 12942498, at *4 (E.D. Tex. Aug. 13, 2015), *aff'd*, 842 F.3d 375 (5th Cir. 2016). Plaintiff's allegations place this matter squarely within that line of authority.

Although *Brown* did not involve a separately labeled request for an "interim" accommodation, its reasoning applies directly to Plaintiff's theory that the evaluation period itself constituted a completed failure to accommodate. There, the court recognized that even significant delays in providing an accommodation do not establish a Rehabilitation Act violation unless the plaintiff establishes that the delay resulted from discriminatory animus, bad faith, or obstructionism. 2022 WL 4364600, at *4. Plaintiff's FAC contains no such allegations. Instead, it alleges a continuing accommodation process involving Human Resources personnel, Matrix, union representatives, Plaintiff, and Plaintiff's providers. FAC, ¶¶ 140–236. Those allegations are inconsistent with the sort of discriminatory refusal contemplated by *Brown*.

Moreover, Plaintiff ultimately alleges that LAS proposed accommodations employing the very core mechanism she requested: remaining available from the LAS office and reporting to court when client or attorney needs required her presence. FAC, ¶¶ 25, 43, 224–236. Plaintiff cannot plausibly transform LAS's decision to evaluate that request before adopting it into an independent Rehabilitation Act violation.

#### 4. Plaintiff's Allegations Concerning Delay Do Not State a Failure to Accommodate Claim.

Plaintiff also repeatedly characterizes the accommodation process as delayed. FAC, ¶¶ 197, 227, 348. But courts have consistently rejected failure-to-accommodate claims predicated solely

on allegations that an employer took time to evaluate a request. *See Brown,* 2022 WL 4364600, at *4; *Matveevski*, 57 F. Supp. 3d at 258–59.

Here, Plaintiff alleges an ongoing review that produced multiple accommodation proposals. FAC, ¶¶ 140–200, 216–236. Even accepting Plaintiff's characterization of the process, those allegations do not plausibly establish that LAS refused to accommodate her disability.

Because Plaintiff's allegations establish that LAS engaged in an extensive accommodation process and ultimately proposed an accommodation that Plaintiff alleges was "substantially similar" to the one she requested, Count I fails as a matter of law and should be dismissed.

### C. Plaintiff's Attempt to Recast LAS's Evaluation of Her Accommodation Request as Retaliation Fails and Count II Must Be Dismissed.

To state a retaliation claim under the Rehabilitation Act, Plaintiff must plead that: (1) she engaged in protected activity; (2) LAS was aware of that activity; (3) LAS subjected her to a materially adverse action; and (4) a causal connection exists between the protected activity and the adverse action. *Kelly v. N.Y. State Off. of Mental Health*, 200 F. Supp. 3d 378, 403 (E.D.N.Y. 2016). Even accepting Plaintiff's allegations as true, she does not plead facts supporting either a materially adverse action or causation, and the Court should dismiss Count II.

### D. Plaintiff Does Not Plead a Materially Adverse Action.

As an initial matter, Plaintiff does not allege any adverse employment action cognizable under the Rehabilitation Act. Plaintiff was not terminated, demoted, suspended, or subjected to any material change in the terms and conditions of her employment. *See, e.g., Dortz v. City of New York*, 904 F. Supp. 127, 155 (S.D.N.Y. 1995), (Katz, M.J.), *R. & R. adopted*, 904 F. Supp. 127, 135 (S.D.N.Y. 1995) (in order to constitute an adverse employment action sufficient to support a retaliation claim, the conduct must have "affected the terms, privileges, duration, or conditions of

[Plaintiff's] employment"). To the contrary, Plaintiff expressly alleges that she remains employed by LAS and intends to return to work when medically able. FAC, ¶¶ 30, 295.

