**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------------------------------ X

MARISSA KUBICKI, individually, and on behalf of all others similarly situated

Plaintiff,

-v-

THE LEGAL AID SOCIETY, MATRIX ABSENCE MANAGEMENT, INC., CONNIE PARK, in her individual capacity, LAURA WALSH, in her individual capacity, REBEKAH ALMANZAR, in her individual capacity, JACKIE QUIGLEY, in her individual capacity, and YONZEL BURT, in her individual capacity,

Defendants.

------------------------------------------------------------------------------------------------ X

1:26-CV-3882-VSB

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MATRIX ABSENCE MANAGEMENT, INC.'S AND THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT - ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT ....... 1

BACKGROUND ....... 3

I. PLAINTIFF ALLEGES THAT THE INDIVIDUAL DEFENDANTS AND MATRIX PARTICIPATED IN ROUTINE ACCOMMODATIONS PROCEDURES WITH AND ON BEHALF OF LAS. ....... 3

A. Connie Park. ....... 3

B. Laura Walsh. ....... 4

C. Rebekah Almanzar. ....... 4

D. Jackie Quigley. ....... 5

E. Yonzel Burt. ....... 5

F. Matrix. ....... 6

STANDARD OF REVIEW ....... 7

LEGAL ARGUMENT ....... 7

I. PLAINTIFF DOES NOT PLEAD FACTS THAT MATRIX OR ANY INDIVIDUAL DEFENDANT ACTUALLY PARTICIPATED IN OR AIDED AND ABETTED A NYCHRL VIOLATION. ....... 8

A. The Allegations Against Park and Walsh Describe Implementation and Communication of LAS's Accommodation Positions. ....... 10

B. The Allegations Against Almanzar and Quigley Concern Supervisory Functions, Not Independent Accommodation Decisions. ....... 11

C. Plaintiff Alleges No Actionable Conduct by Burt. ....... 13

D. Plaintiff's Allegations Establish that Matrix Administered Portions of LAS's Process on LAS's Behalf. ....... 13

II. COUNTS VI AND IX FAIL FOR THE ADDITIONAL REASON THAT PLAINTIFF DOES NOT ALLEGE THAT ANY DEFENDANT INDIVIDUALLY REFUSED AN ACCOMMODATION OR FAILED TO ENGAGE IN DIALOGUE. ....... 14

A. Plaintiff Does Not Allege that Matrix or Any Individual Defendant Refused to Provide an Accommodation. ....15

B. Plaintiff's Allegations Describe Participation in the Dialogue, Not a Defendant-Specific Refusal to Engage. ....16

III. COUNTS VII, VIII, AND X FAIL FOR THE ADDITIONAL REASON THAT PLAINTIFF DOES NOT CONNECT ANY MOVING DEFENDANT TO THE ELEMENTS OF DISCRIMINATION, RETALIATION, OR INTERFERENCE. ....18

A. Plaintiff Does Not Allege Any Defendant-Specific Disability Discrimination. ....18

B. Plaintiff Does Not Allege Defendant-Specific Retaliatory Conduct or Motive. ....19

C. Plaintiff Does Not Allege that Any Defendant Personally Coerced, Threatened, Intimidated, or Interfered with Her Rights. ....20

IV. COUNT XI INDEPENDENTLY FAILS BECAUSE PLAINTIFF DOES NOT PLEAD ANY UNDERLYING VIOLATION OR KNOWING, PURPOSEFUL PARTICIPATION IN A NYCHRL VIOLATION. ....22

A. Plaintiff Does Not Plead a Viable Underlying NYCHRL Violation. ....23

B. Plaintiff Does Not Plead Intentional and Actual Participation in Unlawful Conduct. ....23

1. Park and Walsh Allegedly Implemented or Communicated LAS's Positions. .... 26

2. Almanzar and Quigley Performed Supervisory Functions. .... 27

3. The Sparse Allegations Against Burt Do Not Establish Actual Participation. .... 27

4. Matrix Allegedly Administered LAS's Process, Not an Unlawful Scheme. .... 28

C. Conclusory Allegations of Ratification or "Community of Purpose" Do Not Cure the Pleading Defects. ....30

D. Count XI Should Be Dismissed. ....31

CONCLUSION ....31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abadi v. N.Y.U. Langone Health Sys.*,
705 F. Supp. 3d 172 (S.D.N.Y. 2023)............................................................... *passim*

*Alvarez v. New York City Transit Authority*,
215 N.Y.S.3d 522 (2024)..........................................................................16, 17, 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)......................................................................................................7

*Avila v. Acacia Network*,
No. 23-CV-10260 (PAE) (KHP), 2025 WL 2161280 (S.D.N.Y. Mar. 28, 2025), *R. & R. adopted by*, 2025 WL 2233987 (S.D.N.Y. Aug. 6, 2025)................................20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................................................7

*Doe v. Bloomberg L.P.*,
36 N.Y.3d 450 (2021)..............................................................................................8, 14

*Erasmus v. Deutsche Bank Americas Holding Corp*,
No. 15 Civ. 1398 (PAE), 2015 WL 7736554 (S.D.N.Y. Nov. 30, 2015)..........................21, 23

*Europe v. Equinox Holdings, Inc.*,
No. 20-cv-7787 (JGK), 2022 WL 4124763 (S.D.N.Y. Sep. 8, 2022) ...........................9, 13, 20

*Fried v. LVI Servs.*,
No. 10-cv-9308 (JSR), 2011 WL 2119748 (S.D.N.Y. May 23, 2011)..............................24, 31

*McHenry v. Fox News Network, LLC*,
510 F. Supp. 3d 51 (S.D.N.Y. 2020)................................................................. *passim*

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
715 F.3d 102 (2d Cir. 2013)........................................................................................12

*Miloscia v. B.R. Guest Holdings LLC*,
928 N.Y.S.2d 905 (Sup. Ct. 2011)..........................................................................24, 25

*Pinto v. N.Y.C. Admin. for Children's Servs.*,
No. 18-cv-1852 (KBF), 2018 WL 4333990 (S.D.N.Y. Sep. 11, 2018)...................................22

*Russell v. New York Univ.*,
42 N.Y.3d 377 (2024)............................................................................................23, 24

*Sletten v. LiquidHub, Inc.*,
No. 13 Civ. 1146(NRB), 2014 WL 3388866 (S.D.N.Y. July 11, 2014).......................... *passim*

*Stinnett v. Delta Air Lines, Inc.*,
803 F. App'x 505 (2d Cir. 2020) ..........................................................................12

*Walrond v. New York City Health & Hospitals Corp.*,
241 N.Y.S.3d 83 (App. Div. 2d Dep't 2025).....................................................16, 17

*Wecker v. City of New York*,
20 N.Y.S.3d 364 (App. Div. 1st Dep't 2015) ..............................................................17

*Weslowski v. Zugibe*,
14 F. Supp. 3d 295 (2014) ..........................................................................................20

*Zaki v. OTG Mgmt. LLC*,
No. 23-CV-8189 (PK), 2025 WL 4783125 (E.D.N.Y. Nov. 20, 2025).......................24, 29, 31

**Other Authorities**

CPLR 3211(a)(7) ..........................................................................................................16

Fed. R. Civ. P. 12(b)(6)..........................................................................................1, 7, 8

Defendants Connie Park, Laura Walsh, Rebekah Almanzar, Jackie Quigley, and Yonzel Burt (collectively, the "Individual Defendants") and Matrix Absence Management, Inc. ("Matrix") (collectively, the "Defendants") join Defendant The Legal Aid Society's ("LAS") motion to dismiss (ECF Docs. 59 and 60) and submit this memorandum of law in support of their motion to dismiss as to Counts VI through XI of Plaintiff Marissa Kubicki's ("Plaintiff") First Amended Complaint ("FAC") (ECF Doc. 41), pursuant to Rules 8, 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This motion presents a straightforward question: Has Plaintiff pleaded in her FAC that Human Resources ("HR") professionals, supervisors, managers, and a third-party administrator of LAS individually violated the New York City Human Rights Law ("NYCHRL"), or knowingly aided another person's violation? She has not.

