# Exhibit Q

EXHIBIT Q | EMAIL CORRESPONDENCE

# Laura Walsh - March 6, 2026

Original message content reproduced from provided email file; messages below retain original wording and formatting.

| | |
|---|---|
| **From:** | Laura Walsh <lwalsh@legal-aid.org> |
| **Date:** | Friday, March 6, 2026 at 02:26:32 PM EST (19:26:32 UTC) |
| **To:** | Marissa Kubicki <MKubicki@legal-aid.org> |
| **Cc:** | Employee Relations <EmplRelations@legal-aid.org>, "marissabkubicki@gmail.com" <marissabkubicki@gmail.com> |
| **Subject:** | Re: Update from Employee Relations: Accommodations |
| **Message-ID:** | <SJ0PR04MB7328DAEBF82029FEDBEA50A1817AA@SJ0PR04MB7328.namprd04.prod.outlook.com> |
| **Attachment:** | Attached Outlook message: "Group Supervision Recap" (Jackie Quigley, February 27, 2026) |

Hi Marissa,
I hope you are doing well. I removed Kim Wirt from the email correspondence as I added your personal email address and did not want to share that information without your permission. You are more than welcome to add them back to the email correspondence.

I wanted to pass along an update from the practice, but no action is needed on your part at this time—I know you are out on leave, and certainly understand if you want to hold off until you are preparing for your return.

As you are aware, the PRDU FSWs have been preparing to roll out a new protocol for court coverage days to ensure client needs are being met--- while the expectation that you work with clients in-court on court coverage days in order to meet client needs is not new, the specifics of this protocol are. It's my understanding that the team has been discussing this transition for a number of months. The proposal I sent on behalf of the practice on January 29 was an earlier version of the protocol that has been tweaked slightly since then. Attached is the version of the protocol that was shared with the rest of the team last week. In order to be compatible with the medical documentation you provided, the practice is proposing the following modifications to this protocol as an accommodation- the bullet points in black are the court coverage protocol Jackie sent to the team, and the bullet points in blue are the proposed accommodation:

- Lorraine will send preliminary and recognizance intake paperwork to Rebekah and Jackie the night before a shift for review.
- For the first few weeks of implementation, Rebekah and Jackie will review VORRs to identify which clients might benefit from social work intervention, based off findings in the documentation provided. We will be reviewing for mention of mental health diagnoses, substance use history, program mandates not being met, clients who are on the registry, housing concerns, clients with multiple violations, etc. Rebekah and/or Jackie will send summaries to the FSW on court coverage for review prior to connecting with intake attorneys

around 10am in court. The goal is that FSWs will get comfortable with reviewing documents themselves to identify who they anticipate assessing by the end of March.

  - This expectation would be the same for you, with the understanding that the timeline will be shifted because you are on leave (the first few weeks of implementation would begin at the point you return from leave)

- Upon reviewing emails from Jackie and/or Rebekah (or after reviewing documents independently in the future), touch base with the intake atty around 10am in court and discuss appropriateness of meeting client together or meeting to assess client, if deemed appropriate, afterwards.
- If no needs are identified by the intake atty on prelims, follow up in the same model above with the intake atty on recogs. FSWs will still remain available for other attys and SW needs raised. FSWs will use their clinical judgement in determining how to prioritize requests if multiple clients are identified. If assistance is needed, FSWs can reach out to Jackie to discuss.
  - In order to ensure we are minimizing your in-court time to only the time needed to meet client needs, the practice proposes that instead of going to court at around 10am to touch base with the intake attorneys in-person, you would send Teams messages at around 10am to both the intake attorneys on prelims and on recogs. They'd ask that you include the supervisor on the messages in case the supervisor needs to help with in-person follow-up to reach the attorneys. You would then follow the same model as described above—prioritizing any needs identified by the intake attorney on prelims, then turning to needs identified by the attorney on recogs, and remaining available for other needs as they may come up during the court coverage day.
- Upon conclusion of work with intake attys, we request that a brief summary be sent via email of the outcome of communication with atty, client, or ultimate referral. This can be sent at the end of the shift or the next day and will continue even when FSWs are independently screening the VORRs.

