**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- X

Marissa Kubicki,

Plaintiff,

-v-

THE LEGAL AID SOCIETY, MATRIX ABSENCE MANAGEMENT, INC., CONNIE PARK, in her individual capacity, LAURA WALSH, in her individual capacity, REBEKAH ALMANZAR, in her individual capacity, JACKIE QUIGLEY, in her individual capacity, and YONZEL BURT, in her individual capacity

Defendants.

---------------------------------------------------------------- X

26-CV-3882

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO STAY DISCOVERY**

# TABLE OF CONTENTS

**Page**


INTRODUCTION ....................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND....................................................2

ARGUMENT ..........................................................................................................4

I. LEGAL STANDARD......................................................................................4

A. Plaintiff Must Satisfy the Federal Pleading Standard Before Obtaining Discovery. ....................................................................4

B. The Court Has Discretion to Stay Discovery Pending Resolution of Dispositive Motions for Good Cause Shown..............................................5

II. DEFENDANTS HAVE PRESENTED LEGITIMATE AND POTENTIALLY DISPOSITIVE GROUNDS FOR DISMISSAL THAT SHOULD BE RESOLVED BEFORE DISCOVERY PROCEEDS........................7

III. PLAINTIFF HAS ALREADY DEMONSTRATED THAT DISCOVERY WILL BE EXTRAORDINARILY BURDENSOME FOR DEFENDANTS. .........................................................................................12

IV. PLAINTIFF WILL SUFFER NO UNFAIR PREJUDICE BY A LIMITED STAY, BUT DEFENDANTS WOULD BE IRREPARABLY DAMAGED IF DISCOVERY PROCEEDS BEFORE THE DISPOSITIVE MOTIONS ARE RESOLVED..........................................................................................16

V. THE INTERESTS OF JUDICIAL ECONOMY FAVOR A STAY. ....................21

CONCLUSION......................................................................................................22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alford v. City of N.Y.*,
2012 WL 947498 (E.D.N.Y. Mar. 20, 2012) ........ 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 4, 13

*Boelter v. Hearst Commc'ns, Inc.*,
No. 15 Civ. 3934 (AT), 2016 WL 361554 (S.D.N.Y. Jan. 28, 2016) ........ 5, 9

*Borjas v. N.Y.C. Dep't of Educ.*,
No. 23-CV-10829 (OTW), 2025 WL 3227476 (S.D.N.Y. Nov. 19, 2025) ........ 7, 9

*Danger v. Nextep Funding, LLC*,
No. 18-cv-567 (SRN/LIB), 2019 WL 4917181 (D. Minn. Jan. 22, 2019) ........ 6

*Druckman v. Morgenstern*,
No. 26 Civ. 993 (PAE), 2026 WL 791896 (S.D.N.Y. Mar. 20, 2026) ........ *passim*

*Feldman v. Flood*,
176 F.R.D. 651 (M.D. Fla. 1997) ........ 6

*Gastineau v. ESPN Inc.*,
No. 25 Civ. 2041 (PAE), 2025 WL 2733155 (S.D.N.Y. Sep. 24, 2025) ........ *passim*

*HAHA Glob., Inc. v. Barclays*,
No. 1:19-cv-04749 (VEC) (SDA), 2020 WL 832341 (S.D.N.Y. Feb. 20, 2020) ........ *passim*

*Hong Leong Fin. Ltd. (Sing.) v. Pinnacle Performance Ltd.*,
297 F.R.D. 69 (S.D.N.Y. 2013) ........ 5, 8, 9

*Khan v. New York City*,
757 F. Supp. 3d 327 (S.D.N.Y. 2024) ........ 6

*Maddix v. City of New York*,
No. 25-CV-1909 (HG), Dkt. 23 (E.D.N.Y. May 29, 2025) ........ 6, 11

*Main St. Legal Servs. v. NSC*,
811 F.3d 542 (2d Cir. 2016) ........ 4

*Miller v. Brightstar Asia, Ltd.*,
No. 20-CV-4849 (GBD) (JLC), 2020 WL 7483945 (S.D.N.Y. Dec. 21, 2020) ........ 5, 11, 12, 16, 19

*N.Y. by James v. Pa. Higher Educ. Assistance Agency*,
No. 19 Civ. 9155 (ER), 2020 WL 605944 ............................................................. 12, 19

*O'Sullivan v. Deutsche Bank AG*,
No. 17 Civ. 8709 (LTS) (GWG), 2018 WL 1989585 (S.D.N.Y. Apr. 26, 2018) .............. 11, 17

*Republic of Turk. v. Christie's, Inc.*,
316 F. Supp. 3d 675 (S.D.N.Y. 2018) ............................................................. 5

*Soci, Inc. v. Yext Inc. et al.*,
No. 24-cv-4530 (RA) (OTW) (S.D.N.Y. Sep. 20, 2024) ............................................................. 9

**Other Authorities**

Fed. R. Civ. P. 8 ............................................................. *passim*

Fed. R. Civ. P. 12 ............................................................. 6

Fed. R. Civ. P. 12(b)(1) ............................................................. 2

Fed. R. Civ. P. 12(b)(6) ............................................................. *passim*

Fed. R. Civ. P. 26(a)(1)(A) ............................................................. 15

Fed. R. Civ. P. 26(c) ............................................................. 5, 6

Fed. R. Civ. P. 26(c)(1) ............................................................. 5

## INTRODUCTION

Discovery is not a right to be exercised where a plaintiff has failed to plead a legally viable case. Here, the Motions to Dismiss (ECF Docs. 59, 64) (the "MTDs") Plaintiff's Amended Complaint ("FAC") (ECF Doc. 41) filed by Defendants the Legal Aid Society ("LAS"), Matrix Absence Management, Inc. ("Matrix"), Connie Park, Laura Walsh, Rebekah Almanzar, Jackie Quigley, and Yonzel Burt (the "Individual Defendants") (collectively, the "Defendants") may dispose of this action entirely or materially narrow the parties, claims, and issues subject to discovery. *See* ECF Docs. 59 and 64. The MTDs demonstrate that Plaintiff's 119-page, 438-paragraph FAC again fails to satisfy Rule 8 and fails to state viable claims under Rule 12(b)(6). *See* ECF Docs. 60 and 65. Requiring Defendants and the Court to expend substantial resources on discovery before those threshold issues are resolved would undermine the gatekeeping purposes of Rules 8, 12(b)(1), and 12(b)(6) and impose burdens that may ultimately prove unnecessary.

