**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MARISSA KUBICKI, individually and on behalf of all others similarly situated,

Plaintiff,

v.

THE LEGAL AID SOCIETY, MATRIX ABSENCE MANAGEMENT, INC., CONNIE PARK, in her individual capacity, LAURA WALSH, in her individual capacity, REBEKAH ALMANZAR, in her individual capacity, JACKIE QUIGLEY, in her individual capacity, and YONZEL BURT, in her individual capacity,

Defendants.

Case No. 1:26-cv-03882-VSB-OTW

**PLAINTIFF'S CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT**

# TABLE OF CONTENTS


Page

TABLE OF AUTHORITIES ..... iii

STATEMENT OF FACTS ..... 1

- A. For more than two years, Plaintiff covered court from LAS offices, entering whenever she was needed ..... 1
- B. In August 2025, Plaintiff's supervisors began requiring an hour in court without any identified need ..... 2
- C. Plaintiff asked to wait in her office, not the courthouse, while immunosuppressed ..... 3
- D. LAS withheld interim and recast the one-hour directive as a job function of up to seven hours ..... 5
- E. LAS and Matrix required Plaintiff's physician to answer questions that assumed that requirement ..... 7
- F. Park refused interim protection in writing and ordered Plaintiff to court the next morning ..... 9
- G. After Plaintiff announced leave, LAS proposed the office-based methods it had refused ..... 11
- H. Plaintiff's health declined sharply, and she remains on reduced-pay leave ..... 14
- I. After Plaintiff sued, Matrix threatened closure and discipline over forms it did not need ..... 15
- J. Other LAS employees encountered the same practices ..... 16

STANDARD OF REVIEW ..... 17

ARGUMENT ..... 18

- I. PLAINTIFF HAS PLED LEGALLY PLAUSIBLE CLAIMS AGAINST LAS ..... 18
  - A. Count I — Rehabilitation Act Failure to Reasonably Accommodate ..... 18
    - 1. Recent appellate decisions and their applications support accommodation liability ..... 19
      - a. *Cangro*'s pleading standard is satisfied by successful accommodated work ..... 19
      - b. *Raymond* highlights that an accommodation must be effective ..... 20
      - c. *Tudor* preserves accommodation claims despite continued performance and partial assistance ..... 22
    - 2. Actual duties and practices define essential functions ..... 23
    - 3. Both express refusal and unreasonable delay independently support Count I ..... 24
    - 4. LAS's deliberate indifference is plausibly pleaded if necessary ..... 28
  - B. Count II — Rehabilitation Act Retaliation ..... 29

C. Count III — Rehabilitation Act Interference, Coercion, Threats, and Intimidation ........ 34
D. Count IV — Rehabilitation Act Medical Inquiry Violation ........ 35
E. Count V — Rehabilitation Act Qualification Standards and Methods of Administration ........ 37
F. Count VI — NYCHRL Failure to Provide Reasonable Accommodation ........ 38
1. The pleaded facts independently establish plausible City-law liability ........ 38
2. Recent appellate authority supports the NYCHRL accommodation claim ........ 39
3. City law independently reaches unjustified accommodation delay ........ 40
G. Count VII — NYCHRL Disability Discrimination, Less Well Treatment, and Harassment ........ 41
H. Count VIII — NYCHRL Retaliation ........ 42
I. Count IX — NYCHRL Failure to Engage in a Cooperative Dialogue........ 44
J. Count X — NYCHRL Interference, Coercion, Intimidation, Threats, and Attempts ........ 46
K. Defendants Do Not Challenge the Legal Plausibility of the Class Allegations ........ 47
L. Survival of Federal Accommodation or Retaliation Preserves Jurisdiction Over All Related NYCHRL Claims ........ 48
M. Any Curable Deficiency Warrants Targeted Amendment ........ 48
N. The FAC Gives Fair Notice and Does Not Warrant Dismissal ........ 49
II. PLAINTIFF'S CLAIMS AGAINST MATRIX AND THE INDIVIDUAL DEFENDANTS SURVIVE DISMISSAL ........ 50
Coverage and personal participation ........ 50
A. Count VI — Failure to Accommodate (Matrix, Park, Walsh, Quigley, Almanzar) ........ 51
B. Count VII — Disability Discrimination (Park, Walsh, Quigley, Almanzar) ........ 52
C. Count VIII — Retaliation (Park, Walsh, Quigley, Almanzar) ........ 52
D. Count IX — Cooperative Dialogue (Matrix, Park, Walsh) ........ 53
E. Count X — Interference and Threats (Matrix, Park, Walsh, Quigley, Almanzar) ........ 54
F. Count XI — Aiding and Abetting (Matrix, Park, Walsh, Quigley, Almanzar, Burt) ........ 55

# TABLE OF AUTHORITIES

## Cases

Page(s)


*Abadi v. NYU Langone Health Sys.*, 705 F. Supp. 3d 172 (S.D.N.Y. 2023) .................................. 50

*Abadi v. NYU Langone Health Sys.*, 731 F. Supp. 3d 616 (S.D.N.Y. 2024) .................................. 50

*Ahmad v. N.Y. Univ.*, No. 22-cv-1248 (JLR), 2025 WL 3022862 (S.D.N.Y. Oct. 29, 2025) .................................. 53

*Ahmad v. N.Y. Univ.*, No. 22-cv-1248 (JLR), 2026 WL 234594 (S.D.N.Y. Jan. 29, 2026) .................................. 53

*Alvarez v. N.Y.C. Transit Auth.*, 230 A.D.3d 541 (2d Dep't 2024) .................................. 54

*Ananiadis v. Mediterranean Gyros Prods., Inc.*, 151 A.D.3d 915 (2d Dep't 2017).............. 55, 56

*Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162 (2d Cir. 2012)............................ 17, 33

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) .................................. 51

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................. 17

*Atkinson v. Singh*, No. 19-CV-3779 (VSB), 2022 WL 137634 (S.D.N.Y. Jan. 14, 2022) .................................. 49

*Baker v. Bridge Inc.*, 805 F. Supp. 3d 521 (S.D.N.Y. 2025) .................................. 45

*Bates v. United Parcel Serv., Inc.*, 511 F.3d 974 (9th Cir. 2007) (en banc) .................................. 38

*Berger v. N.Y.C. Police Dep't*, 304 F. Supp. 3d 360 (S.D.N.Y. 2018)........................... 28, 36, 37

*Berk v. Choy*, 607 U.S. 187 (2026) .................................. 17

*Bernheim v. Litt*, 79 F.3d 318 (2d Cir. 1996) .................................. 30

*Biondo v. Kaleida Health*, 935 F.3d 68 (2d Cir. 2019) .................................. 28

*Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131 (2d Cir. 1995) .................................. 20

*Brooklyn Ctr. for Psychotherapy, Inc. v. Phila. Indem. Ins. Co.*, 955 F.3d 305 (2d Cir. 2020) .................................. 26

*Brown v. N.Y.C. Dep't of Educ.*, No. 20-CV-2424 (VEC), 2022 WL 4364600 (S.D.N.Y. Sept. 21, 2022) .................................. 29

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) .................................. 30, 42

*Cadet v. Alliance Nursing Staffing of N.Y., Inc.*, 632 F. Supp. 3d 202 (S.D.N.Y. 2022) ............. 46

*Callbeck v. Fallon Cmty. Health Plan, Inc.*, 480 F. Supp. 3d 308 (D. Mass. 2020) .................... 26

*Cangro v. N.Y.C. Dep't of Fin.*, 183 F.4th 149 (2d Cir. 2026) .................................. 18, 19, 23, 34

*Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635 (2009) .................................. 48

*Carr v. N.Y.C. Transit Auth.*, 76 F.4th 172 (2d Cir. 2023) .................................. 31

*Castro v. Local 1199, Nat'l Health & Hum. Servs. Emps. Union*, 964 F. Supp. 719 (S.D.N.Y. 1997) .................................. 32

*Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77 (2d Cir. 2018) .................................. 48

*Charles v. City of New York*, No. 25-CV-6219 (BMC), 2026 WL 698634 (E.D.N.Y. Mar. 12, 2026) .......... 33

*Charles v. City of New York*, No. 25-CV-6219 (BMC), 2026 WL 1256993 (E.D.N.Y. May 7, 2026) .......... 34

*Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135 (2d Cir. 2012) .......... 42

*Conroy v. N.Y. State Dep't of Corr. Servs.*, 333 F.3d 88 (2d Cir. 2003) .......... 35, 37

*Criado v. IBM Corp.*, 145 F.3d 437 (1st Cir. 1998) .......... 25

*Cunningham v. Cornell Univ.*, 604 U.S. 693 (2025) .......... 18

*De Souza v. New York*, 824 F. Supp. 3d 336 (S.D.N.Y. 2026) .......... 50

*Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178 (2d Cir. 2015) .......... 20

*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104 (2d Cir. 2010) .......... 18

*Doe v. Bloomberg L.P.*, 36 N.Y.3d 450 (2021) .......... 50, 51

*Edelman v. NYU Langone Health Sys.*, 141 F.4th 28 (2d Cir. 2025) .......... 43

*Elco v. Aguiar*, 226 A.D.3d 649 (2d Dep't 2024) .......... 56

*Erasmus v. Deutsche Bank Ams. Holding Corp.*, No. 15 Civ. 1398 (PAE), 2015 WL 7736554 (S.D.N.Y. Nov. 30, 2015) .......... 47

*Europe v. Equinox Holdings, Inc.*, No. 20-cv-7787 (JGK), 2022 WL 4124763 (S.D.N.Y. Sept. 8, 2022) .......... 56

*Felix v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 6109, 2023 WL 4706097 (S.D.N.Y. July 24, 2023) .......... 22

*Ferrara v. Metro. Transp. Auth.*, No. 24-CV-9161 (JPO), 2026 WL 351084 (S.D.N.Y. Feb. 9, 2026) .......... 34, 35

*Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545 (7th Cir. 2017) .......... 34, 35

*Friedman v. Bloomberg, L.P.*, 230 A.D.3d 1060 (1st Dep't 2024) .......... 44

*Gaffney v. Brewster Cent. Sch. Dist.*, No. 24-CV-9497 (KMK), 2026 WL 2925898 (S.D.N.Y. Sept. 29, 2026) .......... 31

*Gerard v. 1199 Nat'l Benefit Funds*, No. 23-CV-7950 (DEH), 2025 WL 3120752 (S.D.N.Y. Nov. 6, 2025) .......... 27

*Gonzalez v. City of New York*, 377 F. Supp. 3d 273 (S.D.N.Y. 2019) .......... 41

*Greenbaum v. N.Y.C. Transit Auth.*, No. 21-1777-cv, 2022 WL 3347893 (2d Cir. Aug. 15, 2022) (summary order) .......... 53

*Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38 (E.D.N.Y. 2017) .......... 47

*Grimes v. N.Y. & Presbyterian Hosp.*, No. 1:23-cv-652 (MKV), 2024 WL 816208 (S.D.N.Y. Feb. 26, 2024) .......... 36

*Guerrero v. Constellation Health Servs., LLC*, No. 22-CV-07736 (OEM) (LGD), 2025 WL 2549936 (E.D.N.Y. Sept. 4, 2025) .......... 24

*Harper v. Charter Commc'ns*, No. 1:21-cv-760 (GWC) (MJR), 2025 WL 1455491 (W.D.N.Y. May 21, 2025) ........ 22

*Harrison v. SUNY Downstate Med. Ctr.*, No. 16-CV-1101 (RRM) (CLP), 2017 WL 4326507 (E.D.N.Y. Sept. 25, 2017) ........ 36

*Heiden v. N.Y.C. Health & Hosps. Corp.*, No. 20-CV-10288 (LJL), 2023 WL 171888 (S.D.N.Y. Jan. 11, 2023) ........ 39, 45

*Henriquez v. City of New York*, 247 A.D.3d 535 (1st Dep't 2026) ........ 19

*Hicks v. Baines*, 593 F.3d 159 (2d Cir. 2010) ........ 30

*Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252 (1st Cir. 1999) ........ 25

*Hill v. Clayton Cnty. Sch. Dist.*, 619 F. App'x 916 (11th Cir. 2015) ........ 26

*Hosking v. Mem'l Sloan-Kettering Cancer Ctr.*, 186 A.D.3d 58 (1st Dep't 2020) ........ 39, 45, 53

*Isbell v. City of New York*, 316 F. Supp. 3d 571 (S.D.N.Y. 2018) ........ 18

*Jacobsen v. N.Y.C. Health & Hosps. Corp.*, 22 N.Y.3d 824 (2014) ........ 38, 40

*Jacques v. Clean-Up Grp., Inc.*, 96 F.3d 506 (1st Cir. 1996) ........ 25

*Jones v. City of New York*, No. 18-CV-1937 (VSB), 2020 WL 1644009 (S.D.N.Y. Apr. 2, 2020) ........ 18

*King v. N.Y. State Dep't of Educ.*, No. 1:23-CV-1400 (MAD/CFH), 2024 WL 4664280 (N.D.N.Y. Nov. 4, 2024) ........ 21

*Kocher v. Mount Sinai Hosp.*, No. 2026-00882, 2026 WL 3079051 (1st Dep't Oct. 15, 2026) ........ 40, 44

*Kugel v. Queens Nassau Nursing Home Inc.*, 568 F. Supp. 3d 253 (E.D.N.Y. 2021) ........ 42

*L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419 (2d Cir. 2011) ........ 29

*Lambert v. Trump Int'l Hotel & Tower*, 304 F. Supp. 3d 405 (S.D.N.Y. 2018) ........ 25, 29, 40

*LaScala v. Guidehouse Inc.*, No. 25-CV-2882 (JPO), 2026 WL 787829 (S.D.N.Y. Mar. 20, 2026) ........ 22

*Lilly v. State*, 249 A.D.3d 613 (1st Dep't 2026) ........ 52

*Litowitz v. Garland*, No. 3:20-cv-724 (AWT), 2021 WL 3679144 (D. Conn. Aug. 19, 2021) ........ 37

*Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015) ........ 17, 32

*Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268 (2d Cir. 2009) ........ 28

*Long v. Marubeni Am. Corp.*, No. 05 Civ. 639 (GEL), 2006 WL 547555 (S.D.N.Y. Mar. 6, 2006) ........ 56

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160 (2d Cir. 2015) ........ 48

*Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208 (2d Cir. 2001) ........ 24

*Lyons v. Legal Aid Soc'y*, 68 F.3d 1512 (2d Cir. 1995) ........ 20

*Makharadze v. Ognibene*, 239 A.D.3d 844 (2d Dep't 2025) ........ 52

*Martinez v. Staten Island Univ. Hosp.*, 814 F. Supp. 3d 380 (E.D.N.Y. 2026)........................... 50
*McCray v. Wilkie*, 966 F.3d 616 (7th Cir. 2020) ........................................................... 26, 27
*McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51 (S.D.N.Y. 2020) ........................ 55, 56
*McMillan v. City of New York*, 711 F.3d 120 (2d Cir. 2013)............................................. 18, 23
*Mehta v. City of New York*, No. 19-CV-3857, 2022 WL 280460 (E.D.N.Y. Jan. 31, 2022) ........................................................................................................................ 31
*Mendez v. John Jay Coll. of Crim. Just.*, No. 23 Civ. 8816 (LGS), 2026 WL 2806898 (S.D.N.Y. Sept. 18, 2026)........................................................................................... 28
*Menoken v. Dhillon*, 975 F.3d 1 (D.C. Cir. 2020) ................................................................. 34
*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102 (2d Cir. 2013)..... 18, 41, 42, 43
*Monroe v. Jewel Food Stores, Inc.*, No. 18-CV-1499, 2023 WL 2018907 (N.D. Ill. Feb. 15, 2023) .................................................................................................................. 27
*Montanez v. N.Y.C. Hous. Auth.*, 5 A.D.3d 314 (1st Dep't 2004) ........................................ 46, 54
*Moye v. Mount Sinai Hosp.*, 248 A.D.3d 623 (1st Dep't 2026)........................................... 44, 53
*Muldrow v. City of St. Louis*, 601 U.S. 346 (2024) ................................................................. 41
*Murtha v. N.Y. State Gaming Comm'n*, No. 17 Civ. 10040 (NSR), 2019 WL 4450687 (S.D.N.Y. Sept. 17, 2019)........................................................................................... 57
*Newton v. LVMH Moët Hennessy Louis Vuitton Inc.*, No. 25-1697-cv, 2026 WL 2819692 (2d Cir. Sept. 21, 2026)................................................................................ 33, 43
*Nielsen v. Rabin*, 746 F.3d 58 (2d Cir. 2014) ......................................................................... 17
*Noel v. Wal-Mart Stores, E. LP*, 764 F. App'x 17 (2d Cir. 2019) (summary order) .................... 24
*Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89 (2d Cir. 2015) ................................................ 20, 46
*Nunez v. Metro. Learning Inst., Inc.*, No. 18-CV-1757, 2019 WL 5457731 (E.D.N.Y. Oct. 24, 2019) ................................................................................................................. 32
*Oross v. Kutztown Univ.*, No. 21-5032, 2024 WL 83506 (E.D. Pa. Jan. 8, 2024)....................... 37
*O'Rourke v. Nat'l Foreign Trade Council, Inc.*, 176 A.D.3d 517 (1st Dep't 2019) .................... 44
*Owens v. Delta Airlines, Inc.*, No. 23-CV-2114 (FB) (PK), 2025 WL 278024 (E.D.N.Y. Jan. 23, 2025) ........................................................................................... 25, 40
*Parham v. City of New York*, No. 450008/2021, 2024 WL 4377550 (Sup. Ct. N.Y. Cnty. Oct. 2, 2024)................................................................................................................ 50
*Passelaigue v. Getty Images (US), Inc.*, No. 16-CV-1362 (VSB), 2018 WL 1156011 (S.D.N.Y. Mar. 1, 2018) ............................................................................................... 47
*Pearson v. Gesner*, 125 F.4th 400 (2d Cir. 2025)..................................................................... 18
*Pelepelin v. City of New York*, 189 A.D.3d 450 (1st Dep't 2020) .............................................. 42
*Perkins v. City of New York*, No. 22-196-cv, 2023 WL 370906 (2d Cir. Jan. 24, 2023) (summary order)..................................................................................................... 25, 26