Instead, Plaintiff attempts to repackage the same conduct underlying her accommodation claims as retaliation. She alleges that LAS maintained court-coverage expectations, sought additional medical information, evaluated her accommodation request, denied her proposed interim accommodation, and continued communicating with her concerning potential accommodations. FAC, ¶¶ 181–200, 204–236, 353–359. But courts repeatedly hold that an employer's evaluation of an accommodation request, requests for supporting medical documentation, and even an alleged failure to accommodate cannot themselves establish the adverse action required for a retaliation claim. *See, e.g., Cangro v. N.Y.C. Dep't of Fin.*, No. 23-CV-10097 (LAP), 2024 WL 3833971, at *3 (S.D.N.Y. Aug. 14, 2024) ("Failing to accommodate an employee is, by itself, not sufficient for establishing an adverse employment action."), *aff'd in part, vacated and rev'd in part, on other grounds,* 2026 WL 2130187 (2d Cir. July 24, 2026); *Vora v. N.Y.C. Dep't of Educ.*, No. 22 Civ. 10891 (PGG) (SDA), 2024 WL 116312, at *12 (S.D.N.Y. Mar. 14, 2024) (a "denial of a request for an accommodation cannot [itself] constitute an adverse employment action such as that required to form the basis of a retaliation claim"); *Perez v. N.Y. Presbyterian/Weill Cornell Med. Ctr.*, No. 23-CV-6152 (CS), 2024 WL 1514216, at *9 (S.D.N.Y. Apr. 8, 2024) (explaining that "an employer's mere failure to make an accommodation subsequent to an employee's request simply gives rise to a failure to accommodate claim and 'cannot be bootstrapped into a viable disability retaliation claim'" (quoting *Robles v. Medisys Health Network, Inc.*, No. 19-CV-6651, 2020 WL 3403191, at *11 (E.D.N.Y. June 19, 2020)).

Nor does Plaintiff plead facts supporting an adverse action based on LAS's requests for additional medical information. Plaintiff expressly alleges that the challenged requests occurred

during the accommodation review process and were directed at assessing her claimed limitations and requested workplace modification. FAC, ¶¶ 181–189, 290–292. Courts have consistently held that requests for medical documentation made in connection with an accommodation request do not constitute materially adverse actions. *See Peterson v. N.Y.C. Dep't of Educ.*, No. 18-CV-1515 (ILG), 2020 WL 2559385, at *6 (E.D.N.Y. May 20, 2020) (a "mere request" for medical documentation "could not plausibly amount to retaliation"); *Sosa v. N.Y.C. Dep't of Educ.*, 819 F. App'x 30, 34 (2d Cir. 2020) (request for additional medical documentation and AWOL designation not adverse employment actions).

Plaintiff likewise challenges LAS's position that court coverage and courthouse attendance formed part of her job responsibilities. But requiring an employee to comply with job expectations, even disputed ones, is not a materially adverse action. For example, in *Castro v. Local 1199, National Health & Human Services Emps. Union*, the plaintiff brought a retaliation claim alleging she sustained adverse employment actions when she was required to walk two-and-a-half miles in the heat to lead an employee demonstration. 964 F. Supp. 719, 729 (S.D.N.Y. 1997). The court dismissed the plaintiff's retaliation claim on the grounds that she had not shown any adverse employment action and explained that the duties and responsibilities of plaintiff's role required her to lead demonstrations in all types of weather, and thus it could not "be said that requiring plaintiff to perform this duty affected the terms, privileges, duration or conditions of her employment." *Id.*

Here, Plaintiff acknowledges that she remained willing to attend court when client, attorney, hearing, assessment, or emergency needs required her presence. FAC, ¶¶ 17, 44, 132, 134, 228. Her disagreement with LAS's assessment of those responsibilities does not transform routine workplace expectations into actionable retaliation.

**E. Plaintiff Does Not Plead Facts Supporting Causation.**

Plaintiff's retaliation claim also fails because she does not plead that any challenged conduct occurred because of any protected activity. *Charles v. City of New York*, No. 25-CV-6219 (BMC), 2026 WL 698634, at *4 (E.D.N.Y. Mar. 12, 2026) ("In the absence of any allegations of retaliatory animus or disparate treatment, plaintiff's retaliation claim thus fails for lack of causation.").

Plaintiff instead describes an ongoing accommodation process that involved Human Resources personnel, supervisors, union representatives, Plaintiff's healthcare providers, and Matrix. FAC, ¶¶ 140, 147–150, 158–165, 170, 181–200, 224–236. Plaintiff alleges an ongoing accommodation review process, not retaliatory animus.