As explained in LAS's Motion to Dismiss, Plaintiff's NYCHRL claims fail as a matter of law; Defendants do not repeat or summarize those arguments here, but instead respectfully refer the Court to LAS's Motion to Dismiss, where the arguments are fully developed. *See* ECF Doc. 60.

This motion addresses additional, Defendant-specific defects in Counts VI through XI: Defendants neither actually participated in nor aided and abetted any discriminatory conduct sufficient to establish individual liability. The FAC does not allege that Almanzar, Quigley, Burt, and Matrix had any authority whatsoever to deviate from LAS policy to make reasonable accommodations decisions, much less that they individually, actually participated in making such decisions to deviate with respect to Plaintiff; indeed, taking all the allegations of the FAC as true affirmatively shows they did not. With respect to Park and Walsh, the FAC likewise fails to allege

any facts showing that they exercised any authority to deviate from LAS policy to make the challenged decisions.

Instead, Plaintiff repeatedly attributes the challenged policies, accommodation decisions, and court-coverage expectations to LAS, "LAS management," HR, Employee Relations ("ER"), and LAS's centralized accommodation process. FAC, ¶¶ 16, 27, 51–53, 63, 93–98, 110, 176, 253, 299, 326–329, 348, 355, 362. She nevertheless brings allegations against the individuals who allegedly communicated or implemented LAS's positions, the supervisors who allegedly administered ordinary work expectations, and Matrix, which she alleges acted as LAS's accommodation administrator and agent. Participation in the events surrounding an alleged violation, however, does not establish that each participant personally committed an NYCHRL violation or purposefully aided another person's violation.

The Defendant-specific allegations confirm the deficiency. Plaintiff alleges that Park and Walsh administered or communicated LAS's accommodation positions; Almanzar and Quigley performed supervisory functions without authority independently to decide Plaintiff's accommodation request; Burt allegedly provided only generalized management communications; and Matrix performed administrative functions on LAS's behalf while LAS retained centralized authority over accommodation administration and resolution. FAC, ¶¶ 51–85, 140–236. Those allegations do not establish that any of these Defendants individually refused an accommodation, failed to engage in dialogue, discriminated, retaliated, interfered with Plaintiff's rights, or intentionally and purposefully aided unlawful conduct.

Accordingly, for the reasons stated in LAS's motion and the additional Defendant-specific reasons stated below, the Court should dismiss Counts VI through XI with prejudice as against the Individual Defendants and Matrix and dismiss them from this action.

## BACKGROUND

Plaintiff's claims against the Individual Defendants and Matrix arise entirely from their alleged roles in LAS's employment, supervisory, and accommodation processes. The Individual Defendants and Matrix join and incorporate the factual background set forth in LAS's separately filed memorandum (ECF Doc. 60). The following summarizes only Plaintiff's allegations concerning the Individual Defendants and Matrix.

### I. PLAINTIFF ALLEGES THAT THE INDIVIDUAL DEFENDANTS AND MATRIX PARTICIPATED IN ROUTINE ACCOMMODATIONS PROCEDURES WITH AND ON BEHALF OF LAS.

Plaintiff alleges that "LAS management"—or LAS as an organization—discriminated and retaliated against her by adopting a new courthouse-presence policy and delaying provision of her requested accommodation. *See, e.g.*, FAC, ¶¶ 16, 110, 176, 348, 355, 362. Plaintiff then pleads that her allegations against LAS are attributable to Matrix and seemingly every individual HR professional or manager she could name in LAS's organizational structure, without plausible allegations of each Defendant's actual participation in the accommodation process. *See, e.g.*, *id.* ¶¶ 382, 390, 399, 408, 419, 427.

#### A. Connie Park.

Plaintiff alleges that Park, LAS's former Chief HR Officer, exercised senior authority over HR and the accommodation process. FAC, ¶¶ 54–58. According to Plaintiff, Park received the December 2025 grievance and related communications, participated in discussions concerning Plaintiff's accommodation request, communicated LAS's January 20, 2026 denial of Plaintiff's requested interim accommodation, and directed Plaintiff to continue complying with LAS's court-coverage expectations while the accommodation process continued. *Id.* ¶¶ 55–57, 193–196, 204. Plaintiff further alleges that Park "maintained," "ratified," or "administered" LAS's accommodation determinations. *Id.* ¶¶ 55–57, 86, 383, 428, 434; *see also id.* ¶¶ 95–96 (alleging

liability on the basis of "managerial or supervisory responsibility"). Plaintiff acknowledges that LAS no longer employs Park. *Id.* ¶ 58.

**B. Laura Walsh.**

LAS employs Walsh as its Senior Employee Relations ("ER") Specialist, and Plaintiff alleges that she "exercised actual and/or delegated authority over Plaintiff's accommodation process." FAC, ¶¶ 59, 62. Plaintiff alleges that, with that authority, Walsh "dictate[d]" or "administered" Plaintiff's accommodation request. *Id.* ¶¶ 60, 64, 86; *see also id.* ¶¶ 95–96 (alleging liability on the basis of "managerial or supervisory responsibility"). Plaintiff acknowledges that Walsh's administration of the accommodation request merely "reflected LAS management's contemporaneous understanding" of Plaintiff's proposed accommodation, *id.* ¶ 142, and Plaintiff's allegations otherwise only show that Walsh was communicating LAS's organizational priorities to Plaintiff. *Id.* ¶ 148 (providing that Walsh "discussed an interim accommodation with [Plaintiff's] supervisory group"); ¶¶ 155, 159; ¶¶ 171–76 (using Walsh's responses to allege "**LAS management**" had materially shifted its policy) (emphasis added); ¶ 216 (concluding LAS "authorized" an alternative arrangement on the basis of Walsh's communications of that policy); ¶ 349 (alleging LAS "acted with deliberate indifference after senior HR officials received Plaintiff's" request).

**C. Rebekah Almanzar.**

LAS employs Almanzar as a Social Work Supervisor, and Plaintiff alleges that she had "authority over Plaintiff's assignments, court coverage, supervision, performance expectations, files, and reporting." FAC, ¶¶ 66–68. Plaintiff alleges that Almanzar approved, maintained, or defended LAS's courthouse-presence expectations and participated in requests concerning Plaintiff's files, reporting obligations, and accommodation-related discussions. *Id.* ¶¶ 67–68, 383, 394, 400, 420, 430, 434; *see also id.* ¶¶ 95–96 (alleging liability on the basis of "managerial or

supervisory responsibility"). Plaintiff further alleges that Almanzar participated in meetings concerning courthouse coverage, communicated management's expectations regarding those requirements, and enforced supervisory expectations concerning Plaintiff's work. *Id.* ¶¶ 66–68, 113, 116, 118, 158, 169. Plaintiff contends that these actions contributed to LAS's alleged failure to accommodate and retaliation. *Id.* ¶¶ 390, 400, 420, 430; *see also* ¶ 223 (clarifying Almanzar's statements reflected "[LAS]'s communications").

**D. Jackie Quigley.**

LAS employs Quigley as an Assistant Social Work Supervisor, and Plaintiff alleges that she had authority over Plaintiff's day-to-day work, court coverage, assignments, file review, and performance expectations. FAC, ¶¶ 69–72. Plaintiff alleges that Quigley initially communicated the August 2025 courthouse-presence expectations to Plaintiff and another PRDU social worker, participated in discussions concerning court coverage, requested access to Plaintiff's files, and communicated with Plaintiff concerning accommodation-related issues. *Id.* ¶¶ 69–72, 110–113, 168, 190. Plaintiff further alleges that Quigley participated in implementing and enforcing LAS's courthouse-presence expectations and later participated in communications regarding alternative court-coverage arrangements. *Id.* ¶¶ 70–72, 159; *see also* ¶¶ 86, 96, 383, 390, 394, 400, 420, 431, 434. Plaintiff contends that these actions constituted participation in LAS's alleged discriminatory, retaliatory, and accommodation-related conduct. *Id.* ¶¶ 112–113, 116, 118, 128, 158, 190, 390, 400, 420, 431, 434.