As before, the practice is proposing this accommodation for 6 months (starting whenever you return). As noted in my last email, since your medical documentation speaks to the ongoing need for an accommodation, at the end of the duration and assuming it is working for you, I would review the recommendation again with your supervisory group. As always and with any accommodation approval, if there are any issues with the accommodation prior to the end of the 6 month period, I would ask that you reach out to me to review/discuss and so we can address any of those concerns.

Please let me know if you have any questions or want to discuss at any point. I also remain available to discuss alternative accommodations, including ways we can support you in taking the precautions referenced in the medical letter for when you will need to be in-person in court, if you are interested.

**Laura Walsh, LMSW** (she/her)
Sr. Employee Relations Specialist
lwalsh@legal-aid.org
For general inquiries: HumanResources@legal-aid.org

Cell: 347-346-1432

---

**From:** Marissa Kubicki <MKubicki@legal-aid.org>
**Sent:** Friday, January 30, 2026 4:44 PM
**To:** Laura Walsh <lwalsh@legal-aid.org>
**Cc:** Employee Relations <EmplRelations@legal-aid.org>; Kim Wirt <kwirt@legal-aid.org>
**Subject:** Re: Update from Employee Relations: Accommodations

Good Afternoon Laura

Thank you for your email.

I wanted to reiterate that all suggestions stated from sections 1-6, with their respective sub sections, have not been done in past practice of the unit. This can be noted in regard to the email communication that gets sent out weekly by Jackie Quigley on how Court coverage will be handled and how the attorneys are advised to do as such. You are in receipt of these numerous emails.

This is an entirely new practice that Jackie and Rebekah are implementing with them reviewing the VORRs and sending me to speak to each attorney in person to ask if they need social work assistance. Past practice is as follows: an attorney will contact Jackie before a client's hearing with a referral stating they will need social work assistance on a case and/or an attorney will contact the social worker on Court coverage directly with an emergent need (as indicated in Jackie's weekly Court coverage guideline emails), I will coordinate with attorney who needs assistance. I will then meet with the client (whether they are community based or incarcerated), coordinate with an attorney after the assessment and they will let me know if I am needed during the hearing or the client will let me know if they would like me present for support. Then I would return to the main office for the remainder of the day and will be present, ready, willing and able to assist if another client's need arises. I never had to give a summary to my supervisors. None of what is mentioned in the "alternative accommodation" is what has been my job description since I started in PRDU. Also, it is important to mention that I continue to be the only FSW that is being directed to handle Court coverage in the aforementioned manner.

Furthermore, these suggestions show retaliation, particularly in regards to section 6, that Court coverage will not be complete, unless I send an email summary to Jackie and Rebekah. Not only is this also not past practice, but again, this directive only pertains to me.

Again, I believe that this is retaliation for my protected activity including my disability accommodation requests, and/or my protected complaints of discrimination and/or retaliation.

Please note that this email is itself also a protected complaint of retaliation and/or discrimination.

Thank you.

Marissa Kubicki, LMSW
Forensic Social Worker
Parole Revocation Defense Unit
The Legal Aid Society
260 E. 161st Street
Bronx, NY 10451
C-646-784-1516
F-646-390-4062
*pronouns: she/her/ella*
*Justice in Every Borough*
#FreeThemAll
#NoJusticeNoPeace

---

**From:** Laura Walsh <lwalsh@legal-aid.org>
**Sent:** Thursday, January 29, 2026 5:06 PM
**To:** Marissa Kubicki <MKubicki@legal-aid.org>
**Cc:** Employee Relations <EmplRelations@legal-aid.org>; Kim Wirt <kwirt@legal-aid.org>
**Subject:** Update from Employee Relations: Accommodations

Hi Marissa,
I am following up on your request for an accommodation and in an effort to continue the interactive process. It is my understanding that you will not be providing additional medical clarification, as requested. In light of this, I have had continued conversations with your supervisory group regarding your request and based on these conversations, we would like to propose the alternative reasonable accommodation in order to manage your court coverage shifts while limiting court interaction:

1. Jackie or Rebekah will screen the VORR's for prelims and recogs sent to them by Lorraine for the cases on intake
2. Jackie/Rebekah will email you the cases that should be prioritized for assessment before 10am.
3. You will go to court at 10am to tell the prelim and/or recog attorneys assigned to the prioritized clients that they could benefit from a SW assessment and ask for their yes/no to move forward with the assessment.
4. You will complete assessments with the client that have been given a yes by the attorney.
5. After the assessment(s) is complete, you will check back in with the attorney in court to give them information about the assessment that could be useful for the hearing and ask about the timing of the hearing.
    1. If the hearing is happening in the immediate, you will stay for the hearing to be available to the Judge, PRS, attorney and client for questions and/or support.
    2. If the hearing is not happening in the immediate, you can inform the attorney that you will be available either in the court office on the 5th floor or across the street at our main office, and will come back for the hearing when it is ready to proceed either with an agreed upon time or by contact from the attorney through text/Teams/email.
3. Once all assessments and hearings have concluded for the day, you will respond to the email sent by Jackie/ Rebekah with a summary of what happened with each case and client.  (if you needed a sample of what this email would look like, Rebekah and Jackie would be happy to send something along).

To start, the accommodation is approved for 6 months. Since your medical documentation speaks to the ongoing need for an accommodation, at the end of the duration and assuming it is working for you, I would review the recommendation again with your supervisory group. As always and with any accommodation approval, if there are any issues with the accommodation prior to the end of the 6 month period, I would ask that you reach out to me to review/discuss and so we can address any of those concerns.

Please let me know if you have any questions or would like to schedule a time to review this information, I remain available. I look forward to hearing from you.

**Laura Walsh, LMSW** (she/her)
Sr. Employee Relations Specialist
The Legal Aid Society
199 Water Street
New York, NY 10038
lwalsh@legal-aid.org
Cell: 347-346-1432

**EXHIBIT Q | ATTACHED EMAIL**

# Group Supervision Recap - February 27, 2026

Original message content reproduced from provided email file; messages below retain original wording and formatting.

| | |
|---|---|
| **From:** | Jackie Quigley <jquigley@legal-aid.org> |
| **Date:** | Friday, February 27, 2026 at 03:10:21 PM EST (20:10:21 UTC) |
| **To:** | Keith Seidman <KSeidman@legal-aid.org>, Evelin Henriquez <ehenriquez@legal-aid.org>, "Jessica Gilman (e)" <jgilman@legal-aid.org>, Dara Pluchino <dpluchino@legal-aid.org> |
| **Subject:** | Group Supervision Recap |
| **Message-ID:** | <PH0PR04MB71587215D5EA0B1C88262B069C73A@PH0PR04MB7158.namprd04.prod.outlook.com> |

Hi all,

Please see below the outline for how we anticipate the pairing process to take place starting on Monday. Feel free to reach out if concerns come up and track and thoughts or questions you may have on the process as we roll it out. I have also included the link for the intake attys here:
PRDU Institutional Schedule, through DECEMBER 5, 2025.xlsx

- Lorraine will send preliminary and recognizance intake paperwork to Rebekah and Jackie the night before a shift for review.
- For the first few weeks of implementation, Rebekah and Jackie will review VORRs to identify which clients might benefit from social work intervention, based off findings in the documentation provided. We will be reviewing for mention of mental health diagnoses, substance use history, program mandates not being met, clients who are on the registry, housing concerns, clients with multiple violations, etc. Rebekah and/or Jackie will send summaries to the FSW on court coverage for review prior to connecting with intake attorneys around 10am in court. The goal is that FSWs will get comfortable with reviewing documents themselves to identify who they anticipate assessing by the end of March.
- Upon reviewing emails from Jackie and/or Rebekah (or after reviewing documents independently in the future), touch base with the intake atty around 10am in court and discuss appropriateness of meeting client together or meeting to assess client, if deemed appropriate, afterwards.
- If no needs are identified by the intake atty on prelims, follow up in the same model above with the intake atty on recogs. FSWs will still remain available for other attys and SW needs raised. FSWs will use their clinical judgement in determining how to prioritize requests if multiple clients are identified. If assistance is needed, FSWs can reach out to Jackie to discuss.
- Upon conclusion of work with intake attys, we request that a brief summary be sent via email of the outcome of communication with atty, client, or ultimate referral. This can be sent at the end of the shift or the next day and will continue even when FSWs are independently screening the VORRs.

Thank you,

Jackie Quigley, LCSW
Assistant Social Work Supervisor
Parole Revocation Defense Unit

The Legal Aid Society
260 E. 161st Street
Bronx, NY 10451
917-710-6092
Pronouns: she/her/hers