That risk is no longer hypothetical. Before Defendants even had the chance to respond to the operative FAC, Plaintiff served multiple rounds of expansive and expensive document requests on LAS, Matrix, and the five Individual Defendants, as well as deposition notices on three of the Individual Defendants. The discovery seeks, among other things, communications from personal devices and accounts; workforce-wide accommodation data and associated narrative records dating back to May 2023; database fields, relationship keys, reports, query information, data dictionaries, validation materials, and system-access information; and documents and communications concerning Plaintiff, her accommodation requests, job duties, and alleged court needs. Plaintiff's requests prescribe specific collection and review methods for personal smartphones, text messages, WhatsApp messages, and personal email accounts and demand separate responses and productions from each Individual Defendant. Plaintiff has thus already

demonstrated that, absent a stay, discovery will be exceptionally broad, intrusive, costly, and time-consuming. As explained below, courts routinely hold that this is inappropriate while a motion to dismiss the complaint is pending. Defendants therefore respectfully request that the Court stay discovery pending resolution of the MTDs.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff initiated this action on May 11, 2026, asserting claims against Defendants arising under the Rehabilitation Act and the New York City Human Rights Law ("NYCHRL"). *See* Complaint (ECF Doc. 1). On August 10, 2026, Defendants LAS, Park, Walsh, Almanzar, Quigley, and Burt (the "Original Defendants") filed a Motion to Dismiss Plaintiff's Complaint in its entirety and with prejudice, pursuant to Rules 8, 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure (ECF Doc. 38). Plaintiff responded by filing a 119-page, 438-paragraph FAC (ECF Doc. 41) on August 31, 2026, adding Matrix as a Defendant and revising—but not saving—her factual, class, and legal theories. On October 14, 2026, LAS, the Individual Defendants, and Matrix filed motions to dismiss the FAC under Rules 8, 12(b)(1), and 12(b)(6). Those motions seek dismissal of the action in its entirety. At a minimum, resolution of those motions may materially narrow the claims, parties, and issues properly subject to discovery.

Plaintiff nevertheless has pressed forward with sprawling discovery before Defendants have responded to the operative pleading. On September 8, 2026, Plaintiff served a first set of requests on LAS. *See* Declaration of Attorney Grace F. Jacobson ("Jacobson Dec."), **Exhibit A**.[1]

On September 9, 2026, Defendants attempted to avoid unnecessary discovery disputes by proposing a mutual, limited exchange of core information while the MTDs were pending. Jacobson

[1] On October 8, 2026, LAS served objections to Plaintiff's September 8, 2026 Requests for Production. *See* Jacobson Dec., **Exhibit B**.

Dec., ¶ 4. Specifically, in addition to an exchange of initial disclosures, LAS proposed that the parties exchange limited document productions, which would include from LAS:

- Plaintiff's personnel file.
- Plaintiff's job description(s) and any written documents describing PRDU Forensic Social Worker duties and court coverage responsibilities.
- Documents and communications concerning Plaintiff's accommodation requests, grievance, court-coverage dispute, and leave status from November 2024 through March 2026.
- Documents sufficient to show Plaintiff's work location (office, remote, court coverage) during the relevant period.
- Documents sufficient to show Plaintiff's court-coverage assignments and attendance.
- Documents concerning the rollout or implementation of any PRDU court-coverage protocol referenced in the FAC.

*See* Jacobson Dec., **Exhibit C**.

Plaintiff rejected that proposal wholesale and made no counterproposal for a narrower or alternative exchange. Plaintiff's refusal demonstrates that Plaintiff is not seeking limited discovery necessary to preserve or develop her individual claims, but is instead attempting to impose the full burdens of merits discovery before the Court determines whether her claims are legally viable. Plaintiff's conduct since September 9 further demonstrates the same.

After rejecting LAS's proposed production of documents, Plaintiff served additional requests for production on LAS, and first sets of requests on Matrix and the Individual Defendants on September 29, 2026, as well as deposition notices for Laura Walsh (October 29, 2026), Jackie Quigley (October 30, 2026), and Rebekah Almanzar (November 2, 2026). *See* Jacobson Dec., **Exhibits D, E,** and **F**. The individual requests require each Defendant to respond separately and seek extensive electronic communications from workplace and personal sources, while the additional LAS and Matrix requests seek workforce-wide structured data, narrative records, communication histories, case notes, system information, and extraction materials concerning accommodation matters across the pleaded class period.

# ARGUMENT

## I. LEGAL STANDARD.

### A. Plaintiff Must Satisfy the Federal Pleading Standard Before Obtaining Discovery.

The Federal Rules of Civil Procedure require a plaintiff to plead a legally sufficient claim before invoking the burdens of discovery. Rule 8 requires a complaint to contain a "short and plain statement" demonstrating entitlement to relief, and Rule 12(b)(6) permits dismissal where the plaintiff fails to allege sufficient facts to state a plausible claim. The Supreme Court has made clear that these pleading requirements serve an important gatekeeping function by ensuring that litigants are not subjected to costly and burdensome discovery in cases where a complaint fails to plead a viable claim.