*Peten v. Stericycle, Inc.*, No. 15-CV-872 (JFB) (ARL), 2018 WL 679886 (E.D.N.Y. Feb. 1, 2018), *adopting* 2017 WL 8813133 (E.D.N.Y. Dec. 21, 2017)........................... 28

*Peterson v. N.Y.C. Dep't of Educ.*, No. 18-CV-1515, 2020 WL 2559835 (E.D.N.Y. May 20, 2020)........................................................................................................... 31

*Pietras v. MIP Holdings, Ltd.*, 251 A.D.3d 589 (2d Dep't 2026)............................................... 55

*Pinto v. N.Y.C. Admin. for Children's Servs.*, No. 18-cv-1852 (KBF), 2018 WL 4333990 (S.D.N.Y. Sept. 11, 2018)........................................................................... 54

*Powers v. Polygram Holding, Inc.*, 40 F. Supp. 2d 195 (S.D.N.Y. 1999).................................. 25

*Puranik v. Children's Place Servs. Co.*, No. 24-CV-4441 (AT) (VF), 2025 WL 2522442 (S.D.N.Y. Aug. 1, 2025), *report and recommendation adopted*, 2025 WL 2521122 (S.D.N.Y. Sept. 2, 2025)........................................................................ 46

*Raymond v. 1199SEIU Nat'l Benefit Fund*, 184 F.4th 42 (2d Cir. 2026).................................... 20

*Riddle v. Citigroup*, 640 F. App'x 77 (2d Cir. 2016) (summary order)...................................... 33

*Rivera v. JP Morgan Chase*, 815 F. App'x 603 (2d Cir. 2020) (summary order)........................ 32

*Rizzo v. N.Y.C. Dep't of Sanitation*, No. 23-CV-7190 (JMF), 2024 WL 3274455 (S.D.N.Y. July 2, 2024)................................................................................................ 45

*Robles v. Medisys Health Network, Inc.*, No. 19-CV-6651 (ARR) (RML), 2020 WL 3403191 (E.D.N.Y. June 19, 2020)........................................................................... 47

*Romanello v. Intesa Sanpaolo, S.p.A.*, 22 N.Y.3d 881 (2013)..................................................... 38

*Rubin v. N.Y.C. Bd. of Educ.*, No. 20 Civ. 10208 (LGS), 2023 WL 2344731 (S.D.N.Y. Mar. 3, 2023)......................................................................................................... 49

*Russell v. N.Y. Univ.*, 42 N.Y.3d 377 (2024)....................................................................... 50, 51

*Russo v. Nat'l Grid, USA*, No. 23-CV-03954 (NCM) (TAM), 2026 WL 1492969 (E.D.N.Y. May 28, 2026)............................................................................................. 29

*Sacerdote v. N.Y. Univ.*, 9 F.4th 95 (2d Cir. 2021)................................................................. 48

*Salahuddin v. Cuomo*, 861 F.2d 40 (2d Cir. 1988)................................................................... 49

*Samuels v. City of New York*, No. 22-CV-1904 (JGK), 2023 WL 5717892 (S.D.N.Y. Sept. 5, 2023)........................................................................................................ 27

*Schindler v. Plaza Constr. LLC*, 154 A.D.3d 495 (1st Dep't 2017)............................................ 55

*Serdans v. N.Y. & Presbyterian Hosp.*, 112 A.D.3d 449 (1st Dep't 2013)................................. 40

*Serdans v. N.Y. & Presbyterian Hosp.*, 138 A.D.3d 524 (1st Dep't 2016)................................. 40

*Serrano v. City of New York*, 226 A.D.3d 575 (1st Dep't 2024)............................................... 41

*Sharikov v. Philips Med. Sys. MR, Inc.*, 659 F. Supp. 3d 264 (N.D.N.Y. 2023), *aff'd*, 103 F.4th 159 (2d Cir. 2024)................................................................................ 36

*Simmons v. Abruzzo*, 49 F.3d 83 (2d Cir. 1995)...................................................................... 49

*Slater v. NYU Langone Health Sys.*, No. 24-CV-3711 (OEM) (SIL), 2025 WL 2208292 (E.D.N.Y. Aug. 4, 2025)...................................................................... 20, 46

*Sletten v. LiquidHub, Inc.*, No. 13 Civ. 1146 (NRB), 2014 WL 3388866 (S.D.N.Y. July 11, 2014) ........ 54

*Smelyansky v. N.Y. State Off. of Gen. Servs.*, 250 A.D.3d 1286 (3d Dep't 2026) ........ 39

*Sosa v. N.Y.C. Dep't of Educ.*, 368 F. Supp. 3d 489 (E.D.N.Y. 2019) ........ 33

*Stanley v. Phelon*, No. 23-731-cv, 2024 WL 1453872 (2d Cir. Apr. 4, 2024) (summary order) ........ 49

*Strife v. Aldine Indep. Sch. Dist.*, 138 F.4th 237 (5th Cir. 2025) ........ 27

*Tafolla v. Heilig*, 80 F.4th 111 (2d Cir. 2023) ........ 21, 23

*Tate v. Bisignano*, No. 23-CV-16421, 2026 WL 84472 (N.D. Ill. Jan. 12, 2026) ........ 27

*Taylor v. City of Shreveport*, 798 F.3d 276 (5th Cir. 2015) ........ 35, 37

*Tillman v. N.Y.C. Dep't of Hum. Res. Admin.*, No. 22-872-cv, 2023 WL 2770218 (2d Cir. Apr. 4, 2023) (summary order) ........ 25

*Treglia v. Town of Manlius*, 313 F.3d 713 (2d Cir. 2002) ........ 29

*Tudor v. Whitehall Cent. Sch. Dist.*, 132 F.4th 242 (2d Cir. 2025) ........ 22

*US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002) ........ 22

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d Cir. 2015) ........ 32, 41

*Walrond v. N.Y.C. Health & Hosps. Corp.*, 240 A.D.3d 933 (2d Dep't 2025) ........ 53

*Washburn v. Kingsborough Cmty. Coll.*, No. 20-cv-00395 (DLI) (RLM), 2022 WL 843733 (E.D.N.Y. Mar. 22, 2022) ........ 49

*Watson v. Emblem Health Servs.*, 158 A.D.3d 179 (1st Dep't 2018) ........ 51

*Wecker v. City of New York*, 134 A.D.3d 474 (1st Dep't 2015) ........ 54

*Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138 (2d Cir. 2002) ........ 29

*Williams v. Citigroup Inc.*, 659 F.3d 208 (2d Cir. 2011) (per curiam) ........ 48

*Williams v. MTA Bus Co.*, 44 F.4th 115 (2d Cir. 2022) ........ 38

*Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62 (1st Dep't 2009) ........ 18, 42

*Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004) ........ 49

*Zaki v. OTG Mgmt. LLC*, No. 23-CV-8189 (PK), 2025 WL 4783125 (E.D.N.Y. Nov. 20, 2025) ........ 56

*Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834 (2d Cir. 2013) ........ 33

**Statutes**

Page(s)

28 U.S.C. § 1367(a) ........ 48

28 U.S.C. § 1367(c)(3) ........ 48

29 U.S.C. § 794(d) ........ 18, 34, 35, 37

42 U.S.C. § 12112(b)(3)(A) ........ 37

42 U.S.C. § 12112(b)(5)(A) ........ 26
42 U.S.C. § 12112(b)(6) ........ 37
42 U.S.C. § 12112(d)(4)(A) ........ 35
42 U.S.C. § 12113(a) ........ 38
42 U.S.C. § 12203 ........ 34
N.Y.C. Admin. Code § 8-102 ........ 38, 44
N.Y.C. Admin. Code § 8-107(1)(a) ........ 26, 49, 50, 51, 52
N.Y.C. Admin. Code § 8-107(6) ........ 51, 55
N.Y.C. Admin. Code § 8-107(7) ........ 42, 52
N.Y.C. Admin. Code § 8-107(13)(a) ........ 47
N.Y.C. Admin. Code § 8-107(15)(a) ........ 26, 38, 40, 51
N.Y.C. Admin. Code § 8-107(15)(b) ........ 38
N.Y.C. Admin. Code § 8-107(19) ........ 46, 47, 51, 54
N.Y.C. Admin. Code § 8-107(28) ........ 40, 44, 51, 53
N.Y.C. Admin. Code § 8-130(a) ........ 18

**Rules**

Page(s)

Fed. R. Civ. P. 8 ........ 17, 48
Fed. R. Civ. P. 8(d)(2) ........ 37, 51
Fed. R. Civ. P. 12(b)(6) ........ 17, 19, 33, 35
Fed. R. Civ. P. 15(a)(2) ........ 48
Fed. R. Civ. P. 16 ........ 48

**Regulations**

Page(s)

29 C.F.R. § 1630.2(o)(2)(ii) ........ 22

**Other Authorities**

Page(s)

EEOC, *Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees Under the ADA* (July 27, 2000) ........ 31

EEOC, *Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the ADA* (Oct. 17, 2002) ........ 26, 27, 35

EEOC, *Enforcement Guidance on Retaliation and Related Issues* (Aug. 25, 2016) ........ 35

N.Y.C. Comm'n on Hum. Rts., *Legal Enforcement Guidance on Discrimination on the Basis of Disability* (Dec. 2025),

https://www.nyc.gov/assets/cchr/downloads/pdf/NYCCHR_LegalGuide-Disability.pdf ........................................................................................... 38, 40, 45

## STATEMENT OF FACTS

### A. For more than two years, Plaintiff covered court from LAS offices, entering whenever she was needed

Plaintiff Marissa Kubicki joined The Legal Aid Society ("LAS") in 2019 and has been a Forensic Social Worker in its Parole Revocation Defense Unit ("PRDU") since March 2023, performing assessments, mitigation, treatment planning, attorney consultation, crisis intervention, and court support. FAC ¶¶ 36–37, 102. Her evaluations were strong; the March 2025 evaluation stated that no supervisor, attorney, or client had raised a concern about her work. FAC ¶¶ 42, 105; ECF No. 73-4 at 3, 9. Social Work Supervisor Rebekah Almanzar and Assistant Social Work Supervisor Jackie Quigley controlled her assignments, court coverage, files, reporting, and performance expectations. Yonzel Burt, Director of Social Work for LAS's Criminal Defense Practice, had managerial authority over social-work operations, job duties, and court coverage. FAC ¶¶ 66, 69, 73.

Until August 2025, PRDU social workers followed an office-based model: they worked from LAS offices and went to court when an attorney requested them, they needed to meet a client, or another identified need arose. The Bronx office was across the street from the courthouse, "approximately a two-minute walk away." FAC ¶ 106. Between court needs, Plaintiff drafted reports and handled confidential communications, work she could not do effectively while sitting through proceedings. FAC ¶ 104. LAS's own materials described the same model. Its training recognized that assessments could occur by telephone, by video conference, in court, or in the office and told attorneys to state expressly when they needed a social worker at a court appearance; Quigley's weekly emails described a referral-based process; Friday coverage was virtual; and neither the job posting nor any written policy required continuous courthouse presence. FAC ¶¶ 103, 107–108, 115, 172; ECF No. 73-1 at 12, 18; ECF No. 69-2 at 3, 5.

### B. In August 2025, Plaintiff's supervisors began requiring an hour in court without any identified need

In August 2025, Quigley told Plaintiff and Luca Verano Diaz, the other Bronx PRDU Forensic Social Worker, to spend about an hour in court on each coverage day, even when no client, attorney, hearing, or emergency required them, in order, in their words, to "build relationships" with attorneys. FAC ¶¶ 109–111. On September 4, writing for herself and Almanzar, Quigley explained that court presence was intended "to facilitate case work, build relationships with attorneys, and ensure timely and effective services." FAC ¶ 112; ECF No. 69-3 at 13. Neither communication called the hour an essential function. FAC ¶¶ 111–112.

The directive began as a requirement imposed specifically on these two Bronx social workers, rather than an LAS-wide policy. Manhattan PRDU social workers continued attending court only as needed. FAC ¶¶ 16, 110–111, 179. LAS did not roll out a broader court-presence protocol until March 2026, approximately seven months later. FAC ¶¶ 223–224. Other PRDU social workers performed the same role without this requirement from August 2025 to March 2026, without a one hour, or seven hour instruction to spend time in court absent a specific client or attorney need, at all, or as an asserted essential function. FAC ¶¶ 107, 179.

Plaintiff, Verano Diaz, and their union objected that the directive departed from longstanding practice. At a September 15 meeting, Quigley and Almanzar maintained the directive in place but produced no written policy supporting it. FAC ¶¶ 115–117. Almanzar's October 10 summary of that meeting recorded that a union delegate suggested alternatives "such as more frequent attorney check-ins on Teams." ECF No. 69-3 at 9. On November 10, union delegate Kim Wirt told Almanzar, Quigley, and Burt that poor courthouse cell service was causing social workers to miss client calls, supervisory outreach, and Teams referrals while stationed there under

a directive requiring courthouse presence even without an identified need. FAC ¶¶ 16, 118. The directive nonetheless stayed in place. FAC ¶ 125.

### C. Plaintiff asked to wait in her office, not the courthouse, while immunosuppressed

Plaintiff has ankylosing spondylitis, a chronic autoimmune condition that causes chronic pain and restricts her ability to walk, stand, sit for prolonged periods, lift, and bend. FAC ¶¶ 14, 40. LAS had accommodated it before. When she returned from disability leave in November 2024, LAS immediately permitted three remote workdays a week on an interim basis while it processed her request; it later made that schedule permanent and equipped her office with an ergonomic chair, screen protectors, and an air purifier. FAC ¶¶ 127, 197. On January 6, 2025, Quigley acknowledged the accommodation in writing. FAC ¶ 128. That accommodation set her weekly schedule, not where she worked on her two in-person days. FAC ¶ 149.

By late 2025, Plaintiff was being treated with Hyrimoz, an injected immunosuppressive biologic that heightened her susceptibility to infection. FAC ¶ 129. On November 24, 2025, she submitted updated medical documentation and asked to remain in the nearby LAS office during court-coverage shifts and to enter the courthouse whenever a client meeting, hearing, attorney request, or emergency required her. FAC ¶¶ 130, 134. Her physician's letter identified her condition, treatment, and risk of severe infection and hospitalization, and specified that she would attend court to assist an active client, speak on the record at a hearing, or provide emergency intervention. FAC ¶¶ 44, 131; ECF No. 73-7 at 5.

Plaintiff sought to continue the office-based coverage she had performed for approximately two and a half years, working from the nearby LAS office and attending court whenever needed. FAC ¶¶ 15, 135. Her position, supervisors, caseload, and in-person days would remain unchanged, with no added staffing or cost. FAC ¶¶ 136, 260. She simply sought an exception to the newly

imposed requirement to remain in court without an identified need—a requirement absent from PRDU's longstanding prior practice and not then imposed on Manhattan PRDU social workers, who continued attending court only as needed. FAC ¶¶ 106, 110–111, 179.

Prior medical submissions, including July 14, 2025 documentation, established Plaintiff's diagnosis, pain, mobility limits, and infection precautions supporting her remote-work and equipment accommodations. November's update specified treatment, duration, infection and hospitalization risks, restrictions, and retained court duties. FAC ¶¶ 127–132. Identifying no new symptom, changed restriction, inconsistency, or unanswered functional limitation, Defendants nevertheless demanded alternatives permitting courthouse presence up to seven hours twice weekly. FAC ¶¶ 181–183, 290–291.

LAS selected Matrix Absence Management, Inc. ("Matrix") to administer accommodations with Human Resources, delegating authority over provider inquiries, documentation demands and sufficiency, deadlines, request status and closure, and monitoring. FAC ¶¶ 51–52, 77–85, 253. Despite notice of Plaintiff's disability and office-based proposal, Matrix demanded provider responses premised on up to seven hours' courthouse attendance, imposed a fifteen-day deadline with threatened decisional consequences, and failed to evaluate that alternative. FAC ¶¶ 78, 85, 384. LAS tied continued job protection to compliance with Matrix's process, while Matrix attributed ultimate approval to LAS. FAC ¶ 253.