Indeed, Plaintiff confirms that LAS had previously accommodated her, including by granting a hybrid-work arrangement, providing workplace modifications, continuing to engage in communications regarding her requests, and eventually proposing an accommodation that Plaintiff alleges was "substantially similar" to the accommodation she requested in November 2025. FAC, ¶¶ 43, 127, 149, 224–236. Those allegations undermine, rather than support, any inference that LAS acted out of retaliatory motive.

Nor is temporal proximity enough. Plaintiff expressly relies on timing to support causation. In Count VIII, Plaintiff alleges that retaliatory motive may be inferred because various challenged actions occurred within days or weeks of Plaintiff's accommodation requests, grievance, cease-and-desist communication, and other protected activity. FAC, ¶ 401. Plaintiff specifically alleges that Senior Employee Relations Specialist Laura Walsh escalated courthouse-presence expectations twenty-five days after Plaintiff's November 24 accommodation request, that Matrix issued its request for additional medical documentation eleven days after one of Plaintiff's interim-accommodation requests, and that then-Chief Human Resources Officer Connie Park denied

interim accommodation fourteen days after the cease-and-desist communication and eleven days after the union's January 9 objection. *Id.* Plaintiff therefore relies principally on temporal proximity to establish causation. But the Second Circuit has made clear that temporal proximity alone does not plausibly establish causation where the complaint lacks factual allegations suggesting retaliatory animus. *See, e.g., Riddle v. Citigroup*, 640 F. App'x 77, 79 (2d Cir. 2016) (upholding dismissal of plaintiff's retaliation claim because the plaintiff "alleged no facts to support a causal connection . . . other than temporal proximity"); *Sosa v. N.Y. Dep't of Educ.*, 368 F. Supp. 3d 489, 518–19 (E.D.N.Y. 2019) (dismissing retaliation claim because plaintiff failed to allege specific facts showing retaliatory animus was the basis of adverse action).

At bottom, Plaintiff alleges a disagreement regarding the scope of her accommodations and LAS's evaluation of her request. She does not plead facts establishing that LAS acted because she sought an accommodation rather than because LAS was engaged in evaluating that accommodation request. Accordingly, Plaintiff fails to plead causation—and further has not sustained any materially adverse employment action—and the Court should dismiss Count II with prejudice.

## II. The Court Should Dismiss Plaintiff's NYCHRL Claims.

### A. The Court Should Decline to Exercise Supplemental Jurisdiction Over Counts VI Through XI.

Once Plaintiff's Rehabilitation Act claims are dismissed, no federal claim remains in this action. The Court should therefore decline to exercise supplemental jurisdiction over Plaintiff's remaining claims arising under the NYCHRL.

Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction once it "has dismissed all claims over which it has original jurisdiction." Where federal claims are dismissed at the pleading stage, considerations of judicial economy, convenience,

fairness, and comity ordinarily favor dismissing remaining state and local law claims as well. *See Missick v. City of New York*, 707 F. Supp. 2d 336, 354 (E.D.N.Y. 2010) (collecting cases recognizing that, once all federal claims have been dismissed, state courts generally should decide the remaining questions of state law); *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 119 (2d Cir. 2006) (explaining that this case is "the usual case in which all federal-law claims are eliminated before trial" such that "the balance of factors to be considered . . . judicial economy, convenience, fairness, and comity . . . will point toward declining to exercise jurisdiction over the remaining state-law claims").

Here, Plaintiff asserts five Rehabilitation Act claims and six NYCHRL claims. As discussed above, Counts III, IV, and V fail because they are not cognizable causes of action under the Rehabilitation Act, while Counts I and II fail because Plaintiff does not plead facts supporting either a failure to accommodate or retaliation. Once those federal claims are dismissed, the only remaining claims arise under the NYCHRL. FAC, ¶¶ 379–438.

This case is still at the pleading stage. No discovery has occurred, no scheduling order has been entered, and the Court has not devoted substantial resources to resolving questions of New York City law. Under these circumstances, principles of comity strongly favor permitting New York courts to interpret and apply the NYCHRL in the first instance. *See Missick*, 707 F. Supp. 2d at 354; *Sussle v. Sirina Prot. Sys. Corp.*, 269 F. Supp. 2d 285, 317 (S.D.N.Y. 2003) (dismissing NYCHRL claims after dismissal of federal claims); *Gorokhovsky v. N.Y.C. Hous. Auth.*, 552 F. App'x 100, 102 (2d Cir. 2014) (declining to exercise supplemental jurisdiction over the plaintiff's NYCHRL claims after the federal claims were dismissed, notwithstanding the court's finding that plaintiff's NYCHRL claims should not have been dismissed on the merits).