**E. Yonzel Burt.**

Plaintiff alleges that Burt, Director of Social Work for LAS's Criminal Defense Practice, exercised managerial authority over social-work operations and court-coverage practices. FAC, ¶¶ 73–75. According to Plaintiff, Burt participated in communications concerning courthouse-presence expectations and confirmed management's position that PRDU social workers were

expected to be present in court on designated coverage days. *Id.* ¶¶ 74, 156; *see also* ¶ 156 (describing Burt's communication of courtroom-presence expectations as "confirm[ing] that ***management*** was still addressing and refining the practice"), ¶ 432 (conclusorily alleging that Burt "approv[ed], ratif[ied], administer[ed], or fail[ed] to correct continued enforcement within her managerial authority"). Plaintiff alleges that Burt approved, ratified, or failed to alter those expectations despite objections from Plaintiff and union representatives. *Id.* ¶¶ 74–75, 432.

**F. Matrix.**

Plaintiff alleges that LAS retained Matrix to assist in administering employee leave and disability-accommodation requests. FAC, ¶¶ 51–53, 76–85. According to Plaintiff, Matrix acted as part of LAS's accommodation process by communicating with employees and healthcare providers, collecting medical information, transmitting asserted job requirements, requesting additional medical documentation, administering response deadlines, monitoring accommodation requests, and communicating accommodation-related determinations. *Id.* ¶¶ 76–85, 181–185. Plaintiff further alleges that Matrix issued a January 2, 2026 request for additional medical information, imposed a fifteen-day response deadline, and warned that nonresponse could affect the accommodation decision. *Id.* ¶¶ 181–185, 421. Plaintiff also challenges Matrix's May and June 2026 communications concerning the documentation required to support Plaintiff's continued leave of absence and Matrix's use of standardized accommodation forms and notices during that process. *Id.* ¶¶ 237–257, 421–423.

Plaintiff further alleges that Matrix exercised "actual and practical control" over portions of the accommodation process, including determining whether documentation sufficed and whether requests would advance through the process. *Id.*, ¶¶ 80, 384. At the same time, however, Plaintiff repeatedly alleges that LAS maintained centralized authority over accommodation administration, communication, implementation, and resolution, and that Matrix acted on LAS's

behalf in administering portions of that process. *Id.* ¶¶ 51–53, 63, 77–81, 94, 253. Indeed, Plaintiff expressly alleges that "disability-accommodation administration, communication, implementation, and resolution were centralized Employee Relations functions that were not delegated exclusively to individual unit supervisors or Matrix." *Id.* ¶ 63.

**STANDARD OF REVIEW**

To survive a Rule 12(b)(6) motion to dismiss, the Amended Complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

**LEGAL ARGUMENT**

Plaintiff does not assert every NYCHRL claim against every Defendant. Plaintiff asserts Counts VI and X against LAS, Matrix, Walsh, Quigley, Almanzar, and Park. Plaintiff asserts Counts VII and VIII against LAS, Walsh, Quigley, Almanzar, and Park. Count IX is asserted only against LAS, Matrix, Walsh, and Park. Plaintiff asserts Count XI against Matrix and all Individual Defendants. FAC, ¶¶ 379–438.

As LAS explained in its motion, each of the underlying NYCHRL claims fails under Rule 12(b)(6). Those claims also fail against the Individual Defendants and Matrix for an additional and independent reason: Plaintiff does not plead Defendant-specific facts establishing that any Individual Defendant or Matrix individually violated the NYCHRL or intentionally and purposefully aided another's violation.

The Individual Defendants' and Matrix's alleged involvement falls into four categories. First, Plaintiff alleges that Park and Walsh administered or communicated LAS's accommodation positions through LAS's centralized HR and ER process. Second, she alleges that Almanzar and

Quigley enforced workplace and supervisory expectations, but does not plead facts that either independently controlled or decided the accommodation request. Third, she alleges little conduct by Burt beyond participation in management discussions and communication of LAS's court-coverage position. Fourth, she alleges that Matrix administered portions of LAS's process on LAS's behalf while LAS retained centralized authority over accommodation administration, implementation, and resolution. Those allegations do not establish individual or aiding-and-abetting liability under the NYCHRL.

## I. PLAINTIFF DOES NOT PLEAD FACTS THAT MATRIX OR ANY INDIVIDUAL DEFENDANT ACTUALLY PARTICIPATED IN OR AIDED AND ABETTED A NYCHRL VIOLATION.

The NYCHRL does not automatically impose vicarious liability on every employee, supervisor, HR professional, or third-party administrator who participates in an employer's accommodation process. Instead, individual defendants incur liability only for their own unlawful conduct that violates a substantive NYCHRL provision or aiding and abetting such conduct by others. *See Doe v. Bloomberg L.P.*, 36 N.Y.3d 450, 459 (2021). For individual liability, a plaintiff must allege the defendant "actually participated" or had "personal involvement" in actionable conduct, not merely possessed a managerial title, communicated the employer's position, or implemented the employer's policy. *Europe v. Equinox Holdings, Inc.*, No. 20-cv-7787 (JGK), 2022 WL 4124763, at *11–12 & n.18 (S.D.N.Y. Sep. 8, 2022); *Abadi v. N.Y.U. Langone Health Sys.*, 705 F. Supp. 3d 172, 181, 185–86 & n.4 (S.D.N.Y. 2023); *Sletten v. LiquidHub, Inc.*, No. 13 Civ. 1146(NRB), 2014 WL 3388866, at *5, *11 (S.D.N.Y. July 11, 2014).

*Abadi* illustrates the distinction between holding an employee individually liable for actually participating or being personally involved in an NYCHRL violation, versus mere implementation of an employer's accommodation policies and procedures. There, the plaintiff sought to add as defendants several managers, supervisors, employees, and security personnel who

allegedly communicated or enforced the employer defendant's masking policy after he requested a disability accommodation. 705 F. Supp. 3d 172, 185–86 (S.D.N.Y. 2023). The court denied leave to add those defendants because the complaint "lack[ed] factual allegations showing that the proposed defendants were personally involved in engaging in discriminatory conduct[.]" *Id.* The court explained that plaintiff made conclusory allegations "against all or some defendants in an undifferentiated manner as a group," rather than clearly delineating what allegations pertained to each cause of action against each individual defendant. *Id.* at 181. Where plaintiff did distinguish the individual defendants' role in his accommodation, none showed "personal involvement": Some merely "carr[ied] out" their employer's existing policy (by allegedly communicating or implementing the employer's policy), while others occupied supervisory or management roles without showing that the individual defendants had actual, personal authority to deviate from the employer's policy "to grant a reasonable accommodation in the face of [that] policy." *Id.* at 186. Because imposing liability would have required speculation about the individuals' responsibilities and decision-making authority, the claims against them could not proceed. *Id.*

The same distinction controls here. Plaintiff brings claims against Defendants as an undifferentiated group within LAS, "LAS management," HR, ER, and LAS's centralized accommodation process, which cannot give rise to individual liability to each Defendant. FAC, ¶¶ 16, 27, 51–53, 63, 93–98, 110, 176, 253, 299, 326–329, 348, 355, 362. Plaintiff alleges that Park and Walsh carried out LAS's accommodations procedure by implementing or communicating LAS's accommodation positions, that Almanzar and Quigley occupied supervisory roles, that Burt stated management's position, and that Matrix administered portions of LAS's process. But Plaintiff attributes the accommodation decisions and centralized process to LAS and does not plead facts that each Defendant individually exercised authority to deviate from LAS's policies to grant

Plaintiff's requested accommodation. As in *Abadi*, allegations that individuals implemented or communicated employer's policies, or occupied a position in an organization's process do not establish that each actually participated or had personal involvement in a NYCHRL violation.