In *Ashcroft v. Iqbal*, the Supreme Court emphasized that Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions," and further explained that a plaintiff whose complaint fails to satisfy federal pleading standards "is not entitled to discovery, cabined or otherwise." 556 U.S. 662, 678–79, 686 (2009). The Court recognized that discovery itself imposes significant costs and burdens and that those burdens should not be imposed unless and until a plaintiff has adequately pleaded a cognizable claim for relief. *Id.* at 672, 678–79. Thus, where a defendant presents substantial arguments that a complaint fails to satisfy Rule 8 or Rule 12(b)(6), courts routinely recognize that discovery should be deferred until the pleading issues are resolved. *See, e.g.*, *Main St. Legal Servs. v. NSC*, 811 F.3d 542, 567 (2d Cir. 2016) (holding that a "plaintiff who has failed adequately to state a claim is not entitled to discovery").

These principles apply with particular force here. Until these threshold issues are resolved, discovery risks becoming an expensive exercise undertaken in service of claims that should not proceed beyond the pleading stage.

**B. The Court Has Discretion to Stay Discovery Pending Resolution of Dispositive Motions for Good Cause Shown.**

Rule 26(c) authorizes the Court, for good cause, to protect a party from undue burden or expense, including by staying discovery. Fed. R. Civ. P. 26(c)(1). The Court has "considerable discretion" in exercising that case-management authority, and the inquiry turns on "the particular circumstances and posture of each case." *Hong Leong Fin. Ltd. (Sing.) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72 (S.D.N.Y. 2013) (quoting *Alford v. City of N.Y.*, 2012 WL 947498, at *1 (E.D.N.Y. Mar. 20, 2012); *Republic of Turk. v. Christie's, Inc.*, 316 F. Supp. 3d 675, 677 (S.D.N.Y. 2018). In this District, courts principally consider: (1) the strength of the pending dispositive motion, including whether it presents "substantial arguments for dismissal" or otherwise makes a strong showing that the claims are unmeritorious; (2) the breadth of the discovery sought and the burden of responding; and (3) the risk of unfair prejudice to the party opposing the stay. *Hong Leong*, 297 F.R.D. at 72; *Miller v. Brightstar Asia, Ltd.*, No. 20-CV-4849 (GBD) (JLC), 2020 WL 7483945, at *2 (S.D.N.Y. Dec. 21, 2020); *Boelter v. Hearst Commc'ns, Inc.*, No. 15 Civ. 3934 (AT), 2016 WL 361554, at *4 (S.D.N.Y. Jan. 28, 2016). These considerations are not rigid elements. They implement Rule 26(c)'s practical question: whether the likely cost and disruption of immediate discovery are justified before the Court resolves a motion capable of eliminating or materially narrowing the case. *See Republic of Turk.*, 316 F. Supp. 3d at 677.

The first consideration does not require the Court to adjudicate the MTDs, predict their ultimate disposition, or express a view that Defendants are more likely than not to prevail. The governing Southern District authorities ask instead whether the motions present "substantial arguments for dismissal," *Hong Leong*, 297 F.R.D. at 72, and direct the Court to consider the "strength of the underlying motion" as one part of the overall good-cause analysis, *Boelter*, 2016 WL 361554, at *4; *see also Republic of Turk.*, 316 F. Supp. 3d at 677. That formulation calls for

a limited threshold assessment, not an advance decision on Rule 12. Indeed, a court may find the merits sufficiently substantial to justify a stay even when it is neither necessary nor appropriate to resolve the contested legal issues on the discovery motion.

Recent authority within the Second Circuit illustrates the distinction. In *Maddix v. City of New York*, No. 25-CV-1909 (HG), Dkt. 23, at 4–6 (E.D.N.Y. May 29, 2025), the court declined as "premature" to "wade into" a "complex and hotly contested issue in the context of a discovery motion and without the benefit of full briefing." It nevertheless concluded that defendants had raised a "substantial argument" for dismissal and stayed discovery. *Id.* That is the appropriate inquiry here: whether Defendants have advanced serious, potentially dispositive grounds that make immediate, burdensome discovery inefficient—not whether this Court should decide those grounds before the District Judge receives full briefing on the MTDs. *See Khan v. New York City*, 757 F. Supp. 3d 327, 334–35 (S.D.N.Y. 2024) (assessing whether dismissal arguments were at least "colorable" while expressly taking no position on the motion's ultimate outcome); *Feldman v. Flood*, 176 F.R.D. 651, 652–53 (M.D. Fla. 1997) (explaining that it is not necessary "in effect, [to] decide the motion to dismiss" when determining whether discovery should be stayed); *Danger v. Nextep Funding, LLC*, No. 18-cv-567 (SRN/LIB), 2019 WL 4917181, at *3–4 (D. Minn. Jan. 22, 2019) (explaining that the court need not express an opinion on the ultimate merits when taking a limited "peek" at the motion).

That limited inquiry also preserves the proper allocation of decision-making in this case. The Magistrate Judge can determine whether the MTDs are substantial enough to warrant orderly sequencing of discovery without resolving the Rule 8 and Rule 12(b)(6) issues committed to the District Judge. The remaining considerations then supply the case-management judgment Rule 26(c) requires: Plaintiff has demanded unusually broad, intrusive, and immediately costly

discovery; the MTDs could eliminate the action or sharply reduce its proper scope; and a temporary stay will cause no concrete prejudice. Where those considerations converge, courts in this District routinely stay discovery. *See, e.g.*, *Borjas v. N.Y.C. Dep't of Educ.*, No. 23-CV-10829 (OTW), 2025 WL 3227476 (S.D.N.Y. Nov. 19, 2025); *Gastineau v. ESPN Inc.*, No. 25 Civ. 2041 (PAE), 2025 WL 2733155 (S.D.N.Y. Sep. 24, 2025); *HAHA Glob., Inc. v. Barclays*, No. 1:19-cv-04749 (VEC) (SDA), 2020 WL 832341 (S.D.N.Y. Feb. 20, 2020); *Druckman v. Morgenstern*, No. 26 Civ. 993 (PAE), 2026 WL 791896 (S.D.N.Y. Mar. 20, 2026).