Senior Employee Relations Specialist Laura Walsh, whose position LAS publicly describes as coordinating ADA accommodation requests and resolutions, exercised delegated authority over Plaintiff's request, the medical documentation demanded, interim measures, and work-location conditions. Chief Human Resources Officer Connie Park had senior authority over each. FAC ¶¶ 54, 59, 61. Following their November 25 meeting, Walsh confirmed her

understanding of the request in writing on December 1. The issue was "the requirement to sit in court for 1 hour during that shift when not scheduled to meet with clients," and "[y]ou are sharing that you are still readily available to manage that onsite need but would ask to 'wait' from your office." FAC ¶ 140-141; ECF No. 73-7 at 3.

### D. LAS withheld interim and recast the one-hour directive as a job function of up to seven hours

LAS provided no interim protection, and Plaintiff remained subject to the one-hour directive even on days when no one needed her in court. She became ill on December 3. FAC ¶¶ 19, 141, 145. On December 9, Wirt requested an interim accommodation on her behalf. The next day Plaintiff wrote that LAS had required her to enter court five times since her request, only once for an active client, and asked to "follow my doctor's medical advice while management is still reviewing and discussing." Walsh replied that she had "discussed an interim accommodation with your supervisory group" and hoped to have an update that week. FAC ¶¶ 147–148; ECF No. 73-8 at 3–4.

On December 15, Walsh instead wrote that "there isn't an hour requirement to be onsite/at court per coverage/shift," that social workers must be in court as long as client needs and job tasks required, and that Plaintiff's request therefore "wouldn't be applicable." FAC ¶ 154; ECF No. 73-9 at 7. The next day Burt asserted management's discretion to "implement, refine, or enhance social work practices" and stated: "Our expectation remains that all PRDU FSW's are to be in court on their designated court coverage days." FAC ¶ 156; ECF No. 73-9 at 5. Burt knew that Plaintiff and the union disputed the requirement as contrary to past practice and to Plaintiff's medical restrictions, and she had authority to modify it. FAC ¶ 74. At a December 18 meeting, Quigley, Almanzar, and Burt again produced no written policy requiring courthouse presence without an identified client or attorney need. FAC ¶ 158.

On Friday, December 19, 2025, Walsh told Plaintiff for the first time that her job required courthouse presence for *up to seven hours*, even absent an identified need. FAC ¶¶ 18, 159. No such requirement appeared in Plaintiff's job description, training, or written coverage guidance, nor did it reflect the established PRDU practice she had followed since March 2023. FAC ¶¶ 106, 108–109, 112, 159.

At about 5:30 p.m. Walsh directed Plaintiff to comply on Monday, deferred further discussion to the following week, and suggested that she consult her physician. Plaintiff replied that, "given it is 5:36pm on a Friday," the physician's office was closed, and asked what would protect her on Monday. LAS provided no interim measure. FAC ¶¶ 65, 159, 162; ECF No. 73-9 at 3. The union filed a Step 3 grievance that day, escalated to Park, challenging delay, withheld interim protection, and duty changes allegedly designed to prevent accommodation; Park acknowledged receipt. FAC ¶¶ 55, 163–164; ECF No. 70-2 at 2–3. On December 22, Plaintiff again requested interim protection, reported as directed, and became ill that afternoon; she was still ill a week later. FAC ¶¶ 165, 167, 174.

At a December 26 meeting, Walsh maintained that all-day court presence was part of the job, yet cited the absence of an express all-day mandate in Quigley's emails to question why Plaintiff needed an accommodation. She aggressively questioned how Plaintiff protected herself socially outside work (implying that she did not) and offered personal protective equipment ("PPE"), which Plaintiff already used, including a KN95, despite becoming ill twice that month. FAC ¶¶ 138, 170–171. Walsh refused to acknowledge Quigley's weekly coverage emails, repeatedly supplied by Plaintiff, which described an attorney-referral process without requiring all-day courthouse presence—undermining Walsh's assertion that such presence was an established job requirement. FAC ¶¶ 171–172. Union delegate Hayley Feldman's

contemporaneous notes of the meeting record that Walsh denied the office-based request and repeatedly suggested Plaintiff seek a new position if the requested accommodation was not provided. ECF No. 73-10 at 3; Kubicki Decl., ECF No. 73 ¶ 21.

The seven-hour standard was applied to Plaintiff alone, not to Verano Diaz, who was subject to the same one-hour directive and had opposed it but had not requested a disability accommodation. FAC ¶¶ 120, 178. Quigley and Almanzar imposed or enforced the extended requirement against Plaintiff, and Quigley continued enforcing it while the provider response was pending. FAC ¶¶ 67, 70, 72, 394. Scrutiny of Plaintiff's work files increased after her protected activities. On December 23—four days after the grievance and *one* day after Plaintiff renewed her request for interim protection—Quigley sought her OneDrive link despite receiving her usual pre-absence case-note chart. FAC ¶¶ 163, 165, 168. On December 26—seven days after the grievance and four days after the renewed request—Almanzar expanded the demand to complete client files and questioned whether Plaintiff kept a separate digital file for each client. FAC ¶¶ 163, 165, 169. On January 15—three days after Plaintiff objected to the disputed job-function language in the medical forms—Quigley sought general access extending beyond her planned absence, never answering whether other staff faced the same requirement. FAC ¶¶ 189–190.

FAC ¶¶ 168–169, 190. Both supervisors knew of the accommodation request and the union's involvement, and Plaintiff's prior evaluations had praised her file management -- making the sudden detailed file requests all the more irregular. FAC ¶¶ 191, 353.

### E. LAS and Matrix required Plaintiff's physician to answer questions that assumed that requirement

On December 30, Walsh sent Plaintiff and Matrix the questions LAS wanted put to Plaintiff's physician. She described Plaintiff's "current job function" as being "onsite/in the court house" on coverage days, which LAS intended to "strengthen interdisciplinary collaboration" and

"improve early client engagement," and asked for "alternative accommodations that LAS can consider that would allow this employee *to be onsite in the court house*, as it stands 2x per *week and up to 7 hours per day*." FAC ¶ 175; ECF No. 73-11 at 11 (emphasis added).

On January 2, 2026, Matrix repeated that premise in a "More *Discovery* Needed" (emphasis added) letter. It asked Plaintiff's physician for alternatives "that would allow this employee to be *onsite* in the court house," (emphasis added) identified only "PPE and regular breaks throughout the workday," and warned: "Failure to return the requested information within 15 calendar days from the date of this letter could impact the decision of your accommodation." FAC ¶ 181; ECF No. 73-12 at 2, 4. LAS framed the medical inquiry around preserving prolonged courthouse presence, steering the physician away from the accommodation Plaintiff sought: attending court only for an identified attorney or client need. FAC ¶¶ 181–184, 189. Matrix's form labeled courthouse presence for up to seven hours twice weekly Plaintiff's "current job function," placed the physician's signature block directly beneath that description, and required her physician's signed response proposing alternatives preserving it—risking apparent endorsement of LAS's disputed essential-function premise. FAC ¶¶ 181–184, 189. Matrix knew of Plaintiff's disability, her office-based request, and her willingness to enter court when needed. FAC ¶ 78. Neither Walsh nor Matrix asked whether the office-based arrangement would work or identified any new symptom, inconsistency, or unanswered question in Plaintiff's submissions; the only open question was where she would wait while remaining available. FAC ¶¶ 182–183.

The fifteen days began during the year-end holidays, and Plaintiff promptly advised that her specialist had no availability within them and that the asserted job-duty issue was already the subject of a grievance. FAC ¶¶ 185–186; ECF No. 73-12 at 2. On January 6, the day the union issued a cease-and-desist objecting to the provider demand, Park told the union, "We need

additional time to review and evaluate the grievance and RFIs," while Human Resources was "waiting for additional information from Marissa's healthcare provider." FAC ¶ 185; ECF No. 69-3 at 2. Park did not extend Plaintiff's deadline, narrow the information sought, or suspend the courthouse requirement, and on January 9 the union warned that continued enforcement would be treated as retaliation. FAC ¶¶ 57, 188.

On January 12, Park wrote: "The interim request to remain in the LAS office until requested in court, rather than working from the court location, is *not* approved." (emphasis added) ECF No. 73-11 at 7. Plaintiff never refused providing additional needed medical clarification. On January 12 she explained that the form would "box me into this change of job description" she was seeking an accommodation from, and asked LAS to identify the medical information it needed in a form "that does not include signing a letter that was drafted by Laura Walsh." FAC ¶¶ 184, 189; ECF No. 73-11 at 5–6. She attended every meeting Walsh called and remained willing to consider any effective arrangement preserving necessary attendance while limiting exposure. FAC ¶ 201; ECF No. 73-11 at 6.

### F. Park refused interim protection in writing and ordered Plaintiff to court the next morning

On January 20, fifty-seven days after the request and following a call with Plaintiff and her union, Park stated LAS's position by email. She framed the question herself: "What is the status of the interim accommodation request to work from the LAS office during the employee's onsite court coverage shift/work days and go to court only when called?" She answered: "This interim accommodation *was denied* and *remains so* because it remains management's position that in-person/onsite court coverage is an *essential function* of the PRDU social worker role. PRDU FSWs are expected to be *present in court up to 7 hours/day* during their scheduled in-person court workdays, depending on client needs." FAC ¶¶ 55, 193–194; ECF No. 61-1 at 1.

Park then set Plaintiff's schedule for the next morning, before any need for her had been identified: "She should be in court by 10:00am" to review cases with the attorneys on shift and, "before leaving court," to contact Almanzar and Quigley, who "will provide more guidance on what needs to occur at court for the day." That would be "the expectation for her in-person court workdays until the accommodation is resolved." FAC ¶ 196; ECF No. 61-1 at 1. Park insisted that a physician-signed Matrix form was "necessary for the next step in the interactive process," yet acknowledged that the physician's existing letter already recommended "limited Court interaction" with "appropriate and reasonable precautions" and identified "specific tasks" warranting attendance. ECF No. 61-1 at 1. LAS thus demanded another medical response premised on maintaining up to seven hours of courthouse presence—the very prolonged, unnecessary exposure her physician had advised against because it posed a risk of severe infection and hospitalization. FAC ¶¶ 131–132, 181–184, 189.

The email identified no accommodation LAS had considered, no operational difficulty with office-based coverage, and no reason it could not be used in the interim. LAS had not tested response times, tried the arrangement temporarily, or identified a missed or delayed referral; it had considered only measures that kept Plaintiff in the courthouse as was its stated new preference. FAC ¶¶ 198, 200–201. The directive also added new duties not previously part of Plaintiff's court coverage—canvassing attorneys in person, obtaining supervisors' review before leaving court even after substantive court needs were complete, and sending coverage summaries—which similarly situated employees did not have. FAC ¶¶ 206–207, 212.

On January 28, Plaintiff emailed a supervising attorney offering help with that day's preliminary hearings; the attorney was "not aware of any particular case" she was needed for and recommended a Teams inquiry to identify further needs. FAC ¶ 208; ECF No. 73-14 at 2–3. That

recommendation was consistent with the very office-based coverage practice Plaintiff sought to continue through her accommodation request: to remain available through phone, email, and Teams and enter court whenever needed. FAC ¶¶ 106, 134–136. Indeed, the attorneys with whom Plaintiff was purportedly required to "build relationships" remained unaware of the existence of any new continuous court-presence and referral process until McEvilley's March 2026 communication months later and after Plaintiff was forced to take a leave after her accommodation was denied. FAC ¶¶ 223.

LAS nevertheless sent Plaintiff to court to meet a client, who said he had not requested social-work assistance and, in substance, "I'm shocked you would pull me out of my cell to talk about this." FAC ¶¶ 209–210. That same day—eight days after the written denial of her accommodation, Plaintiff gave notice that her physician had advised she required medical leave beginning February 2, documented as necessary because of the recurrent infections her requested disability accommodation request had been made to protect her from. FAC ¶¶ 215, 221.

### G. After Plaintiff announced leave, LAS proposed the office-based methods it had refused

The next day, January 29, sixty-six days after the request, Walsh wrote: "It is my understanding that you will not be providing additional medical clarification, as requested." "In light of this," LAS proposed that, when no hearing was immediate, Plaintiff wait "either in the court office on the 5th floor or across the street at our main office" and return when contacted by "text/Teams/email." Walsh added: "To start, the accommodation is approved for 6 months." FAC ¶¶ 216, 227; ECF No. 73-16 at 2–3. LAS thus offered the nearby-office mechanism without the physician's response Park had called necessary nine days earlier. FAC ¶ 216; ECF No. 61-1 at 1. But although Quigley and Almanzar would screen intake matters and identify matters for prioritization, the arrangement still required immunocompromised Plaintiff to report to the

courthouse at 10:00 a.m. and approach attorneys in person merely to determine whether anyone needed her—communications previously conducted through Teams, email, or telephone. It therefore did not effectively accommodate her actual disability-related need to limit unnecessary infection exposure. FAC ¶¶ 14, 217, 229; ECF No. 73-16 at 2. The proposed fifth-floor court office likewise failed to address that need because it was shared by public defenders from across the Bronx, increasing exposure compared with her own office, and lacked her disability-related equipment accommodations, including her ergonomic chair and blue screen protectors. FAC ¶¶ 127, 220. While the proposal was ineffective alternative that put her health at risk, it did, however, confirm the feasibility of office-based availability (at least other than the hour of unnecessary morning facetime) and undermine LAS's claim that unnecessary courthouse presence for up to seven hours was an essential function. FAC ¶¶ 216–217, 236.

On March 6—102 days after her initial disability accommodation request, with Plaintiff on leave—Walsh sent a revision. She proposed its modifications "[i]n order to be compatible with the medical documentation you provided." "In order to ensure we are minimizing your in-court time to only the time needed to meet client needs," Plaintiff would no longer go to court at 10:00 a.m. but would "send Teams messages at around 10am to both the intake attorneys on prelims and on recogs," copying her supervisors, and enter court when a need was identified. FAC ¶¶ 225, 227, 232–233; ECF No. 73-17 at 3. The proposal ran "for 6 months (starting whenever you return)," although "your medical documentation speaks to the ongoing need for an accommodation," and Walsh noted that "no action is needed on your part at this time." FAC ¶ 225; ECF No. 73-17 at 2–3. It has never been implemented. FAC ¶ 47.

The March revision substantially adopted the office-based arrangement Plaintiff proposed on November 24, but *only 102 days later*—after repeated requests, three express denials, illness

necessitating medical leave, and counsel's warning of legal liability. FAC ¶¶ 25, 193–197, 215, 221, 227; ECF No. 72 at 4–7. It confirmed that electronic morning screening and court attendance when needed were feasible, undermining LAS's claim that courthouse presence for an initial hour, or indeed up to seven hours, without an identified need was an essential function. FAC ¶¶ 218–219, 226, 232, 236.

The same email described the court-coverage protocol as *new*. PRDU had "been preparing to roll out a new protocol for court coverage days"; "while the expectation that you work with clients in-court on court coverage days in order to meet client needs is not new, the specifics of this protocol are"; and the January 29 proposal was "an earlier version." FAC ¶¶ 225, 231; ECF No. 73-17 at 2. From Plaintiff's November 24, 2025 request through LAS's repeated denials, the ineffective January 29 proposal, and the March 6 proposal of a substantially similar accommodation to her requested accommodation, nothing material to the accommodation's feasibility changed. LAS identified no intervening technological, staffing, scheduling, medical, or courthouse development that made the arrangement newly workable. Plaintiff had the same nearby office, communication systems, ability to cross the street, and willingness to attend court when needed throughout. The means of accommodating her were available in November, before the repeated denials, continued exposure, and deterioration that forced her onto disability leave and into a wheelchair. FAC ¶¶ 226, 236.

After Plaintiff sued, LAS advertised her position as "court-based" with a duty of interviewing clients "in court," terms absent from its 2024 posting. FAC ¶ 255. Neither posting required a social worker to remain in a courthouse for up to seven hours twice a week without an identified need. FAC ¶ 256. Thus, LAS's broader March 2026 rollout of this "new" policy came approximately seven months after it imposed the one-hour directive on Plaintiff and Verano Diaz

in August, and 102 days after Plaintiff's November 24 accommodation request. FAC ¶¶ 110–111, 130, 223–227. Yet, from December 15 through January 20, LAS repeatedly characterized the disputed presence requirement, which was not yet an actual general policy, as an "essential function" and refused an exception, escalating it to seven hours for Plaintiff alone after she requested the accommodation of an exception to the new policy, while Manhattan PRDU staff attended court only as needed. FAC ¶¶ 154–159, 170–179, 193–197. LAS thereby counterfactually labeled as an "essential function" of the job a courthouse-presence requirement it did not actually impose on all its PRDU forensic social workers, maintaining that position from December 15, 2025, through Plaintiff's medically compelled February 2 leave and into March 2026, when LAS finally rolled out a broader policy. FAC ¶¶ 154–159, 176–179 193–197, 221, 223–225.