The argument for declining supplemental jurisdiction is particularly strong here because Plaintiff's amended pleading substantially expands the NYCHRL theories beyond the federal claims. Plaintiff adds a new NYCHRL disability-discrimination claim, expands the class allegations, asserts multiple claims against Matrix, and raises numerous questions concerning the scope of liability under various provisions of the NYCHRL. FAC, ¶¶ 28, 82, 89, 379–438. Those issues are matters of local law that New York courts are best positioned to address.

Accordingly, because the Court should dismiss Counts I through V, it should also decline to exercise supplemental jurisdiction over the remaining NYCHRL claims and dismiss Counts VI through XI without prejudice pursuant to Rule 12(b)(1).[5]

**B. Plaintiff's NYCHRL Claims Also Independently Fail Under Rule 12(b)(6).**

Plaintiff's NYCHRL claims also independently fail under Rule 12(b)(6). Most of those claims have direct counterparts among Plaintiff's Rehabilitation Act claims and fail for the same reasons. Plaintiff's NYCHRL failure-to-accommodate claim (Count VI) rests on the same accommodation process challenged in Count I; her retaliation claim (Count VIII) rests on the same accommodation requests, documentation requests, court-coverage expectations, and alleged interim denial challenged in Count II; and her interference claim (Count X) merely repackages the same conduct underlying her federal accommodation and retaliation theories. Although the NYCHRL differs from federal law in certain respects, those differences do not cure the defects in Plaintiff's pleading.

**1. Plaintiff's Failure to Accommodate and Cooperative Dialogue Claims Fail Under the Facts She Pleads.**

[5] Plaintiff's failure to plead a viable individual claim also forecloses the putative class claims. In any event, Defendants deny that any proposed class is viable or that Plaintiff can satisfy Rule 23, and expressly reserve all arguments concerning the proposed classes, the class definitions, the sufficiency of the class allegations, and class certification.

Plaintiff's NYCHRL failure-to-accommodate claim (Count VI) fails for substantially the same reasons as her Rehabilitation Act claim. To state a claim, Plaintiff must plead, among other things, that LAS refused to provide a reasonable accommodation. *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 395 (S.D.N.Y. 2017) (granting motion to dismiss failure-to-accommodate claim under the NYCHRL); *Miloscia v. B.R. Guest Holdings LLC*, 928 N.Y.S.2d 905, 913 (Sup. Ct. 2011) (identifying the employer's refusal to make a reasonable accommodation as an element of the claim). Although the NYCHRL places the burden on the employer to show that the employee could not satisfy the essential requisites of the position with a reasonable accommodation, Plaintiff still must allege facts plausibly establishing a refusal to accommodate. She alleges the opposite.

As discussed above, LAS provided prior accommodations and ultimately proposed an arrangement Plaintiff calls "substantially similar" to her request. FAC, ¶¶ 25, 43, 127, 140–236. Those allegations do not plausibly establish that LAS refused to provide a reasonable accommodation. *See Puranik*, 2025 WL 2522442, at *8; *Slater*, 2025 WL 2208292, at *5–9 (granting motion to dismiss on failure-to-accommodate and adverse employment action theories for discrimination claim, where plaintiff alleged that requested accommodation was provided and failed to show "some harm").

Count IX, alleging failure to engage in a cooperative dialogue, fares no better. Unlike the Rehabilitation Act, the NYCHRL expressly requires an employer, upon notice that an employee may require an accommodation, to engage within a reasonable time in a good-faith written or oral dialogue concerning the employee's needs, potential accommodations, alternatives, and any difficulties those accommodations may pose. N.Y.C. Admin Code § 8-107(28)(a); *Baker v. Bridge Inc.*, 805 F. Supp. 3d 521, 549 (S.D.N.Y. 2025). But Plaintiff's own allegations establish precisely that kind of dialogue. She alleges a months-long dialogue that included information requests,

consultation, and multiple proposals. FAC, ¶¶ 140–236. Plaintiff may disagree with the content, pace, or interim result of those discussions, but she does not plead facts indicating that LAS refused or failed within a reasonable time to engage in dialogue. The Court should therefore dismiss Counts VI and IX.