**A. The Allegations Against Park and Walsh Describe Implementation and Communication of LAS's Accommodation Positions.**

Plaintiff characterizes Park and Walsh as senior HR or ER personnel involved in LAS's accommodation process. She alleges that Park received union communications, participated in the January 20 meeting, communicated LAS's denial of the requested interim accommodation, and directed Plaintiff to comply with LAS's court-coverage expectations while the process continued. FAC, ¶¶ 54–58, 193–196, 204. She alleges that Walsh communicated with Plaintiff, supervisors, providers, and Matrix; sought medical information; conveyed LAS's asserted job requirements; and communicated LAS's January 29 and March 6 proposals. *Id.* ¶¶ 59–65, 140, 148, 155, 159, 170, 175, 216, 224–225.

But Plaintiff repeatedly alleges that those actions occurred through LAS's centralized HR and ER process. She alleges that Walsh's communications reflected "LAS management's contemporaneous understanding" of the request, that Walsh discussed interim measures with Plaintiff's "supervisory group," and that the proposals Walsh communicated were authorized by LAS. FAC, ¶¶ 142, 148, 171–176, 216. She similarly describes Park as maintaining, administering, approving, enforcing, or ratifying LAS's positions. *Id.* ¶¶ 55–57, 86, 383, 428, 434.

Those allegations do not establish that Park or Walsh committed an actionable violation. They allege that Park and Walsh performed the functions Plaintiff attributes to LAS's HR and ER process: receiving information, communicating with participants, requesting documentation, conveying management's assessment, and communicating LAS's determinations and proposed accommodations. Plaintiff's repeated use of conclusory labels such as "maintained,"

"administered," "ratified," and "participated" does not substitute for facts showing that either Defendant actually participated in the alleged statutory violation. As in *Abadi*, the allegations identify Park and Walsh as implementing and communicating LAS's organizational accommodation policies, but do not plead that either personally possessed or exercised authority to deviate from LAS's position to grant the requested accommodation. *See Abadi,* 705 F. Supp. 3d at 186.

### B. The Allegations Against Almanzar and Quigley Concern Supervisory Functions, Not Independent Accommodation Decisions.

Plaintiff alleges that Almanzar and Quigley supervised Plaintiff's assignments, court coverage, files, reporting, and performance expectations. FAC, ¶¶ 66–72. She alleges that they communicated or enforced court-coverage expectations, participated in discussions about court coverage, requested access to files, and participated in communications concerning Plaintiff's work. *Id.* ¶¶ 110–118, 158–159, 168–169, 190.

But Plaintiff simultaneously identifies accommodation administration and resolution as centralized HR and ER functions. FAC, ¶¶ 51–53, 63. Plaintiff does not allege that Almanzar or Quigley possessed authority to grant or deny the requested accommodation, determine what medical documentation was sufficient, or issue an accommodation determination that would deviate from LAS's centralized process. Indeed, Plaintiff's allegations show Almanzar and Quigley were expressly ***not*** authorized to make such decisions to deviate from LAS policy: Plaintiff's allegations describe Almanzar's statements as reflecting LAS's communications and describe Quigley's involvement as day-to-day supervision and implementation of court-coverage expectations. *Id.* ¶¶ 112–118, 158–159, 223.

Without such a showing of authority to grant an accommodation in deviation from LAS's policy, ordinary supervisory conduct does not constitute an NYCHRL violation by individual

defendants merely because it occurs while an accommodation dispute is pending. *See Abadi*, 705 F. Supp. 3d at 186. Plaintiff must allege facts connecting each supervisor to the particular statutory violation, not simply that each enforced workplace expectations, requested work information, or engaged in discussions. *See, e.g.*, *Stinnett v. Delta Air Lines, Inc.*, 803 F. App'x 505, 508 (2d Cir. 2020) (explaining that the NYCHRL "'is not a general civility code,' and the plaintiff must still show that the challenged 'conduct is caused by a discriminatory motive') (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)). Her allegations establish supervision and implementation, not personal involvement or actual participation in a refusal to accommodate or failure to engage in a cooperative dialogue.

*Sletten* confirms that supervisory authority alone does not establish individual liability. There, the plaintiff "blithe[ly] assert[ed]" that an individual defendant was his supervisor or exercised supervisory authority over him and had made derogatory comments, but did not allege that the defendant actually participated in the employer's decisions to take the allegedly discriminatory actions. 2014 WL 3388866, at *11. The court dismissed the discrimination claims against the individual defendant because such conclusory allegation of supervisory authority alone did not establish individual liability for the challenged employment decisions. *Id.*

Plaintiff's allegations against Almanzar and Quigley are similarly deficient. Plaintiff alleges that they supervised her daily work, communicated court-coverage expectations, and requested work-related information. But such ordinary supervisory functions do not establish that either actually participated in the decision to deny Plaintiff's requested accommodation within LAS's centralized process. Their supervisory titles and implementation of workplace expectations do not establish their individual liability under Count VI. *Id.*

### C. Plaintiff Alleges No Actionable Conduct by Burt.

Count XI is the only NYCHRL claim asserted against Burt. FAC, ¶¶ 425–438. The allegations against Burt are particularly sparse. Plaintiff alleges that Burt participated in a December 2025 meeting, communicated management's expectation that PRDU social workers be present in court on designated coverage days, and "approved, ratified, administered, or failed to correct" continued enforcement of LAS's position. *Id.* ¶¶ 73–75, 156, 432.

Those allegations do not show that Burt had any authority whatsoever with respect to reasonable accommodations decisions (let alone the authority to deviate from established LAS policy to do so). Neither do they identify any accommodation decision Burt made, any medical information Burt requested, any allegedly retaliatory act Burt undertook, or any communication in which Burt encouraged conduct she knew violated the NYCHRL. Plaintiff's formulaic allegation that Burt "approved," "ratified," or "failed to correct" LAS's conduct does not establish actual participation in an unlawful act giving rise to individual liability. *See Europe*, 2022 WL 4124763, at *11–12= & n.18; *Abadi*, 705 F. Supp. 3d at 185–86 & n.4; *Sletten*, 2014 WL 3388866, at *5, *11. Burt should therefore be dismissed from the only claim asserted against her. *Sletten*, 2014 WL 3388866, at *11.

### D. Plaintiff's Allegations Establish that Matrix Administered Portions of LAS's Process on LAS's Behalf.

Plaintiff alleges that LAS selected Matrix to assist with administration of employee leave and disability-accommodation requests. FAC, ¶¶ 51–53, 76–85. The alleged Matrix functions included communicating with Plaintiff and providers, collecting medical information, transmitting LAS's asserted job requirements, imposing response deadlines, monitoring requests, administering forms, and communicating LAS's determinations. *Id.* ¶¶ 76–85, 181–185, 237–257. Nowhere does

Plaintiff allege that Matrix had actual authority to deviate from LAS policy to decide whether to grant or deny a reasonable accommodation or otherwise actually participate in that decision.

Indeed, Plaintiff provides the opposite, by repeatedly alleging that LAS retained centralized authority over accommodation administration, communication, implementation, and resolution. FAC, ¶¶ 51–53, 63, 77–81, 94, 253. She expressly alleges that those functions "were not delegated exclusively" to Matrix and pleads, in the alternative, that Matrix functioned "purely as Legal Aid's agent and implemented its instructions." *Id.* ¶¶ 63, 81. The alleged January 2 communication repeated the courthouse formulation supplied by LAS, and the June accommodation determination communicated an approval attributed to LAS. *Id.* ¶¶ 175, 181, 251, 253.

Plaintiff's conclusory allegation that Matrix exercised "actual and practical control" cannot override the specific allegations describing Matrix as performing administrative functions for LAS within a process over which LAS retained ultimate authority. FAC, ¶¶ 80, 384. Collecting documentation, transmitting information, administering deadlines, and communicating an employer's determination do not establish that Matrix refused an accommodation, discriminated, retaliated, or interfered with Plaintiff's rights. *See Bloomberg L.P.*, 36 N.Y.3d at 459.

## II. COUNTS VI AND IX FAIL FOR THE ADDITIONAL REASON THAT PLAINTIFF DOES NOT ALLEGE THAT ANY DEFENDANT INDIVIDUALLY REFUSED AN ACCOMMODATION OR FAILED TO ENGAGE IN DIALOGUE.