The showing here comfortably satisfies that standard. Defendants do not ask this Court to prejudge the MTDs. They ask only that the Court recognize that those motions identify multiple substantial and potentially dispositive defects, while Plaintiff's pending demands would immediately trigger personal-device collection, workforce-wide data extraction, separate productions from five individuals, and party depositions. Because the motions may eliminate the need for that discovery entirely, and at minimum may redefine the claims, parties, custodians, systems, time periods, and putative-class issues properly subject to discovery, good cause exists to preserve the status quo until the District Judge determines the operative scope of the case.

## II. DEFENDANTS HAVE PRESENTED LEGITIMATE AND POTENTIALLY DISPOSITIVE GROUNDS FOR DISMISSAL THAT SHOULD BE RESOLVED BEFORE DISCOVERY PROCEEDS.

Defendants have raised viable, potentially dispositive challenges to the FAC. Their MTDs present multiple independent grounds for dismissal. First, Plaintiff's FAC continues to violate Rule 8. Although Plaintiff had notice of that defect through the original motion to dismiss and an opportunity to correct it, she filed another pleading spanning 119 pages and 438 paragraphs, filled with repetitive factual narration, legal argument, class-certification allegations, and purported examples involving nonparties. Second, LAS's motion demonstrates that all five Rehabilitation Act claims fail under Rule 12(b)(6). Counts III, IV, and V are not cognizable as freestanding

Rehabilitation Act causes of action, and Plaintiff's retaliation and failure to accommodate claims fail under her own allegations. Third, because the federal claims must be dismissed, the Court should also decline supplemental jurisdiction over the remaining NYCHRL claims, which also independently fail to state a claim upon which relief can be granted. The other Defendants separately sought dismissal of the claims asserted against them for failing to state a viable claim under Rule 12(b)(6).

The MTDs therefore have the potential to eliminate the action entirely. Even if the Court does not dismiss every claim, its rulings are likely to determine which defendants, substantive theories, putative classes, time periods, and alleged practices remain relevant. Nor is this a case where discovery would remain unchanged regardless of the Court's ruling. If the Court dismisses the Rehabilitation Act claims and declines supplemental jurisdiction, discovery disappears altogether. If the Court dismisses some Defendants, those individuals avoid party depositions, document collection, and ESI obligations. If the Court dismisses some or all class allegations, workforce-wide and class-related discovery would be substantially curtailed. And if the Court narrows Plaintiff's theories of liability, discovery necessarily narrows with them. Thus, even a ruling with a partial dismissal will materially affect the proper scope of discovery.

Simply put, proceeding now with individual, class- or workforce-wide, database, personal-device, and deposition discovery would require the parties to litigate the proper scope of discovery before the Court has determined the scope of the case itself. Courts have repeatedly recognized that discovery is particularly inappropriate where a pending motion may eliminate the action entirely or substantially narrow it. In *Hong Leong*, for example, the court stayed discovery because a motion supported by "substantial arguments for dismissal" would otherwise subject defendants to significant discovery burdens unnecessarily. *Hong Leong Fin. Ltd. (Sing.) v. Pinnacle*

*Performance Ltd.*, 297 F.R.D. 69, 73–75 (S.D.N.Y. 2013). Likewise, in *Boelter*, the court stayed discovery where the motion presented substantial grounds for dismissal and proceeding with discovery would impose substantial burdens before the Court determined whether the complaint stated a viable claim. *Boelter v. Hearst Commc'ns, Inc.*, No. 15 Civ. 3934 (AT), 2016 WL 361554, at *5–6 (S.D.N.Y. Jan. 28, 2016). The same concern is present here. Like the defendant in *Boelter*, Defendants face expansive discovery requests before the Court determines whether Plaintiff has stated a viable claim. *Id.* Plaintiff has already launched expansive fact, ESI, workforce-wide, and deposition discovery before the Court has determined whether any of her claims may proceed.

Where, as here, the pending motion demonstrates substantial defects in the plaintiff's pleading, courts routinely conclude that a temporary stay promotes efficiency and conserves both private and judicial resources. For example, in *Borjas v. N.Y.C. Dep't. of Educ.*, this Court granted the defendants' motion to stay discovery pending the court's decision on the defendants' motion to dismiss plaintiff's complaint. 2025 WL 3227476 at *2. The Court reasoned that, "because the adjudication of the pending motion to dismiss, may obviate or limit the need for burdensome discovery or motion practice," the plaintiff failed to demonstrate "how *she* would be prejudiced by a stay," and discovery would impose an "undue expense" on defendants, a stay of discovery was warranted. *Id.* *1-2; *see also* Order granting 63 Letter Motion to Stay, *Soci, Inc. v. Yext Inc. et al.*, No. 24-cv-4530 (RA) (OTW) (S.D.N.Y. Sep. 20, 2024) (granting defendants' motion to stay discovery pending court's decision on their motion to dismiss plaintiff's complaint).