**H. Plaintiff's health declined sharply, and she remains on reduced-pay leave**

Before the December illness, Plaintiff was working under her hybrid schedule and improving on Hyrimoz. FAC ¶ 266. The illness forced her to interrupt that treatment, and her health declined: by April 2026 she had been diagnosed with Postural Orthostatic Tachycardia Syndrome, a post-viral condition, and needed a wheelchair; by June she needed full-time care – and still does to date. FAC ¶¶ 269–270, 278, 280. Plaintiff alleges that the courthouse exposure LAS required while she was immunocompromised materially increased her risk of infection and, upon information and belief, caused or contributed to the illness, which, with the interrupted treatment, precipitated or aggravated her decline. FAC ¶ 285.

On leave since February 2, 2026, Plaintiff receives partial disability benefits in place of her wages and has depleted her paid leave, incurred medical expenses, suffered substantial emotional distress, and faced the loss of her health insurance on or about September 8, 2026. FAC ¶¶ 138, 221, 287. She remains employed, intends to return when medically able, and will need a new accommodation when she does; the March 6 proposal covers only six months after her return and

is subject to re-evaluation. FAC ¶¶ 30, 295–296. Defendants have issued no written determination withdrawing the January 20 denial or disavowing the seven-hour formulation, and Plaintiff alleges that the standard remains a condition of her return from leave. FAC ¶¶ 294, 373, 375. In addition, before Plaintiff's February 2, 2026 leave, Defendants' additional medical demands required further provider involvement, burdened Plaintiff and her provider, delayed accommodation, and prolonged courthouse exposure. FAC ¶¶ 215, 290–292. And even during leave, Matrix, yet again, again demanded documentation and threatened closure of her accommodation request and possible employment consequences, only to acknowledge that her existing provider note sufficed. FAC ¶¶ 368, 422.

### I. After Plaintiff sued, Matrix threatened closure and discipline over forms it did not need

Plaintiff filed this action on May 11, 2026, and that day sent LAS and Matrix her physician's signed letter supporting leave through December 2026. Neither identified a deficiency regarding her submission. FAC ¶¶ 238–241. On May 29, however, Matrix, sent her a notice enclosing certification forms and warned: "Failure to return the required documents will result in the closure of your request for additional accommodation and may result in disciplinary or other employment action by The Legal Aid Society." FAC ¶¶ 242–243. Plaintiff re-sent the letter and asked whether the forms were required, without substantive response. FAC ¶¶ 244–245. On June 3, LAS's leave specialist told her to complete Matrix's paperwork because the accommodation process, not her disability benefits, protected her job. FAC ¶ 246. After Plaintiff objected and Human Resources forwarded her existing note to Matrix, Matrix wrote: "The accommodation packet sent to you are standard forms that get sent however, I can use the doctors note." On June 5, before the June 16 expiration, Matrix communicated LAS's approval through December 16 without the forms, using the medical documentation both Defendants already possessed before

Matrix's warning. Matrix's demand for additional certification was therefore demonstrably unnecessary to evaluate and approve the extension. FAC ¶¶ 240, 243, 247–251.

LAS conditioned Plaintiff's continued job protection on compliance with Matrix's process, while Matrix imposed documentation demands, deadlines, and warnings; decided whether her documentation sufficed; controlled whether her request remained open; and monitored her accommodation. FAC ¶¶ 77–85, 253. Although Matrix attributed final approval to LAS, Matrix itself administered the conditions for obtaining and preserving accommodation, and LAS authorized and reinforced those conditions. Their respective roles thus involved substantive participation, not merely communicating another's decision. FAC ¶¶ 51–53, 85, 253. Plaintiff remains subject to that process for further leave extensions and accommodations upon her return to work. FAC ¶ 254.

### J. Other LAS employees encountered the same practices

LAS, which reported $13,697,629 in federal financial assistance for fiscal year 2024 and approximately 2,449 employees in its 2023 Form 990, selected Matrix as its agent to administer accommodation and leave requests within its centralized Human Resources process. FAC ¶¶ 50–52, 323. LAS retained ultimate approval authority and supplied the disputed job requirements, while Matrix exercised delegated control over medical-documentation demands, deadlines, documentation sufficiency, request status, and warnings of closure and possible discipline. FAC ¶¶ 51–53, 77–85, 253. LAS made compliance with Matrix's process a condition of continued job protection, dividing control over Plaintiff's accommodation between the two Defendants. FAC ¶ 253.

In addition to eight individualized employee examples, the FAC alleges delays exceeding five months without interim relief; repeated bad-faith or harassing meetings used to prolong review or develop new denial grounds, followed by accusations of noncooperation; generalized physical-

presence justifications; and post-request duty changes designed to make accommodations appear incompatible with the job. FAC ¶ 10(a)–(l). Other alleged experiences included Walsh discouraging a postsurgical employee's appeal, pressure to abandon remote-work requests to escape unpaid leave, discipline for medically necessary absences, and performance penalties for limitations unresolved accommodations were intended to address. FAC ¶ 10(a)–(c), (j), (l).

It also identifies removal from a team after an accommodation request. FAC ¶ 321. These allegations support an inference of recurring accommodation obstruction and hostility towards disability accommodations and the disabled people who need them: the FAC links the barriers to LAS's centralized Human Resources, Employee Relations, management, and Matrix processes and identifies standardized forms, documentation demands, and workflows as potential common proof of non-individualized accommodation reviews. FAC ¶¶ 31, 322, 326–329.

**STANDARD OF REVIEW**

On a Rule 12(b)(6) motion, the Court accepts the well-pleaded facts as true and draws all reasonable inferences in Plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). Plausibility "is not akin to a 'probability requirement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 requires plausible allegations, not evidentiary proof. *Berk v. Choy*, 607 U.S. 187, 193–94 (2026). The pleaded facts "need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). When the facts support two plausible inferences, the choice between them belongs to the factfinder; a court may not dismiss because it finds the defendant's account more persuasive. *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 184–85 (2d Cir. 2012).

LAS relies on Park's January 20, 2026 email. LAS Br. 7 n.3; ECF No. 61-1. Plaintiff agrees that the FAC incorporates that email. The Court may consider what the email says, but not accept

LAS's disputed explanations in it as true. *Pearson v. Gesner*, 125 F.4th 400, 406–07 (2d Cir. 2025); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Undue hardship, and as to the NYCHRL also any essential function, are matters on which LAS bears the burden, and a complaint need not plead around a defense. *Cunningham v. Cornell Univ.*, 604 U.S. 693, 701–02 (2025); *Isbell v. City of New York*, 316 F. Supp. 3d 571, 589 (S.D.N.Y. 2018) (Broderick, J.). Nor may Defendants obtain dismissal by drawing adverse inferences from disputed documents. *Jones v. City of New York*, No. 18-CV-1937 (VSB), 2020 WL 1644009, at *9–10 (S.D.N.Y. Apr. 2, 2020) (Broderick, J.).

The NYCHRL claims require a separate analysis. Every provision of the City law must be "construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof." N.Y.C. Admin. Code § 8-130(a); *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013); *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 66–68 (1st Dep't 2009). Federal law is a floor below which the City law cannot fall. *Mihalik*, 715 F.3d at 109; *see Cangro v. N.Y.C. Dep't of Fin.*, 183 F.4th 149, 161–62 (2d Cir. 2026) (reinstating ADA and NYCHRL accommodation claims and directing separate consideration of the City law on remand).

## ARGUMENT

### I. PLAINTIFF HAS PLED LEGALLY PLAUSIBLE CLAIMS AGAINST LAS

#### A. Count I — Rehabilitation Act Failure to Reasonably Accommodate

Section 504 incorporates the ADA's employment standards. 29 U.S.C. § 794(d). Plaintiff must plead that she has a disability, that LAS had notice of it, that she could perform the essential functions of her job with reasonable accommodation, and that LAS refused to make one. *McMillan v. City of New York*, 711 F.3d 120, 125–26 (2d Cir. 2013). LAS's accommodation argument challenges the refusal element. LAS Br. 12. But the FAC alleges that LAS twice expressly stated

in its January 20 communication that the requested interim accommodation was denied. FAC ¶¶ 193, 195. It separately alleges constructive denial through unreasonable delay: LAS did not propose the substantially similar arrangement eliminating automatic courthouse entry until March 6—102 days after Plaintiff's request. FAC ¶¶ 217–218, 224, 227, 232. As discussed below, Plaintiff's claims are plausible under either theory of express or constructive denial.

#### 1. Recent appellate decisions and their applications support accommodation liability

##### a. *Cangro*'s pleading standard is satisfied by successful accommodated work

*Cangro* controls the qualification element. There, two years of successful remote work, continued permission to work remotely two days a week, and a manager's support for the proposed arrangement sufficiently pleaded that the plaintiff could perform his essential functions with the accommodation. 183 F.4th at 161. Rule 12(b)(6) "does not require a plaintiff to plead evidence." *Id.* Plaintiff pleads more than the plaintiff in *Cangro* did. From her March 2023 transfer until LAS's August 2025 directive, she covered court from her LAS office, a two-minute walk from the courthouse, and went to court when a client or an attorney needed her. FAC ¶¶ 42, 46, 106, 130–137. Her evaluations during that period were favorable. *Id.* ¶ 105. LAS's own training provided for assessments by telephone, by video, in court, or in the office; Friday coverage was virtual; and social workers in other boroughs covered court from another location until they were needed. *Id.* ¶¶ 107–109. On December 1, 2025, Walsh acknowledged that under the requested arrangement Plaintiff would be "readily available to manage that onsite need." *Id.* ¶ 141. The request is also narrower than the request in *Cangro*. Plaintiff did not ask to leave the workplace. She asked to wait in her office, rather than in the courthouse, between court tasks. *Id.* ¶¶ 132–136. *See also Henriquez v. City of New York*, 247 A.D.3d 535, 535–36 (1st Dep't 2026) (reinstating NYCHRL claims after five years of successful accommodated work).

Whether office-based coverage would burden LAS is for LAS to prove, and the FAC alleges that the arrangement cost nothing. FAC ¶ 260; *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995); *Lyons v. Legal Aid Soc'y*, 68 F.3d 1512, 1516–17 (2d Cir. 1995) (vacating dismissal because reasonableness required factual development).

**b. *Raymond* highlights that an accommodation must be effective**

LAS argues that it engaged in an extensive process and that it offered alternative proposals. LAS Br. 13–14. But a process is not an accommodation and "[t]he hallmark of a reasonable accommodation is effectiveness." *Raymond v. 1199SEIU Nat'l Benefit Fund*, 184 F.4th 42, 54–56 (2d Cir. 2026) (quoting *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 189 (2d Cir. 2015)). In *Raymond*, the employer removed the four most distant stops from the plaintiff's route, but that change did not establish that the remaining travel met his restrictions, and the Second Circuit vacated summary judgment. *Id.* LAS's cases do not hold otherwise. *Noll v. International Business Machines Corp.*, 787 F.3d 89, 94–95 (2d Cir. 2015), found an accommodation plainly reasonable on an undisputed summary-judgment record. *Slater v. NYU Langone Health System*, No. 24-CV-3711 (OEM) (SIL), 2025 WL 2208292, at *8–9 (E.D.N.Y. Aug. 4, 2025), found that a workstation modification met the employee's job-related needs.

None of LAS's measures addressed Plaintiff's limitation of needing to minimize exposure to infection while she was working. Her provider recommended limiting unnecessary time in the courthouse during immunosuppressive treatment; Plaintiff did not ask for an infection-free workplace. FAC ¶¶ 129–134, 150. The three remote days and the ergonomic equipment that LAS had already approved did nothing about exposure on her two onsite days. *Id.* ¶¶ 127, 149–150. Matrix's January 2 letter kept twice-weekly courthouse attendance of up to seven hours and suggested PPE and breaks as an (ineffective) alternative accommodation, but Plaintiff already wore a KN95, a mask does not shorten the time she was exposed, and a mask does not offer full

protection. *Id.* ¶¶ 47, 138, 170, 181, 201, 267. Addressing one restriction does not necessarily satisfy another. *Tafolla v. Heilig*, 80 F.4th 111, 121–23 (2d Cir. 2023) (file-weight restriction did not necessarily address bending and twisting restrictions), and offered precautions do not defeat allegations of inadequate protection. *King v. N.Y. State Dep't of Educ.*, No. 1:23-CV-1400 (MAD/CFH), 2024 WL 4664280, at *9–10 (N.D.N.Y. Nov. 4, 2024) (sustaining an immunosuppressed employee's accommodation claim despite workplace precautions).

LAS's later proposals do not change the analysis. The January 29 proposal offered advance screening and prioritization but still required Plaintiff to enter the courthouse at 10:00 a.m. to obtain attorney authorization that could have been given electronically – unnecessarily exposing her each time for an hour to have unproductive facetime with attorneys who did not even know why she was there. FAC ¶¶ 216–217, 223. The March 6 proposal came only 102 days after the request, while Plaintiff was on leave, and LAS never implemented it as she has already been forced to take a leave because of the denial of her accommodation request. *Id.* ¶¶ 218–219, 224–227. That Plaintiff describes the March 6 proposal as "substantially similar" to her request, LAS Br. 14, shows that the request was feasible. It does not show that LAS provided an effective continuing accommodation after Plaintiff's November 24, 2025 request, through its January 12 and January 20, 2026 denials, or before the unaccommodated requirement forced her onto medical leave on February 2, 2026. FAC ¶¶ 19, 193–197, 215–221; ECF No. 73-11 at 6–7. Instead, LAS proposed a substantially similar arrangement (after denying her twice) only on March 6, 2026—*102 days* after her request. FAC ¶¶ 224, 227, 232. LAS identified no intervening technological, staffing, scheduling, medical, or courthouse change explaining why the office-based arrangement requested on November 24 could not be provided then but could be offered on March 6. FAC ¶¶ 134–136, 198–199, 226. The claim does not depend entirely on January 29's ineffectiveness. Eventual

relocation does not establish timely accommodation. *Felix v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 6109, 2023 WL 4706097, at *9–10 (S.D.N.Y. July 24, 2023) (denying summary judgment despite air purifiers, proposed offices, and later relocation). Plaintiff asked to keep working, and on January 28 she was still offering to help in court. FAC ¶ 215. Recurrent infections then required provider-directed leave beginning February 2, and leave replaced her wages with partial disability benefits. *Id.* ¶¶ 138, 221.

**c. *Tudor* preserves accommodation claims despite continued performance and partial assistance**

LAS cannot defeat Count I by pointing to Plaintiff's continued performance or to the accommodations it had previously granted before Plaintiff became immunocompromised and informed them of the same. FAC ¶¶ 127, 129–131, 149–153, 165. An employee who can technically perform her job without an accommodation may still be entitled to one. *Tudor v. Whitehall Cent. Sch. Dist.*, 132 F.4th 242, 246–47 (2d Cir. 2025) (vacating summary judgment). Successful work and favorable evaluations support qualification; they do not negate the burden of prolonged courthouse exposure. *See LaScala v. Guidehouse Inc.*, No. 25-CV-2882 (JPO), 2026 WL 787829, at *6 (S.D.N.Y. Mar. 20, 2026) (substantial work despite health problems sufficiently pleaded qualification). And prior assistance does not establish effectiveness. *Harper v. Charter Commc'ns*, No. 1:21-cv-760 (GWC) (MJR), 2025 WL 1455491, at *6–9 (W.D.N.Y. May 21, 2025) (applying *Tudor* and denying summary judgment despite numerous accommodations, seven years' employment, and positive evaluations where onsite work aggravated medical conditions). Neutral workplace rules may require individual exceptions to company policies – like the admittedly "new" facetime policy at issue here. *US Airways, Inc. v. Barnett*, 535 U.S. 391, 397–98, 403–06 (2002) (rejecting categorical reliance on neutral rules while distinguishing seniority systems); 29 C.F.R. § 1630.2(o)(2)(ii); *Harper*, 2025 WL 1455491, at *11 (rejecting facial

unreasonableness of exemption from additional remote-work eligibility requirements). Plaintiff sought modified screening while preserving necessary attendance. FAC ¶¶ 134–136, 150.

### 2. Actual duties and practices define essential functions

An employer's judgment about a job receives some deference but ultimately *actual practice* defines essential functions. *McMillan*, 711 F.3d at 126–29; *Tafolla*, 80 F.4th at 119–23. The FAC pleads that time in the courthouse between identified tasks was not essential. Plaintiff provided office-based court coverage for more than two years, entering court when an identified need arose, and received positive evaluations. FAC ¶¶ 101, 104–106. LAS first imposed courthouse attendance without an identified need in August 2025, without initially characterizing that requirement as essential. *Id.* ¶¶ 110–112. After Plaintiff's November 24 accommodation request, Walsh asserted on December 15 that court coverage was an essential function and that Plaintiff's request "wouldn't be applicable"; on December 19, Walsh first maintained that courthouse presence for up to seven hours was part of Plaintiff's job. FAC ¶¶ 130, 154, 159. Her job descriptions and training did not require continuous courthouse presence, and the seven-hour requirement was absent from her prior evaluations. FAC ¶¶ 103, 108–111, 359; *Cangro*, 183 F.4th at 161; *McMillan*, 711 F.3d at 126–27 (requiring consideration of longstanding practice undermining asserted attendance requirement); *Tafolla*, 80 F.4th at 119–20 (finding essentiality disputed based on job description, supervisors' statements, and actual allocation of duties).