**2. Plaintiff Does Not Plead Facts Supporting Disability Discrimination or Retaliation.**

Plaintiff's disability-discrimination claim (Count VII) likewise fails. The NYCHRL must be construed independently and more liberally than its federal and state counterparts. To state a claim, however, Plaintiff still must plead facts showing that she was treated "less well," at least in part, because of her disability. *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013); *Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 301–02 (S.D.N.Y. 2019). The NYCHRL does not dispense with the requirement that Plaintiff plead facts supporting a reasonable inference of discriminatory motivation. *See Sletten v. LiquidHub, Inc.*, No. 13 Civ. 1146(NRB), 2014 WL 3388866, at *8–9 (S.D.N.Y. July 11, 2014) (explaining that, although the NYCHRL does not require a materially adverse employment action, it "still requires a showing of some evidence from which discrimination can be inferred").

Plaintiff alleges no termination, demotion, suspension, transfer, loss of compensation or benefits, or other conventional employment consequence. More fundamentally, Plaintiff does not plead any facts supporting a claim that LAS treated her less well because of her disability. She identifies no disability-based statement, discriminatory remark, similarly situated non-disabled employee treated more favorably, or other fact supporting a reasonable inference of discriminatory motivation. Instead, Count VII relies on the same accommodation-process conduct alleged elsewhere: LAS's court-coverage expectations, requests for medical information, supervisory review, reporting requirements, and alleged denial of Plaintiff's preferred interim accommodation.

FAC, ¶¶ 390–396. But Plaintiff's disagreement with LAS's handling of her accommodation request does not, without facts suggesting disability-based animus, plausibly establish that LAS subjected her to unfavorable treatment because of disability. Plaintiff's own allegations concerning LAS's ongoing accommodation process undermine that inference. *Id.* ¶¶ 127, 140–236. The Court should thus dismiss Count VII.

Plaintiff's NYCHRL retaliation claim (Count VIII) requires a somewhat different showing than its federal counterpart. Rather than alleging a materially adverse employment action, Plaintiff must allege conduct "reasonably likely to deter a person from engaging in protected activity." *Brightman v. Prison Health Serv., Inc.*, 970 N.Y.S.3d 789, 791 (2d App. Div. 2013). Count VIII nevertheless fails under that broader standard.

The conduct Plaintiff identifies consists principally of LAS's evaluation of her accommodation request, requests for medical documentation, enforcement of disputed court-coverage expectations, supervisory requests, and alleged denial of her preferred interim arrangement. FAC, ¶¶ 398–403. But an alleged failure to accommodate following a protected request cannot, without more, be bootstrapped into a separate retaliation claim. *Missick*, 707 F. Supp. 2d at 356 ("Defendants' alleged failure to accommodate her disability subsequent to an ADA, NYHRL, or NYCHRL protected request cannot be bootstrapped into a viable disability retaliation claim."). Nor does an employer's request for information necessary to evaluate an accommodation plausibly establish deterrent conduct. *Belanger v. New York Univ.*, No. 21 Civ. 01644 (LAP), 2025 WL 963308, at *18 (S.D.N.Y. Mar. 31, 2025).

Plaintiff also fails to plead retaliatory causation. Although she alleges temporal proximity (FAC, ¶ 401), she identifies no retaliatory statement, comparator, or other fact suggesting that LAS acted with retaliatory animus. Her own allegations instead describe a continuing accommodation

process in which LAS sought information, communicated with the relevant participants, considered alternatives, and ultimately proposed an accommodation addressing the limitation she identified. *Id.* ¶¶ 140–236. Those allegations do not plausibly show that LAS undertook any actionable conduct because Plaintiff exercised a protected right. The Court should therefore dismiss Count VIII.