As detailed by LAS (*see* ECF Doc. 60), Plaintiff's own allegations defeat Counts VI and IX because they describe an extensive accommodation process, repeated communications, consideration of alternatives, and proposals addressing Plaintiff's identified limitation. Those claims also fail against Matrix and the Individual Defendants for an independent reason: Plaintiff does not allege that these Defendants individually breached the obligations asserted.

### A. Plaintiff Does Not Allege that Matrix or Any Individual Defendant Refused to Provide an Accommodation.

Count VI is asserted against Matrix, Walsh, Quigley, Almanzar, and Park. FAC ¶¶ 379–386. Plaintiff alleges that LAS was her employer, established the disputed court-coverage expectations, evaluated her requested modification, and issued the relevant accommodation decisions. *Id.* ¶¶ 49–53, 193–196, 216, 224–236. By contrast, she alleges that Walsh and Park participated through LAS's HR process, that Almanzar and Quigley acted as supervisors, and that Matrix administered portions of LAS's process. *Id.* ¶¶ 51–85.

Plaintiff does not allege facts showing that Individual Defendants or Matrix possessed authority to deviate from LAS policy to grant the accommodation and then refused to provide it. Plaintiff's allegations instead describe each as carrying out policies and processes that she attributes to LAS as an undifferentiated group. That is insufficient under *Abadi*. *See supra* Part I.

Plaintiff alleges that LAS established the court-coverage expectations and controlled the centralized accommodation process. She does not plead facts that Almanzar, Quigley, Walsh, or Matrix possessed personal authority to grant the accommodation that would deviate from LAS's policies. Alleged participation in or implementation of LAS's process does not establish that each separately refused an accommodation.[1]

[1] Nor does Plaintiff's disagreement with requests for additional medical information transform the participating Defendants into parties who refused an accommodation. In *Alvarez v. New York City Transit Authority*, the court held that the employer engaged in a good-faith process when, in response to a medically supported shift-change request, it directed the employee to undergo a medical assessment because he previously had been cleared to work without restrictions. 215 N.Y.S.3d 522, 523–25 (2024). Although decided on summary judgment, *Alvarez* confirms that Defendants' seeking medical clarification to evaluate a new restriction is part of the accommodation process, not itself a denial of accommodation. *Id.*

### B. Plaintiff's Allegations Describe Participation in the Dialogue, Not a Defendant-Specific Refusal to Engage.

Count IX is asserted against Matrix, Walsh, and Park. FAC, ¶¶ 404–416. Plaintiff alleges that Walsh communicated with Plaintiff, union representatives, supervisors, healthcare providers, and Matrix; that Park participated in the January 20 determination and related communications; and that Matrix sought and processed medical information. *Id.* ¶¶ 55–65, 76–85, 140–200. Those allegations describe each Defendant's participation in the dialogue, not a refusal to engage in one.

Dismissal is appropriate where a complaint's own allegations and incorporated materials establish participation in an accommodation dialogue rather than a refusal to engage in one. In *Walrond v. New York City Health & Hospitals Corp.*, the plaintiff alleged that his employer failed to engage in a cooperative dialogue concerning a religious accommodation. 241 N.Y.S.3d 83, 84–86 (App. Div. 2d Dep't 2025). The complaint attached an HR letter advising that the employer's office of Equal Opportunity Employment would review whether an extension of the accommodation could be granted and providing a telephone number and email address for questions. *Id.* at 933–34. Considering the complaint and that letter, the court affirmed dismissal under CPLR 3211(a)(7), holding that the pleaded facts demonstrated that the plaintiff had no cause of action for failure to engage in a cooperative dialogue. *Id.* at 935.

Plaintiff pleads substantially more engagement by Individual Defendants and Matrix here. She alleges that Walsh communicated with her, her union representatives, supervisors, healthcare providers, and Matrix; Park participated in the January 20 determination and related communications; and Matrix requested and processed medical information. FAC, ¶¶ 55–65, 76–85, 140–200. She further alleges repeated meetings, written exchanges, consideration of alternatives, and multiple proposed arrangements. *Id.* ¶¶ 140–236. Those allegations describe active participation by Matrix, Walsh, and Park in the dialogue.

Plaintiff's disagreement with their positions or the result of the process does not mean that they refused or failed to engage in a cooperative dialogue. *See Walrond*, 241 N.Y.S.3d at 86. The First Department reached the same general conclusion in *Wecker v. City of New York*, affirming dismissal where the evidence showed that the defendants offered multiple accommodation options, assessed the plaintiff's needs, continued discussions, and ultimately assisted in obtaining suitable housing. 20 N.Y.S.3d 364, 365–66 (App. Div. 1st Dep't 2015). Plaintiff may note her disagreements with the positions allegedly taken by Park, Walsh, or Matrix when they requested information Plaintiff considered unnecessary, but those disagreements do not show that Defendants lacked good faith or refused to engage in a cooperative dialogue, especially in light of their repeated and continued discussions with Plaintiff and her union regarding her requested accommodation. FAC, ¶¶ 140–236 (alleging that the accommodation process involved repeated written communications, meetings, medical-information exchanges, consultation with union representatives and providers, consideration of alternatives, and multiple proposals); *Walrond*, 241 N.Y.S.3d at 86; *Wecker*, 20 N.Y.S.3d at 365–66.

*Alvarez* further confirms that the interactive process imposes reciprocal obligations. 215 N.Y.S.3d at 524–25. There, after the employee requested a shift change based on a medical need, the employer directed him to undergo a medical assessment because he previously had been cleared to return without restrictions. *Id.* at 524. The employee did not undergo that assessment and instead resigned before the schedule change took effect. *Id.* The court affirmed summary judgment because the employer had initiated a good-faith process and the employee had rebuffed it by demanding immediate approval rather than completing the requested assessment. *Id.* at 525.

Plaintiff here alleges that LAS, Matrix, Walsh, and Park continued requesting and exchanging information, meeting with Plaintiff and her representatives, and considering

alternatives. FAC, ¶¶ 140–236. Those allegations describe the Defendants' active participation in the process contemplated by *Alvarez*, not a refusal to engage in dialogue.

## III. COUNTS VII, VIII, AND X FAIL FOR THE ADDITIONAL REASON THAT PLAINTIFF DOES NOT CONNECT ANY MOVING DEFENDANT TO THE ELEMENTS OF DISCRIMINATION, RETALIATION, OR INTERFERENCE.

Plaintiff does not sufficiently plead disability discrimination, retaliation, or interference under the NYCHRL (*see* ECF Doc. 60). Those claims further independently fail as to the Individual Defendants and Matrix because Plaintiff does not connect any particular Defendant to actionable conduct satisfying the respective claim.

### A. Plaintiff Does Not Allege Any Defendant-Specific Disability Discrimination.

Count VII is asserted against Park, Walsh, Almanzar, and Quigley, but not against Matrix or Burt. FAC, ¶¶ 387–396. Plaintiff alleges that Park and Walsh carried out LAS's HR process and that Almanzar and Quigley administered supervisory expectations. *Id.* ¶¶ 54–72, 394. She does not identify a disability-based statement by any of them, a non-disabled comparator treated differently by any Defendant, or other facts showing that any Defendant acted because of disability rather than in the course of LAS's accommodation and supervisory processes.

*Sletten* is instructive. There, the plaintiff sufficiently alleged that discriminatory animus by senior company personnel motivated reductions in his compensation and his termination, but the court nevertheless dismissed the discrimination claims against the named individual supervisor. 2014 WL 3388866, at *10–11. Apart from a conclusory allegation that the individual was the plaintiff's supervisor or had supervisory authority, the complaint did not allege that the individual participated in the challenged decisions. *Id.* at *11. Thus, the individual's participation in other alleged conduct did not establish his participation in the particular employment decisions supporting the discrimination claim. *Id.*

The same claim-specific deficiency exists here. Plaintiff alleges that Park and Walsh participated in LAS's HR process and that Almanzar and Quigley exercised supervisory authority, but she does not plead facts that any of them personally treated her less well because of disability. She identifies no disability-based statement by any Individual Defendant, no similarly situated non-disabled employee whom any particular Defendant treated more favorably, and no other Defendant-specific fact supporting discriminatory motivation. General allegations that Park, Walsh, Almanzar, or Quigley administered, communicated, or enforced LAS's processes do not establish that any of them actually participated in the unfair treatment of Plaintiff because of disability.