Similarly, in *HAHA Global, Inc. v. Barclays*, the court entered an order staying discovery on the grounds that the defendants "raised viable grounds for dismissing" the plaintiff's complaint, including that it "fail[ed] to meet even the minimal pleading standards of Federal Rule of Civil Procedure 8," that the plaintiff lacked standing, and that the complaint failed to state a claim upon

which relief could be granted. No. 1:19-cv-04749 (VEC) (SDA), 2020 WL 832341, at *1–2(S.D.N.Y. Feb. 20, 2020). The *HAHA Global* court further reasoned that "given the large number of [d]efendants and the large number of claims asserted by [the p]laintiff, discovery in th[e] action [was] likely to be burdensome" and that because "the disposition of the dismissal motions may significantly narrow, if not eliminate, the issues remaining in th[e] case," then "proceeding with discovery while the motion [was] pending would waste the parties' resources and would constitute an undue burden on" the defendants. *Id.* Finally, the court noted that the plaintiff would not be prejudiced because the defendants' motion to dismiss had already been filed and thus "any stay would last briefly." *Id.*

In *Gastineau v. ESPN Inc.*, the court granted the defendants' motion to stay discovery because the defendants "made a substantial showing that [the plaintiff's] claims [were] unmeritorious" in their Rule 12(b)(6) motion to dismiss, because "the scope of anticipated discovery and the burdens it may present favor[ed] a stay[,]" and because the plaintiff had "not shown significant risk of unfair prejudice from a stay keyed to the resolution of the motion to dismiss." No. 25 Civ. 2041 (PAE), 2025 WL 2733155 at *1–2 (S.D.N.Y. Sep. 24, 2025). Because defendants' motion to dismiss had "the capacity to prune substantially the volume of worthy discovery," the court further reasoned that "a stay may meaningfully conserve the parties' resources" and thus stayed all discovery pending the resolution of the motion to dismiss. *Id.* at *2–3.

Moreover, in *Druckman v. Morgenstern*, the court stayed all discovery pending its decision on the defendants' motion to dismiss because the defendants "made a substantial showing that at least several of the 10 causes of action in the Complaint fail[ed] to state a claim, under Rule 12(b)(6)." No. 26 Civ. 993 (PAE), 2026 WL 791896, at *1 (S.D.N.Y. Mar. 20, 2026). The court

found that "the scope of anticipated discovery and the burdens it would entail favor[ed] a stay" and that, even if some claims survived, the motion to dismiss would likely result in a significant reduction of the scope of discovery. *Id.* at *2. Moreover, the plaintiff had "not shown a risk of unfair prejudice from a relatively brief stay pending resolution of the motions" and the court explained that "the mere passage of time 'cannot itself constitute prejudice sufficient to defeat a motion to stay discovery.'" *Id.* (quoting *O'Sullivan v. Deutsche Bank AG*, No. 17 Civ. 8709 (LTS) (GWG), 2018 WL 1989585, at *9 (S.D.N.Y. Apr. 26, 2018); *see also Miller*, 2020 WL 7483945, at *2–5 (granting the defendant's motion to stay discovery pending its motion to dismiss plaintiff's complaint because the defendant had shown that the plaintiff's claims likely lacked merit, that discovery would be burdensome, and that the plaintiff would not be unfairly prejudiced by the stay).

Here, as in *Hong Leong*, *Boelter*, *Republic of Turkey*, *HAHA Global*, *Gastineau*, and *Druckman*, Defendants have raised threshold pleading defects capable of eliminating the action entirely or substantially reducing the volume of appropriate discovery. The FAC's continued noncompliance with Rule 8 independently supports dismissal. The Rule 12(b)(6) arguments likewise attack the viability of every federal claim and, if successful, will require the Court to determine whether to retain jurisdiction over the remaining NYCHRL claims, each of which also independently fails under Rule 12(b)(6). These are not peripheral challenges that would leave discovery substantially unchanged. They go to whether the action may proceed at all and, if so, on what claims and against which parties. However, as in *Maddix*, the Court need not decide the ultimate merits of Defendants' MTDs in order to conclude that they present substantial, potentially dispositive issues warranting a temporary stay. *Maddix v. City of New York*, 25-CV-01909 (HG), 2025 WL 1530648, at *2–3. Rather, the relevant question is whether those arguments are

sufficiently substantial that requiring discovery to proceed before they are resolved risks imposing unnecessary burdens on the parties and the Court. *See HAHA Glob.*, 2020 WL 832341, at *1; *Gastineau*, 2025 WL 2733155, at *1–3; *Druckman*, 2026 WL 791896, at *1–2.

Plaintiff's own allegations further support dismissal. As LAS explains in its Motion, Plaintiff alleges that LAS provided multiple accommodations; engaged in an extended accommodation process involving Human Resources, Matrix, Plaintiff's union representatives, and her healthcare providers; and ultimately proposed an accommodation that she describes as substantially similar to the one she requested. Plaintiff's remaining allegations do not state viable freestanding Rehabilitation Act claims for interference, medical inquiries, or qualification standards; do not establish retaliation; and do not establish that LAS refused to provide a reasonable accommodation.

Because the MTDs identify multiple independent grounds for dismissal and, at a minimum, raise viable issues that may materially narrow the claims, parties, and issues remaining for adjudication, proceeding with discovery now would risk expending substantial resources on matters that may become irrelevant or disappear from the case entirely. A stay is therefore appropriate.

## III. PLAINTIFF HAS ALREADY DEMONSTRATED THAT DISCOVERY WILL BE EXTRAORDINARILY BURDENSOME FOR DEFENDANTS.

The second factor—the burden and cost of the probable discovery—also weighs strongly in favor of a stay. Courts in this District routinely grant stays where anticipated discovery would impose substantial costs and burdens that may prove unnecessary if a pending motion to dismiss is granted. *See, e.g.*, *Miller*, 2020 WL 7483945, at *5; *N.Y. by James v. Pa. Higher Educ. Assistance Agency*, No. 19 Civ. 9155 (ER), 2020 WL 605944, at *1–2 (granting the defendant's motion to stay discovery pending its motion to dismiss due to the "extensive document discovery"

requested that would cost "hundreds of thousands of dollars" and because the defendant had shown that the plaintiff's claim lacked merit and the plaintiff had not shown that it would be prejudiced by the stay); *Gastineau v. ESPN, Inc.*, No. 25 Civ. 2041 (PAE), 2025 WL 2733155, at *2 (S.D.N.Y. Sep. 24, 2025) (finding that expected "interrogatories and document-production demands would be "costly and time-consuming" and thus granting the defendant's motion to stay discovery pending its motion to dismiss).