On December 15, 2025, Walsh wrote, apparently in a moment of unguarded candor, that "there isn't an hour requirement to be onsite/at court per coverage/shift." FAC ¶ 154. LAS first asserted a seven-hour requirement four days later, right after Plaintiff's renewed accommodation request. *Id.* ¶ 159. LAS later posted the position as "court-based," but neither the 2024 posting nor the 2026 posting required up to seven hours in the courthouse without an identified need for physical presence. *Id.* ¶¶ 255–257. Later descriptions do not conclusively establish earlier

requirements. *Noel v. Wal-Mart Stores, E. LP*, 764 F. App'x 17, 21 & n.2 (2d Cir. 2019) (summary order) (rejecting that inference on dismissal of a Vermont disability-based wrongful-discharge claim). Indeed, the FAC alleges that the instruction to spend approximately one hour in court without an identified need was new in August 2025 and applied only to Plaintiff and Verano Diaz, the two Bronx PRDU social workers. FAC ¶¶ 16, 110–111, 175. It further alleges that comparable courthouse-presence requirements were not imposed on Manhattan PRDU social workers and that LAS escalated the one-hour directive into an up-to-seven-hour requirement only for Plaintiff. FAC ¶¶ 178–179. Plaintiff never asked to be excused from court work. The dispute is where she waits between court tasks.

### 3. Both express refusal and unreasonable delay independently support Count I

LAS refused interim accommodation twice in writing. Plaintiff requested the accommodation on November 24, 2025, and sought interim protection through her union on December 9 and personally on December 10, 2025. FAC ¶¶ 130, 147–148. On January 12, 2026, Park stated that the interim request to remain in LAS's office until needed in court "is not approved." Pl. 56.1 ¶ 117, ECF No. 71. On January 20, 2026, Park answered: "This interim accommodation was *denied* and remains so." (emphasis added). ECF No. 61-1 at 1; FAC ¶ 193. Park directed that Plaintiff "should be in court by 10:00am" and wrote that "Marissa can expect this to be the expectation for her in-person court workdays until the accommodation is resolved." ECF No. 61-1 at 1. An express refusal is actionable in itself; Plaintiff need not also show delay or intent. *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 218–19 (2d Cir. 2001); *see Guerrero v. Constellation Health Servs., LLC*, No. 22-CV-07736 (OEM) (LGD), 2025 WL 2549936, at *11 (E.D.N.Y. Sept. 4, 2025) (employer's admitted denial satisfied the refusal element despite earlier accommodations and dialogue). LAS responds that no employee is entitled to an

"interim" accommodation. LAS Br. 14–18. But Plaintiff's December 19 and 22 requests both reiterated her ungranted November 24 accommodation request and presented new requests for immediate protection from LAS's escalation of the one-hour courthouse directive to as much as seven hours. FAC ¶¶ 130, 141, 159, 162, 165. LAS had the means to provide interim relief: it had previously approved Plaintiff's remote-work accommodation provisionally while permanent review remained pending, and the requested office-based coverage required no additional equipment, staffing, schedule change, or expense. FAC ¶¶ 127, 149, 197, 260.

Whether ADA accommodation delay or constructive denial claims require discriminatory intent remains technically open although the Circuit has "never endorsed" requirement. *See Perkins v. City of New York*, No. 22-196-cv, 2023 WL 370906, at *3 & n.3 (2d Cir. Jan. 24, 2023) (summary order) (reserving question); *Tillman v. N.Y.C. Dep't of Hum. Res. Admin.*, No. 22-872-cv, 2023 WL 2770218, at *1 n.2 (2d Cir. Apr. 4, 2023) (summary order) (Circuit has "never endorsed" requirement). *Owens*, however, supplies the correct analysis. *Owens v. Delta Airlines, Inc.*, No. 23-CV-2114 (FB) (PK), 2025 WL 278024, at *6 (E.D.N.Y. Jan. 23, 2025) (rejecting separate intent proof for delay at summary judgment).

This Court's contrary approach in *Lambert v. Trump International Hotel & Tower*, 304 F. Supp. 3d 405, 421–22 (S.D.N.Y. 2018), traced to *Powers v. Polygram Holding, Inc.*, 40 F. Supp. 2d 195, 202 (S.D.N.Y. 1999), which incorrectly assumed intent necessary for all ADA claims. *Powers* in turn relied on general formulations in *Criado v. IBM Corp.*, 145 F.3d 437, 441 (1st Cir. 1998), and *Jacques v. Clean-Up Group, Inc.*, 96 F.3d 506, 511 (1st Cir. 1996), neither of which were deciding delay. That reading is superseded by later appellate clarification. *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 264 (1st Cir. 1999) (accommodation liability regardless

of intent); *Brooklyn Ctr. for Psychotherapy, Inc. v. Phila. Indem. Ins. Co.*, 955 F.3d 305, 312 (2d Cir. 2020) ("failure-to-accommodate claims do not require proof of discriminatory intent").

The apparent conflation imports disparate-treatment intent from the ADA's classification of non-accommodation as "discrimination." 42 U.S.C. § 12112(b)(5)(A). City law separately imposes accommodation duties based on actual or constructive knowledge. N.Y.C. Admin. Code §§ 8-107(1)(a), (15)(a). The EEOC likewise tests reasonableness without requiring deliberate indifference. EEOC, *Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the ADA*, Question 10 & n.38 (Oct. 17, 2002) [hereinafter *Accommodation Guidance*]. Under that framework, deliberate indifference supports unreasonableness without being indispensable; outright refusals require no intent.

Accordingly, under that framework, the FAC plausibly pleads unreasonable delay. Plaintiff's request required only permission; nothing had to be bought or built. FAC ¶¶ 130–137, 260. She initially requested her accommodation on November 24, 2025, reiterated it on December 9 and 10, and renewed her requests and objections on December 22 and on January 6, 9, and 12. *Id.* ¶¶ 147–148, 165, 185, 188–189. LAS identified no hardship and tested no alternative. *Id.* ¶¶ 198–201. Fifty-seven days passed before LAS's January 20 refusal, 66 days before its first – ineffective -- proposal, and *102 days* before the proposal that was substantially similar to her request. *Id.* ¶ 227. Courts have sustained delay claims on comparable or shorter periods. *Perkins*, 2023 WL 370906, at *1–5 (two-to-three-and-a-half-month initial delay, then recurring equipment failures and ignored requests; deliberate indifference plausibly alleged); *Callbeck v. Fallon Cmty. Health Plan, Inc.*, 480 F. Supp. 3d 308, 314 (D. Mass. 2020) (seven weeks before approval on medical information available from the start); *Hill v. Clayton Cnty. Sch. Dist.*, 619 F. App'x 916, 921–22 (11th Cir. 2015) (two months); *McCray v. Wilkie*, 966 F.3d 616, 621–22 (7th Cir. 2020)

(eleven-month delay; eventual accommodation did not defeat claim); *Tate v. Bisignano*, No. 23-CV-16421, 2026 WL 84472, at *10–12 (N.D. Ill. Jan. 12, 2026) (denying summary judgment; roughly three months, sporadic review, and inadequate alternatives); *see also Strife v. Aldine Indep. Sch. Dist.*, 138 F.4th 237, 246–47 (5th Cir. 2025) (six months' allegedly unjustified delay where the accommodation required no procurement). The EEOC distinguishes the time genuinely needed to put an accommodation in place from unnecessary delay, and states plainly that a two month delay for an accommodation requiring only an administrative approval, not requiring the purchase and arrival of equipment, would be a violation of the ADA. *Accommodation Guidance*, *supra*, Question 10, Examples A–B & n.38 (identifying five relevant factors: the delay's reason and duration, each party's contribution, the employer's actions during the delay, and the accommodation's complexity).

Importantly, while LAS's later proposal supports *feasibility* because no material circumstances had changed, FAC ¶¶ 225–226, it did not eliminate liability for an earlier refusal or unreasonable delay. *See Gerard v. 1199 Nat'l Benefit Funds*, No. 23-CV-7950 (DEH), 2025 WL 3120752, at *6 (S.D.N.Y. Nov. 6, 2025); *Monroe v. Jewel Food Stores, Inc.*, No. 18-CV-1499, 2023 WL 2018907, at *9–10 (N.D. Ill. Feb. 15, 2023); *McCray*, 966 F.3d at 620–22; *Strife*, 138 F.4th at 246–47; *Samuels v. City of New York*, No. 22-CV-1904 (JGK), 2023 WL 5717892, at *8 (S.D.N.Y. Sept. 5, 2023).

LAS blames Plaintiff for the delay because her provider did not complete the Matrix form. LAS Br. 15 n.4. The FAC alleges that Plaintiff attended every meeting LAS requested and never refused clarification. FAC ¶¶ 184, 189. She objected to a form that told her provider to treat a seven-hour courthouse requirement as her "current job function," and she asked LAS to pose its medical questions without that disputed premise. *Id.* ¶¶ 175, 182–184. The decision LAS cites was

decided on summary judgment and involved an employee who said she "would not participate in another conference call." *Peten v. Stericycle, Inc.*, No. 15-CV-872 (JFB) (ARL), 2018 WL 679886, at *2 & n.3 (E.D.N.Y. Feb. 1, 2018), *adopting* 2017 WL 8813133 (E.D.N.Y. Dec. 21, 2017); LAS Br. 15 n.4. This Court has held that a jury could find an employee "not responsible for the breakdown in the interactive process" where she declined the employer's medical examination after it refused to let her lawyer attend. *Berger v. N.Y.C. Police Dep't*, 304 F. Supp. 3d 360, 371–72 (S.D.N.Y. 2018) (Broderick, J.). And on January 29, tellingly, LAS made a proposal without the answers that Park had called "necessary for the next step in the interactive process" nine days earlier. FAC ¶ 216; ECF No. 61-1 at 1. That sequence supports the inference that LAS never needed the answers to act – as well as her cooperative dialogue and medical inquiry claims.

### 4. LAS's deliberate indifference is plausibly pleaded if necessary

Even if intent were required, the FAC pleads it. Deliberate indifference requires that an official with authority to correct the violation knew of it and failed to respond adequately. Personal hostility is not required. *Biondo v. Kaleida Health*, 935 F.3d 68, 73–76 (2d Cir. 2019); *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275–76 (2d Cir. 2009). Park, LAS's Chief Human Resources Officer, was responsible for the accommodation process. FAC ¶¶ 54–57. She knew of the December 19 grievance, which challenged the delay and the lack of interim protection, and of Plaintiff's January objections. *Id.* ¶¶ 55, 163, 353. She sought "additional time to review and evaluate the grievance and RFIs" while keeping the provider deadline and the courthouse requirement in place. *Id.* ¶¶ 57, 185–187. On January 20 she confirmed the denial of interim relief, required Plaintiff to be in court by 10:00 a.m., and called further medical answers "necessary." ECF No. 61-1 at 1. Nine days later LAS made a proposal without those answers. FAC ¶ 216. Those facts plausibly show a knowing choice to withhold relief that was available. *See Mendez v. John Jay Coll. of Crim. Just.*, No. 23 Civ. 8816 (LGS), 2026 WL 2806898, at *6 (S.D.N.Y. Sept. 18,

2026) (noting that the Second Circuit "has not adopted or rejected" an animus requirement for delay, and permitting a deliberate-indifference finding on approximately two months without accessible assignments despite other assistance and eventual provision).

The same facts supply what was missing in LAS's authority. *Brown v. New York City Department of Education*, No. 20-CV-2424 (VEC), 2022 WL 4364600, at *3–4 (S.D.N.Y. Sept. 21, 2022), recognized that delay can be a constructive denial even when an accommodation eventually follows, and dismissed the delay theory because the pro se complaint alleged no facts suggesting that the delay was "motivated by animus." LAS Br. 17–18. In *Lambert*, a summary-judgment decision, human resources met with the employee eight days after her written request and immediately directed her supervisors to comply. 304 F. Supp. 3d at 421–22. Here the responsible official explicitly refused in writing multiple times and did not approve a substantially similar accommodation for 102 days – and then only after the failure to accommodate forced Plaintiff to take a leave and stop working. LAS's continued communications, while not actually approving the accommodation,  do not defeat the inference at the pleading stage. *Russo v. Nat'l Grid, USA*, No. 23-CV-03954 (NCM) (TAM), 2026 WL 1492969, at *12–13 (E.D.N.Y. May 28, 2026) (denying judgment as a matter of law because liability could stand regardless of participation in an interactive process; discussions, evidence-gathering, and an offered alternative did not compel a finding of adequate engagement where the employer would not move off a single option the employees said would not work); *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 431–32 (2d Cir. 2011).

**B. Count II — Rehabilitation Act Retaliation**

A retaliation claim requires protected activity known to the employer, a materially adverse action, and a causal connection between them. *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). Requesting an accommodation is protected activity. *Weixel v. Bd. of Educ. of City of*

*N.Y.*, 287 F.3d 138, 149 (2d Cir. 2002). Plaintiff requested accommodation on November 24 and 25, requested interim protection on December 9 and 10, pursued a union grievance filed on December 19, and renewed her requests and objections on December 22 and on January 6, 9, and 12. FAC ¶¶ 130, 140, 147–148, 163, 165, 185, 188–189. LAS disputes adversity and causation. LAS Br. 19–23.

An action is materially adverse if it "well might have dissuaded a reasonable worker" from engaging in protected activity. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). The test is objective, but it depends on the employee's circumstances, and the challenged acts are considered both separately and together. *Id.* at 68–71; *Hicks v. Baines*, 593 F.3d 159, 165–66 (2d Cir. 2010). After Plaintiff asked for less time in the courthouse, LAS required more and added new burdens. LAS imposed a requirement of up to seven hours in the courthouse and applied it to Plaintiff alone. FAC ¶¶ 159, 175–178. Her supervisors demanded expanded access to her files. *Id.* ¶¶ 168–169, 190. Matrix sent a provider questionnaire with a fifteen-day deadline and a warning that a failure to respond "could impact the decision." *Id.* ¶ 181. On January 20, Park added duties to canvass attorneys in person and to obtain supervisory review before leaving court. *Id.* ¶¶ 204–207.

Moreover, LAS selectively increased Plaintiff's medically dangerous exposure on December 19, 2025—nine days after her interim-accommodation request and one day after her opposition to the courthouse requirement—conduct that could deter further requests even without causing infection. FAC ¶¶ 148, 159, 175–178, 401. *See Hicks*, 593 F.3d at 170 (dangerous assignments could deter protected activity); *cf. Bernheim v. Litt*, 79 F.3d 318, 324–26 (2d Cir. 1996) (reinstating First Amendment retaliation claim involving stair-climbing requirements despite known physical disabilities). For an immunosuppressed employee, a requirement to spend

more time in the place her provider told her to limit would deter a reasonable person from asking again.

In addition, Quigley and Almanzar demanded file access beyond Plaintiff's usual pre-absence chart one and four days after her renewed accommodation request, despite prior praise for her file management. FAC ¶¶ 165, 168–169, 191. Three days after her January 12 objection, Quigley expanded the demand beyond her anticipated absence without answering whether others faced it, reinforcing the inference of retaliatory scrutiny. *Id.* ¶¶ 189–190. LAS's unnecessary medical demands also support retaliation: despite sufficient documentation and no identified medical gap, LAS imposed duplicative demands after the grievance, a fifteen-day deadline Plaintiff's specialist could not meet, and a warning jeopardizing accommodation. FAC ¶¶ 181–186, 290–292, 354, 357; *Gaffney v. Brewster Cent. Sch. Dist.*, No. 24-CV-9497 (KMK), 2026 WL 2925898, at *20 (S.D.N.Y. Sept. 29, 2026); EEOC, *Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees Under the ADA*, Question 11 (July 27, 2000) (continued documentation demands after sufficient evidence of disability and accommodation need "could be considered retaliation").

LAS argues that a failure to accommodate cannot also be retaliation. LAS Br. 19–20. While it can be under certain circumstances plausibly pled here, *Peterson v. N.Y.C. Dep't of Educ.*, No. 18-CV-1515, 2020 WL 2559835, at *5–6 (E.D.N.Y. May 20, 2020); *Mehta v. City of New York*, No. 19-CV-3857, 2022 WL 280460, at *8–9, *12–13 (E.D.N.Y. Jan. 31, 2022); FAC ¶¶ 178, 353–354, 358–359, the plausibility of Count II does not depend on the denial and rests on numerous materially adverse action. It rests on burdens that LAS added after Plaintiff's protected activity and that did not exist before it. FAC ¶ 205. Those allegations differ from the generally applicable policies found insufficient on the summary-judgment record in *Carr v. New York City Transit*

*Authority*, 76 F.4th 172, 178–81 (2d Cir. 2023), and the escalation distinguishes *Castro v. Local 1199, National Health & Human Services Employees Union*, 964 F. Supp. 719, 729 (S.D.N.Y. 1997). LAS Br. 21. Count II does not depend on proving that LAS caused a particular infection or the ensuing leave.