**3. Plaintiff's Interference Claim Merely Relabels the Same Accommodation-Process Conduct.**

Plaintiff's interference claim (Count X) also fails. The NYCHRL prohibits coercing, intimidating, threatening, or interfering with another person's exercise or enjoyment of rights protected by the statute. But Plaintiff must allege conduct amounting to coercion, intimidation, a threat, or interference, not merely repeat the conduct underlying another NYCHRL claim. *Erasmus v. Deutsche Bank Ams. Holding Corp.*, No. 15 Civ. 1398 (PAE), 2015 WL 7736554, at *15 (S.D.N.Y. Nov. 30, 2015); *Cadet v. All. Nursing Staffing of N.Y., Inc.*, 632 F. Supp. 3d 202, 237 (S.D.N.Y. 2022) (explaining that a plaintiff must allege "some affirmative threat beyond the adverse employment action itself" to avoid duplicative claims under separate NYCHRL provisions).

Plaintiff alleges requests for medical information, response deadlines, communications concerning documentation, continued enforcement of court-coverage expectations, and alleged delay in resolving her accommodation request. FAC, ¶¶ 419–424. Those allegations describe the accommodation and supervisory processes, not an affirmative threat intended to prevent Plaintiff from exercising NYCHRL rights. *See Robles*, 2020 WL 3403191, at *13 ("failure to engage in the interactive process simply constitutes the basis for a failure to accommodate claim, and not for an interference, coercion, or intimidation claim"). The Court should thus dismiss Count X.

**4. The Aiding-and-Abetting Claim Fails Because Plaintiff Pleads No NYCHRL Violation.**

Finally, Plaintiff's aiding-and-abetting claim (Count XI) is derivative of her underlying NYCHRL claims. Aiding-and-abetting liability requires a viable primary violation. *Erasmus*, 2015 WL 7736554, at *8. If the Court dismisses the underlying NYCHRL claims, it must also dismiss the related aiding-and-abetting claim. *Russell v. New York Univ.*, 42 N.Y.3d 377, 383, 388 (2024).

For the reasons above, Plaintiff does not plead facts establishing that LAS failed to accommodate her, failed to engage in a cooperative dialogue, discriminated or retaliated against her, or interfered with her protected rights. Because Counts VI through X fail, Count XI necessarily fails as well. The separate motion submitted by Matrix and the Individual Defendants identifies additional, Defendant-specific grounds for dismissing Count XI, including the absence of facts showing actual, knowing, and purposeful participation in any unlawful conduct.

Accordingly, the Court should dismiss Counts VI through XI under Rule 12(b)(6).

## CONCLUSION

For the foregoing reasons, LAS respectfully requests that the Court dismiss Counts I through V of the FAC with prejudice pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure. Having dismissed all claims over which it has original jurisdiction, the Court should further decline to exercise supplemental jurisdiction over Plaintiff's remaining NYCHRL claims and dismiss Counts VI through XI without prejudice pursuant to 28 U.S.C. § 1367(c)(3). Counts VI through XI also independently fail under Rule 12(b)(6) because Plaintiff's allegations do not plausibly establish a violation of the NYCHRL.

Dated: New York, New York
October 14, 2026

**DORSEY & WHITNEY LLP**

By /s/ Briana Al Taqatqa
NICHOLAS J. PAPPAS
pappas.nicholas@dorsey.com
KRISTA BOLLES
bolles.krista@dorsey.com
1301 Avenue of the Americas, Floor 13
New York, NY 10019
(212) 415-9200

BRIANA AL TAQATQA (pro hac vice)
altaqatqa.briana@dorsey.com
GRACE F. JACOBSON (pro hac vice)
jacobson.grace@dorsey.com
50 South 6th St., Suite 1500
Minneapolis, MN 55402

Attorneys for Defendants THE LEGAL AID SOCIETY, MATRIX ABSENCE MANAGEMENT, INC., CONNIE PARK, LAURA WALSH, REBEKAH ALMANZAR, JACKIE QUIGLEY, and YONZEL BURT

**CERTIFICATE OF COMPLIANCE**
**WITH TYPEFACE AND WORD-COUNT LIMITATIONS**

I, Briana Al Taqatqa, counsel for Defendant The Legal Aid Society, certify, pursuant to Local Civil Rule 7.1(b)-(c), that the foregoing motion is double-spaced, has one-inch margins, has a typeface of 12 points or more, and contains 8,750 words.

*/s/ Briana Al Taqatqa*
BRIANA AL TAQATQA

October 14, 2026