Plaintiff instead relies on collective allegations that "Defendants" as an undifferentiated group escalated court-presence expectations, requested medical information, imposed file and reporting requirements, or denied interim protection. FAC, ¶¶ 390, 392–395. Those undifferentiated allegations do not identify unfavorable treatment undertaken by any particular Individual Defendant because of Plaintiff's disability. *See Abadi*, 705 F. Supp. 3d at 181. Nor do they suggest any Defendant's particular conduct was taken with intent to discriminate on the basis of her disability. *Europe*, 2022 WL 4124763, at *11–12 & n.18 (explaining "actual[] participat[ion]" requires showing the individual defendant acted with the "intent to discriminate" or otherwise engaged in conduct giving rise to an inference of discrimination). The Court should therefore dismiss Count VII against each Individual Defendant.

**B. Plaintiff Does Not Allege Defendant-Specific Retaliatory Conduct or Motive.**

Count VIII is asserted against Park, Walsh, Almanzar, and Quigley, but not Matrix or Burt. FAC, ¶¶ 397–403. Plaintiff alleges that Walsh administered accommodation communications and medical-information requests, Park participated in the January 20 determination, and Almanzar

and Quigley communicated workplace expectations and requested information concerning Plaintiff's files and work. *Id.* ¶¶ 400–401.

Those allegations describe the respective Defendants' roles in the accommodation or supervisory process, which does not establish individual liability for a particular claim, absent facts showing the individual's actual participation in the challenged conduct. *Sletten*, 2014 WL 3388866, at *11. Plaintiff does not plead facts that any Defendant acted with retaliatory intent. *Europe*, 2022 WL 4124763, at *11–12 & n.18. Plaintiff identifies no retaliatory statement by any Defendant and no similarly situated employee who engaged in the same conduct but was treated more favorably by the particular Defendant. Although comparator evidence is not invariably required at the pleading stage, allegations relying on comparators must plausibly support the conclusion that they are similarly situated; conclusory assertions of differential treatment do not suffice. *Weslowski v. Zugibe*, 14 F. Supp. 3d 295, 319 (2014). Plaintiff's reliance on the timing of communications, documentation requests, and supervisory activity does not supply facts showing that those actions were retaliatory, rather than part of the very process her accommodation request initiated. *See, e.g.*, *Avila v. Acacia Network*, No. 23-CV-10260 (PAE) (KHP), 2025 WL 2161280 (S.D.N.Y. Mar. 28, 2025), *R. & R. adopted by*, 2025 WL 2233987 (S.D.N.Y. Aug. 6, 2025) ("causation [cannot] be assumed from temporal proximity" between protected activity and the alleged retaliation). The Court should therefore dismiss Count VIII as against the Individual Defendants.

### C. Plaintiff Does Not Allege that Any Defendant Personally Coerced, Threatened, Intimidated, or Interfered with Her Rights.

Count X is asserted against Matrix, Park, Walsh, Almanzar, and Quigley, but not Burt. FAC, ¶¶ 417–424. Plaintiff alleges that Park and Walsh participated in LAS's accommodation process, Almanzar and Quigley communicated or enforced workplace expectations, and Matrix

transmitted documentation requests, deadlines, and warnings in administering LAS's process. *Id.* ¶¶ 419–423. Those allegations do not identify an affirmative threat or other coercive act by a particular Defendant intended to prevent Plaintiff from exercising NYCHRL rights.

*Sletten* demonstrates the factual specificity required to plead an NYCHRL interference claim. There, the plaintiff alleged that his supervisor and another person arrived unannounced at his home carrying firearms and that the visit was intended to coerce him to resign. 2014 WL 3388866, at *2, *5. The court nevertheless dismissed the claim because the complaint did not allege an actual threat or facts showing that the visit was intended to interfere with protected rights. *Id.* at *5. The allegation of coercive intent was an unwarranted inference supported by "labels and conclusions," not facts creating an impression of impending injury. *Id.*

The court in *Erasmus v. Deutsche Bank Americas Holding Corp* likewise dismissed an NYCHRL interference claim at the pleading stage where the complaint did not allege facts showing that the defendants coerced, intimidated, threatened, or otherwise interfered with the plaintiff's exercise of a protected right. No. 15 Civ. 1398 (PAE), 2015 WL 7736554, at *15 (S.D.N.Y. Nov. 30, 2015). The court explained that dismissal was warranted because the pleading contained no facts tending to support the required interference. *Id.*

Plaintiff's allegations here fall even shorter of that standard. She alleges that Park and Walsh participated in an accommodation process, Almanzar and Quigley administered workplace expectations, and Matrix requested documentation and communicated potential consequences associated with noncompliance. FAC, ¶¶ 419–423. The January 2 Matrix communication warned that failure to provide requested information "could impact the decision" on Plaintiff's accommodation, and the May 29 standardized notice advised that failure to return documentation could result in closure of the request and possible employment consequences by LAS. FAC, ¶¶

181, 242–251, 421–423. But Plaintiff also alleges that Matrix accepted the provider note already submitted, that LAS approved the leave extension, and that Plaintiff continued pursuing her accommodation rights. *Id.* ¶¶ 249–252. Unlike the conduct alleged in *Sletten* and *Erasmus*, those are ordinary accommodation, HR, and supervisory communications. Plaintiff does not plead any facts that any particular Defendant made an affirmative threat intended to prevent her from exercising NYCHRL rights.

Plaintiff's characterization of routine documentation requests, response deadlines, supervisory communications, and potential process consequences does not constitute coercion, intimidation, or a threat directed at suppressing protected activity. Indeed, the fact that Plaintiff continued pursuing her requests, and that Matrix accepted the existing provider note before communicating LAS's approval, further confirms that the alleged process communications were not coercion, intimidation, threats, or interference. *See Pinto v. N.Y.C. Admin. for Children's Servs.*, No. 18-cv-1852 (KBF), 2018 WL 4333990, at *12 (S.D.N.Y. Sep. 11, 2018) (because plaintiff alleged that she "repeatedly" made requests for accommodation, "[b]y her own admission, plaintiff was not deterred from continuing to seek new accommodations").

## IV. COUNT XI INDEPENDENTLY FAILS BECAUSE PLAINTIFF DOES NOT PLEAD ANY UNDERLYING VIOLATION OR KNOWING, PURPOSEFUL PARTICIPATION IN A NYCHRL VIOLATION.

Plaintiff's aiding-and-abetting claim (Count XI) fails for two independent reasons. First, aiding-and-abetting liability under the NYCHRL is derivative and cannot survive absent a viable underlying violation. Second, even if Plaintiff had sufficiently pled an underlying NYCHRL violation by LAS, she does not plead facts that any Individual Defendant or Matrix actually participated in that violation while sharing the principal actor's unlawful intent or purpose.

### A. Plaintiff Does Not Plead a Viable Underlying NYCHRL Violation.

An aiding-and-abetting claim requires an underlying violation of the NYCHRL. *Erasmus* 2015 WL 7736554, at *8. Where the predicate NYCHRL claim is dismissed, the derivative aiding-and-abetting claim necessarily fails as well. *Russell v. New York Univ.*, 42 N.Y.3d 377, 383, 388 (2024). *Erasmus* applied the same principle at the pleading stage, dismissing aiding-and-abetting claims where the complaint did not allege the underlying hostile-work-environment violation or facts showing that the alleged aider and abettor knew of and participated in the challenged conduct while it was ongoing. 2015 WL 7736554, at *8.