This is no longer a case in which Defendants merely anticipate that discovery may prove costly. Before Defendants responded to the operative FAC, Plaintiff served multiple sets of document requests on LAS, a separate set on Matrix, requests directed to each of the five Individual Defendants, and deposition notices for three Individual Defendants. *See* Jacobson Dec., **Exhibits A, D, E,** and **F**. Together, those demands seek expansive individual, operational, personnel, medical, contractual, electronic-communications, and structured-data discovery while the legal viability and scope of the action remain unresolved. This discovery was not served after the pleadings closed or after the Court determined that Plaintiff had stated a viable claim. Rather, Plaintiff served these requests before Defendants even responded to the operative FAC and before the Court had an opportunity to consider the threshold pleading issues raised in Defendants' MTDs. That procedural posture strongly favors a stay because it illustrates the precise concern identified in *Iqbal*: subjecting defendants to extensive discovery before determining whether Plaintiff has pleaded a legally cognizable claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

Plaintiff's requests to the Individual Defendants are particularly intrusive. Each Individual Defendant must respond separately and search for electronic communications concerning Plaintiff, her disabilities, accommodation requests, position, job duties, purported essential functions, and alleged court needs. *See* Jacobson Dec., **Exhibit E**. The requests expressly reach personal phones,

personal email accounts, and personal iMessage, WhatsApp, Signal, and similar platforms. *Id.* They prescribe collection protocols involving tools such as iMazing, Hearsay, Google Takeout, Outlook PST exports, and third-party e-discovery platforms, and state that an Individual Defendant's election to use a more expensive collection method will be relevant to any later proportionality objection. *Id.* Plaintiff thus seeks not only workplace documents but forensic-style collection and attorney review of personal devices and accounts belonging to five individuals. Three of those same individuals have also been noticed for depositions, adding preparation and testimony burdens before the Court determines whether they properly remain parties. Plaintiff selected deposition dates which fall after filing Plaintiff's summary judgment motion but before opposition briefs on the MTDs are due, thereby attempting to compel party depositions during the narrow window in which the legal sufficiency of the FAC remains pending before the District Court.

Plaintiff's new requests to LAS and Matrix are broader still. They seek structured accommodation data and associated narrative fields, communication histories, contact logs, case notes, status histories, employee and decisionmaker fields, asserted essential-function fields, and records concerning alleged post-request job-duty changes for current and former New York City employees across the pleaded class period. *See* Jacobson Dec., **Exhibit D**. Plaintiff demands fielded Excel or CSV productions preserving relationship keys, status distinctions, coded values, dates, time zones, null values, and separately stored events. *Id.* Plaintiff also seeks data dictionaries, field maps, report definitions, query parameters, filters, row counts, source coverage, crosswalks, validation records, report menus, user guidance, account entitlements, and information concerning LAS's ability to access Matrix records. *Id.* The requests further require that responsive

narrative information be produced without export-induced truncation and linked to underlying cases, items, certifications, events, and requesters. *Id.*

Compliance would require coordination among counsel, Human Resources, Employee Relations, information-technology personnel, database personnel, Matrix personnel, and potentially third-party vendors. It also would require extensive review for privilege, confidentiality, employee privacy, medical information, and data-integrity concerns. These demands are not confined to Plaintiff's individual accommodation dispute. *See* Jacobson Dec., ¶ 8. They contemplate workforce-wide extraction, cover current and former employees, reach accommodation matters dating back to May 11, 2023, with an additional lookback period, and reserve broader individual and class discovery. *See* Jacobson Dec., **Exhibit D**. The combined burden would be substantial even if the entire case were permitted to proceed. It is particularly inappropriate now, before the Court has determined whether any federal claim survives, whether supplemental jurisdiction will be retained, whether Matrix or the Individual Defendants remain parties, or whether any putative class theory remains potentially viable.

Defendants attempted to avoid unnecessary motion practice and expense. They proposed a mutual exchange of Rule 26(a)(1)(A) disclosures and limited, targeted documents concerning Plaintiff's own accommodation request, asserted medical restrictions and causation, personnel file, job duties, work locations, court-coverage assignments, and the PRDU protocol identified in the FAC. *See* Jacobson Dec., **Exhibit C**. Plaintiff rejected that proposal and instead pursued broader merits, personal-device, deposition, and workforce-wide discovery. *See* Jacobson Dec., **Exhibits A, C, D, E, and F**. Having rejected a focused means of obtaining core information while the MTDs are pending, Plaintiff should not be permitted to force Defendants to incur the substantially greater burdens reflected in her current demands.

The pending MTDs may eliminate the need for this discovery altogether. Even if some claims survive, the Court's rulings are likely to materially narrow the appropriate custodians, systems, time periods, classes,[2] claims, and discovery subjects. Proceeding now would also invite immediate disputes concerning personal-device collection, deposition sequencing, class-wide discovery, database extraction, control over Matrix records, production format, privilege, confidentiality, employee privacy, proportionality, and phasing. Staying discovery will avoid those potentially unnecessary and costly disputes and ensure that any discovery proceeds only after the Court defines the claims, parties, and issues remaining in the action. The demonstrated expense and complexity of multi-custodian electronic discovery strongly favor a stay. *See, e.g., Miller*, 2020 WL 7483945, at *5 (noting "a stay would conserve both judicial and party resources" and could simplify discovery by limiting it to potentially viable claims); *HAHA Glob. v. Barclays*, No. 1:19-cv-04749 (VEC) (SDA), 2020 WL 832341, at *1 (S.D.N.Y. Feb. 20, 2020) (finding that proceeding with discovery while dismissal motions were pending would waste resources and impose an undue burden on defendants); *Gastineau v. ESPN, Inc.*, No. 25 Civ. 2041 (PAE), 2025 WL 2733155, at *2 (S.D.N.Y. Sep. 24, 2025) (finding a stay appropriate because motion to dismiss had the capacity to substantially reduce the scope of discovery).