"A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015); *Littlejohn*, 795 F.3d at 319–20. While there is no bright-line temporal cutoff, a two-month interval generally supports an inference of retaliatory causation at the pleading stage. *Rivera v. JP Morgan Chase*, 815 F. App'x 603, 608 (2d Cir. 2020) (summary order) (vacating dismissal where adverse actions began one to two months after protected activity). Even four months can suffice. *Nunez v. Metro. Learning Inst., Inc.*, No. 18-CV-1757, 2019 WL 5457731, at *2 (E.D.N.Y. Oct. 24, 2019) (finding four months sufficiently close at the pleading stage).

The FAC pleads the sequence by date. LAS first asserted a seven-hour requirement on December 19, twenty-five days after the November 24 request and nine days after Plaintiff's direct request for interim protection. FAC ¶¶ 130, 148, 159. The union filed a grievance on her behalf that day. *Id.* ¶ 163. Quigley demanded additional file access four days later, on December 23. *Id.* ¶ 168. On December 26, Almanzar expanded that demand and Walsh questioned Plaintiff about her precautions outside work. *Id.* ¶¶ 169–171. On December 30, Walsh sent the provider questionnaire premised on seven hours, and on January 2 Matrix sent its deadline letter. *Id.* ¶¶ 175, 181. Plaintiff objected on January 6, 9, and 12, and Park added the canvassing and supervisory-review duties on January 20, between eight and fourteen days later. *Id.* ¶¶ 185, 188–189, 193–196,

204–207. Every interval is twenty-five days or less, and each decisionmaker knew of the protected activity before acting. *Id.* ¶¶ 353, 355–358.

The FAC also pleads more than timing. LAS's explanation shifted: on December 15 Walsh wrote that there was no "hour requirement," and by December 30 a seven-hour requirement had become Plaintiff's "current job function." FAC ¶¶ 154, 175. LAS applied the seven-hour formulation and the added duties only to Plaintiff; her colleague Verano Diaz, who had not requested an accommodation, was not subject to them. *Id.* ¶¶ 120, 178. The file demands followed evaluations that had praised Plaintiff's file management, and LAS did not answer her question whether others faced the same demands. *Id.* ¶¶ 190–191. Close timing together with shifting explanations and selective treatment easily states a claim. *Newton v. LVMH Moët Hennessy Louis Vuitton Inc.*, No. 25-1697-cv, 2026 WL 2819692, at *11–12 (2d Cir. Sept. 21, 2026) (vacating dismissal of retaliation claims where proximity of up to four months accompanied a pattern of antagonism). Whether LAS's explanations are true cannot be decided on the pleadings. *Anderson News*, 680 F.3d at 185. The ultimate pretext burden does not govern a Rule 12(b)(6) motion. *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845–47 (2d Cir. 2013) (three weeks sufficed at the prima facie stage).

LAS's causation cases involved very long gaps or missing dates. LAS Br. 22–23. In *Riddle v. Citigroup*, 640 F. App'x 77, 79 (2d Cir. 2016) (summary order), the challenged acts began sixteen months after the protected activity. In *Sosa v. New York City Department of Education*, 368 F. Supp. 3d 489, 518–20 (E.D.N.Y. 2019), the lawsuit-based theory involved gaps of sixteen months to more than two years. *Charles v. City of New York*, No. 25-CV-6219 (BMC), 2026 WL 698634, at *4 (E.D.N.Y. Mar. 12, 2026), dismissed a complaint that omitted the dates of the plaintiff's requests. Once the plaintiff identified a request made a month before her demotion, the

same court sustained her retaliation claim under the ADA and the NYCHRL. *Charles v. City of New York*, No. 25-CV-6219 (BMC), 2026 WL 1256993, at *3 (E.D.N.Y. May 7, 2026). *Cangro* is not to the contrary. The retaliation claim rejected there involved a promptly retracted investigation rumor and a promotion denied eleven and more than twenty-two months after the protected events. *Cangro*, 183 F.4th at 159–60. Plaintiff alleges intensified conditions within days.

### C. Count III — Rehabilitation Act Interference, Coercion, Threats, and Intimidation

Section 504 incorporates the ADA's separate prohibitions on retaliation and on interference, coercion, and intimidation. 29 U.S.C. § 794(d); 42 U.S.C. § 12203(a)–(c). Interference therefore warrants independent analysis. *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550–51 (7th Cir. 2017); *Menoken v. Dhillon*, 975 F.3d 1, 9–11 (D.C. Cir. 2020). *Ferrara* did not hold otherwise. LAS Br. 10–11. It limited its interference analysis to the ADA because the plaintiff briefed interference only under that statute, and it said only that the Rehabilitation Act question is "unclear as a legal matter." *Ferrara v. Metro. Transp. Auth.*, No. 24-CV-9161 (JPO), 2026 WL 351084, at *5 n.4 (S.D.N.Y. Feb. 9, 2026). In *Ferrara*, moreover, every requested accommodation was granted, and the challenged communications were not directed at the plaintiff. *Id.* at *5–6.

Here, after Plaintiff requested accommodation and opposed its denial, LAS expanded her courthouse presence from one hour to seven, demanded duplicative medical submissions under short deadlines and threatened consequences, withheld interim protection, and increased scrutiny and reporting. FAC ¶¶ 361–363. Matrix later acknowledged that the existing documentation sufficed, after it had demanded more with a warning of employment consequences. *Id.* ¶ 363; *see infra* Part I.J. Those allegations plausibly describe intentional coercion: LAS pressed Plaintiff to choose between her medical restrictions and employment consequences while she was exercising

protected rights. They satisfy even the discriminatory-intent requirement in *Frakes*. Plaintiff did not have to give in for the conduct to be actionable; the question is whether the conduct would reasonably tend to coerce. *Ferrara*, 2026 WL 351084, at *5; EEOC, *Enforcement Guidance on Retaliation and Related Issues* § III (Aug. 25, 2016) (employment threats compelling prohibited medical inquiries can be interference). Shared facts do not extinguish distinct statutory protections. LAS Br. 10–12. Count III challenges the coercive pressure surrounding the accommodation process, whether or not LAS ultimately offered an effective accommodation.

### D. Count IV — Rehabilitation Act Medical Inquiry Violation

Section 504 incorporates the ADA's limit on medical inquiries. An employer may not ask about the nature or severity of an employee's disability unless the inquiry is "job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A); 29 U.S.C. § 794(d); *Taylor v. City of Shreveport*, 798 F.3d 276, 283, 286–87 (5th Cir. 2015) (holding that the Rehabilitation Act incorporates § 12112(d)(4)(A), and vacating dismissal of declaratory and injunctive claims challenging a requirement that the employee's provider state whether the condition was chronic, because business necessity is an affirmative defense that it is "generally inappropriate" to resolve under Rule 12(b)(6)). The employer bears the burden of showing business necessity. *Conroy v. N.Y. State Dep't of Corr. Servs.*, 333 F.3d 88, 97–98 (2d Cir. 2003). When an employee requests accommodation, the employer may ask for documentation sufficient to establish the disability and the need for accommodation, but it may not demand more once the employee has supplied that information. *Accommodation Guidance*, *supra*, Question 8.

The FAC pleads that LAS's demands went beyond what LAS needed. LAS's own email acknowledges that the provider's letter recommended "limited Court interaction" with "appropriate and reasonable precautions" and identified "specific tasks" for which Plaintiff would attend court. ECF No. 61-1 at 1; FAC ¶¶ 131–133, 366. LAS and Matrix nonetheless required the

provider to provide still more: complete a form that presented up to seven hours a day in the courthouse as Plaintiff's "current job function," set a fifteen-day deadline, and warned that a failure to respond "could impact the decision," where it already had received a medical opinion that less exposure was always better -- begging the question -- what more medical detail was LAS, if asked in good faith, really asking for, having already received that response? FAC ¶¶ 175, 181, 367. The open question was operational, not medical: whether Plaintiff needed to be in the courthouse between tasks was a question for LAS. *Id.* ¶ 182. LAS then made its January 29 and March 6 proposals without the answers, and it described the March 6 proposal as "compatible with the medical documentation you provided." *Id.* ¶¶ 216, 225. A demand for information that LAS turned out not to need was plausibly not a business necessity.

LAS's cases do not support dismissal. LAS Br. 10–12. *Berger* was decided on summary judgment, on a record in which the employee's doctor's note gave "very little information" about her disability or the accommodation she needed. 304 F. Supp. 3d at 372–73 & n.12. *Sharikov v. Philips Medical Systems MR, Inc.*, 659 F. Supp. 3d 264, 288–91 (N.D.N.Y. 2023), *aff'd*, 103 F.4th 159 (2d Cir. 2024), involved workplace-wide COVID-19 screening whose justification was "apparent from the face of the Amended Complaint and its attachments"; the court recognized that business necessity is an affirmative defense on which the employer bears the burden, and the Second Circuit's opinion does not discuss the inquiry claim. 659 F. Supp. 3d at 289–90. Here the existing documentation, the established office-based coverage, and LAS's later proposals support the contrary inference. Courts sustain inquiry claims that challenge additional medical demands. *Harrison v. SUNY Downstate Med. Ctr.*, No. 16-CV-1101 (RRM) (CLP), 2017 WL 4326507, at *3 (E.D.N.Y. Sept. 25, 2017) (sustaining a Rehabilitation Act inquiry claim where the employer sought diagnosis and prognosis after the employee had supplied medical documentation); *Grimes*

*v. N.Y. & Presbyterian Hosp.*, No. 1:23-cv-652 (MKV), 2024 WL 816208, at *14 (S.D.N.Y. Feb. 26, 2024) (noting that *Berger* was decided on summary judgment and sustaining an inquiry claim while dismissing accommodation claims). An unlawful medical-inquiry claim does not require that the plaintiff be disabled. *Conroy*, 333 F.3d at 94–95; *Taylor*, 798 F.3d at 284. Nor does it require a separate adverse employment action. *Litowitz v. Garland*, No. 3:20-cv-724 (AWT), 2021 WL 3679144, at *9 (D. Conn. Aug. 19, 2021) (sustaining a federal employee's Rehabilitation Act inquiry claim). Count IV therefore does not depend on Counts I and II.

The demand that accompanied Plaintiff's leave extension independently supports Count IV. On May 11, 2026, Plaintiff supplied a signed provider note supporting the extension. FAC ¶ 240. Matrix demanded a full certification packet and warned that noncompliance would close the request and could lead to disciplinary or other employment action. *Id.* ¶¶ 242–243. Matrix later acknowledged that it could use the provider's note, and LAS approved the extension without the packet. *Id.* ¶¶ 249–251.

### E. Count V — Rehabilitation Act Qualification Standards and Methods of Administration

Count V challenges the seven-hour courthouse requirement itself, as a qualification standard and a method of administration that screens out an employee with a disability. 42 U.S.C. § 12112(b)(3)(A), (b)(6); 29 U.S.C. § 794(d); FAC ¶¶ 371–377. LAS calls the count duplicative of Count I. LAS Br. 10–12. The same requirement can both deny an accommodation and operate as an exclusionary criterion, and Rule 8(d)(2) permits alternative theories. *Oross v. Kutztown Univ.*, No. 21-5032, 2024 WL 83506, at *2–3 (E.D. Pa. Jan. 8, 2024) (adding screening liability where an immunosuppressed professor was denied remote teaching under a full-duty, in-person requirement; group statistics not required).

The qualified-individual requirement applies to these theories, *Williams v. MTA Bus Co.*, 44 F.4th 115, 128 (2d Cir. 2022), and the FAC satisfies it for the reasons in Part I.A.1. FAC ¶¶ 104–107. Essential functions and qualification standards are distinct. Plaintiff must plead that she can perform the essential functions; requiring her also to meet the challenged criterion would insulate that criterion from review. *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 990 (9th Cir. 2007) (en banc). Once Plaintiff pleads that a criterion screens her out because of disability, LAS must show that the criterion is job-related and consistent with business necessity and that performance cannot be accomplished by reasonable accommodation. 42 U.S.C. § 12113(a). That is a defense, and the FAC pleads facts against it. LAS applied the criterion as a condition of both active work and return from leave, enforced it through the provider form and the January 20 directive, and then proposed an arrangement without it. FAC ¶¶ 175, 181, 204, 221, 225, 371–375.

### F. Count VI — NYCHRL Failure to Provide Reasonable Accommodation

#### 1. The pleaded facts independently establish plausible City-law liability

The NYCHRL requires an employer to "provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job" when the disability is "known or should have been known." N.Y.C. Admin. Code § 8-107(15)(a). The employer bears the burden of proving that the employee could not satisfy the essential requisites even with accommodation, and of proving undue hardship. *Id.* §§ 8-102, 8-107(15)(b); *Romanello v. Intesa Sanpaolo, S.p.A.*, 22 N.Y.3d 881, 885 (2013); *Jacobsen v. N.Y.C. Health & Hosps. Corp.*, 22 N.Y.3d 824, 835 (2014). LAS acknowledges that burden, LAS Br. 26, but apparently overlooks guidance from the City Commission on Human Rights stating that working outside the office "generally will not be sufficient to support an undue hardship defense." N.Y.C. Comm'n on Hum. Rts., *Legal Enforcement Guidance on Discrimination on the Basis of Disability* pt. II(A)(iii)(d), at 57 (Dec.

2025), https://www.nyc.gov/assets/cchr/downloads/pdf/NYCCHR_LegalGuide-Disability.pdf [hereinafter *Disability Guidance*].

LAS argues that it never refused an accommodation. LAS Br. 25–26. Its own words refute that argument: "This interim accommodation was denied and remains so because it remains management's position that in-person/onsite court coverage is an essential function of the PRDU social worker role." ECF No. 61-1 at 1; FAC ¶ 193. That is a refusal, and it rests on a defense that LAS must prove. A good-faith belief that an employee cannot perform does not excuse withholding an accommodation that would enable performance. *Heiden v. N.Y.C. Health & Hosps. Corp.*, No. 20-CV-10288 (LJL), 2023 WL 171888, at *33 (S.D.N.Y. Jan. 11, 2023). The FAC pleads the opposite of that defense: more than two years of successful office-based coverage, Walsh's December 15 statement that there was no hour requirement, and LAS's later proposal of a substantially similar arrangement supports plausibility. FAC ¶¶ 106, 130–137, 154, 225. Plaintiff's pending motion for partial summary judgment on Count VI rests on the same facts. ECF No. 72.

### 2. Recent appellate authority supports the NYCHRL accommodation claim

Recent appellate decisions require an individualized inquiry into what the job actually demands. In *Smelyansky v. New York State Office of General Services*, 250 A.D.3d 1286, 1291–94 (3d Dep't 2026), an NYSHRL Article 78 case, the employee had worked effectively from home for three years, and the court held that the employer had "conflated its preferred reasonable workplace goals with petitioner's essential job functions." General collaboration goals did not establish that presence was essential. *Id.*; *see also Hosking v. Mem'l Sloan-Kettering Cancer Ctr.*, 186 A.D.3d 58, 65–67 (1st Dep't 2020). LAS's stated goals of, initially relationship building, and

later the buzzwords of "interdisciplinary collaboration" and "early client engagement," FAC ¶ 175, are preferences of the same kind.

Later inability to work does not defeat the claim. In *Jacobsen*, the employee's eventual incapacity did not entitle the employer to judgment, because the employer had not considered the accommodation when it could have helped. 22 N.Y.3d at 839–44; *accord Kocher v. Mount Sinai Hosp.*, No. 2026-00882, 2026 WL 3079051, at *1 (1st Dep't Oct. 15, 2026). Plaintiff's leave began only after LAS refused, and she offered to keep working until then. FAC ¶¶ 215, 221. An arrangement that is agreed or proposed but not carried out is not an accommodation. *Serdans v. N.Y. & Presbyterian Hosp.*, 112 A.D.3d 449, 450–51 (1st Dep't 2013); *Serdans v. N.Y. & Presbyterian Hosp.*, 138 A.D.3d 524, 524 (1st Dep't 2016) (upholding liability verdict for failure to implement agreed accommodation).