Plaintiff does not plead any underlying NYCHRL violation. Her failure-to-accommodate claim is contradicted by her allegations that LAS repeatedly accommodated her and ultimately proposed an arrangement that she describes as "substantially similar" to the one she requested. FAC, ¶¶ 25, 43, 127, 140–236. Her cooperative-dialogue claim is contradicted by the extensive communications, meetings, information exchanges, consideration of alternatives, and multiple proposals she pleads. *Id.* Her discrimination, retaliation, and interference claims merely relabel the same accommodation-process conduct without alleging the distinct elements necessary for those claims. Because Counts VI through X fail, Count XI fails as well. *See Russell*, 42 N.Y.3d at 388.

### B. Plaintiff Does Not Plead Intentional and Actual Participation in Unlawful Conduct.

Even assuming an underlying NYCHRL violation for purposes of this motion, Count XI independently fails. To state an aiding-and-abetting claim, Plaintiff must sufficiently plead that the defendant actually participated in the conduct giving rise to the underlying violation. *Miloscia v. B.R. Guest Holdings LLC*, 928 N.Y.S.2d 905, 917 (Sup. Ct. 2011). That standard requires more than an allegation that the defendant was involved in the events surrounding the alleged violation: the alleged aider and abettor must share the intent or purpose of the principal actor to "actually

participate" in the unlawful conduct. *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020) (explaining that aiding-and-abetting "liability requires that the aider and abettor share the intent or purpose of the principal actor" and "'actually participate[]' in such unlawful conduct by the employer"); *see also Zaki v. OTG Mgmt. LLC*, No. 23-CV-8189 (PK), 2025 WL 4783125, at *3 (E.D.N.Y. Nov. 20, 2025) ("[T]o find that a defendant actually participated in the discriminatory conduct requires a showing of direct, purposeful participation.") (alteration in original) (quoting *Fried v. LVI Servs.*, No. 10-cv-9308 (JSR), 2011 WL 2119748, at *7 (S.D.N.Y. May 23, 2011)).

The distinction between participation in an employment process and participation in unlawful conduct is dispositive here. An aiding-and-abetting claim requires actual participation in the conduct giving rise to the underlying NYCHRL violation, not merely involvement in related events. *Miloscia*, 928 N.Y.S.2d at 917. In *Miloscia*, for example, the court found factual questions remained concerning whether an HR employee actually participated in a NYCHRL violation, because she testified that she joined other HR personnel in reaching the conclusion that the plaintiff had to be separated from employment, communicated the termination, and could not identify any other person who made the decision. *Id.* at 917–18. The case therefore turned on evidence tying the individual directly to the challenged employment decision, not merely her HR title or peripheral involvement. *Id.* Here, by contrast, Plaintiff's own allegations attribute the challenged accommodation decisions and centralized process to LAS and describe the Individual Defendants and Matrix as communicating, administering, supervising, or implementing that process.

*McHenry* illustrates why allegations of notice or implementation alone do not establish actual participation. 510 F. Supp. 3d 51, 76–79 (S.D.N.Y. 2020). There, the plaintiff alleged that a Fox News vice president received an email reporting a hostile work environment but failed to

take appropriate corrective action, and that an HR representative obtained the plaintiff's supporting text messages, questioned what the plaintiff had done to provoke the alleged harasser, and failed to stop the challenged conduct. *Id.* at 76–78. The court nevertheless dismissed the aiding-and-abetting claims against both individuals because the complaint did not allege facts showing that either had actually participated in the underlying harassment or retaliation. *Id.* at 76–79. The vice president's title and general oversight did not permit an inference that he knew of ongoing misconduct or participated in the challenged employment decisions, and the HR representative's involvement in receiving and processing the complaint did not show that she shared the alleged harasser's unlawful intent or purpose nor participated in later retaliation. *Id.*

The same reasoning applies here. Plaintiff alleges that Park and Walsh received and communicated information through LAS's HR and ER processes; that Almanzar, Quigley, and Burt supervised or communicated workplace expectations; and that Matrix collected documentation and implemented LAS's accommodation process. But she does not plead facts showing that any of them shared an unlawful intent or purpose with LAS or directly participated in conduct that violated the NYCHRL. Their alleged implementation of LAS policy, notice of Plaintiff's objections, or failure to adopt Plaintiff's position does not establish actual and intentional participation.

Plaintiff's allegations against the Individual Defendants and Matrix suffer from the same defect. She repeatedly alleges that they "participated," "maintained," "administered," "enforced," "implemented," "approved," "ratified," or "failed to correct" LAS's accommodation process and related workplace expectations. FAC, ¶¶ 57, 60, 64, 67–68, 71–72, 85–86, 427–436. Those labels recite Plaintiff's desired conclusion, but they do not plead facts that any Defendant shared an

unlawful purpose with LAS or actually participated in particular conduct known to violate the NYCHRL.

### 1. Park and Walsh Allegedly Implemented or Communicated LAS's Positions.

Plaintiff alleges that Park received union communications, participated in the January 20 determination, communicated LAS's denial of interim accommodation, and directed Plaintiff to comply with LAS's court-coverage expectations while the accommodation process continued. FAC, ¶¶ 55–57, 193–196, 204, 428. She alleges that Walsh communicated with Plaintiff, providers, supervisors, and Matrix; requested medical information; transmitted LAS's asserted job requirements; and communicated LAS's proposed accommodations. *Id.* ¶¶ 59–65, 140, 148, 155, 159, 170, 175, 216, 224–225, 429.

Those allegations describe Park and Walsh performing HR and ER functions within LAS's centralized accommodation process. Plaintiff repeatedly characterizes their actions as administering, communicating, maintaining, or implementing LAS's positions. She does not plead facts showing that either Park or Walsh shared LAS's allegedly discriminatory or retaliatory purpose or intent. As in *Abadi*, allegations that HR personnel implemented or communicated an employer's accommodation position do not, without more, establish actual participation in discrimination. 705 F. Supp. 3d at 185–86.

*McHenry* is particularly instructive as to Park and Walsh. The court dismissed the claims against an HR representative even though she allegedly received evidence supporting the employee's complaint, questioned the employee about whether she had provoked the conduct, and failed to take appropriate corrective action. 510 F. Supp. 3d at 77–79. Those allegations did not show that the HR representative shared the principal actor's unlawful purpose or participated in later retaliation. *Id.* Plaintiff's allegations that Park and Walsh received objections, requested and

communicated information, and administered LAS's process are no stronger. Nor can Plaintiff establish aiding-and-abetting liability by alleging that Park or Walsh failed to correct LAS's position after receiving Plaintiff's objections. An alleged failure to intervene is insufficient unless the complaint establishes both an affirmative duty to act and knowing participation in the underlying unlawful conduct. *Id.* at 76–77. Plaintiff alleges neither.

### 2. Almanzar and Quigley Performed Supervisory Functions.

Plaintiff alleges that Almanzar and Quigley communicated or enforced court-coverage expectations, supervised Plaintiff's work, and requested access to files and reporting information. FAC, ¶¶ 66–72, 110–118, 168–169, 190, 430–431. She does not plead facts that either supervisor exercised authority to individually grant Plaintiff's request, determine what information was necessary, or issue an accommodation decision in deviation from LAS's policies.

The allegation that Almanzar and Quigley continued enforcing workplace expectations during the accommodation process does not show that either shared an unlawful purpose or directly participated in discrimination. Plaintiff's characterization of their conduct as approving, maintaining, or enforcing the challenged requirement does not identify the underlying violation in which either allegedly participated or facts showing that either had unlawful intent. *Id.* ¶¶ 67, 72, 87, 116, 383, 394, 400–401, 420, 430, 434. Ordinary supervision and implementation of an employer's workplace expectations are not equivalent to direct, purposeful participation in an NYCHRL violation.

### 3. The Sparse Allegations Against Burt Do Not Establish Actual Participation.

Count XI is the only claim asserted against Burt. FAC, ¶¶ 425–438. Plaintiff alleges that Burt participated in a management meeting, communicated LAS's expectation that PRDU social

workers be present in court on designated coverage days, and "approv[ed], ratif[ied], administer[ed], or fail[ed] to correct" continued enforcement. *Id.* ¶¶ 73–75, 156, 432.