## IV. PLAINTIFF WILL SUFFER NO UNFAIR PREJUDICE BY A LIMITED STAY, BUT DEFENDANTS WOULD BE IRREPARABLY DAMAGED IF DISCOVERY PROCEEDS BEFORE THE DISPOSITIVE MOTIONS ARE RESOLVED.

The third factor likewise favors a stay because Plaintiff cannot demonstrate any meaningful prejudice from awaiting resolution of Defendants' MTDs. To defeat a stay, a plaintiff must show more than the ordinary delay that accompanies motion practice; rather, courts look for a concrete

[2] Defendants reserve the right to seek phased or bifurcated discovery, including class-related discovery, if discovery becomes necessary following resolution of Defendants' Motion to Dismiss or the present Motion to Stay Discovery.

risk of evidentiary loss, tactical disadvantage, or other specific harm. *See Gastineau*, 2025 WL 2733155, at *2; *O'Sullivan v. Deutsche Bank AG*, No. 17 Civ. 8709 (LTS) (GWG), 2018 WL 1989585, at *9 (S.D.N.Y. Apr. 26, 2018). General assertions that discovery should begin immediately or that evidence may become more difficult to obtain with time are insufficient. *See, e.g.*, *Gastineau*, 2025 WL 2733155, at *2–3 (describing plaintiff's claim that "[d]elaying discovery would hinder [plaintiff's] ability to effectively prosecute his case and could lead to the loss of evidence over time" as "general and unsubstantiated," and thus "not credit[ing] it" and granting the defendants' motion to stay discovery).

Plaintiff cannot demonstrate any meaningful prejudice from a temporary stay pending resolution of Defendants' MTDs. The requested stay is limited in duration, lasting only until the Court resolves a fully briefed dispositive motion that challenges the viability of Plaintiff's FAC in its entirety. Courts in this District routinely hold that the ordinary delay associated with awaiting a ruling on a motion to dismiss does not constitute undue prejudice. At any rate, "general and unsubstantiated" claims that delaying discovery will harm a plaintiff's case, if Plaintiff were to so allege, do not carry much weight. *See, e.g.*, *Gastineau*, 2025 WL 2733155, at *2–3 (describing plaintiff's claim that "[d]elaying discovery would hinder [plaintiff's] ability to effectively prosecute his case and could lead to the loss of evidence over time" as "general and unsubstantiated," and thus "not credit[ing] it" and granting the defendants' motion to stay discovery). And, this Court has held that "the passage of a reasonable amount of time, without any other form of attendant prejudice, cannot itself constitute prejudice sufficient to defeat a motion to stay discovery. Otherwise, stays of discovery would never be granted given that some delay is inherent in any stay." *O'Sullivan*, 2018 WL 1989585, at *9 (granting defendants' motion to stay discovery pending their motions to dismiss). Any postponement of discovery is therefore

outweighed by the substantial efficiencies gained from first determining whether Plaintiff has asserted claims that are legally cognizable.

Nor does Plaintiff's alleged medical condition establish the type of concrete prejudice necessary to defeat a stay. Plaintiff previously argued that discovery should proceed because Defendants' alleged conduct contributed to the worsening of her condition and because she remains on extended leave. *See* ECF Doc. 36, p. 3. But Plaintiff does not identify any imminent employment decision, pending accommodation determination, or other time-sensitive event that requires immediate discovery. To the contrary, Plaintiff alleges that she remains employed by LAS, remains on approved leave, and anticipates returning to work on approximately December 17, 2026. *See* FAC, ¶ 30. Further, Plaintiff admits that LAS has offered an accommodation that Plaintiff acknowledges was substantially similar to the very one she requested in November 2025. *Id.*, ¶¶ 43, 127, 149, 224-225, 236. This alone demonstrates that there is no urgency in expediting discovery. Moreover, the claims at issue concern events that largely occurred in 2025 and early 2026, and Plaintiff has already represented that she possesses sufficient evidence to seek partial summary judgment before taking any discovery. Under these circumstances, a limited stay pending resolution of the MTDs will not impair Plaintiff's ability to pursue her claims if any survive, nor will it subject Plaintiff to any risk, nor prevent Plaintiff from obtaining relief regarding any ongoing issue requiring immediate judicial intervention.

Plaintiff's own litigation strategy further confirms the absence of prejudice. Plaintiff has already filed a motion for partial summary judgment (*see* ECF Doc. 68) before taking a single deposition, receiving a single document production, or otherwise obtaining merits discovery from Defendants. In doing so, Plaintiff necessarily represents that she already possesses sufficient evidence to seek judgment on at least some of her claims. Having taken the position that she can

move for summary judgment based on the current record, Plaintiff cannot plausibly contend that a temporary stay of discovery pending resolution of Defendants' MTDs will meaningfully impair her ability to prosecute this case. To the contrary, Plaintiff's filing confirms that the information she presently possesses is sufficient for her to advance the merits arguments she believes support her claims. Indeed, during a September 2026 meet and confer with Defendants' counsel, Plaintiff's counsel expressly stated: "I don't need any discovery to move for summary judgment." *See* Jacobson Dec., ¶ 9.

The decisions granting stays in *Gastineau*, *Druckman*, *HAHA Global*, *Miller*, and *Pennsylvania Higher Education Assistance Agency* all found little or no prejudice where, as here, a motion to dismiss was pending and any stay would be limited to the time required for the Court to resolve that motion. *See Gastineau*, 2025 WL 2733155, at *2; *Druckman*, 2026 WL 791896, at *2; *HAHA Glob.*, 2020 WL 832341, at *1; *Miller*, 2020 WL 7483945, at *5; *Pa. Higher Educ. Assistance Agency*, 2020 WL 605944, at *2. That conclusion is particularly appropriate here, where Plaintiff has already elected to seek dispositive relief before receiving *any* discovery.