**3. City law independently reaches unjustified accommodation delay**

The City law contains no intent element for delay. Section 8-107(15)(a) turns on what the employer knew or should have known. Compliance with the cooperative-dialogue requirement "is not a defense to a claim of not providing a reasonable accommodation." N.Y.C. Admin. Code § 8-107(28)(f). The Commission's guidance states that "[a]n indeterminate delay may have the same effect as an outright denial." *Disability Guidance*, *supra*, pt. I(D)(ii)(c), at 35 & n.82. *Lambert* does not hold otherwise. This Court declined supplemental jurisdiction over the NYCHRL claim there and did not reach its merits. 304 F. Supp. 3d at 428–29. *Owens* sustained the NYCHRL delay claim without separate proof of intent. 2025 WL 278024, at *6. The 57, 66, and 102 days pleaded here, FAC ¶ 227, state a City-law claim constrictive accommodation denial claim, whatever the federal standard.

### G. Count VII — NYCHRL Disability Discrimination, Less Well Treatment, and Harassment

LAS argues that Plaintiff alleges no termination, demotion, suspension, or transfer. LAS Br. 27. None is required. Even Title VII requires only "some harm" respecting an identifiable term or condition of employment. *Muldrow v. City of St. Louis*, 601 U.S. 346, 354–59 (2024). The NYCHRL asks whether Plaintiff was treated "less well," at least in part because of her disability, and LAS bears the burden of proving, as an affirmative defense, that the conduct amounted to no more than petty slights or trivial inconveniences. *Mihalik*, 715 F.3d at 110–11, 114. The FAC pleads concrete disadvantages: a seven-hour courthouse requirement applied to Plaintiff alone, added canvassing and supervisory-review duties, and heightened file scrutiny despite favorable evaluations. FAC ¶¶ 178–179, 390–394. LAS's assertion that Plaintiff alleges no loss of compensation, LAS Br. 27, overlooks the allegation that leave replaced her regular wages with partial, finite disability benefits. FAC ¶ 138.

The FAC also connects that treatment to disability. First, LAS increased the courthouse requirement from one hour to seven after Plaintiff disclosed that unnecessary exposure put her at risk of serious illness. FAC ¶¶ 148, 159, 175–178. Second, LAS did not impose the seven-hour formulation or the added duties on Verano Diaz, who had not requested an accommodation. *Id.* ¶ 178. That allegation answers LAS's argument that Plaintiff identifies no similarly situated employee. LAS Br. 27. Third, Walsh questioned Plaintiff about her precautions outside work. FAC ¶¶ 170–171. Fourth, LAS's explanations shifted, and its scrutiny of Plaintiff's files departed from her evaluations. *Id.* ¶¶ 154, 175, 190–191. Discriminatory statements are not required. *Serrano v. City of New York*, 226 A.D.3d 575, 575–76 (1st Dep't 2024); *Vega*, 801 F.3d at 86–87. These allegations go beyond those in *Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 298, 301–02 (S.D.N.Y. 2019), which involved a single directive to move boxes despite the plaintiff's

limitations, denied leave requests, and frequent emails. LAS Br. 27. *Gonzalez* also sustained the plaintiff's NYCHRL retaliation claims. 377 F. Supp. 3d at 301–02.

Two further allegations support the inference. Repeated refusals to accommodate or hostility to accommodations can themselves support a NYCHRL harassment claim. *Kugel v. Queens Nassau Nursing Home Inc.*, 568 F. Supp. 3d 253, 264 (E.D.N.Y. 2021) (denying dismissal where "repeated refusals to accommodate" an employee at high risk from COVID-19, who was told to work on-site or be terminated, supported a reasonable inference that she was treated less well because of her disability). And the FAC describes pattern or practice evidence other LAS employees who met denials, delays, and medical demands in the same centralized process. FAC ¶¶ 10, 391–392. An employer's general practice of discrimination "may be highly relevant" to an individual claim. *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 150 (2d Cir. 2012), and

### H. Count VIII — NYCHRL Retaliation

Count VIII requires independent analysis even if particular allegations do not satisfy federal retaliation standards. *Mihalik*, 715 F.3d at 109, 112–13. The City law expressly protects both requesting a reasonable accommodation and opposing a prohibited practice. N.Y.C. Admin. Code § 8-107(7)(i), (v). Plaintiff did both, to the knowledge of the responsible Defendants. FAC ¶¶ 163, 185, 188–189, 353, 398. The City law imposes no separate material-adversity threshold. Federal retaliation law already reaches beyond discharge, demotion, and changes in compensation, *Burlington*, 548 U.S. at 64, 68, but the NYCHRL asks only whether the conduct was "reasonably likely to deter a person from engaging in protected activity." N.Y.C. Admin. Code § 8-107(7). *Williams* cautions that *Burlington*'s materiality terminology can improperly screen out conduct before the required assessment of deterrence in context. 61 A.D.3d at 70–71 & n.12. Conduct therefore cannot be excluded merely because it concerns assignments, supervision, or documentation.

Each category of conduct described in Part I.B meets that standard. Even merely a disadvantageous reassignment without reduced pay supports City-law retaliation. *Pelepelin v. City of New York*, 189 A.D.3d 450, 452 (1st Dep't 2020) (reinstating retaliation claim based on reassignment from plainclothes work to uniformed guard duty). Here, LAS expanded a shared one-hour courthouse expectation into coverage of up to seven hours for Plaintiff alone, then added attorney canvassing and supervisory review before departure. FAC ¶¶ 175–178, 204–207. For an immunocompromised employee who asked for less exposure, more exposure and less control over when she could leave plausibly discourage further requests, whether or not they caused a particular infection. Intensified scrutiny after protected activity is likewise actionable. *Mihalik*, 715 F.3d at 115–16 (public criticism and shunning after protected opposition). Quigley and Almanzar expanded their file demands four and seven days after the grievance, although prior evaluations had praised Plaintiff's file management. FAC ¶¶ 168–169, 190–192, 401. The medical demands were also burdens imposed during protected advocacy, not merely an accommodation process: a provider inquiry that assumed the disputed seven-hour requirement, a fifteen-day deadline, a warning about the decision, and questioning about Plaintiff's precautions outside work. *Id.* ¶¶ 170–173, 175, 181–187, 399–401. Retaliatory information gathering, when made known, can itself deter protected activity; final decisionmaking authority is unnecessary. *Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 49–51 (2d Cir. 2025) (recognizing direct City liability for information gathering and aiding liability for information used by the decisionmaker).

Causation is also broader under the City law. Retaliation need only be a motivating factor, not the but-for cause. *Newton*, 2026 WL 2819692, at *11. LAS's interests in coverage, supervision, or medical clarification therefore do not defeat allegations that retaliation also influenced how Defendants pursued those interests. The FAC connects each actor to specific conduct and specific

protected activity: Walsh's escalated courthouse premise followed the accommodation requests; Quigley's and Almanzar's expanded file demands followed the grievance; and Park's added canvassing and supervisory requirements followed the January objections. FAC ¶¶ 353, 398–401. Finally, LAS argues that Count VIII repackages the accommodation denial. LAS Br. 28–29. But new or escalated conduct after protected activity supports retaliation even when some earlier treatment continued. *O'Rourke v. Nat'l Foreign Trade Council, Inc.*, 176 A.D.3d 517, 518 (1st Dep't 2019) (sustaining claim involving reduced responsibilities, exclusion, and other post-complaint escalation). The FAC alleges changed working conditions independent of the denial itself. FAC ¶ 205.

**I. Count IX — NYCHRL Failure to Engage in a Cooperative Dialogue**

The NYCHRL makes it a separate violation for an employer "to refuse or otherwise fail to engage in a cooperative dialogue within a reasonable time" with an employee who has requested an accommodation. N.Y.C. Admin. Code § 8-107(28)(a). A cooperative dialogue is a good-faith exchange about the employee's needs, the potential accommodations and alternatives, and the difficulties they may pose for the employer. *Id.* § 8-102. LAS argues that Plaintiff's own allegations describe a "months-long dialogue." LAS Br. 26–27. The number of communications does not answer the question. The statute requires good faith and timeliness, and a dispute about either is a question of fact. *Moye v. Mount Sinai Hosp.*, 248 A.D.3d 623, 626–27 (1st Dep't 2026) (a meeting and offered alternatives did not establish a cooperative dialogue as a matter of law); *Friedman v. Bloomberg, L.P.*, 230 A.D.3d 1060, 1061 (1st Dep't 2024) (discussions did not establish consideration of the requested accommodation or a suitable alternative). A dialogue violation is independently actionable. *Kocher*, 2026 WL 3079051, at *1.

The FAC pleads a dialogue that was neither timely nor in good faith. LAS understood the request by December 1. FAC ¶ 141. LAS never evaluated office-based coverage, identified a

hardship, or tested the arrangement. *Id.* ¶¶ 198–201. Instead, LAS changed the premise. After stating on December 15 that there was no hour requirement, it asserted a seven-hour requirement on December 19 and built its medical questions on that requirement. *Id.* ¶¶ 154, 159, 175, 181–183. Plaintiff asked LAS to pose its questions without that premise; LAS kept the form and the deadline. *Id.* ¶¶ 182–187. Ignored requests for clarification support a dialogue claim at the pleading stage. *Rizzo v. N.Y.C. Dep't of Sanitation*, No. 23-CV-7190 (JMF), 2024 WL 3274455, at *4 (S.D.N.Y. July 2, 2024). On Friday, December 19, Walsh required Plaintiff to attend court the following Monday while proposing to talk later that week, although Plaintiff told her that her specialist was unavailable over the weekend and asked for protection for Monday. *Id.* ¶¶ 159–162. Walsh used the December 26 meeting to question Plaintiff about her precautions outside work. *Id.* ¶¶ 170–171. Plaintiff attended every meeting and never refused clarification. *Id.* ¶¶ 184, 189. LAS made no proposal for 66 days and no proposal resembling the request for 102 days. *Id.* ¶ 227.

Here, Plaintiff plausibly describes a bad-faith cooperative dialogue in which the employer takes performative steps that elevate form over substance, has no intention of identifying a resolution, and remains set on denial beneath a veneer of compliance. LAS's alleged insistence on treating its newly imposed courthouse-presence requirement as nonnegotiable supports an inference that its continuing communications lacked good faith. FAC ¶¶ 181–184, 198–203; *see Heiden*, 2023 WL 171888, at *33–34 (denying summary judgment where communications lacked meaningful consideration of the employee's disability, potential accommodations, and operational difficulties); *Hosking*, 186 A.D.3d at 66 (requiring essential functions to be examined through the interactive process, rather than "a unilateral employer decision cloaked by business judgement"); *Disability Guidance*, *supra*, pt. I(D)(ii)(c), at 35 (assessing whether the employer sought to "obstruct or delay the cooperative dialogue" or "intimidate or deter" accommodation requests).

LAS's authorities do not resolve these allegations. *Baker v. Bridge Inc.*, 805 F. Supp. 3d 521, 549–50 (S.D.N.Y. 2025), was decided on summary judgment. The plaintiff there had not pleaded a cooperative-dialogue claim, and the record showed that the employer answered her request within five days and offered alternatives on four later occasions. LAS Br. 26. *Noll*, *Slater*, and *Puranik v. Children's Place Services Co.*, No. 24-CV-4441 (AT) (VF), 2025 WL 2522442, at *8 (S.D.N.Y. Aug. 1, 2025), *report and recommendation adopted*, 2025 WL 2521122 (S.D.N.Y. Sept. 2, 2025), concern the accommodation the employer offered, not whether the employer engaged in a timely, good-faith dialogue. *Puranik* involved an offer of leave that the employee had expressly requested as an alternative.

### J. Count X — NYCHRL Interference, Coercion, Intimidation, Threats, and Attempts

LAS argues that Count X alleges no threat. LAS Br. 29. The NYCHRL makes it unlawful "to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with," any person in the exercise of rights the statute protects. N.Y.C. Admin. Code § 8-107(19). The FAC pleads an express threat. On May 11, 2026, Plaintiff submitted a signed provider note supporting an extension of her leave. FAC ¶ 240. Matrix demanded a full certification packet and warned that noncompliance would close her request and could result in disciplinary or other employment action. *Id.* ¶¶ 242–243. LAS instructed Plaintiff to complete the packet to keep her job protection. *Id.* ¶ 246. Matrix then acknowledged that the packet contained standard forms and wrote, "I can use the doctors note." *Id.* ¶ 249. LAS approved the extension without the packet. *Id.* ¶¶ 250–251. A threat of discipline for failing to supply documentation, that the employer did not need, is a threat tied to the exercise of a protected right.

Threatened elimination of accommodations can also violate § 8-107(19). *Montanez v. N.Y.C. Hous. Auth.*, 5 A.D.3d 314, 315 (1st Dep't 2004) (affirming denial of summary judgment).

The pleaded warning supplies the affirmative threat that was missing in *Cadet v. Alliance Nursing Staffing of New York, Inc.*, 632 F. Supp. 3d 202, 236–37 (S.D.N.Y. 2022) (the only alleged threat was the text of an arbitration agreement; a threat "need not imply physical violence"), and *Erasmus v. Deutsche Bank Americas Holding Corp.*, No. 15 Civ. 1398 (PAE), 2015 WL 7736554, at *15 (S.D.N.Y. Nov. 30, 2015). LAS Br. 29–30. The FAC identifies the speaker, the demand, the consequence, and the protected right. *Robles v. Medisys Health Network, Inc.*, No. 19-CV-6651 (ARR) (RML), 2020 WL 3403191, at *12–13 (E.D.N.Y. June 19, 2020), applied the ADA's interference provision, not § 8-107(19), to an employer that had granted the requested leave, and rejected an interference claim that rested on a failure of the interactive process alone. The statute also reaches attempts, so Plaintiff need not allege that she gave up her rights. Because the FAC pleads a threat, the Court need not decide whether one is required; Plaintiff preserves the position that the statute's disjunctive text reaches interference without a threat. LAS is liable for the warning. LAS selected Matrix to administer accommodation and leave communications, and LAS's own specialist reinforced the demand. FAC ¶¶ 77–85, 246–248, 253. An employer is liable for the conduct of its employees and agents that violates subdivision (19). N.Y.C. Admin. Code § 8-107(13)(a). Matrix's January 2 letter, which warned that a failure to return the provider form by its deadline "could impact the decision," is a further instance. FAC ¶ 181.

### K. Defendants Do Not Challenge the Legal Plausibility of the Class Allegations

LAS addresses the class allegations only in a footnote and does not argue that they are implausible. LAS Br. 25 n.5. "Defendants' arguments challenging the class are more properly considered at the motion for class certification stage." *Passelaigue v. Getty Images (US), Inc.*, No. 16-CV-1362 (VSB), 2018 WL 1156011, at *10 (S.D.N.Y. Mar. 1, 2018). To strike class allegations, Defendants must show from the Complaint's face that certification is impossible regardless of discovery. *Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 52, 79–80 (E.D.N.Y.

2017). The FAC pleads other employees' experiences with denials, delays, medical demands, and presence requirements; recurring practices in LAS's centralized process; numerosity; and common questions. FAC ¶¶ 10, 31, 318–330.

### L. Survival of Federal Accommodation or Retaliation Preserves Jurisdiction Over All Related NYCHRL Claims

LAS asks the Court to decline supplemental jurisdiction over the NYCHRL claims. LAS Br. 23–25. If any federal claim survives, 28 U.S.C. § 1367(c)(3) does not apply, because it operates only after dismissal of all claims within the Court's original jurisdiction. Declining jurisdiction would then require another enumerated ground. *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 85–86 (2d Cir. 2018). None exists. All six NYCHRL counts arise from the same request, the same courthouse requirement, the same medical demands, and the same actors as the federal counts. 28 U.S.C. § 1367(a). Even if every federal claim were dismissed, the Court would have discretion to retain the City claims. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639–41 (2009).

### M. Any Curable Deficiency Warrants Targeted Amendment

If the Court finds any claim deficient, Plaintiff requests leave to amend that claim. Leave is freely given absent undue delay, bad faith, or futility. Fed. R. Civ. P. 15(a)(2); *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190–91 (2d Cir. 2015); *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–14 (2d Cir. 2011) (per curiam). No scheduling order sets a deadline for amendment, so Rule 16 does not apply. *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115–16 (2d Cir. 2021). Any deficiency the Court identifies would concern the level of factual detail, which amendment can cure.

**N. The FAC Gives Fair Notice and Does Not Warrant Dismissal**

LAS and the Matrix Defendants ask the Court to dismiss the FAC under Rule 8 because of its length. LAS Br. 8–9; Matrix Br. 1. Dismissal under Rule 8 is reserved for complaints so confused or unintelligible that their substance is disguised. *Salahuddin v. Cuomo*, 861 F.2d 40, 42–43 (2d Cir. 1988); *Simmons v. Abruzzo*, 49 F.3d 83, 86–87 (2d Cir. 1995); *Wynder v. McMahon*, 360 F.3d 73, 79–80 (2d Cir. 2004) (vacating dismissal). The FAC identifies each claim, each responsible Defendant, the conduct at issue, and the grounds for class treatment. Defendants' own briefs show that they understand it: LAS identifies the paragraphs it considers unnecessary and then answers every count on the merits. LAS Br. 9, 12–30. This Court declined to strike in its entirety an 889-paragraph employment complaint after finding that it pleaded sufficient claims. *Atkinson v. Singh*, No. 19-CV-3779 (VSB), 2022 WL 137634, at *17–18 (S.D.N.Y. Jan. 14, 2022).