Those allegations do not identify any accommodation decision Burt made, medical information Burt requested, retaliatory action Burt undertook, or communication in which Burt encouraged conduct purposefully in violation of the NYCHRL. Nor does Plaintiff allege facts showing that Burt exercised responsibility for the accommodation determination itself. Plaintiff's formulaic assertion that Burt approved, ratified, or failed to correct LAS's conduct is no more sufficient than the allegations rejected in *McHenry*. There, the court refused to infer actual participation from a vice president's title, general oversight, receipt of a complaint, or alleged failure to correct misconduct because the complaint did not plead concrete facts tying him to the challenged decisions. 510 F. Supp. 3d at 76–77. Plaintiff likewise alleges no concrete act tying Burt to the accommodation determination or any discriminatory or retaliatory decision. Nothing in the pleaded facts supports a reasonable inference that Burt shared an unlawful intent or directly and purposefully participated in an NYCHRL violation.

#### 4. Matrix Allegedly Administered LAS's Process, Not an Unlawful Scheme.

Plaintiff alleges that Matrix requested medical information, communicated with Plaintiff and her provider, transmitted LAS's description of Plaintiff's job requirements, imposed response deadlines, administered standardized forms and notices, monitored requests, and communicated determinations attributed to LAS. FAC, ¶¶ 76–85, 181–185, 237–257, 433–434. But Plaintiff simultaneously alleges that LAS selected Matrix, integrated Matrix into LAS's centralized process, supplied the disputed job-function description, and retained authority over accommodation administration, implementation, and resolution. *Id.* ¶¶ 51–53, 63, 77–81, 94, 175, 181, 253.

Plaintiff even pleads, in the alternative, that Matrix functioned "purely as Legal Aid's agent and implemented its instructions." *Id.* ¶ 81.

*Zaki* provides a close analogy. There, the plaintiff alleged that union defendants "substantially assisted and enabled" her employer's alleged discrimination and retaliation by failing to investigate her termination, review her personnel file, ensure application of progressive discipline, communicate with her, correct the employer's assertions, and take other protective action. 2025 WL 4783125, at *4. The court denied leave to add NYSHRL and NYCHRL aiding-and-abetting claims because those allegations did not show that the union defendants actually participated in the employer's discriminatory or retaliatory acts or shared its discriminatory intent. *Id.* General allegations that the secondary defendants failed to correct or materially "supported" another entity's acts did not establish the direct, purposeful participation required for aiding-and-abetting liability. *Id.*

Plaintiff's allegations against Matrix are similarly deficient. She alleges that Matrix administered documentation requirements, transmitted information supplied by LAS, monitored the request, and communicated determinations attributed to LAS. FAC, ¶¶ 76–85, 175, 181–185, 237–257. She does not allege facts showing that Matrix joined LAS in a discriminatory or retaliatory purpose or directly participated in an independently unlawful decision.

Those allegations establish that Matrix performed administrative functions within LAS's process, not that Matrix knew LAS was committing an NYCHRL violation, let alone that Matrix shared any discriminatory or retaliatory purpose or purposefully and directly participated in unlawful conduct. The January 2 communication allegedly repeated the job-function description supplied by LAS, and the June determination communicated an approval attributed to LAS. FAC, ¶¶ 175, 181, 251, 253. Matrix's administration of documentation requirements, deadlines, forms,

and communications to implement and carry out LAS policy therefore does not establish that Matrix shared an unlawful purpose merely because Plaintiff disputes the necessity or administration of those process requirements.

Plaintiff's allegations concerning the May 29 standardized notice do not cure that defect. Plaintiff alleges that Matrix warned of possible request closure and potential employment consequences if documentation was not returned, later accepted Plaintiff's existing provider note, and then communicated LAS's approval of the leave extension. FAC, ¶¶ 242–252. That sequence does not show that Matrix issued the notice to further an NYCHRL violation or that Matrix knew LAS was engaging in unlawful conduct. At most, it alleges that Matrix initially transmitted standardized documentation requirements and subsequently determined that the existing note was sufficient. Participation in process administration is not the direct and purposeful participation in unlawful conduct required for aiding-and-abetting liability.

### C. Conclusory Allegations of Ratification or "Community of Purpose" Do Not Cure the Pleading Defects.

Plaintiff attempts to bridge these gaps by alleging that each Defendant "knew or should have known" of Plaintiff's requests and restrictions, "substantially assisted, encouraged, or failed to stop" the alleged violations, and acted with a "community of purpose" with LAS. FAC, ¶¶ 435–436. Those allegations merely recite the elements of the claim. The similarly generalized allegations in *Zaki* were insufficient, even though the plaintiff identified numerous ways in which the union defendants allegedly failed to protect her or correct the employer's actions. 2025 WL 4783125, at *4. Because the allegations did not connect those acts or omissions to discriminatory animus or show direct participation in the employer's challenged decisions, they did not show a shared purpose. *Id.* Here, Plaintiff's allegations do not identify facts showing what particular

violation each Defendant knew about, how each Defendant acquired that knowledge, what unlawful purpose each Defendant shared, or what each Defendant did to advance that purpose.

An aiding-and-abetting claim cannot rest on the circular proposition that a Defendant aided unlawful conduct because the Defendant participated in the events Plaintiff labels unlawful. Plaintiff must allege knowing participation in the statutory violation itself. *See McHenry*, 510 F. Supp. 3d at 68; *Zaki*, 2025 WL 4783125, at *3; *Fried*, 2011 WL 2119748, at *7. Because the pleaded facts describe professional involvement in LAS's accommodation, HR, and supervisory processes, rather than knowing and purposeful participation in unlawful conduct, Count XI fails independently as to every Defendant.

### D. Count XI Should Be Dismissed.

Plaintiff fails to plead either prerequisite for aiding-and-abetting liability. She does not plead facts showing an underlying NYCHRL violation, nor that any Individual Defendant or Matrix shared an unlawful purpose and actually participated in conduct giving rise to such a violation. The Court should therefore dismiss Count XI with prejudice.

## CONCLUSION

For the reasons stated in LAS's motion (ECF Doc. 60), Plaintiff fails to state any underlying NYCHRL claim. Counts VI through XI further fail against Matrix and the Individual Defendants for the independent, Defendant-specific reasons stated above. Plaintiff does not plead facts establishing that any Individual Defendant or Matrix personally refused an accommodation, failed to engage in a cooperative dialogue, discriminated, retaliated, coerced or interfered with Plaintiff's rights, or knowingly and purposefully aided an NYCHRL violation. Accordingly, the Court should dismiss Counts VI through XI with prejudice as against Matrix and the Individual Defendants, dismiss those Defendants from this action, and grant such other relief as the Court deems appropriate.

Dated: New York, New York
October 14, 2026

**DORSEY & WHITNEY LLP**

By *<u>/s/ Briana Al Taqatqa</u>*_____
NICHOLAS J. PAPPAS
pappas.nicholas@dorsey.com
KRISTA BOLLES
bolles.krista@dorsey.com
1301 Avenue of the Americas, Floor 13
New York, NY 10019
(212) 415-9200

BRIANA AL TAQATQA (pro hac vice)
altaqatqa.briana@dorsey.com
GRACE F. JACOBSON (pro hac vice)
jacobson.grace@dorsey.com
50 South 6th St., Suite 1500
Minneapolis, MN 55402

Attorneys for Defendants THE LEGAL AID SOCIETY, MATRIX ABSENCE MANAGEMENT, INC., CONNIE PARK, LAURA WALSH, REBEKAH ALMANZAR, JACKIE QUIGLEY, and YONZEL BURT

**CERTIFICATE OF COMPLIANCE**
**WITH TYPEFACE AND WORD-COUNT LIMITATIONS**

I, Briana Al Taqatqa, counsel for Defendants Matrix Absence Management, Inc., Connie Park, Laura Walsh, Rebekah Almanzar, Jackie Quigley, and Yonzel Burt, certify, pursuant to Local Civil Rule 7.1(b)-(c), that the foregoing motion is double-spaced, has one-inch margins, has a typeface of 12 points or more, and contains 8,739 words.

*/s/ [Draft]*
BRIANA AL TAQATQA

October 14, 2026