Plaintiff's recent discovery activity reinforces the absence of unfair prejudice. Defendants offered to exchange targeted information concerning Plaintiff's own claims while the MTDs were pending (*see* Jacobson Dec., **Exhibit C**), but Plaintiff declined and instead served additional workforce-wide data requests, personal-device requests, and deposition notices. Plaintiff cannot establish unfair prejudice from a temporary stay merely by creating expansive discovery obligations before the Court has resolved whether the claims supporting those obligations are viable. The parties' continuing preservation duties protect against any loss of evidence, and any discovery ultimately permitted can proceed after the Court identifies the claims and parties that remain.

The converse is also true: Defendants will suffer significant and irreversible prejudice if discovery proceeds now. Plaintiff has served expansive document requests directed to LAS, Matrix, and each Individual Defendant, including demands that reach personal devices, personal email accounts, text messages, and third-party communication platforms. *See* Jacobson Dec., **Exhibits A, D, and E**. Plaintiff has also noticed depositions of three Individual Defendants. *Id.* **Exhibit F**. Complying with those requests would require Defendants immediately to incur substantial collection, review, privilege, confidentiality, and preparation costs before the Court determines whether any of the claims supporting that discovery may proceed at all.

More importantly, those burdens cannot be undone. If the Court dismisses some or all of Plaintiff's claims, declines supplemental jurisdiction over the NYCHRL claims, dismisses certain Defendants, or otherwise narrows the scope of the action, Defendants will not be able to recover the time and expense devoted to collecting data, reviewing documents, preparing witnesses, and defending depositions that never should have occurred. Nor can Defendants recapture the disruption caused by diverting Human Resources personnel, supervisors, managers, and Matrix personnel from their ordinary responsibilities to participate in discovery that may ultimately prove unnecessary. That asymmetry strongly favors a temporary stay while the Court determines the proper scope of this litigation.

Indeed, proceeding with discovery before resolution of the MTDs risks imposing unnecessary costs and obligations on all parties without advancing the ultimate resolution of the case. If the Court grants the Motion, Plaintiff will be in no worse position than if discovery had proceeded because the action will be dismissed and discovery would never have been warranted in the first instance. And even if some claims survive, Plaintiff will suffer no cognizable harm from a brief delay while the Court clarifies which claims, parties, and issues remain in the case.

To the contrary, allowing discovery to proceed only after the Court has ruled on the pleadings will ensure that any discovery is appropriately tailored to the claims that survive, thereby promoting a more efficient and focused litigation process. Under these circumstances, the minimal delay attendant to a stay does not outweigh the considerable burdens and inefficiencies that would result from proceeding with discovery now.

## V. THE INTERESTS OF JUDICIAL ECONOMY FAVOR A STAY.

The interests of judicial economy strongly favor a stay because Plaintiff's discovery demands are already poised to generate significant disputes that may never need to be resolved. The MTDs raise threshold issues concerning Rule 8, the legal sufficiency of every federal claim, supplemental jurisdiction over the NYCHRL claims, and the viability of the claims against the Defendants. Meanwhile, Plaintiff seeks depositions of three Individual Defendants, collection from personal devices and accounts, broad data extraction from LAS and Matrix systems, extensive narrative records, and materials explaining database structure, query methodology, linkage, access, and validation. Unless discovery is stayed, the Court may be required to address disputes concerning custodians, personal devices, collection protocols, production formats, class-wide scope, proportionality, confidentiality, privacy, privilege, phasing, and control over vendor-held material before determining whether those issues remain relevant.

A stay will allow the Court to address discovery, if necessary, within the framework established by its rulings on the MTDs. Should the Court dismiss some or all claims, the parties' discovery obligations may be eliminated entirely or significantly reduced. Deferring discovery until after the Court determines the operative scope of the case will ensure that any future discovery is appropriately focused, proportional to the needs of the litigation, and directed only to claims and parties that remain. *See, e.g.*, *HAHA Glob., Inc. v. Barclays*, No. 1:19-cv-04749 (VEC) (SDA), 2020 WL 832341, at *1–2 (S.D.N.Y. Feb. 20, 2020); *Druckman v. Morgenstern*, No. 26 Civ. 993

(PAE), 2026 WL 791896, at *1–2 (S.D.N.Y. Mar. 20, 2026). Under these circumstances, a temporary stay serves the interests of efficiency, economy, and sound case management.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter an Order staying all discovery—including the depositions noticed by Plaintiff for Walsh, Quigley, and Almanzar—until the Court resolves Defendants' pending MTDs.

Dated: New York, New York
October 15, 2026

**DORSEY & WHITNEY LLP**

By /s/ Briana Al Taqatqa

NICHOLAS J. PAPPAS
pappas.nicholas@dorsey.com
BRIANA AL TAQATQA
altaqatqa.briana@dorsey.com
GRACE F. JACOBSON
jacobson.grace@dorsey.com
KRISTA BOLLES
bolles.krista@dorsey.com
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 340-2600

Attorneys for Defendants THE LEGAL AID SOCIETY, MATRIX ABSENCE MANAGEMENT, INC., CONNIE PARK, LAURA WALSH, REBEKAH ALMANZAR, JACKIE QUIGLEY, and YONZEL BURT

**CERTIFICATE OF COMPLIANCE**
**WITH TYPEFACE AND WORD-COUNT LIMITATIONS**

I, Briana Al Taqatqa, counsel for Defendants The Legal Aid Society, Matrix Absence Management, Inc., Connie Park, Laura Walsh, Rebekah Almanzar, Jackie Quigley, and Yonzel Burt, certify, pursuant to Local Civil Rule 7.1(b)-(c), that the foregoing memorandum in support of Defendants' Motion to Stay Discovery is double-spaced, has one-inch margins, has a typeface of 12 points or more, and contains 6,459 words.

/s/ Briana Al Taqatqa
BRIANA AL TAQATQA

October 15, 2026