The FAC's detail also answers the pleading standard that Defendants invoke. The Second Circuit has affirmed dismissal of a Rehabilitation Act accommodation claim that lacked allegations about the plaintiff's duties, his performance with accommodation, and why the offered alternatives were unreasonable. *Stanley v. Phelon*, No. 23-731-cv, 2024 WL 1453872, at *5 (2d Cir. Apr. 4, 2024) (summary order). Defendants cannot fault the FAC for both too much detail and too little. If the Court finds the FAC too long, the remedy is leave to file a shorter pleading, not dismissal with prejudice. *Salahuddin*, 861 F.2d at 42–43. LAS's own cases allowed repleading. *Washburn v. Kingsborough Cmty. Coll.*, No. 20-cv-00395 (DLI) (RLM), 2022 WL 843733, at *2–3 (E.D.N.Y. Mar. 22, 2022) (dismissing without prejudice and with leave to amend); *Rubin v. N.Y.C. Bd. of Educ.*, No. 20 Civ. 10208 (LGS), 2023 WL 2344731, at *3–4 (S.D.N.Y. Mar. 3, 2023); LAS Br. 9. If directed, Plaintiff would consolidate any repetition and remove any unnecessary material.

## II. PLAINTIFF'S CLAIMS AGAINST MATRIX AND THE INDIVIDUAL DEFENDANTS SURVIVE DISMISSAL

**Coverage and personal participation**

An individual employee may be liable under § 8-107(1)(a) when she has "a role in administering the compensation, terms, conditions, or privileges of plaintiff's employment"; practical authority suffices, and a formal managerial title is not required. *Russell v. N.Y. Univ.*, 42 N.Y.3d 377, 388–90 (2024). The Amended Complaint pleads that role for Park, Walsh, Almanzar, and Quigley. FAC ¶¶ 56, 64, 68, 71.

Defendants accept that individual defendants answer under the City law for "their own unlawful conduct" and for aiding and abetting others. Matrix Br. 8. They describe the individuals' supervisory and administrative roles but argue that each needed authority to depart from LAS's position. *Id.* at 1–2, 8–15. Neither *Russell* nor *Doe v. Bloomberg L.P.*, 36 N.Y.3d 450, 459 (2021), requires that authority: the City law "specifically imposes primary liability on employees and agents" under § 8-107(1)(a). *Id.*

*De Souza v. New York*, 824 F. Supp. 3d 336, 351–52, 372–74 (S.D.N.Y. 2026), applied *Russell* to sustain NYCHRL religious-accommodation claims against HR officials without asking whether they could depart from the employer's position.

Courts reject a categorical exclusion of employees without formal authority. *Martinez v. Staten Island Univ. Hosp.*, 814 F. Supp. 3d 380, 410–11 (E.D.N.Y. 2026); *Parham v. City of New York*, No. 450008/2021, 2024 WL 4377550, at *5–6 (Sup. Ct. N.Y. Cnty. Oct. 2, 2024) (pleading stage; individual defendants need not be decisionmakers).

*Abadi* does not help Defendants. It was a public-accommodation suit decided before *Russell*, and the proposed defendants were not alleged to decide masking exceptions. *Abadi v. NYU Langone Health Sys.*, 705 F. Supp. 3d 172, 185–86 & n.4 (S.D.N.Y. 2023). The same court later

granted leave to add an employee responsible for disability policy because that role supported an inference of authority to accommodate. *Abadi v. NYU Langone Health Sys.*, 731 F. Supp. 3d 616, 622 n.3, 624–25 (S.D.N.Y. 2024). Park, who exercised authority over accommodations, and Walsh, who coordinated accommodation requests, stand where that employee stood. FAC ¶¶ 54, 61–62.

### A. Count VI — Failure to Accommodate (Matrix, Park, Walsh, Quigley, Almanzar)

Section 8-107(15)(a)'s accommodation duty binds any person barred from disability discrimination, including employees and agents covered by subdivision (1)(a).

The NYCHRL reaches Matrix by its terms. Subdivisions (1)(a) and (28)(a) of § 8-107 apply to an employer "or an employee or agent thereof"; subdivisions (6) and (19) apply to "any person." LAS selected Matrix to administer its accommodation process, and the First Department has described a third-party leave administrator as the employer's agent. FAC ¶¶ 51–53, 76–85, 253; *Watson v. Emblem Health Servs.*, 158 A.D.3d 179, 181, 183–85 (1st Dep't 2018); *Bloomberg*, 36 N.Y.3d at 459–60.

Matrix's January 2 inquiry sought only alternatives preserving courthouse presence, under a fifteen-day deadline. ECF No. 73-12 at 4; FAC ¶¶ 181–189. Matrix maintained that premise after Plaintiff disclosed that her specialist was unavailable and a grievance was pending, without evaluating interim office-based protection, and so plausibly prolonged the failure to accommodate. FAC ¶¶ 185–200, 384, 405–409. Correcting the inquiry required no power over assignments, and LAS's retained approval authority does not erase Matrix's part. *Cf. Russell*, 42 N.Y.3d at 389–90.

Plaintiff may plead in the alternative that Matrix exercised discretion or followed instructions, and may plead on information and belief how Defendants allocated responsibility.

Fed. R. Civ. P. 8(d)(2); FAC ¶¶ 77–81; *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010).

The Appellate Division has sustained City-law accommodation claims against individual defendants. *Makharadze v. Ognibene*, 239 A.D.3d 844, 845–46 (2d Dep't 2025) (summary judgment); *Lilly v. State*, 249 A.D.3d 613, 614 (1st Dep't 2026) (pleadings).

**B. Count VII — Disability Discrimination (Park, Walsh, Quigley, Almanzar)**

Part I.G supplies the analysis under § 8-107(1)(a).

The Amended Complaint connects each to less favorable treatment. With the accommodation request pending, Walsh raised the one-hour expectation to up to seven hours for Plaintiff. FAC ¶¶ 141, 159. Park adopted that formulation as an "essential function" and added canvassing and supervisory-review duties. *Id.* ¶¶ 193–194, 207, 212. Quigley and Almanzar enforced the extended requirement and the new duties. *Id.* ¶¶ 67, 72, 196. The requirement was not applied to Verano Diaz who had not requested an accommodation. *Id.* ¶¶ 109, 178. The comparator, the changed rationale, and the selective burdens support an inference of discriminatory motive, which Defendants do not address. *Id.* ¶¶ 176–177; Matrix Br. 19.

**C. Count VIII — Retaliation (Park, Walsh, Quigley, Almanzar)**

Parts I.B and I.H set out the sequence; each individual has a place in it under § 8-107(7). On December 19, ten days after the union sought interim protection, Walsh raised the requirement to up to seven hours for Plaintiff alone. FAC ¶¶ 141, 147–148, 159, 178, 355, 401. Park, who had the grievance and the union's objections, denied interim relief and added canvassing and supervisory review on January 20, eight days after Plaintiff's own objection. *Id.* ¶¶ 55, 57, 163, 188, 193–196, 204, 358, 401.

Four and seven days after the grievance, Quigley and Almanzar expanded their file demands. FAC ¶¶ 163, 168–169, 190–191.

Nor does the claim rest on timing alone. Part I.B; FAC ¶¶ 176–178, 191, 359. Defendants' cases involved a gap of at least two years and comparators who had engaged in different misconduct. Matrix Br. 20. Here the intervals are days, each actor knew of the protected activity, and the comparator held the same position under the same directive.

**D. Count IX — Cooperative Dialogue (Matrix, Park, Walsh)**

Subdivision (28)(a) expressly covers employees and agents, and a failure to engage in a cooperative dialogue is "independently actionable." N.Y.C. Admin. Code § 8-107(28); *Greenbaum v. N.Y.C. Transit Auth.*, No. 21-1777-cv, 2022 WL 3347893, at *5 (2d Cir. Aug. 15, 2022) (summary order); Part I.I.

All three had notice. Walsh fixed the seven-hour duration. Matrix imposed deadlines without identifying unresolved medical facts or evaluating office-based availability. Walsh drafted, and Matrix reproduced above the provider's signature block, questions asking only how Plaintiff could remain in the courthouse, not whether the office-based arrangement would work. FAC ¶¶ 183, 189, 409. Park claimed time for LAS's own review while maintaining Plaintiff's deadline and exposure and denying interim relief. *Id.* ¶¶ 57, 140–142, 170–200, 204, 405–409.

Exchanges alone do not establish a meaningful assessment. *Hosking*, 186 A.D.3d at 64–67. *Ahmad v. New York University*, No. 22-cv-1248 (JLR), 2025 WL 3022862, at *13–14 (S.D.N.Y. Oct. 29, 2025), sustained the jury's cooperative-dialogue verdict against NYU despite months of communications and proposed alternatives (judgment later vacated on settlement solely as to the individual defendants, 2026 WL 234594, at *1 n.1, *2 (S.D.N.Y. Jan. 29, 2026)).

In *Moye*, summary judgment was denied despite meetings and offers of new positions because a jury could find the employer refused to consider accommodations in the existing jobs. 248 A.D.3d at 626–27. Plaintiff alleges the same: Defendants considered only measures that preserved courthouse presence. FAC ¶¶ 200–203. *Walrond v. New York City Health & Hospitals*

*Corp.*, 240 A.D.3d 933, 934–35 (2d Dep't 2025), differs: the complaint and the HR letter annexed to it defeated the dialogue claim.

Plaintiff's continued participation and medical submissions show good faith, unlike the plaintiffs in *Alvarez v. New York City Transit Authority*, 230 A.D.3d 541, 541–43 (2d Dep't 2024) (declined a medical exam and resigned), and *Wecker v. City of New York*, 134 A.D.3d 474, 475 (1st Dep't 2015), both decided on summary judgment. FAC ¶¶ 184, 201, 240–250.

### E. Count X — Interference and Threats (Matrix, Park, Walsh, Quigley, Almanzar)

Section 8-107(19) prohibits any person from interfering, or attempting to interfere, with NYCHRL rights. FAC ¶¶ 418–423.

Matrix warned: "Failure to return the required documents will result in the closure of your request for additional accommodation and may result in disciplinary or other employment action by The Legal Aid Society." FAC ¶¶ 240–251, 253; Part I.J.

That warning is a threat as Defendants' own case defines one: it created "[a]n impression of impending injury." *Sletten v. LiquidHub, Inc.*, No. 13 Civ. 1146 (NRB), 2014 WL 3388866, at *5 (S.D.N.Y. July 11, 2014) (internal quotation marks omitted); *Montanez*, 5 A.D.3d at 315 (fact question on "threats to eliminate reasonable accommodations").

Plaintiff's persistence and the eventual approval do not defeat the claim, because the statute reaches attempts. *Pinto v. New York City Administration for Children's Services*, No. 18-cv-1852 (KBF), 2018 WL 4333990, at *12 (S.D.N.Y. Sept. 11, 2018), which Defendants cite, Matrix Br. 22, decided a retaliation claim on summary judgment, not a § 8-107(19) claim.

The individual Defendants added to that pressure: Walsh directed Monday attendance on a Friday evening; Park maintained the provider deadline while ordering her to court the next

morning; and Quigley and Almanzar enforced those conditions while her objections were pending. FAC ¶¶ 57, 159–169, 185–196, 204, 418–420; ECF No. 61-1 at 1.

### F. Count XI — Aiding and Abetting (Matrix, Park, Walsh, Quigley, Almanzar, Burt)

Section 8-107(6) reaches any person who aids, abets, incites, compels, or coerces a violation, or attempts to do so. It requires a viable predicate, actual participation, and a shared purpose, not status or notice alone. *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020). Part I.F–J supplies the predicates. Whether Matrix is Plaintiff's employer does not decide whether it aided a violation. *Schindler v. Plaza Constr. LLC*, 154 A.D.3d 495, 495–96 (1st Dep't 2017) (nonemployer general contractor).

An employee who did not commit the primary violation can aid it, including by failing to take remedial measures after a complaint. *Ananiadis v. Mediterranean Gyros Prods., Inc.*, 151 A.D.3d 915, 917–18 (2d Dep't 2017); *Pietras v. MIP Holdings, Ltd.*, 251 A.D.3d 589, 592 (2d Dep't 2026) (NYCHRL pleading).

Park assisted LAS's failure to accommodate and to engage in a cooperative dialogue: knowing of the grievance and the union's objections, she maintained the provider deadline, issued the January 20 denial, and assigned its enforcement to the supervisors. FAC ¶¶ 55, 57, 163, 193–196, 428; ECF No. 61-1 at 1. Quigley and Almanzar, who knew of the request and the objections, enforced attendance while the medical review was pending, reviewed her cases before she could leave court, and pressed the file demands. FAC ¶¶ 67, 72, 162, 168–169, 190–191, 196, 204, 430–434. Implementing the denial required no power to reverse it.

An aider need not supervise the plaintiff or control the final decision. *McHenry*, which Defendants call "particularly instructive as to Park and Walsh," Matrix Br. 26, states that an aider "need not have had an employer-employee or supervisory relationship with the plaintiff" and that

failing to take remedial measures after notice can be actual participation. 510 F. Supp. 3d at 68. It dismissed the claims against a vice president and an HR representative for lack of allegations that they knew of the ongoing harassment or took concrete part in the later retaliation, and sustained the retaliation-aiding claim against an executive producer whose denial of authority "presents a factual question." *Id.* at 76–80. Here each Defendant acted while the violation was ongoing. *See also Long v. Marubeni Am. Corp.*, No. 05 Civ. 639 (GEL), 2006 WL 547555, at *4 (S.D.N.Y. Mar. 6, 2006) (aiding claim sustained against a former officer "even if he himself lacked the authority to take such an action").

Walsh characterized seven hours as the existing requirement and sought only alternatives that preserved it. FAC ¶¶ 159, 175, 182–184. Supplying operative information supports assistance. *Elco v. Aguiar*, 226 A.D.3d 649, 651 (2d Dep't 2024) (NYSHRL).

Burt is sued only for aiding. She reinforced attendance after notice of Plaintiff's medical restrictions and, on December 16, asserted discretion to refine social-work practices while maintaining the expectation. FAC ¶¶ 73–75, 118, 156, 158, 432. Her authority to modify enforcement supports knowing assistance. *Ananiadis*, 151 A.D.3d at 917–18.

*Zaki* does not help Defendants. There the union's conduct came after the plaintiff's termination, and nothing showed that it took part in the employer's conduct or shared its intent. *Zaki v. OTG Mgmt. LLC*, No. 23-CV-8189 (PK), 2025 WL 4783125, at *4 (E.D.N.Y. Nov. 20, 2025). Here each Defendant performed part of the violation, the "direct, purposeful participation" Defendants' cases require. *Id.* at *3 (internal quotation marks omitted).

Plaintiff's complaints through established channels support knowledge, and the changed requirements and their implementation support shared purpose without agreement or hostility,

unlike in *Europe v. Equinox Holdings, Inc.*, No. 20-cv-7787 (JGK), 2022 WL 4124763, at *11–12 (S.D.N.Y. Sept. 8, 2022) (summary judgment; defendant had reprimanded the actors).

Matrix's repetition of Walsh's premise, and its deadlines, facilitated Park's ratification and the supervisors' enforcement. FAC ¶¶ 51–53, 175–196, 426–434. A Defendant's own misconduct does not bar aiding another's distinct violation. *See Murtha v. N.Y. State Gaming Comm'n*, No. 17 Civ. 10040 (NSR), 2019 WL 4450687, at *18–19 (S.D.N.Y. Sept. 17, 2019) (NYSHRL).

Dated: November 11, 2026
Long Island City, New York

Respectfully submitted,

/s/ Cyrus E. Dugger

Cyrus E. Dugger
THE DUGGER LAW FIRM, PLLC
Gotham Center
28-07 Jackson Avenue, 5th Floor
Long Island City, New York 11101
Telephone: (646) 560-3208
Facsimile: (646) 390-4524
cd@theduggerlawfirm.com

*Attorneys for Plaintiff Marissa Kubicki and the Putative Classes*

## WORD COUNT CERTIFICATION

I certify that this memorandum contains 17,480 words, including footnotes and excluding the caption, tables, signature block, and required certifications, as calculated by Microsoft Word, and complies with Local Civil Rule 7.1(c), the Court's Individual Rule 4(B), and the Court's Order of November 6, 2026 (ECF No. 91), which permits a consolidated opposition of up to 17,500 words. The memorandum uses 12-point Times New Roman type, double-spaced text, and one-inch margins, consistent with Local Civil Rule 7.1(b).

Dated: November 11, 2026
Long Island City, New York

Respectfully submitted,

/s/ Cyrus E. Dugger

Cyrus E. Dugger
THE DUGGER LAW FIRM, PLLC
Gotham Center
28-07 Jackson Avenue, 5th Floor
Long Island City, New York 11101
Telephone: (646) 560-3208
Facsimile: (646) 390-4524
cd@theduggerlawfirm.com

*Attorneys for Plaintiff Marissa Kubicki and the Putative Classes*